# FILED

MAR **2 2** 2010

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
                    DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

RANDY REAL  (CDC # T35897)
(Name of Plaintiff)
P.O. BOX 7500
(Address of Plaintiff)
CRESCENT CITY , CA 95531

vs.

James WALKER ET Al..

_____

_____

(Names of Defendants)

2:09-CV-03273-KJN
(Case Number)

Amended
COMPLAINT

I. Previous Lawsuits:

   A. Have you brought any other lawsuits while a prisoner:    ☒ Yes      ☐ No

   B. If your answer to A is yes, how many?: ___ONE___ Describe the lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper using the same outline.)

      1. Parties to this previous lawsuit:

         Plaintiff _PATRICK S. AGUIRRE_____

         Defendants _RANDY REAL (_____

FORM TO BE USED BY A PRISONER IN FILING A COMPLAINT
UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. § 1983        Rev'd 5/99

2. Court (if Federal Court, give name of District: if State Court. give name of County)
   *SuPERior COURT OF CALiFORNiA . COUNTY OF LOS ANGELES*
   *DOWNEY COURT HOUSE SOUTHEAST - DiSTRiCT.*

3. Docket Number   *09C02258*

4. Name of judge to whom case was assigned   *HON. ANA MARiA LUNA*

5. Disposition  (For example: Was the case dismissed? Was it appealed? Is it still pending?)
   *IS STiLL pending*

6. Approximate date of filing lawsuit   *JUNE 4 2009*

7. Approximate date of disposition   *UN NONE*

## II. Exhaustion of Administrative Remedies

A. Is there a grievance procedure available at your institution?     ☑ Yes     ☐ No

B. Have you filed a grievance concerning the facts relating to this complaint?
                                                                       ☑ Yes     ☐ No

   If your answer is no, explain why not _____

   _____

C. Is the grievance process completed?                     ☑ Yes     ☐ No

## III. Defendants

(In Item A below, place the full name of the defendant in the first blank. his/her official
position in the second blank. and his/her place of employment in the third blank.  Use item B
for the names, positions and places of employment of any additional defendants.)

A. Defendant _____ is employed as _____
   _____ at _____

B. Additional defendants *Due to THE limiteD Space TO Name*
   *All DeFenDants . See AttacheD "PARTIES"*
   _____
   _____
   _____
   _____
   _____

4

IV.   Statement of Claim

(State here as briefly as possible the facts of your case.  Describe how each defendant is involved, including dates and places.  Do not give any legal arguments or cite any cases or statutes.  Attach extra sheets if necessary.)

*Due to limited space see ATTACHED STATEMENT OF FACTS and STATEMENT OF claims*

V.   Relief.

(State briefly exactly what you want the court to do for you.  Make no legal arguments.  Cite no cases or statutes.)

*Due to the limited space see ATTACHED "prayer For Relief"*

Signed this __12__ day of __March__, 20 _10_.

_____
(Signature of Plaintiff)

I declare under penalty of perjury that the foregoing is true and correct.

__3 | 12 | 10__
(Date)

_____
(Signature of Plaintiff)

5

PARTIES

1. RANDY ROBL is THE Plaintiff and AT ALL TIMES will be mentioned here in the Complaint as the Plaintiff. Plaintiff is a prisoner of the State of California, in custody of the California Department of Corrections and Rehabilitation (CDCR), and is currently housed at Pelican Bay State Prison (PBSP) Security Housing Unit (SHU)/Administrative Segregation (AD-Seg).

2. Defendant John Doe is the Director of the CDCR, and is legally responsible for the overall operation of the Department and each institution under its jurisdiction, including CSP-Sacramento. He is held in his individual and official capacity.

3. Defendant James Walker is the Warden at CSP-Sacramento and is legally responsible for the operation at CSP-Sacramento and the inmates housed at CSP-SAC. He is held in his official and individual capacity.

4. Defendant R. Hill, is the former Associate Warden at CSP-SAC. He was legally responsible for assisting the Warden at CSP-SAC with operation and is held in his official and individual capacity

5. Defendant T. Virga, CDW is the former Associate Warden at CSP-SAC and is legally responsible for assisting with operation for the Warden at CSP-SAC and is held in his official and individual capacity.

6. Defendant T. Ventimiglia is a Correctional Officer (C/o) for CDCR, Rank as an Institutional Gang Investigator (IGI) Lieutenant (LT.) at CSP-SAC, and is held in his official and Individual capacity

7. Defendant J Stewart, is a C/o for CDCR, Ranked as (IGI) Sergeant at CSP-SAC and is held in his official and

1

individual capacity.

8. Defendant G. PARKER is a C/o For CDCR, RANKED as (IGI) AT CSP-SAC AND is Held in his Individual AND OFFicial Capacity

9. Defendant R. Parrilla is a C/o For CDCR, RANKED as Assistant IGI AT CALIFORNIA Correctional Institution at TEHACHApi (CCI-TEHACH) and is Held in his OFFicial AND Individual Capacity

10. Defendant EVERETT W FISHER is a C/o FOR CDCR, RANK as SSU GANG REVIEW/CHAIRPESON, (AT This point Known Assigned is unknow,) is Held in his Individual AND OFFicial Capacity.

11. Defendant SCOTT S KISSER is a C/o For CDCR, RANKED as SSU GANG REVIEW/REVIEWER, (AT This point Known Assigned is unknown), is Held in his OFFicial AND Individual Capacity.

12. Defendant G. Williams is a C/o For CDCR, RANKED as SSU GANG REVIEW/member, (AT This point Known Assigned is unknown), is Held in his OFFicial AND Individual Capacity.

13. Defendant R. Ramos is a C/o For CDCR, RANK as Captain at CSP-SAC AND is Held in his OFFicial AND Individual Capacity.

14. Defendant D. BAUGHMAN is A C/o For CDCR, RANKED Captain AT CSP-SAC AND is Held in His OFFicial AND Individual Capacity.

15. Defendant D. Sims is a C/o For CDCR, RANKED as LIEUTENANT AT CSP-SAC and is Held in His OFFicial AND Individual Capacity

16. Defendant K. Poci, is a C/o For CDCR, RANKED AS CCII-Appeals coordinator at CSP-SAC AND is Held in His OFFicial and Individual

2

Capacity.

17. Defendant K. M. Pool is a C/o for CDCR, Ranked as Appeal Investigator at CSP-SAC, and is Held in His individual and Official Capacity.

18. Defendant S. Hemenway is a C/o for CDCR, Ranked as Appeals Examiner / Facility Captain, Assigned to CDCR, and is Held in His individual and official Capacity

19. Defendant N. Grannis, is a C/o for CDCR, Ranked as Chief of Inmate Appeals Branch, at CDCR, and is Held in His official and Individual Capacity.

20. Defendant D. Till is a C/o for CDCR, Rank C/O at CSP-SAC, and is Held in his Individual and official Capacity.

## STATEMENT OF FACTS

On July 2, 2008 Plaintiff was served by Sgt J. Stewart with a validation packet with six individual points that is being used to validate the Plaintiff as an Associate of a Prison Gang Mexican Maifa "EME", and was placed in Administrative Segergation (AD-seg) pending the out come of the Validation process.

On July 4, 2008 Plaintiff was served a 114-D lock up order by Cpt R. Ramos which stated the reason for placement in AD-Seg pending investigation for validation and that Plaintiff posed a threat to the saftey of the institution and others.

At this point, Plaintiff requested an Investigative Employee / Staff Assistance (I.E) to prepare a Defense on behalf of himself. This was Denied by Cpt. R Ramos.

3

ON July 4, 2008 an Administrative Appeal (602) was file with no response. A second attempt was seeken on August 24, 2008, Disputing the Denial of an Investigative Employee / Staff Assistance. Loc.# SAC-C-08-01962

ON August 12, 2008 Correctional Officer/ (I&I) G. Parker conducted a cell search and confiscated a personal item (Address Book) for pending investigation.

ON August (Date unknow) An Inmate Request was sent to C/o Parker in regards of Plaintiff's Address Book and when it can be expected to be returned back.

In the month of September, A verble Response was given By C/o Parker to the Plaintiff at his cell door that plaintiff was not going to have his Address Book returned due to Alleje Address that are gang Activity.

Plaintiff in return explain to C/o Parker, that Plaintiff was not given a notice in any form that there was Addresses that contain gang Activity, and that confiscation was illegal.

C/o Parker stated in his own words "Your not getting your Address Book back, That's How we do things Around Here" that Ended the interview.

On Sept 3, 2008, Through Counselor Lynnch, Plaintiff Placed a "Notification of Violation of Due process in denying Plaintiff's of an Investigative/staff Assistance Employee" To place in plaintiff's Central File to notify Higher personal of plaintiff's Rights Have been denied and ignoreded. On every Appearance to committie, From Sept 3rd 2008 until March 11, 2009, Plaintiff has Raised the Issue that He was Denied an IE/Staff Assistance Employee.

4

On Sept. 14, 2008 an Administrative Appeal was filed, but was ignored. On Oct 19, 2008 a second attempt was made for unprofessional behavior for confiscating Address Book when no notice or evidence was given that shows gang activity was found in Plaintiff's Address Book and that confiscation was illegal. Log #SAC-S-08-02572

On Oct, 11 2008 Lt. D. Sims Heard/Conducted first level appeal issue on the due process violation of Denieing I.E./Staff Assistance. First level was Denied, Plaintiff submitted to next level. Log #SAC-C-08-01962

On Nov. 24, 2008 SGT Stewart (IGI) Cancelled Inmate Appeal Concerning Address Book due to Allege Failure to participate in Appeal Hearing. Specifically SGT Stewart stated that on Nov 13 2008 C/o D. Till (an Assigned Officer to Ad-Seg Housing Unit where Plaintiff was Housed), attempted to escort Plaintiff out of his cell to conduct an Interview. But that Plaintiff Refused. Log #SAC-S-08-02372

At the time between Nov. 24 and Nov. 30th 2008, Plaintiff spoke with C/o D. Till about the statement that was said due to the Cancellation of Appeal. C/o D. Till stated that he did not give that statement.

On Nov 30th 2008, Plaintiff filed an Inmate Appeal on SGT J. Stewart Concerning the Cancellation of plaintiffs Appeal on the issue of Address Book, but was screened out by Appeal's Coordinator K. pool that my Appeal was a Completed and Cancelled. Dec. 19, 2008 Log # SAC-S-08-02371

On Dec 12, 2008, Plaintiff was given notice that he was

5

found to be an ACTIVE prison GANG Associate, (chairperson)
EVERETT N. Fisher, (Reviewer) Scott S. Kisser, AND (member)
G. Williams, where SSU GANG Validation Review committee
that found Plaintiff as an ACTIVE prison GANG Associate.

On the Same Date (DEC 12 2008) Plaintiff Filed an
Inmate Appeal Disputing the Validation findings. Log#
SAC-D-09-00203.

On DEC 26, 2008, 2d Level Response was issued, K.M.
Pool And James WALKER (WARDEN) Denied Appeal of I.E/
STAFF Assistance. LOG # SAC-C-08 01962, Plaintiff
Seeked Highest level OF Appeal on Jan 5, 2009.

On Jan 5 2009, Plaintiff Filed Another Inmate Appeal,
explaining THAT %o 0. Till DID NOT ATTEMPTED To Escort
Plaintiff AND requested AN Investigation AND to
Question %o D. Till As to the STATEMENT. LOG # SAC-S-08-
02372 on JAN. 16th 2009 K. pool (Appeal (coordinator)
Screens out AND Denies Plaintiffs Appeal Filed on
1/5/2009. Plaintiff Seek Highest level Review ON FEB.
6, 2009, Response was entered on MARCH 18, 2009 Denied.

On MARCH 5, 2009 Lieutenant T. Sentimiglia (IGI)
interviewed plaintiff in Appeal Hearing Concerning Inmate
Appeal For Validation. ON MARCH 13, 2009 Response
was entered, Denied. Plaintiff Seek's Highest level
Review on MARCH 26, 2009. Response was entered on June
8, 2009 Denied LOG # SAC-D-09-00203.

On July 19, 2009, Plaintiff Filed an Inmate Appeal on LT.
T Ventimiglia (IGI) for violation 15 CCR regulation. Appeal
Reviewer Can NOT be a participatent in the event or decision
being Appealed. ON July 28, 2009 K.Pool (Appeals Coord.), SCREENS

6

OUT Appeal. Plaintiff seeks Highest Review on 8/9/09 AND was Denied on Sept 1, 2009 (IAB# 0703028).

THIS Concludes Plaintiffs Administrative Remedies.

STATEMENT OF Claims

1st Cause of Action

Defendants 3, 6 - 8, 10 - 12 - 18 AND 19, Have personel envolement AND (OR) ARE Responsable for the missuse of Three individually Allegally Gang Rosters Dated June 2, 2008, Sept 26, 2007 AND Dec 4, 2006 To validat Plaintiff as Comunication/direct link to a Prison Gang, This violated Plaintiffs 4th Amendment of the U.S. Federal Constitution of Due process Right. By the use of All Three Rosters for the following Reason;

(A) Fails to show Plaintiff Had Any knowledge or involement of another inmates had possion of plaintiffs information (name, CDC#, Street Gang name AND AKA) PRE state Regulation under "Gang Activity"

(B) mere speculation of Gang Activity create a liberty Interest

(C) Information is vague AND overbroad in its use

(D) Fails to show comminication AND or direct link Had tooken place with PlaintiFF

(E) The use of all Three Rosters is used in a form of a Laundry list which can nolonger be used per Castillo Settlement

(F) Fails to show Factual prison Gang related conduct and by the plaintiff.

2nd Cause of Action

Plaintiff re-Alleges AND incorporates 1st Cause of Action as 2nd Cause of Action in which violates

7

plaintiffs 14th Amendant of the U.S. Federal Const. of Due process Rights by the use of all said three Rosters said in 1st Cause of Action.

### 3rd Cause of Action

Plaintiff re-alleges and incorporates 1st Cause of Action as 3rd Cause of Action in which violates Plaintiff's 8th Amendment of the U.S. Constitution of Deliberate Indifference, by Defendants Deliberate Indifference to plaintiffs "physical and mental" well-being of the conditions that plaintiff is being exposed to for placing plaintiff in S.H.U, under False Allegation, for over a five years. All Defendants have personal envolement or have Conspired, and are responsable.

### 4th Cause of Action

Defendants 3, 6, 7, 9, -12, 18 and 19, have personal envolement and are Responsable for violation of plaintiffs 1st Amendant, By the use of chono Dated July 11, 2005 of possession of another inmate Home address By validating plaintiff;

(A) Fails to show any Gang Activity,

(B) Mere speculation of Gang Activity Creates a liberty interest.

(C) The Use of this Source is vague and OverBroad in its contents and use;

(D) The innocuous Association with Another inmate is not an indication of Gang Activity.

### 5th Cause of Action

Plaintiff re-Alleges and incorporates 4th Cause of Action as 5th Cause of Action in which violates plaintiffs 4th Amend of the U.S Const. of Due process Rights by the use of Chrono Dated July 11, 2005 of possession of Another inmate Home address by validating plaintiff.

6th Cause of Action

Plaintiff re-alleges and incorporates 5th Cause of Action as 6th Cause of Action inwhich violates plaintiff's 14th Amend. of U.S. Const. of Due Process Rights by THE USE of chrono DATED July 11, 2003 of POSSESSION of ANOTHER inmate's home address by Validating plaintiff.

7th Cause of Action

DEFENDANTS 3, 6, 7, 9-12, 18 AND 19, HAVE personal ENVOLEMENT and OR ARE RESPONSABLE FOR THE violation OF Plaintiff's 1ST Amend. By THE USE of chrono DATED FEb. 26, 2003 "Roll CALL", where it's Allege that Due to plaintiff Greeting another inmate's Goodmorning and or GoodNight is Deem as GANG ACTIVITY. THIS is FALSE Due to THE following;

(A) Fails to show GANG ACTIVITY being DONE BY Plaintiff Greeting other inmates

(B) mere Speculation of GANG ACTIVITY Creates a liberty INTEREST.

(C) THE information inno THE USE is VAGUE AND OVERBroad in its USE.

(D) INNOCUOUS Association ALONE, that does not inclicate of ANY UNlawful ACT OR SERIOUS misconduct is INSUFFICIENT.

(E) THE information USE is HEARSAY.

8th Cause of Action

PLAINTIFF re-alleges ANd incorporates 7th Cause of ACTION as 8th Cause of Action, iNwhich violates Plaintiff's 4th Amend of THE U.S. Const. of Due Process Rights by THE USE of chrono DATED Feb. 26, 2003 "RoII CALL" where it's Allege that Due to Plaintiff's Greeting another inmate's Good morning and OR GoodNIGHT is Deemed as GANG Activity.

9

9th Cause of Action

Plaintiff re-Alleges and incorporates 1st Cause of Action as 9th Cause of Action in which violates, plaintiffs 14th Amend. of the U.S. const. of Due Process Rights by the Use of chrono dated Feb. 26, 2003 "Roll call" where it's allege that Due to plaintiff's Greeting another inmate(s) Good morning and or Good Night is Deemed as Gang Activity.

10th Cause of Action.

Defendants 3, 6, 7, 9-12, 18 and 19, have personal envolement and are responsable for the violation of plaintiff 4th Amend. of the U.S. const. by the Use of Chrono dated July 17, 2002 that plaintiff Assualted Another inmate on behalf of a prison Gang and member. is false for the following Reason;

(A) There is no information that I personality acted on behalf of Any prison Gang or member

(B) The information is not first Hand Knowledge

(C) Information is Hearsay and holds no weight

(D) Information is Vague and overbroad in its use

(E) Information is mere Speculation

(F) Information is False.

11th Cause of Action

Plaintiff re-Alleges and incorporates 10th Cause of Action as 11th Cause of Action in which violates plaintiff's 14th Amend. of the U.S const. By the Use of chrono dated July 17, 2002 that plaintiff Assualted Another inmate on behalf of a prison Gang and member is false

12th Cause of Action

Defendants 3, 6-7, have personal envolement and are responsable for violating plaintiff's 4th Amend.

10

OF DUE PROCESS OF THE U.S. Const. by NOT providing Any missconduct Report OR Rule Violation chrono AT THE TIME OF EACH Allege Rule Violation "GANG Activity" Occured. THIS DENIED THE Following to THE plaintiff;

(A) THE Opportunity to contest TO THE Allege misconduct AND CALL witness at THE time OF THE missconduct, RATHER Defendant's waited YEARS, AND even waite until plaintiff moved prisons to bring to light That plaintiff conducted "GANG Activity"

(B) Failed to give plaintiff Adequate NOTICE OF what conduct is proscribed and conduct is permitted.

## 13th CAUSE OF ACTION

Plaintiff re-Alleges AND incorporates 12th Cause OF ACTION as 13th Cause OF Action in which plaintiff's 14th Amend. OF THE U.S. const. OF Due Process violated, by not providing Any misconduct Report OR Rule Violation chrono AT THE TIME OF EACH Allege Rule Violation OF "GANG Activity" Occured.

## 14th Cause OF ACTION

Defendants 3-7, HAVE contradicted THE REASON FOR placing plaintiff IN AD/Seg-SHU, FOR validation, creating a liberity interest, violating plaintiff's 4th Amend of DUE Process OF THE U.S. const. Right's FOR THE Following REAson;

(A) DEFENDANTS where Awhere OF plaintiff's chrono's OR Allege "GANG Activity" on 2/2/06, 3/16/06 AND April OF 2008, where plaintiff HAD a Total OF 5 (Five) chrono's OF Allege "GANG Activity" BUT RATHER was Still was RELEASED To THE General population every time.

(B) Plaintiff HAD 2 Rosters Along with 3 OTHER chronos THAT Allege "GANG Activity" RATHER was Allowed to be RELEASED TO THE General population THEN was placed

back in AD/SEG For validation for a 3rd roster along with Above mention 5 chrono's which HAD previously been shown plaintiff DID NOT pose a threat to the SAFTEY & Security of the institution.

### 15th Cause of Action

Plaintiff re-alleges And incorporates 14th Cause of Action as 15th Cause of Action inWhich plaintiff's 14th Amend; of U.S. Const, Due Process, by placing Plaintiff by placing plaintiff wrongfuly in AD Sec/Srlo, For Validation, Creating a liberity interest.

### 16th Cause of Action

Defendant 3, 6, 18 AND 19, Have personal ENVOLEMENT AND Or ARE responsable FOR the violation of 4th Amend. Of Due Process Rights, on MARCh 5, 2009, Defendants 6, conducted a Second level interview for validation Appeal, when Defendant participated in the validation process and the Decision of placing plaintiff in AD Seg For validation. This showed biASE TOWARDS plaintiff's Due Process Right to Appeal.

### 17th Cause of Action

Plaintiff re-alleges And incorporates 16th Cause of Action as 17th Cause of Action inwhich plaintiff's 14th Amend of Due Process Right, by Defendant 6, conducted an Appeal issue for plaintiff's validation, when Defendants paticipated in the Validation process AND the Decision of placing plaintiff in No Seg for validation. This showed biASE towards Plaintiff's Due Process Rights to Appeal.

12

18 th Cause of Action

Defendants 8, 7, 16, 19 have personal envolement and are responsable for the siolation of Freedom of Speech of the 1st Amend. of the U.S. Const. or illegal Search and Seizures. On 8/12/08 Defendant 8, confiscated plaintiff's personal Address Book with no showing of any Gang Activity or wrong done, to justify the illegal Confiscation.

Defendants 7, 16, 19 are personaly envole and Responsable For failure to act and correct the situation that violated plaintiff's Rights.

19th Cause of Action

Defendants 8, 7, 16, 19 have personal envolement and are Responsable for the violation of plaintiff's 4th Amend. of Due Process Right of illegal search and seizures violation of U.S. Const. On 8-12-08 Defendants confiscated plaintiff's personal Address Book with no showing of any Gang Activity or wrong doing to justify the illegal confiscation.

Defendants 7, 16, 19 are personaly Responsable For knowing of the siolation and failed to correct the situation.

20th Cause of Action

Defendants 8, 7, 16, 19 have personal envolement and are Responsable for the violation of plaintiff's 14th Amend. Right of Due Process Right of illegal search and seizures siolation of U.S. Const. On 8-12-08 Defendant's confiscated plaintiff's personal Address Book with no showing on Any Gang Activity or wrong doing to justify the illegal confication.

Defendants 7, 16, 19 Are personaly Responsable for knowing of the violation and failure to act and correct the situation that violates plaintiff's Rights.

13

## 21st Cause of Action

Defendants 1 and 20 violated plaintiff's Due Process Rights on 11/13/08, By Obstruction of Justice By falsifying Action that Defendant Attempted to inter-view plaintiff But that plaintiff refused to be interviewed of THE Appeal concerning the illegal Confiscation of plaintiff's Address Book violation of THE 4th Amend. of THE U.S. Const,

## 22nd Cause of Action

Defendant 1 and 20 has violated plaintiff Due process Right on 11-13-08, By obstruction of Justice by falsifying Action that Defendant Attempted to interview plaintiff but that plaintiff refused to be interviewed of the Appeal concerning the illegal Confiscation of plaintiff's Address Book. Violation of the 14th Amend. of THE U.S. Const.

## 23rd Cause of Action

Defendants 2-20 Are all Held liable for participating and Conspiring with one another in a Reckless Regard to illegaly and falsly validate plaintiff as An Associate to a prison gang, violation of the 8th Amend (cruel & unusual punishment-malicious misclassification and placement of plaintiff in S.H.U)

## 24th Cause of Action

Defendants 1-20 Are Held liable for personal envolement for failure to Act and Acted in Recklessness Regard by Allowing plaintiff's Appeal issue to be ignored and not investigated and Held liable for participate in the decision making to illegally validating plaintiff as an Associate to a prison Gang, violating Plaintiff's 14th Amend of the U.S. Const Due Process.

25th Cause of Action

Defendants 5-14 are held liable to have personal envolement and Conspired of Deliberately missclassifying and placeing plaintiff in the S.H.U. for allege Prison Gang Association, Having subjected plaintiff to condition of severe physical and mental pain and suffering. This was done maliciously and sadistically Despite their knowledge that plaintiff is not a member nor Associate of any prison Gang. Defendants Have violated plaintiff's 8th Amend. of the U.S. Const.

26th Cause of Action

Defendants 13, 15, 11, 3, 2, and 19, are Held liable for personal envolement and liable for Failure to Act and Acted in Recklessness Regard by failing to Appoint an Invistigator Enipolyee (I.E.) to plaintiff at his request. On 7/3/08 plaintiff requested an I.E. Appointed in which no I.E. was Appointed. Plaintiff Appeal the issue in which to Have an I.E. Appointed But was Denied. All Defendant's Are liable for Due process Violation of the 4th Amend. of US. Const.

27 Cause of Action

Defendants 13, 15, 11, 3, 2 and 19, Are Held liable for personal envolement and liable for Failure to Act and Acted in Recklessness Regard by failing to Appoint an I.E. to plaintiff at his Request. On 7/3/08 plaintiff requested an I.E. Appointed in which no I.E. was Appointe. plaintiff Appeated the issue in which to have an I.E. Appointed But was Denied All Defendants, Stated, Are liable for Due process violation of Plaintiff's 14th Amend. of U.S. Const.

Prayer For Relief

Plaintiff respectfully prays for the following Relief;
1. A Declaratory Judgment of the defendants Acts and practices described herein that violates plaintiff's Rights as here in Stated claims,

15

2. A preliminary and permant injunction which prohibits and requires that Defendants, Their agents, employees, and Successors:

(A) Cease the practice of placing confidential information into plaintiff's prison file with out giving plaintiff a CDC 1030 Form with in 72 hours from placement of said information into plaintiff's prison file, and inmates.

(B) Cease the practice of validating plaintiff as a prison gang member or associate without giving plaintiff opportunity to present his view and marshal evidence on his behalf threw a investigative employee or staff assistance being appointed to plaintiff's and inmates.

(C) Cease the scheme of using unreliable, untrue or and, insufficient information in imposing gang validation and indeterminate S.H.U term.

(D) Cease the practice of conducting meaningless reviews at classification committees.

(E) Cease the practice to stack up 1030 chronos of gang activity to validate inmates with and to only validate inmates with the required amount needed to validate inmates with (3) three 1030 chrono's of gang activity.

(F) Cease the practice of confiscating personal item, such as address books, books ... ect, that does not have gang activitie and that is not being used in validating inmates. It shall be return to the inmates, and return to plaintiff address book back to him.

(G) cease the practice of placing plaintiff and inmate in AD/seg SHU if They do not poses an immediate threat to the safety of others and (or) endangers institution security, and release plaintiff from AD-seg SHU.

(H) Cease the practice in using hearsay information in 1030 chronos, and gang activity allegation

3. Grant temporary restraing order to release plaintiff to the General population out of SHU/AD-Seg due to plaintiff lacks

Immediate OR threat to the safety of others and nor is there significant evidence that plaintiff endangers the security of the institution.

4. Release plaintiff from SHU and expunge his file of any reference to Gang Association based on information found not reliable enough to support validation.

5. Compensatory Damages of $200 a day for plaintiffs segregation from July 2, 2008 to the present date of Release from SHU, from the defendants jointly and severally.

6. Compensatory damages to cover plaintiff's mental Anguish and stress as a result to wrongly placed in segregation.

7. Punitive damages of $50,000 from any defendant found to have conspired to, or and, denied plaintiff of his constitutional rights.

8. Defendants are to pay for cost of suit, jointly

9. Defendants are to pay for cost and reasonable attorney's fee's and any other expences.

10. Trial by jury, including, to the extent that legitimate security concerns dictate, in judicial proceeding regarding the specific factual grounds that purportedly justify plaintiff's indeterminate term in S.H.U.

11. For further Relief that the court deems just.

DATE: 3/12/10

Respectfully submitted

RANDY Reed (pro per)

17

# EXHIBIT COVER PAGE 

A

EXHIBIT

Description if this exhibit:

Inmate Appeal Filed on 12/22/08
Disputting Allegation of Prison Gang
validation

LOG # SAC-09-00203

Number of pages to this exhibit: _25_ pages.

**JURISDICTION**: (Check One Only)

☐ MUNICIPAL COURT
☐ SUPERIOR COURT
☐ APPELLATE COURT
☐ STATE SUPREME COURT
☒ UNITED STATES DISTRICT COURT
☐ STATE CIRCUIT COURT
☐ UNITES STATES SUPREME COURT
☐ GRAND JURY

21

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

# DIRECTOR'S LEVEL APPEAL DECISION

Date: JUN - 8 2009

In re: Randy Real, T35897
California State Prison, Sacramento
P.O. Box 29
Represa, CA 95671

IAB Case No.: 0821402      Local Log No.: SAC-09-00203

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner S. Hemenway, Facility Captain. All submitted documentation and supporting arguments of the parties have been considered.

I   **APPELLANT'S ARGUMENT:** It is the appellant's position that he is being designated as a member of a prison gang. The appellant refutes the validation stating that he is not a member of the Mexican Mafia (EME) prison gang, or even an associate. He claims that pursuant to the California Code of Regulations, Title 15, Section (CCR) 3312(c)(1-3) the CDCR failed to provide any Rules Violation Report(s). His gang validation is vague and overbroad thus violating his First, Fifth, Sixth, Eighth and 14th Amendment. The appellant is refuting items dated June 2, 2008, September 26, 2007, December 4, 2006, July 11, 2005, February 26, 2003, and July 17, 2002. The appellant is requesting release from the Security Housing Unit (SHU); expungement of any information that was used to support the SHU term/gang validation/active gang status; reversal of active gang validation; comply with the Administrative Procedures Act (APA) and to promulgate clear and fair regulations.

II   **SECOND LEVEL'S DECISION:** The reviewer found that the appellant was interviewed at the Second Level of Review (SLR) by Correctional Lieutenant (Lt.) T. Ventimiglia, Institution Gang Investigator (IGI) on March 5, 2009, regarding this appeal. Lt. Ventimiglia stated in his report that the appellant met all the guidelines identifying him as a current active associate of the EME prison gang. He explained to the appellant that the validation process is lengthy and thorough to ensure inmates are afforded every opportunity to be issued the source items being used against them; and, to dispute the source items and appeal the validation. After a thorough investigation, there was sufficient evidence to substantiate the appellant's participation in gang activities with validated EME prison gang members/associates. This information was subsequently corroborated by the Office of Correctional Safety (OCS). Regarding the appellant's constitutional rights, the constitution does not authorize membership or associations with prison gangs. A total of six items were submitted to the OCS for review, two of which were used as supporting documents The appellant's request that all erroneous information be removed from his central file and that the CDCR comply with the APA as outlined in the Government Code (GC) sections was granted. All the documents used in support of the appellant's validation were factual. Due to the above, that information will remain in the appellant's central file and his gang validation status will remain as an active associate of the EME Prison Gang. Based on the appellant's current active gang status, he will remain in the SHU. The appellant's request for reversal of the validation was denied.

III   **DIRECTOR'S LEVEL DECISION:** Appeal is denied.

  **A. FINDINGS:** Despite the appellant's dissatisfaction, the SLR provided him with an appropriate, very thorough, and detailed response. The appellant has not provided sufficient documentation, information or evidence to warrant any modification of the decision reached at the SLR. An investigation was conducted and the information gathered formulated the active EME associate status. The appellant was appropriately reviewed for this status according to the laws and procedures for validating prison gang members. The information gathered by the IGI was appropriately forwarded to the OCS for their review and validation. The OCS is considered to be expert in their review and determination of validation documents. According to the information received, the appellant was appropriately validated as an EME associate, pursuant to law. Pursuant to CCR 3023(b) and 3341.5(c)(2)(A)2, the appellant is considered a

22

RANDY REAL, T35897
CASE NO. 0821402
PAGE 2

threat to the security and safety of the institution staff and inmates. The appellant stated in section "H" of his appeal that there is no factual evidence with a direct link. The appellant's one page written rebuttal to the IGI validation process is part of the validation package. According to the attached, the appellant refused to exit his cell to participate in the interview process. The appellant has not presented any convincing evidence that the decision made by the OCS should warrant any modification at the DLR. Due to the appellant's active association with the EME, he is appropriately housed in a SHU. He will remain in the SHU until it is deemed appropriate to release him. Based upon the aforementioned information, no relief is warranted at the Director's Level of Review.

**B.  BASIS FOR THE DECISION:**
GC: 6254(f), 11342.600
California Penal Code Section: 5058
CCR: 3000, 3001, 3005, 3023, 3270, 3321, 3341.5, 3376, 3378

**C.  ORDER:** No changes or modifications are required by the Institution.

This decision exhausts the administrative remedy available to the appellant within CDCR.

N. GRANNIS, Chief
Inmate Appeals Branch

cc:    Warden, SAC
       Appeals Coordinator, SAC

23

**INMATE/PAROLEE APPEAL FORM**
CDC 602 (12/87)

Location: Institution/Parole Region
1. _SAC S_
2. _____

Log No.
1. _09 0203_
2. _____

Category
_6_

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|-----------|------------------|
| Real | 735899 | | FSC 126 |

A. Describe Problem: Appeal is based on, "Prison Gang Validation and SHU Term; Active Prison Gang Association SHU Retention; 3)Failed to provided any misconduct report Per. 15 CCR 3312 (c)(1-3) 4)Items Dated June 2.08 Sept 26.07, Dec 4.06, Feb 26.03, July 11.05 and July 17.02 to validate me as an Prison Gang Associate are false and untrue; 5)Gang validation & SHU placement are vague and overbroad, also it creates a arbitrary, punitive, policy practice, and Rule and Regulation that creates an atypical and significant hardship violating my 1st, 5th, 6th, 8th and 14th Amend. of State and Federal Constitutional; 6)Contradicting of justification of allegation of threat to the safety & security of the institution →

If you need more space, attach one additional sheet.

B. Action Requested: 1)Release from SHU; 2)Expungement of any information that is erroneously used to support SHU term; Gang Validation; Active Gang status; 3)Reversal of Gang Validation; Active Gang status; 4)Comply with APA; 5)promulgate clear and fair Regulations

Inmate/Parolee Signature: _____   Date Submitted: _12.22.08_

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

**BYPASS**

Staff Signature: _____   Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

**BYPASS**

Signature: _____   Date Submitted: _____
Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E, Inmate Claim

CDC Appeal Number: _____

INMATE APPEALS BRANCH
MAR 30 2009
RECEIVED

APPEALS
CSP - SAC
RECEIVED
2008 DEC 29 PM 1:35

APPEALS
CSP - SAC
RECEIVED

24

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: _____ Due Date: _____

Interviewed by: _____

**BYPASS**

Staff Signature: _____ Title: _____ Date Completed: _____
Division Head Approved:                                                                    Returned
Signature: _____ Title: _____ Date to Inmate: _____

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

**BYPASS**

Signature: _____ Date Submitted: _____

Second Level  ☑ Granted    ☑ P. Granted    ☐ Denied    ☐ Other _____ **FEB 1 1 2009**    Due Date: **MAR 1 2 2009**
G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned:
☑ See Attached Letter

Signature: _____  Date Completed: 3/6/09

Warden/Superintendent Signature: _____  Date Returned to **MAR 1 3 2009**

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

DISSATISFIED. The Respondent has still not justified all
Arguement in the the body of the 602. I still
Held that I have been validated as a prison
gang, was done wrongly. Therefore I still hold
that my action requested still be granted.

Signature: _____  Date Submitted: 3·26·09

For the Director's Review, submit all documents to:  Director of Corrections
                                                      P.O. Box 942883
                                                      Sacramento, CA 94283-0001
                                                      Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION:  ☐ Granted    ☐ P. Granted    ☒ Denied    ☐ Other _____
☒ See Attached Letter
                                                                    Date: JUN 5 2009
CDC 602 (12/87)        0821402

T35897

4

Prison Gang Regulations are vague and overbroad concerning innocent speech and conduct.

FACTS ARE AS FOLLOW;

On July 2.08 I was placed in AD-SEG for validation as a prison gang associate with 6 individule points used. (SEE ATTACHED chronos)

On Dec. 12.08 I was designated as an ~~active~~ **active** prison gang associate. (SEE ATTACHED

According to the FACTS;

A) The allegations are untrue. I am not a prison gang assoicate muchless an active one. Nore am I a threat to the safety of others or institution security. The information is being used inappropriately because;

B. Communication / Direct Link dated June 2.08, Sept 26.07, and Dec.4 06.

1. Failure to show I knowing knew my name was being used and any connection of my involvement per 15 ccr 3000 "gang" 3023 gang activity.

2. Settlement in CASTillo state no longer use of laundry list / Roster as a source to validate an inmate when no gang conduct is shown by the inmate.

3. Speculation of gang activity can not be used in which denies a liberty interest

4. The use of Laundry list / Roster are vague and overbroad in it's sole use and understanding

5. Failure to show factul gang Related conduct or evidence in the said chronos that Deeins them gang Related.

6. Fails to show communication and or direct link with my personal knowledge.

7. Never given notice of misconduct. Per 15 ccr 3312. (a) (1-3) or 3000 gang 3023 gang activity.

C. Communication direct link dated July 11 2005 "Address of another inmate"

1. Fails to show any gang activity being done. Per 15 ccr 3000 "gang" 3023

2. Speculation of wrong doing, before any wrong doing occurs is a missused of identifie petitioner as an associate or any gang activity, is vague and overbroad in contents and use

3. Innocuous association alone that is not indicative of any unlawful act or act of serious misconduct is insufficient, applying 1st amend proctection to freedom of speech and assciation.

4. Never given notice of misconduct per. ccr 15, 3312 (a) or 3000 "gang" 3023 and 3321 (b)(3)

D. Communication / Direct Link dated Feb.26 2003 "Roll call"

1. Fails to show gang activity being done by me shying good morning to anyone or fails to show it volates any 15 ccr Rule 3000 "gang" and 3023 gang activity or any other Rule.

2. It is speculation of wrong doing and is vague and overbroad in it's use to hold me in a S.H.U.

3. Innocuous association alone that is not indictive of an unlawful act or act of serious misconduct is insufficient, Applying 1st Amend proctection to freedom of speech and association.

4. Never given notice of misconduct per 15 ccr 3312 (a), 3000 "gang," 3023 and 3521 (b)(3)

5. The classification process is inherently Racist in that Hispanics are presumed to be involved in gang based on their associations with other Hispanics.

6. No legitimate penological interest in assuming that I was association with members of his own racial group indicates gang affiliation

E. Informants dated July 17 2002, "Assualt on another I/m on behalf of a prison gang, and member.

1. The use of this as gang activity is mere speculation of any wrong doing and is vague and overbroad in it's contents, there is no document or information that show;
   A. I acted "personality" on behalf of any member of a prison gang.
   B. Information is not first hand knowledge.
   C. Information is Hearsay and holds no weight
   D. There is no record of any order being given opecificaly to me to assult another person on behalf of any prison gang
   E. I never assuaited anyone, rather I was Round to assualt

2. I was never given notice of misconduct per 15 ccr 3312 (a) for gang activity 3000 and 3023, and 3321 (b)(5)

26

3. Failure to show where petitioner knowingly knew, promoting or assisting any gang member, or prison gang. per is ccr 3000 "gang" 3023.

F. Petitioners Due Process Right has been violated per 15 ccr 3312(c) and 3321 (b)(3) and (d)(3).

Staff had never provided the petitioner with any missconduct report and or 1030 rule violation at the time the alledge rule violation occured. By doing this it never gave petitioner, opportunity to contest to the alledge missconduct. Instead waited years after to use, petitioner has no way of calling witnesses, or contesting to the action properly that would satisfy petitioners due process equal protection, and right to be informen or charges.

G. Petitioner does not pose a threat to the safty of security

1. Petitioner was housed in a ASU and at SAC while having all 5 items within my C-File. (2 posters / 9-26-07 and 12-4-06) and other documents / for 18 months until released to C-Facility in April of 2008. Due to petitioner did not pose a threat to the safty & security of the institution and others. Rather to validate and deem petitioner a threat to the safty of security with a third roster in which petitioner already had holds contradicting actions.

2. The information can not support a finding that I posed a "Immediate Threat" or any "Threat" to the safety of others or institution security (per 15 ccr 3335(a), 3339(c) and 3341.5(c)(3)(5).)

H. Mere gang affiliation is not indicative of any unlawful act or serious misconduct (people v (1984) 157 Cal.App.3d 654, 712-13)

I. The indeterminate SHU term and SHU conditions imposed constitutes an atypical and significant hardship (Madrid v. Gomez 2 (N.D. Cal 1995) 889 F.Supp 1146, 1227-37)

J. The APA requires that prison regulation be legally promulgated Government code 11340.

K. Prison regulation must be clear and fair and cannot prohibit innocent conduct or speech (Rios v. Lane (11th Cir 1987) 812 F.2d 1032, 1038

L. Information must be original and not mere copy of information

M. Information must be with in the 6 years to hold weight. There's information that has been 6 years old.

RE California State Prison-Sacramento (SAC)
Second Level Reviewer Response
Appeal Log #: SAC-D-09-00203
Date: March 6, 2009

Inmate: REAL (T-35897)

## APPEAL ISSUE

CASE INFO./RECORDS

## APPEAL DECISION

PARTIALLY GRANTED

## APPEAL RESPONSE

Institutional Gang Investigator (IGI) Lieutenant (Lt) T.S. Ventimiglia was assigned to review your appeal at the Second Level of Review. Lt Ventimiglia conducted a personal interview with you on March 5, 2009. During the interview you were unable to provide any additional information to substantiate your claims. All submitted documentation and supporting arguments have been considered. Additionally, a thorough inquiry was conducted regarding the claim presented by you and evaluated in accordance with SAC Operational Procedures (OP's), California Code of Regulations (CCR), Title 15, and the Departmental Operational Manual (DOM). Also reviewed in this case was the California Penal Code (PC), California Government Code (GC), the Administrative Procedure Act (APA) the United States (US) Constitution and case law; from *Castillo v Alameida.*

## SUMMARY OF APPEAL

You indicate you were housed in the Administrative Segregation Unit (ASU) on July 2, 2008, pending validation as an associate of the Mexican Mafia (EME) prison gang. Subsequently, the Office of Correctional Safety (OCS) validated you as a current active associate of EME. You state the IGI failed to provide any misconduct reports with any of the source items. It is your contention that as there were no misconduct reports provided with any of the six (6) source items used in your validation that the source items are invalid. You indicate that all 6 source items are false. That your gang validation and Security Housing Unit (SHU) placement is vague and overbroad; creating arbitrary and punitive policies, practices, rules and regulations which created an atypical significant hardship and violated your 1st, 5th, 6th, 8th and 14th Amendment Rights of both the State and Federal Constitutions.

It is your contention that the 6 source items used in your validation are being used inappropriately, specifically: Confidential memorandum (CM) dated June 2, 2008, which is supported by CM's dated September 26, 2007 and December 4, 2006, in your opinion fail to show that you had knowledge your name was being used or connect your involvement in any gang activity, that the *Castillo v Alameida* agreement no longer allows the use of "laundry lists" also "laundry lists" are vague and overbroad, you also contend that they failed to show your personal knowledge of communications and/or direct links which in your opinion was pure speculation on the part of the IGI and cannot be used to deny a liberty interest, also that you were never given notice of any misconduct at any time. CDCR 128-B dated July 11, 2005, in your opinion fails to show any gang activity and you were never given notice of any misconduct. You have indicated that this is nothing more than an innocuous association and as such is not indicative of any unlawful act or serious misconduct thus violating your 1st Amendment right to freedom of speech and association. In your opinion CM dated February 26, 2003, also failed to show any gang activity or violations of any CCR, which again an innocuous association alone is not indicative of an unlawful act, also it is your opinion that the classification process is inherently racist in that hispanics are presumed to be involved in gangs based upon their associations with other hispanics, and lastly CM dated July 17, 2002, in your opinion is mere speculation on the part of the IGI, vague and overbroad in it's contents as you state there is no documentation that you acted on the behalf of a prison gang member, or documentation of any order given specifically to you to commit an assault on another inmate on behalf of any prison gang.

Second Level Reviewer Response
Appeal Log #: SAC-D-09-00203
Inmate: REAL (T-35897)
Date: March 6, 2009
Page 2

It is also your contention that the information provided by the Confidential Informant (CI) was not first hand knowledge therefore falls under hearsay, also that you were never given any notice of misconduct. It is also your contention that your due process rights have been violated in that you were never provided with any notice of misconduct reports and/or CDC 1030, Confidential Information Disclosure Forms at the time of the alleged rules violation to enable you to contest the alleged misconduct at the time it occurred.

You are requesting to be released from the SHU, all information used erroneously in support of your validation and SHU term be expunged from your Central file, that your validation be reversed and for the CDCR to comply with the Administrative Procedures Act (APA) by promulgating clear and fair regulations as outlined in Government Code (GC) 11340.

## SUMMARY OF INQUIRY

The evidence reviewed in this case was your appeal and all supporting documentation provided by you, the validation package, which was submitted to the OCS on July 10, 2008, case law from *Castillo v Alameida,* California Penal Code (PC), the APA and GC. The Department's rules regarding these issues are contained in CCR Title 15, Sections 3000, 3001, 3005, 3023, 3270, 3321, 3341.5 and 3378, which state in part:

### 3000, Definitions
Gang means any ongoing formal or informal organization, association or group of three or more persons which has a common name or identifying sign or symbol whose members and/or associates, individually or collectively, engage or have engaged, on behalf of that organization, association or group, in two or more acts which include, planning, organizing threatening, financing, soliciting, or committing unlawful acts or acts of misconduct classified as serious pursuant to section 3315.

### 3001, Subject to Regulations
Regardless of commitment circumstances, every person confined or residing in facilities of the department is subject to the rules and regulations of the director, and to the procedures established by the warden, superintendent, or parole region administrator responsible for the operation of that facility.

### 3005, Conduct
(a) Inmates and parolees shall obey all laws, regulations, and local procedures, and refrain from behavior which might lead to violence or disorder, or otherwise endangers facility, outside community or another person.

### 3023, Gang Activity
(a) Inmates and parolees shall not knowingly promote, further or assist any gang as defined in section 3000.
(b) Gangs, as defined in section 3000, present a serious threat to the safety and security of California prisons.

### 3270, General Policy
The primary objectives of the correctional institutions are to protect the public by safely keeping persons committed to the custody of the Director of Corrections, and to afford such persons with every reasonable opportunity and encouragement to participate in rehabilitative activities...The requirement of custodial security and of staff, inmate and public safety must take precedence over all other considerations in the operation of all the programs and activities of the institutions of the department.

Second Level Reviewer Response
Appeal Log #: SAC-D-09-00203
Inmate: REAL (T-35897)
Date: March 6, 2009
Page 3

**3321, Confidential Material**
(a) The following types of information shall be classified as confidential:
(1) Information which, if known to the inmate, would endanger the safety of any person.
(2) Information which would jeopardize the safety and security of the institution.
(b) Uses of specific confidential material.
(1) No decision shall be based upon information from a confidential source, unless other documentation corroborates information from the source, or unless the circumstances surrounding the event and the documented reliability of the source satisfies the decision maker(s) that the information is true.
(2) Any document containing information from a confidential source shall include an evaluation of the source's reliability, a brief statement of the reason for the conclusion reached, and a statement of reason why the information or source is not disclosed.
(3) The documentation given to the inmate shall include:
(A) The fact that the information came from a confidential source.
(B) As much of the information as can be disclosed without identifying its source including an evaluation of the source's reliability; a brief statement of the reason for the conclusion reached; and, a statement of reason why the information or source is not disclosed.
(c) A confidential source's reliability may be established by one or more of the following criteria:
(1) The confidential source has previously provided information which proved to be true.
(2) Other confidential source have independently provided the same information.
(3) The information provided by the confidential source is self-incriminating.
(4) Part of the information provided is corroborated through investigation or by information provided by non-confidential sources

**3341.5 Segregated Program Housing Units**
(c) Security Housing Unit (SHU). An inmate whose conduct endangers the safety of others or the security of the institution shall be housed in a SHU.
(c)(2) Length of SHU Confinement. Assignment to a SHU may be for an indeterminate or for a fixed period of time.
(c)(2)(A) Indeterminate SHU Segregation.
(c)(2)(A)2. Except as provided at section 3335(a), section 3378(d) and subsection (c)(5), a validated prison gang member or associate is deemed to be a severe threat to the safety of others or the security of the institution and will be placed in a SHU for an indeterminate term.

**3378, Documentation of Critical Case Information**
(c) Gang involvement allegations shall be investigated by a gang coordinator or their designee.
(c)(4) An associate is an inmate/parolee who is involved periodically or regularly with members or associates of a gang. This identification requires at least three (3) independent source items of documentation indicative of association with validated gang members or associates. Validation of an inmate/parolee as an associate of a prison gang shall require that at least one (1) source item be a direct link to a current or former validated member or associate of the gang.
(c)(6) The verification of an inmate/parolee's gang identification shall be validated or rejected by the chief, office of correctional safety (OCS), or a designee.
(c)(6)(A) Prior to submission of a validation package to the OCS, or during the inactive status review process, the subject of the investigation shall be interviewed by the Institution Gang Investigator, or designee, and given an opportunity to be heard in regard to the source items used in the validation or inactive status review.
(c)(6)(B) Inmates shall be given written notice at least 24 hours in advance of the interview. The interview may be held earlier if the inmate waives, in writing, the 24-hour preparation period.

Second Level Reviewer Response
Appeal Log #: SAC-D-09-00203
Inmate: REAL (T-35897)
Date: March 6, 2009
Page 4

(c)(6)(C)  All source items referenced in the validation or inactive status review shall be disclosed to the inmate at the time of notification. The inmate shall be given copies of all non-confidential documents unless otherwise requested in writing by the inmate. Confidential information used in the validation or inactive status review shall be disclosed to the inmate via a CDC Form 1030 (Rev. 12/86), Confidential Information Disclosure Form.

(c)(6)(D)  The interview shall be documented and include a record of the inmate's opinion on each of the source items used in the validation. Staff shall record this information and provide a written record to the inmate within fourteen (14) calendar days and prior to submission of the validation package to OCS.

(E)  The documented interview shall be submitted with the validation package to the OCS for consideration to approve or reject the validation. The documented interview shall be submitted with the inactive status review to the OCS for consideration of the inmate's continued current active or inactive status.

(c)(8)  The determination of a gang identification shall reference each independent source item in the inmate/parolee's central file. The sources shall be based on the following criteria:

(c)(8)(C)  Written material. Any material or documents evidencing gang activity such as the membership or enemy lists, constitutions, organizational structures, codes, training material, etc., of specific gangs. Staff shall articulate why, based on either the explicit or coded content, the written material is reliable evidence of association or membership with the gang. Staff shall document and disclose this information to the inmate/parolee…

(c)(8)(G)  Association. Information related to the inmate/parolee's association with validated gang affiliates. Information including addresses, names, identities and reasons why, such information is indicative of association with a prison gang or disruptive group. Staff shall document and disclose this information to the inmate/parolee in a written form that would not jeopardize the safety of any person or the security of the institution.

(c)(8)(H)  Informants. Documentation of information evidencing gang affiliation from an informant shall indicate the date of the information, whether the information is confidential or non-confidential, and an evaluation of the informant's reliability. Confidential material shall also meet the requirements established in section 3321. Staff shall articulate how the information specifically relates to the inmate's involvement with the gang as a member or associate. The information may be used as a source of validation if the informant provides specific knowledge of how he/she knew the inmate to be involved with the gang as a member or associate. Multiple confidential sources providing information regarding a single gang related incident or behavior shall constitute one (1) source item. Exclusive reliance on hearsay information provided by informants will not be used for validation purposes. Staff shall document and disclose this information to the inmate/parolee in a written form that would not jeopardize the safety of any person or the security of the institution

## PC 5058

(a) The director may prescribe and amend rules and regulations for the administration of the prisons and for the administration of the parole of persons sentenced under Section 1170 except those persons who meet the criteria set forth in Section 2962.

The rules and regulations shall be promulgated and filed pursuant to Chapter 3.5 (commencing with Section 11340) of Part 1 of Division 3 of Title 2 of the Government Code, except as otherwise provided in this section and Sections 5058.1 to 5058.3, inclusive.  All rules and regulations shall, to the extent practical, be stated in language that is easily understood by the general public.  For any rule or regulation filed as regular rulemaking as defined in paragraph (5) of subdivision (a) of Section 1 of Title 1 of the California Code of Regulations, copies of the rule or regulation shall be posted in conspicuous places throughout each institution and shall be mailed to all persons or organizations who request them no less than 20 days prior to its effective date.

Second Level Reviewer Response
Appeal Log #: SAC-D-09-00203
Inmate: REAL (T-35897)
Date: March 6, 2009
Page 5

(b) The director shall maintain, publish and make available to the general public, a compendium of   the rules and regulations promulgated by the director pursuant to this section...
(c) The following are deemed not to be "regulations" as defined in Section 11342.600 of the Government Code:
(1) Rules issued by the director applying solely to a particular prison or other correctional facility, provided that the following conditions are met:
(A) All rules that apply to prisons or other correctional facilities throughout the state are adopted by the director pursuant to Chapter 3.5 (commencing with Section 11340) of Part 1 of Division 3 of Title 2 of the Government Code.
 (B) All rules except those that are excluded from disclosure to the public pursuant to subdivision (f) of Section 6254 of the Government Code are made available to all inmates confined in the particular prison or other correctional facility to which the rules apply and to all members of the general public.
(3) Rules issued by the director that are excluded from disclosure to the public pursuant to subdivision (f) of Section 6254 of the Government Code.

This section of the PC clarifies what is deemed a regulation; it further indicates that what are not deemed to be regulations is defined in GC Section 11342.600, which states in part:

**GC Section 11342.600**

"Regulation" means every rule, regulation, order, or standard of general application or the amendment, supplement, or revision of any rule, regulation, order, or standard adopted by any state agency to implement, interpret, or make specific the law enforced or administered by it, or to govern its procedure.

PC 5058 also clarifies those rules that are excluded from disclosure to the public pursuant to subdivision (f) of Section 6254 of the Government Code, which states in part:

**GC Section 6254 (f)**

Except as provided in Sections 6254.7 and 6254.13, nothing in this chapter shall be construed to require disclosure of records that are any of the following:
(f) Records of complaints to, or investigations conducted by, or records of intelligence information or security procedures of, the office of the Attorney General and the Department of Justice, and any state or local police agency, or any investigatory or security files compiled by any other state or local police agency, or any investigatory or security files compiled by any other state or local agency for correctional, law enforcement...The GC clearly indicates there is no requirement to divulge intelligence information.

The following 6 source items were used by OCS in your validation:

1) (Written Material / Direct link) a Confidential Memorandum (CM) dated June 2, 2008, authored by Officer G. Parker identified you on a gang list/roster by your gang moniker, correct CDC # and geographical gang neighborhood, of active EME gang associates housed in the SAC SA ASU. This list/roster was discovered on May 15, 2008, during a cell search of inmate **GASCON, Rene (T-80383) aka "Bouncer/Smith", a validated associate of the EME prison gang.**

Support Document to item #1 (Written Material / Direct Link) a CM dated September 26, 2007, authored by Officer Parker identified you on a gang roster by your gang moniker, correct CDC # and geographical gang neighborhood, of active EME gang associates housed in the SAC SA ASU, discovered on September 4, 2007, during a cell search of inmate **BANULOS, Eseubio (C-48117) aka "Peaches", a validated associate of the EME prison gang.**

Second Level Reviewer Response
Appeal Log #: SAC-D-09-00203
Inmate: REAL (T-35897)
Date: March 6, 2009
Page 6

Support Document to Item #1 (Written Material / Direct Link) a CM dated December 4, 2006, authored by Officer Parker identified you on a gang roster by your gang moniker, correct CDC # and geographical gang neighborhood, of active EME gang associates housed in the SAC SA ASU, discovered on November 30, 2006, during a cell search of inmate **SALAZAR, Victor (E-68204) aka "Smiley", a validated associate of the EME prison gang.**

2) (Association / Direct Link) a CDCR 128-B dated July 11, 2005, authored by AIGI Officer R. Parrilla from California Correctional Institute (CCI) identified you to be in possession of a third party community contact address for inmate **ENRIQUEZ, Jesse (K-67325) aka "Bam" a validated associate of the EME prison gang** which was discovered in your personal property.

3) (Communications / Direct Link) a CM dated February 26, 2003, authored by Officer Parrilla identified you as being responsible for conducting "Roll Call" of the EME subservient inmates at CCI. Specifically, the "Roll Call" is conducted on a daily basis in the SHU and ASU's. It is a way for EME members and associates to greet each other every morning. You were identified by a **validated associate of the EME prison gang** as being respected enough to be responsible for conducting the "Roll Call" at CCI

4) (Informant) a CM dated October 15, 2006, authored by Officer Parrilla in which a reliable confidential informant (CI) identified you as committing Battery on an Inmate w/Use of a Weapon on March 4, 2002, on inmate **RANGLE, Randy (H-88305) aka "Malo"** on behalf of inmate **ACUNA, Victor (D-33299) aka "Terco", a validated member of the EME prison gang.**

The Department uses every available safe guard to ensure the accuracy of the information it uses and that the due process rights of the inmates are not violated when processing a validation package. The validation process is lengthy and thorough to ensure the inmates are afforded every opportunity to be issued source items being used against them, to dispute the source items being used, and appeal the validation.

After a thorough investigation, there was sufficient evidence to substantiate your participation in gang activities with validated EME prison gang members/associates. The IGI was able to provide OCS with documentation to prove you were actively involved in prison gang activities with EME prison gang members/associates, while housed at SAC.

Regarding your allegations that federal and state constitutional rights, specifically the 1st, 5th, 6th, 8th, and 14th Amendments were violated is without merit as the constitution does not authorize membership or association in prison gangs.

Regarding your claim that the *Castillo v Alameida Settlement Agreement* had been violated when staff used a "laundry list" as a validation source, the SLR has determined that there was no violation. In *Castillo v Alameida;* under Policies and Procedures, #21-Confidential Sources, it states:

Defendants agree that "laundry lists" – that is, when confidential sources, including debriefers, identify a prisoner as an associate or member by listing names of inmate(s) without reference to gang-related acts performed by the inmate(s) shall not be relied upon as a source item. Defendants agree that the confidential source must identify specific gang activity or conduct performed by the alleged associate or gang member before such information can be considered as a source item. This information shall be recorded by staff and provided on a written form given to the inmate.

Second Level Reviewer Response
Appeal Log #: SAC-D-09-00203
Inmate: REAL (T-35897)
Date: March 6, 2009
Page 7

There were three separate lists, each of which were discovered within the personal property of separate independent validated EME associates, during cell searches and those lists were not intended for staff. They were not as a result of a Confidential Informant (CI) or a Debriefing Report; therefore, based on the criteria set forth under the *Castillo v Alameida Settlement Agreement,* they are not classified as "laundry lists."

You also allege that CDCR is in violation of the APA for not notifying the inmate population what "exactly" CDCR deems as gang activity.  The SLR has determined that this allegation has no merit.  The APA states in part:

**Chapter 5, §552, Public information, agency rules, opinions, orders, records, and proceedings.**

(a) Each agency shall make available to the public information as follows:
(C) Rules of procedure, descriptions of forms available or the places at which forms may be obtained, and instructions as to the scope and contents of all papers, reports, or examinations;
(D) substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency; and
(E) Each amendment, revision, or repeal of the foregoing. Except to the extent that a person has actual and timely notice of the terms thereof, a person may not in any manner be required to resort to, or be adversely affected by, a matter required to be published in the Federal Register and not so published. For the purpose of this paragraph, matter reasonably available to the class of persons affected thereby is deemed published in the Federal Register when incorporated by reference therein with the approval of the Director of the Federal Register.
(b) This section does not apply to matters that are:
…records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings, (B) would deprive a person of a right to a fair trial or an impartial adjudication, (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or (F) could reasonably be expected to endanger the life or physical safety of any individual…

As it states above, it does not apply to records or information compiled for law enforcement purposes.

Prior to the submission of a validation package, the subject of the investigation is interviewed by the IGI or designee.  It is at that time the subject is informed of the source items being used against him.  The subject is also informed that a second interview will be conducted no less than twenty four (24) hours in which he will be given the opportunity to be heard in regard to the source items.  That interview is the subjects chance to dispute the source items.

The interview is documented or documentation can be provided by the subject, in any case it is forwarded to OCS with the validation package for approval or rejection.

34

Second Level Reviewer Response
Appeal Log #: SAC-D-09-00203
Inmate: REAL (T-35897)
Date: March 6, 2009
Page 8

The entire package is then reviewed at OCS by the Quality Control Review Committee (QCRC). Each member of the QCRC reviews the package thoroughly to ensure that each source item submitted supports the validation. If the Senior SA discovers a validation source item does not support the CDCR 128-B, the sending institution will be notified. In your case, a total of 6 items were submitted to OCS for review, two of which was used as support documents. Your package was accepted by OCS, validating you as an associate of the EME prison gang.

Any and all decisive evidence or definitive characteristics indicative of gang-related activity or association will be documented and placed in the respective inmate's Central File. This may include written material indicative of gang affiliation, tattoos and/or symbols, photographs, staff documentation, visual or audible observations indicating gang affiliation, association with known gang members/associates, informants, gang related offenses, legal documents, visitors, communications and debriefings. Questionable gang identifications, notations, or new information is reviewed and investigated by the IGI.

Your request that all information that was erroneously used in support of your validation and SHU term be removed from your Central file and that CDCR comply with the APA as outlined in the GC is granted, as all the documents used in support of your validation were factual and CDCR does comply with the APA as outlined in the GC.

Your request to be released from SHU and that OCS reverse your validation is denied; as the investigation completed on July 2, 2008, by the SAC IGI Unit revealed that you are currently active in EME prison gang activities as evidenced on the CDC 128-B-2, dated December 5, 2008, where as the OCS indicates, **REAL, Randy, (T-35897) is VALIDATED as an associate of the Mexican Mafia (EME) prison gang.**

## APPEAL DECISION

For the reasons cited above, your appeal is **partially granted**.


JAMES WALKER
Warden

cc:    Inmate Appeals Unit
       Central File

35

STATE OF CALIFORNIA                                      DEPARTMENT OF CORRECTIONS AND REHABILITATION
CDC 128-B-2 (4/07)

---

**INMATE'S NAME: REAL, Randy**                                      **CDCR NUMBER: T-35897**

---

On **07/10/08** a gang validation package regarding subject was received from Institution Gang Investigator **T. Ventimiglia** at **CSP-SAC**

**TOTAL NUMBER OF ITEMS SUBMITTED FOR REVIEW: (6)**

The following items **meet** the validation requirements:

1. Confidential Memorandum dated 06/02/08 **(Written Material/Direct Link)**
2. Supported by: Confidential Memorandum dated 09/26/07 **(Written Material/Direct Link)**
3. Supported by: Confidential Memorandum dated 12/04/06 **(Written Material/Direct Link)**
4. CDCR 128-B dated 07/11/05 **(Association/Direct Link)**
5. Confidential Memorandum dated 02/26/03 **(Communications/Direct Link)**
6. Confidential Memorandum dated 07/17/02 **(Informant)**

**TOTAL NUMBER OF ITEMS WHICH MEET VALIDATION REQUIREMENTS: (6)**

The following items **do not meet** the validation requirements and were/shall not be used as a basis for validation: N/A

**TOTAL NUMBER OF ITEMS WHICH DO NOT MEET VALIDATION REQUIREMENTS: (0)**

**ACTION OF REVIEWER**

Pursuant to the validation requirements established in 15 CCR Section 3378, **REAL, Randy, T-35897** is:

☒ **VALIDATED**          ☐ **REJECTED**

as **an associate** of the **MEXICAN MAFIA (EME) prison gang**.

| CHAIRPERSON | REVIEWER | MEMBER |
|---|---|---|
| Everett W. Fischer | Scott S. Kisser | G. Williams |
| **PRINTED NAME** | **PRINTED NAME** | **PRINTED NAME** |

---

| DISTRIBUTION: | ACTIVE/INACTIVE REVIEW |
|---|---|
| Original - Central File<br>Copy - Classification & Parole Representative/Parole Administrator I<br>Copy - Institutional Gang Investigator/Region Gang Coordinator<br>Copy – Office of Correctional Safety – Special Service Unit<br>Copy - Inmate/Parolee 12/10/08  by | May 15, 2014<br><br>ELIGIBILITY DATE |

---

36

On July 2, 2008, inmate REAL, Randy (T-35897) aka "Shadow" was interviewed regarding evidence used in his validation as an associate of the Mexican Mafia (EME) prison gang as required per CCR Section 3378 (c) (6). REAL was informed that on July 2, 2008 an investigation was completed by the California State Prison Sacramento (SAC) Assistant Institutional Gang Investigator (AIGI), Sergeant J. Stewart, into his suspected association with the EME prison gang.

The following was discovered as a result of the investigation:

1.) (Communication/Direct Link) a Confidential Memorandum dated June 2, 2008, authored by Correctional Officer G. Parker (SAC) identified REAL by his gang moniker, CDCR #, and geographical gang neighborhood, on a list of active EME gang associates housed in the Stand Alone (SA) Administrative Segregation Unit (ASU) at SAC. Specifically, the list was discovered on May 15, 2008, during a cell search of inmate GASCON, Rene (T-80383) aka "Bouncer/ Smith", a validated EME associate. These lists are commonly used by the leadership of the EME prison gang as a means of monitoring the location of the EME subservient inmates throughout the California prison system.

2.) (Communication/Direct Link) a Confidential Memorandum dated September 26, 2007, authored by Correctional Officer G. Parker (SAC) identified REAL by his gang moniker, CDCR #, and geographical gang neighborhood, on a list of active EME gang associates housed in the SA ASU at SAC. Specifically, the list was discovered on September 4, 2007, during a cell search of BANUELOS, Eseubio (C-48117) aka "Peaches", a validated EME associate. These lists are commonly used by the leadership of the EME prison gang as a means of monitoring the location of the EME subservient inmates throughout the California prison system.

3.) (Communication/Direct Link) a Confidential Memorandum dated December 4, 2006, authored by Correctional Officer G. Parker (SAC) identified REAL by his gang moniker, CDCR #, and geographical gang neighborhood, on a list of active EME gang associates housed in the SA ASU at SAC. Specifically, the list was discovered on November 30, 2006, in the SAC ASU SA during a cell search of inmate SALAZAR, Victor (E-68204) aka "Smiley", a validated EME associate. These lists are commonly used by the leadership of the EME prison gang as a means of monitoring the location of the EME subservient inmates throughout the California prison system.

4.) (Communication/ Direct Link) a CDC 128 B dated July 11, 2005, authored by Correctional Officer R. Parrilla (CCI) identified REAL to be in possession of the address of a validated EME associate. Specifically, REAL had the name Jesse ENRIQUEZ, 2456 Lyndale Avenue, Pomona, California 91768, written in a phone book located in his personal property. The address was identified by the CCI Institutional Gang Investigator (IGI) as a third party community contact address for inmate ENRIQUEZ, Jesse (K-67325) aka "Bam" a validated associate of the EME prison gang who was housed in the CCI Security Housing Unit (SHU). By REAL being in possession of the name and address of ENRIQUEZ, he had the ability to directly correspond with an associate of the EME prison gang.

5.) (Communication/ Direct Link) a Confidential Memorandum, dated February 26, 2003, authored by Correctional Officer R. Parrilla (CCI) identified REAL as being responsible for conducting the "Roll Call" of EME subservient inmates housed at CCI. The "Roll Call" is a way for EME members and associates to greet each other every morning and evening and is conducted on a daily basis in the ASU and SHU. REAL was identified by a validated associate of the EME prison gang as being respected enough to be responsible for the "Roll Call" at CCI.

6.) (Informants) a Confidential Memorandum, dated July 17, 2002, authored by Correctional Officer R. Parrilla (CCI) identified REAL as committing *Battery On Inmate With The Use Of A Weapon* on March 4, 2002, on inmate RANGLE, Randy (H-88305) aka "Malo", on behalf of a validated EME Member housed at CCI. Specifically, REAL committed the Battery on RANGLE due to a conflict and power struggle between CRUZ, Johnny (J-38316) aka "Capone", a validated EME associate, wanting to take control over one of the CCI Facilities. CRUZ was using RANGLE as his representative to try and take control of the Facility without the permission of ACUNA, Victor (D-33299) aka "Terco", a validated EME Member housed at CCI SHU. The report identified REAL as conducting the Battery on RANGLE with a weapon on the orders of EME member ACUNA.

/2

## Disclosure and Notification

On July 2, 2008, Sergeant J. Stewart disclosed all information used in the validation to **REAL**. All of the confidential information used was disclosed to REAL via CDC 1030, Confidential Disclosure Form. **REAL** was further given notice that an interview regarding his validation, as an associate of the EME would be held not less than 24 hours from the time of this notification.

A review of **REAL's** Central File revealed a CDC-128 B Educational Progress Report (EPR) indicating **REAL** has earned and received his High School Diploma. **REAL** did not request staff assistance and stated he understood the proceedings of the gang review. Staff assistance was therefore not assigned by the IGI.

## Interview

On July 3, 2008, Sergeant J. Stewart attempted to interview **REAL** regarding the validation source items. **REAL** refused to exit the cell and participate in the interview process. He did comment through the cell door that he disagreed with the validation and he submitted (1) one handwritten page of information disputing the items documented during the investigation.

A search of REAL's Central File indicated he had no verifiable TABE score or Grade Point Level (GPL). During the disclosure interview REAL communicated clearly in English and indicated that he understood the process surrounding the submission of the validation package.

## Conclusion

The handwritten page of information received from **REAL**, as well as all the evidence obtained during this investigation will be forwarded to the Office of Correction Safety (OCS) for consideration and acceptance of **REAL** as an **Active Associate of the EME prison gang.**

cc:     C-File
        CCI
        Inmate

Sergeant J. Stewart
Assistant Institutional Gang Investigator
Investigative Services Unit

**DATE:** 07/03/08              **CSP-SACRAMENTO**                              **GENERAL CHRONO**
                               **(GANG STATUS UPDATE)**

38

STATE OF CALIFORNIA                                                    DEPARTMENT OF CORRECTIONS
CDC 1030 (07/2000)

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER    **T-35897**          INMATE NAME:   **REAL, Randy**

1) Use of Confidential Information.

   Information received from a confidential source(s) has been considered in the:

   a) CDC-115, Disciplinary Report dated  **N/A**                                       submitted by

   _____
   STAFF NAME, TITLE

   b) CDC-114-D, Order and Hearing for Placement in Segregated Housing dated   07/02/08            .

2) Reliability of Source.

   The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

   This information is considered reliable because:

   a) ☐  This source has previously provided confidential information, which has proven to be true.

   b) ☐  This source participated in and successfully completed a Polygraph examination.

   c) ☐  More than one source independently provided the same information.

   d) ☒  This source incriminated himself/herself in a criminal activity at the time of providing the information.

   e) ☒  Part of the information provided by the source(s) has already proven to be true.

   f) ☒  Other (Explain)

   Disclosure of this information would threaten the safety and security of the institution.            .

3) Disclosure of information received.

## The information received indicated the following:

A Confidential Memorandum dated June 2, 2008, authored by Correctional Officer G. Parker (SAC) identified **REAL**
by his gang moniker, CDCR #, and geographical gang neighborhood, on a list of active EME gang associates
housed in the Stand Alone (SA) Administrative Segregation Unit (ASU) at SAC. Specifically, the list was discovered
on May 15, 2008, during a cell search of inmate **GASCON, Rene (T-80383) aka "Bouncer/ Smith", a validated
EME associate**. These lists are commonly used by the leadership of the EME prison gang as a means of
monitoring the location of the EME subservient inmates throughout the California prison system.

(If additional space needed, attach another sheet.)

4) Type and current location of documentation, (for example: CDC-128-B of 5-15-86 in the confidential material

folder). _____

   Confidential Memorandum dated June 2, 2008, authored by Correctional G. Parker is located in the confidential
   section of REAL's Central File.

**Sergeant J. Stewart** _____          07/02/2008
                    STAFF SIGNATURE, TITLE                           DATE DISCLOSED

DISTRIBUTION: WHITE -- Central File;  GREEN -- Inmate;  YELLOW -- Institution Use

STATE OF CALIFORNIA                                                    DEPARTMENT OF CORRECTIONS
CDC 1030 (07/2000)

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER    __T-35897__                    INMATE NAME:    __REAL, Randy__

1) Use of Confidential Information.

   Information received from a confidential source(s) has been considered in the:

   a)  CDC-115, Disciplinary Report dated  __N/A__ _____  submitted by

   _____ .
                                          STAFF NAME, TITLE

   b)  CDC-114-D, Order and Hearing for Placement in Segregated Housing dated  __07/02/08_____ .

2) Reliability of Source.

   The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

   This information is considered reliable because:

   a) ☐ This source has previously provided confidential information, which has proven to be true.

   b) ☐ This source participated in and successfully completed a Polygraph examination.

   c) ☐ More than one source independently provided the same information.

   d) ☒ This source incriminated himself/herself in a criminal activity at the time of providing the information.

   e) ☒ Part of the information provided by the source(s) has already proven to be true.

   f) ☒ Other (Explain)

      __Disclosure of this information would threaten the safety and security of the institution._____ .

3) Disclosure of information received.

   ### The information received indicated the following:

   A Confidential Memorandum dated September 26, 2007, authored by Correctional Officer G. Parker (SAC)
   identified **REAL** by his gang moniker, CDCR #, and geographical gang neighborhood, on a list of active EME gang
   associates housed in the SA ASU at SAC. Specifically, the list was discovered on September 4, 2007, during a
   cell search of inmate **BANUELOS, Eseubio (C-48117) aka "Peaches", a validated EME associate**. These lists
   are commonly used by the leadership of the EME prison gang as a means of monitoring the location of the EME
   subservient inmates throughout the California prison system.

   (If additional space needed, attach another sheet.)

4) Type and current location of documentation, (for example: CDC-128-B of 5-15-86 in the confidential material

   folder).  _____

   Confidential Memorandum dated September 26, 2007, authored by Correctional G. Parker is located in the
   confidential section of REAL's Central File.
   _____

__Sergeant J. Stewart__ _____          __07/02/2008_____
                        STAFF SIGNATURE, TITLE                         DATE DISCLOSED

# 3

STATE OF CALIFORNIA
CDC 1030 (07/2000)

DEPARTMENT OF CORRECTIONS

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER    **T-35897**                    INMATE NAME:    **REAL, Randy**

1)  Use of Confidential Information.

Information received from a confidential source(s) has been considered in the:

a)  CDC-115, Disciplinary Report dated  **N/A**                                        submitted by

_____ .
STAFF NAME, TITLE

b)  CDC-114-D, Order and Hearing for Placement in Segregated Housing dated   07/02/08   .

2)  Reliability of Source.

The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

This information is considered reliable because:

a) ☐  This source has previously provided confidential information, which has proven to be true.

b) ☐  This source participated in and successfully completed a Polygraph examination.

c) ☐  More than one source independently provided the same information.

d) ☐  This source incriminated himself/herself in a criminal activity at the time of providing the information.

e) ☒  Part of the information provided by the source(s) has already proven to be true.

f) ☒  Other (Explain)                                                                            .

Disclosure of this information would threaten the safety and security of the institution.   .

3)  Disclosure of information received.

### The information received indicated the following:

A Confidential Memorandum dated December 4, 2006, authored by Correctional Officer G. Parker (SAC) identified **REAL** by his gang moniker, CDCR #, and geographical gang neighborhood, on a list of active EME gang associates housed in the SA ASU at SAC.  Specifically, the list was discovered on November 30, 2006, in the SAC ASU SA during a cell search of inmate **SALAZAR, Victor (E-68204) aka "Smiley", a validated EME associate**.  These lists are commonly used by the leadership of the EME prison gang as a means of monitoring the location of the EME subservient inmates throughout the California prison system.

(If additional space needed, attach another sheet.)

4)  Type and current location of documentation, (for example: CDC-128-B of 5-15-86 in the confidential material folder).  _____ .

Confidential Memorandum dated December 4, 2006, authored by Correctional G. Parker is located in the confidential section of REAL's Central File.

**Sergeant J. Stewart**                                        **07/02/08**
                STAFF SIGNATURE, TITLE                            DATE DISCLOSED

DISTRIBUTION: WHITE -- Central File;  GREEN -- Inmate;  YELLOW -- Institution Use

#4

Name: Real, Randy          CDC: T-35897          Housing: Facility IV-B          CDC 128-B (REV.4/74)

On Thursday, April 14, 2005, while assigned as the Assistant Institutional Gang Investigator, position #266351, I reviewed the address book belonging to Inmate Real, Randy, T-35897, aka "Shadow" & "Tatas", non-validated member of the "Sureno - East Side Duarte" disruptive group. The address book was reviewed in the Facility IV-B, Receiving and Release (R&R), were all of Real' personal property was being stored. During a review of Real' address book, I found the name and mail-drop address of a validated associate of the Mexican Mafia (EME) prison gang.

Found was the name and address of Jesse Enriquez, 2456 Lyndale Ave., Pomona, Ca. 91786. This is identified as Inmate Enriquez, Jesse, K-67325, aka "Bam", validated associate of the Mexican Mafia (EME) prison gang, who is currently housed in the Facility IV-A, Security Housing Unit (SHU). After reviewing Enriquez' CDC 120 Visiting Card, I found that the address of ███████████████████████████, belongs to the mother and father of Inmate Enriquez.



Since inmates are not allowed to correspond directly with one another, an inmate from one institution will send a correspondence to a person on the streets (mail-drop), who will then forward the correspondence to an inmate housed at another institution. This is common practice for members and associates of prison gangs. This is done so that members and associates of prison gangs can relay messages to one another regarding the activities of their organization without being detected by Custody Staff. By Real being in possession of this mail-drop address, he is showing his association with a validated associate of the EME prison gang. Also by possessing this address, Real has the ability to directly correspond with an associate of the EME prison gang. Therefore, this chrono should be used as one source (written material / association) towards validating Real, Randy, T-35897, as an associate of the Mexican Mafia (EME) prison gang. Real' and Enriquez' activities and behavior should be closely monitored and documented whenever gang activity and association are present.

This chrono should be placed in the following central files:

| NAME | NUMBER | MONIKER | GANG STATUS |
|------|--------|---------|-------------|
| Enriquez, Jesse | K-67325 | Bam | Validated Associate EME Prison Gang |
| Real, Randy | T-35897 | Tatas | Non-Validated E/S Duarte Disruptive Group |

R. Parrilla
Correctional Officer
Assistant Institutional Gang Investigator

(CCI / Tehachapi)
DATE: 7/11/2005          GANG INFORMATION / IGI REVIEW (written material)          CDC 128-B

STATE OF CALIFORNIA                                                          DEPARTMENT OF CORRECTIONS
CDC 1030 (07/2000)

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER   **T-35897**                    INMATE NAME:   **REAL, Randy**

1) Use of Confidential Information.

   information received from a confidential source(s) has been considered in the:

   a) CDC-115, Disciplinary Report dated  **N/A**                                              submitted by

   _____ .
                                        STAFF NAME, TITLE

   b) CDC-114-D, Order and Hearing for Placement in Segregated Housing dated   **07/02/08**         .

2) Reliability of Source.

   The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

   This information is considered reliable because:

   a) ☐  This source has previously provided confidential information, which has proven to be true.

   b) ☐  This source participated in and successfully completed a Polygraph examination.

   c) ☐  More than one source independently provided the same information.

   d) ☐  This source incriminated himself/herself in a criminal activity at the time of providing the information.

   e) ☒  Part of the information provided by the source(s) has already proven to be true.

   f) ☒  Other (Explain)

      Disclosure of this information would threaten the safety and security of the institution.                .

3) Disclosure of information received.

   ### The information received indicated the following:

   A Confidential Memorandum, dated February 26, 2003, authored by Correctional Officer R. Parrilla (CCI)
   identified **REAL** as being responsible for conducting the "Roll Call" of EME subservient inmates housed at CCI.
   The "Roll Call" is a way for EME members and associates to greet each other every morning and evening and is
   conducted on a daily basis in the ASU and SHU. **REAL** was identified by a validated associate of the EME
   prison gang as being respected enough to be responsible for the "Roll Call" at CCI.

   (If additional space needed, attach another sheet.)

4) Type and current location of documentation, (for example: CDC-128-B of 5-15-86 in the confidential material
   folder).   _____ .

   Confidential Memorandum dated February 26, 2003, authored by Correctional R. Parrilla is located in the confidential
   section of REAL's Central File.

**Sergeant J. Stewart** _____               **07/02/2008**
                     STAFF SIGNATURE, TITLE                        DATE DISCLOSED

DISTRIBUTION: WHITE -- Central File;   GREEN -- Inmate;   YELLOW -- Institution Use

43

# ＃ 6

STATE OF CALIFORNIA                                                    DEPARTMENT OF CORRECTIONS
CDC 1030 (07/2000)

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER      **T-35897**                   INMATE NAME:      **REAL, Randy**

1) Use of Confidential Information.

   Information received from a confidential source(s) has been considered in the:

   a) CDC-115, Disciplinary Report dated  **N/A**                                                submitted by

   _____ .
                                    STAFF NAME, TITLE

   b) CDC-114-D, Order and Hearing for Placement in Segregated Housing dated   07/02/08         .

2) Reliability of Source.

   The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.
   This information is considered reliable because:

   a) ☐  This source has previously provided confidential information, which has proven to be true.

   b) ☐  This source participated in and successfully completed a Polygraph examination.

   c) ☐  More than one source independently provided the same information.

   d) ☐  This source incriminated himself/herself in a criminal activity at the time of providing the information.

   e) ☒  Part of the information provided by the source(s) has already proven to be true.

   f) ☒  Other (Explain)

      Disclosure of this information would threaten the safety and security of the institution.             .

3) Disclosure of information received.

   **The information received indicated the following:**
   A Confidential Memorandum, dated July 17, 2002, authored by Correctional Officer R. Parrilla (CCI) identified REAL
   as committing *Battery On Inmate With The Use Of A Weapon* on March 4, 2002, on inmate **RANGLE, Randy (H-
   88305) aka "Malo"**,  on behalf of a validated EME Member housed at CCI.  Specifically, REAL committed the
   Battery on RANGLE due to a conflict and power struggle between **CRUZ, Johnny (J-38316) aka "Capone", a
   validated EME associate**, wanting to take control over one of the CCI Facilities.  **CRUZ** was using **RANGLE** as his
   representative to try and take control of the Facility without the permission of **ACUNA, Victor (D-33299) aka
   "Terco", a validated EME Member** housed at CCI SHU.  The report identified **REAL** as conducting the Battery on
   **RANGLE** with a weapon on the orders of EME member **ACUNA**.
   (If additional space needed, attach another sheet.)

4) Type and current location of documentation, (for example: CDC-128-B of 5-15-86 in the confidential material
   folder). _____

   Confidential Memorandum dated July 17, 2002, authored by Correctional R. Parrilla is located in the confidential
   section of REAL's Central File.

**Sergeant J. Stewart**_____                    **07/02/2008**
                  STAFF SIGNATURE, TITLE                                         DATE DISCLOSED

*19*

# CALIFORNIA DEPARTMENT OF CORRECTIONS

NAME: **REAL, R.**                    CDC #: **T35897**                    BED: **S-C-128U**

| COMMITTEE ACTION SUMMARY |
|---|

RETAIN IN AD SEG PENDING: INVESTIGATION INTO S'S PRISON GANG STATUS BEING CONDUCTED BY IGI/OCS. SET CUSTODY AT MAX. WG/PG D1/D EFFECTIVE 7/2/2008. CLEARED FOR DOUBLE CELL W/COMPATIBLE. PLACE ON W/A YARD. REFER TO CSR FOR A 180-DAY AD SEG EXTENSION.

| COMMITTEE'S COMMENTS |
|---|

Inmate REAL appeared before California State Prison, Sacramento's (SAC's) Administrative Segregation Unit (ASU) Institutional Classification Committee (ICC) today for his Initial ASU Review. REAL stated that his health was good and was willing to proceed. REAL received his 72-hour notice for the purpose of this review. Prior to committee reviewing and discussing this case, REAL was introduced to the committee members. According to REAL'S CDC 114D, he was placed into SAC's ASU on 7/2/08 for: Confidential information was received that S is actively involved with the Mexican Mafia (EME) prison gang.

Based upon a review of REAL'S CDC 114D, Central File, case factors, and through discussion with him, committee elects to: Retain in AD SEG pending: Investigation into S's prison gang status being conducted by IGI/OCS. Set custody at MAX. WG/PG D1/D effective 7/2/08. Cleared for double cell w/compatible. Place on W/A yard. Refer to CSR for a 180-day AD SEG extension.

The investigation by IGI/OCS has not been completed.

**Double Cell w/compatible inmate** based on lack of sufficient documentation to warrant single cell status.

**Walk Alone** yard concerns are based on yard availability.

ICC notes Staff Assistance, for purposes Effective Communication was provided 24 hours prior to & during this hearing. Effective Communication was achieved via simple English and having S restate his understanding of ICC's actions in his own words. S demonstrated he was able to communicate and understand without assistance, to which Staff Assistance for purposes of Effective Communication was discharged.

Mental Health Assessment: The treating clinician presented ICC with a Mental Health assessment that included S's LOC, treatment needs, ability to understand/participate in the classification hearing, and effects of this psychological state if ordered retained in segregated housing. Committee members agreed that the Staff Assistant is not necessary in future classification reviews.

Inmate Comments: "I understand." S stated he is compatible with his cell partner.

S was informed that his next Committee hearing is scheduled on or before 12/3/08 for a Subsequent Review.

At the conclusion of this review, REAL was informed of his Appeal Rights with regards to his committee's actions. REAL acknowledged his understanding and agreement with committee's actions.

**STAFF ASSISTANT**
ASSIGNED 24 HOURS PRIOR TO AND DURING THIS HEARING: (LOW OR NO TABE SCORE IN FILE). SA: C/O E. WALKER.   DISCHARGE DATE: 7/9/08.

| INMATE CASE FACTORS | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| CUSTODY | CS/LEVEL | WG/PG & EFF. DATE | RELEASE DATE | GPL | RECLASS | ETHNIC | PSYCH - DATE 128C | NEXT BPT. & DATE |
| MAX | 148/IV | D1/D – 7/2/2008 | MEPD – 5/10/2056 | UNK | 11/2008 A/R | MEX | GP – 7/9/2008 | IPCH – 4/2055 |

| COMMITTEE MEMBERS | | |
|---|---|---|
| | MEMBERS | |
| *CHAIRPERSON*<br>J. Lizarraga (CDW) (A) | D. Leiber, Capt, B. Cross, Sgt<br>E. Walker, C/O, S. Handian, PsyD | *RECORDER*<br>K. Pool, CCII (Spec) |

Committee Date: 7/9/2008            **INITIAL ASU REVIEW**            AS5-7-9            Committee: S-070908-KMP-3

Typed By: GRR - Distribution: C-File & Inmate, CSR   CALIFORNIA STATE PRISON, SACRAMENTO            Classification Chrono CDC 128G (Rev: 5/01)

45

I hereby kind _____ submit The below ARGUMENTS     20

on my Behalf of The VALIDATED STATUS As a prison Gang
Associate.

on item one, dated 7/2/08, A list of Names where found
on another inmate, That it had my Name on it.
1 I have NO control of what a piece of paper having my Name.
I GI fails TO Articulate How I am responedable, knowingly
And I had personalifying put my Name with other inmates.
There failing to Show than I Have Respondebility OF Having
my Name in this inmate's possion is a Validion of Due
Process.

ON iTem TWO ~~~~~    same ARGUMENT As The Above

ON iTem Three ___    Same ARGUMENT As The Above.


iTEM FOUR.
    IT Was said I Have a written ADDRESS of a Validated
Associate. in The picture it clearly Show that the
ADDRESS is scratch out, clearly giving the knowtions that
I Have NO intention OF writing this PERSON. NOR Does
IT Shown that I Have actually written this person. even
more, The IGI officer fails t Show ~~~~~~~~ Any wrongful
ACTivity was DONE.


iTem 5
    This item Can NOT Be used Due To iT is Five years old. And
Second I was NEVER in a Roll call in Tehachapi!


iTem 6.
knThis iTEM is 5 years old, And I NEVER committed a
Buttery on this inmate, I was found to HAVE BATTERY BuT
iN my incident REPORT IT Show That THE TOWER OFFICER
Did NOT See who exactly Battered oN this inmate.


T this Time I submit this ARGumenT, I STATE
that the Action against me ARE All False and
usra wrongly against me!

Response of Inmate Appeal
Screening

I receive an Appeal Screening on 1·20·09 on
This issue of supposed Appeal exceeds the 15
working day, (time limit).

I can not understand how you would come
to the Conclusion That I exceeded the time
limit. I was Given the notice that I was
Validated on 12·10·08 and my 602 was Filed
on 12·22·08 !

There is no credible explaintion needed here,
The dates say very thing.

ACTION REQUESTED:
Therefore I request that my Appeal be process.

I/m Real  T55897

1·22·09

46

State of California
Department of Corrections

California State Prison-
Sacramento
P.O. Box 29, Represa, CA 95671

## INMATE/PAROLEE APPEAL SCREENING FORM

-PLEASE FOLLOW INSTRUCTIONS AND RETURN WITH YOUR CDC 602-

Name _REAL_   CDC#: _73589_   Issue: _6_   Housing: _FSL-126_

YOUR CDC 602/1824 APPEAL FORM DATED _12/22/08_ IS BEING RETURNED TO YOU FOR THE FOLLOWING REASON(S):

☐ 1. The action or decision being appealed is not within the jurisdiction of this department.

☐ 2. You have submitted a duplicate appeal on the same issue. Check one:
    ☐ Your first appeal is currently under review at the _____ level – Log # _____.
    ☐ This appeal has been withdrawn.
    ☐ Your appeal was completed, Log # _____.

☐ 3. You are appealing an action not yet taken.

☐ 4. You have not attempted to resolve the problem at the informal level with: _____.
    ☐ Counselor    ☐ Dental Office    ☐ Visiting Sgt.    ☐ Records    ☐ Housing Unit C/O
    ☐ Medical Clinic   ☐ Trust Office    ☐ Mailroom    ☐ Law Library    ☐ C/O who Inventoried Prop
    ☐ Psyche Clinic   ☐ I/M Assignment Office   ☐ R&R    ☐ Fac. Prop. C/O    ☐ Other _____

☐ 5. You have not adequately completed the Inmate/Parolee form (CDC 602) or attached the proper documents.

*Please attach the following items or explain why they are not available and send what you have back to the Appeals Office ASAP*

☐ CDC 115 After Completion of RVR
☐ CDC 115A ☐ Supplemental ☐ Incident Report
☐ CDC 1858 Rights and Responsibilities Statement
☐ CDC 1845 Inmate/Parolee Disability Verification
☐ CDC 128-G Initial Classification Committee
☐ CDC 128-G ICC/UCC Classification Committee Action
☐ CDC 128-G UCC ☐ CSR Referral ☐ Annual Review
☐ CDC 128-G ASU/ICC Chrono as checked: ☐ Walk Alone
☐ CDC 128-G Ad/Seg Initial Chrono    ☐ CDC 114D
☐ CDC 128-G Ad/Seg ICC Class. Committee CSR Referral
☐ CDC 128-G CSR Endorsement
☐ CDC 629-A/B SHU Term Assessment Sheet
☐ CDC 7219 Medical Report
☐ Other (See Below)
☐ You may not request forms/documents thru the appeal process
☐ Submit Inmate Request for Interview not a 602
☐ You may only file 1 non-emergency appeal per 7 days, CCR 3084.4(a)
☐ Staff Complaint or _____

☐ Appeal not ADA ISSUE
☐ CDC 1819 Denied Publications
☐ CDC 1030 Confidential Disclosure form
☐ CDC 128-A ☐ CDC 128-B ☐ CDC 128-C
☐ CDC 128-B1 Request for Removal from Assignment
☐ CDC 128-B2 SSU/IGI Gang Validation
☐ Resubmit First Level Response
☐ Single Cell ☐ Release from ASU ☐ SHU Recommendation
☐ CDC 143 Prop./Trans. Receipt ☐ Cell Search Receipt
☐ Appeal Process not to be used for interrogatory process
☐ CDC 839/840 Classification/Reclassification Score Sheet
☐ Complete Section: _____ ☐ Sign & Date Section: _____
☐ Not Staff Complaint – Reviewed by Hiring Authority
☐ Emergency Processing Not Warranted Per CCR 3084.7
☐ You must start appeal in Section A/B (then add 1 page)
☐ You cannot write "See Attached" in Section A or B

(choose one) (If staff complaint complete form 1858.)

☐ Failed to reasonably demonstrate, action, policy or condition as having an adverse affect upon the inmate's welfare, per CCR 3084.1(a).

☑ 6. The appeal exceeds the 15 working day time limit and the inmate has failed to offer a credible explanation as to why he could not submit the appeal within established time limits, CCR 3084.2(c), 3084.3(c)(6), 3084.6(c).

☐ 7. A limit of only <u>one</u> continuation page, front and back, may be attached to the appeal to describe the problem and action requested in Sections A and B. CCR 3084.2(a)(1)

☐ 8. You may not submit an appeal on behalf of another inmate.

☐ 9. You must re-attach all previous Screening Forms (CDC 695's) relative to this appeal before the appeal can be processed any further.

☐ 10. Submit CDC 7362 (Health Care Request -pay) to health care to request medical, mental health, or dental treatment. Do not submit an appeal with the 7362. The facility Triage Nurse should see you within one working day of receiving your 7362. If you disagree with the treatment provided, you may submit a 602 explaining your dissatisfaction.

COMMENTS:

_____   _1/9/09_
K. POOL, CCII - Appeals Coordinator CSP-Sacramento      Date

NOTE: This screening action may not be appealed unless you allege that the above reason is inaccurate. In such case, please return this form to

47

# EXHIBIT COVER PAGE

B

EXHIBIT

Description if this exhibit:

Inmate Appeal Filed 7/19/09
Disputting Lieutenant (A participant in validation process) conducting a 2nd Level Appeal on Validation

LOG # 0903028

Number of pages to this exhibit: _____7_____ pages.

**JURISDICTION**: (Check One Only)

[ ] MUNICIPAL COURT
[ ] SUPERIOR COURT
[ ] APPELLATE COURT
[ ] STATE SUPREME COURT
[X] UNITED STATES DISTRICT COURT
[ ] STATE CIRCUIT COURT
[ ] UNITES STATES SUPREME COURT
[ ] GRAND JURY

48

STATE OF CALIFORNIA—DEPARTMENT OF CORRECTIONS AND REHABILITATION          ARNOLD SCHWARZENEGGER, GOVERNOR

**INMATE APPEALS BRANCH**

1515 S Street, Sacramento, CA 95814
P.O. Box 942883
Sacramento, CA 94283-0001



September 1, 2009

REAL, RANDY, T35897
California State Prison, Sacramento
P.O. Box 29
Represa, CA  95671

RE: IAB# 0903028     CASE INFO/RECORDS

Mr. REAL:

The Inmate Appeals Branch, California Department of Corrections and Rehabilitation (CDCR) acts for the Director, Division of Adult Institutions, at the third level of appeal. The Branch examines and responds to inmate and parolee appeals that are submitted on a CDC Form 602, Inmate/Parolee Appeal Form, after the institution or parole region has responded at the Second Level of Appeal.

Institution and parole staff are available to assist you in obtaining additional copies of forms and documents required to submit an appeal. The inmate library offers resources and assistance to obtain general information regarding regulations, procedures, policies, and government agency addresses. Additionally, your assigned Counselor or Parole Agent, or the Appeals Coordinator can answer any questions you may have regarding the appeals process. The Inmate Appeals Branch appreciates your responsible use of the appeal system to address your grievance.

The Inmate Appeals Branch has received an appeal from you and has determined that it does not comply with the appeal procedures established in California Code of Regulations (CCR) Title 15, Article 8, and is being screened-out and returned to you pursuant to CCR 3084.3 for the following reason(s):

Your appeal was rejected, withdrawn or cancelled at the institution level. If you disagree with that decision, contact the Appeals Coordinator. You must comply with instructions from that office.

*signature*

N. GRANNIS, Chief
Inmate Appeals Branch

****PERMANENT APPEAL ATTACHMENT-DO NOT REMOVE****

49

## INMATE/PAROLEE APPEAL SCREENING FORM

**PLEASE FOLLOW INSTRUCTIONS AND RETURN WITH YOUR CDC 602-**

Name _PEAL_   CDC#: _13589_   Issue: _6/10_   Housing: _FBL-126_

YOUR CDC 602/1824 APPEAL FORM DATED _7/19/09_ IS BEING RETURNED TO YOU FOR THE FOLLOWING REASON(S):

☐ 1. The action or decision being appealed is not within the jurisdiction of this department.

☑ 2. You have submitted a duplicate appeal on the same issue. Check one:
  ☐ Your first appeal is currently under review at the _____ level – Log #
  ☐ This appeal has been withdrawn.
  ☑ Your appeal was completed, Log # _SAC-0-09-0203_ _3rd (OUA)_

☐ 3. You are appealing an action not yet taken.

☐ 4. You have not attempted to resolve the problem at the informal level with: _____.
  ☐ Counselor   ☐ Maintenance   ☐ Visiting Sgt.   ☐ Records   ☐ Housing Unit C/O
  ☐ Medical Clinic   ☐ Trust Office   ☐ Mailroom   ☐ Law Library   ☐ C/O who Inventoried Prop
  ☐ Psyche Clinic   ☐ I/M Assignment Office   ☐ R&R   ☐ Fac. Prop. C/O   ☐ Other _____

☐ 5. You have not adequately completed the Inmate/Parolee form (CDC 602) or attached the proper documents.

*Please attach the following items or explain why they are not available and send what you have back to the Appeals Office ASAP*

☐ CDC 115  After Completion of RVR
☐ CDC 115A  ☐ Supplemental  ☐ Incident Report
☐ CDC 1858  Rights and Responsibilities Statement
☐ CDC 1845  Inmate/Parolee Disability Verification
☐ CDC 128-G   Initial Classification Committee
☐ CDC 128-G   ICC/UCC Classification Committee Action
☐ CDC 128-G  UCC   ☐ CSR Referral   ☐ Annual Review
☐ CDC 128-G  ASU/ICC Chrono as checked: ☐ Walk Alone
☐ CDC 128-G  Ad/Seg Initial Chrono        ☐ CDC 114D
☐ CDC 128-G  Ad/Seg ICC Class. Committee  CSR Referral
☐ CDC 128-G  CSR Endorsement
☐ CDC 629-A/B SHU Term Assessment Sheet
☐ CDC 7219  Medical Report
☐ Other (See Below)
☐ You may not request forms/documents thru the appeal process
☐ Submit Inmate Request for Interview not a 602
☐ You may only file 1 non-emergency appeal per 7 days, CCR 3084.4(a)
☐ Staff Complaint or _____
☐ Failed to reasonably demonstrate, action, policy or condition as having an adverse affect upon the inmate's welfare, per CCR 3084.1(a).

☐ Appeal not ADA ISSUE
☐ CDC 1819  Denied Publications
☐ CDC 1030  Confidential Disclosure form
☐ CDC 128-A  ☐ CDC 128-B  ☐ CDC 128-C
☐ CDC 128-B1  Request for Removal from Assignment
☐ CDC 128-B2  SSU/IGI Gang Validation
☐ Resubmit First Level Response
☐ Single Cell  ☐ Release from ASU  ☐ SHU Recommendation
☐ CDC 143 Prop./Trans. Receipt  ☐ Cell Search Receipt
☐ Appeal Process not to be used for interrogatory process
☐ CDC 839/840 Classification/Reclassification Score Sheet
☐ Complete Section: _____  ☐ Sign & Date Section: _____
☐ Not Staff Complaint – Reviewed by Hiring Authority
☐ Emergency Processing Not Warranted Per CCR 3084.7
☐ You must start appeal in Section A/B (then add 1 page)
☐ You cannot write "See Attached" in Section A or B

(choose one) (If staff complaint complete form 1858.)

☐ 6. The appeal exceeds the 15 working day time limit and the inmate has failed to offer a credible explanation as to why he could not submit the appeal within established time limits, CCR 3084.2(c), 3084.3(c)(6), 3084.6(c).

☐ 7. A limit of only **one** continuation page, front and back, may be attached to the appeal to describe the problem and action requested in Sections A and B.  CCR 3084.2(a)(1)

☐ 8. You may not submit an appeal on behalf of another inmate.

☐ 9. You must re-attach all previous Screening Forms (CDC 695's) relative to this appeal before the appeal can be processed any further.

☐ 10. Submit CDC 7362 (Health Care Request -pay) to health care to request medical, mental health, or dental treatment. Do not submit an appeal with the 7362. The facility Triage Nurse should see you within one working day of receiving your 7362. If you disagree with the treatment provided, you may submit a 602 explaining your dissatisfaction.

**COMMENTS:**

_____

K. M. POOL, CCII - Appeals Coordinator CSP-Sacramento     Date _1/28/09_

NOTE: This screening action may not be appealed unless you allege that the above reason is inaccurate. In such case, please return this form to the Appeals Coordinator with the necessary information.

Permanent Appeal Attachment **DO NOT REMOVE**     CDC-695   _90_

**INMATE/PAROLEE**
**APPEAL FORM**
CDC 602 (12/87)

Location: Institution/Parole Region          Log No.          Category  **6/10**

1. _____          1. _____

2. _____          2. _____

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME _K. EA/_ | NUMBER _735897_ | ASSIGNMENT _____ | UNIT/ROOM NUMBER _FSC 126_ |

A. Describe Problem: _THIS APPEAL IS BEING FILED ON A DUE PROCESS VIOLATION By CORRECTIONAL LIEUTENANT T. VENTImiglia (IGI) ON MARCH 5, 2009, LT. T. VENTimiglia CONDUCTED a SECOND LEVEL REVIEW FOR VALIDATION APPEAL filED ON 12/22/08 LOG NO. SAC-09-00203 INWHICH HE DENIED AN ACTION REQUESTED IN the BODY OF THIS APPEAL. THIS SHOW BIASE TOWARDS THE HOLE APPEAL PROCESS AND to ME PER TITLE 15 SEC. 3084.5 LEVE/S OF APPEAL REVIEW AND DISPOSITION (E)(1) APPEAL REVIEW SHAll NOT BE REVIEWED By a STAFF PERSON WHO PARTICIPATED IN the EVENT ON DECISION being APPEALed. Violation OF MY DUE PROCESS RIGHTS.___

_If you need more space, attach one additional sheet._      SEE ATTACHED. SGU GANG REVIEW, COCII4-0
SECOND LEVEL'S/DIRECTORS LEVEL SAC-09-00203. (4 pages TOTAL)

B. Action Requested: _"RELEASE From SHU 2) EXPUNGEMENT OF All INFOrmation USED to SUPPORT SHU placement NOT limited to GANG VALIDATION & ACTIVE STATOS 3. REVERSAl OF GANG VALIDATION ACTIVE STATELSS___

Inmate/Parolee Signature: _____          Date Submitted: _7/19/09_

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

_____

_____

_____

Staff Signature: _____          Date Returned to Inmate: _____

INMATE APPEALS BRANCH   RECEIVED   AUG 17 2009

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

_____

_____

Signature: _____          **2007 JUL 21 PM 12:18**          Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed          CDC Appeal Number:
Board of Control form BC-1E, Inmate Claim

APPEALS   CSP - SAC   RECEIVED

_1/28/09_

51

First Level ☐ Granted ☐ P. Granted ☐ Denied ☐ Other _____

E. REVIEWER'S ACTION (complete within 15 working days): Date assigned: _____ Due Date: _____

Interviewed by: _____

_____

_____

_____

_____

_____

Staff Signature: _____ Title: _____ Date Completed: _____

Division Head Approved: Returned

Signature: _____ Title: _____ Date to Inmate: _____

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

_____

_____

_____

_____

Signature: _____ Date Submitted: _____

Second Level ☐ Granted ☐ P. Granted ☐ Denied ☐ Other _____

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: _____ Due Date: _____

☐ See Attached Letter

Signature: _____ Date Completed: _____

Warden/Superintendent Signature: _____ Date Returned to Inmate: _____

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

DISSATISFIED, APPEAL Coordinator FAILS to RECOGNIZE the situation this APPEAL IS NOT

a DUPLICATE. THE ISSUE IS THAT I HAVE BEEN SHOWN BIASE TOWARDS MY APPEAL

HEARING PER 3084.5 THEREFORE THE ACTION REQUESTED STILL STANDS.

_____

Signature: _____ Date Submitted: 8/9/09

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

0903028

T35897

DIRECTOR'S ACTION: ☐ Granted ☐ P. Granted ☐ Denied ☐ Other _____

☐ See Attached Letter

Date: _____

CDC 602 (12/87)

52

STATE OF CALIFORNIA
CDC 128-B-2 (4/07)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

---

INMATE'S NAME: REAL, Randy                          CDCR NUMBER: T-35897

---

On **07/10/08** a gang validation package regarding subject was received from Institution Gang Investigator **T. Ventimiglia** at CSP-SAC

**TOTAL NUMBER OF ITEMS SUBMITTED FOR REVIEW: (6)**

The following items **meet** the validation requirements:

1. Confidential Memorandum dated 06/02/08 **(Written Material/Direct Link)**
2. Supported by: Confidential Memorandum dated 09/26/07 **(Written Material/Direct Link)**
3. Supported by: Confidential Memorandum dated 12/04/06 **(Written Material/Direct Link)**
4. CDCR 128-B dated 07/11/05 **(Association/Direct Link)**
5. Confidential Memorandum dated 02/26/03 **(Communications/Direct Link)**
6. Confidential Memorandum dated 07/17/02 **(Informant)**

**TOTAL NUMBER OF ITEMS WHICH MEET VALIDATION REQUIREMENTS: (6)**

The following items **do not meet** the validation requirements and were/shall not be used as a basis for validation: N/A

**TOTAL NUMBER OF ITEMS WHICH DO NOT MEET VALIDATION REQUIREMENTS: (0)**

**ACTION OF REVIEWER**

Pursuant to the validation requirements established in 15 CCR Section 3378, **REAL, Randy, T-35897** is:

☒ **VALIDATED**      ☐ **REJECTED**

as **an associate** of the **MEXICAN MAFIA (EME) prison gang.**

| CHAIRPERSON | REVIEWER | MEMBER |
|---|---|---|
| Everett W. Fischer | Scott S. Kisser | G. Williams |
| PRINTED NAME | PRINTED NAME | PRINTED NAME |

---

| DISTRIBUTION:<br>Original - Central File<br>Copy - Classification & Parole Representative/Parole Administrator I<br>Copy - Institutional Gang Investigator/Region Gang Coordinator<br>Copy - Office of Correctional Safety – Special Service Unit<br>Copy - Inmate/Parolee 12/10/08 by | **ACTIVE/INACTIVE REVIEW**<br><br>May 15, 2014<br><br>ELIGIBILITY DATE |
|---|---|

---

Date: 12/05/08          SSU GANG VALIDATION/REJECTION REVIEW          GENERAL CHRONO

53

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

## DIRECTOR'S LEVEL APPEAL DECISION

Date: JUN - 8 2009

In re: Randy Real, T35897
California State Prison, Sacramento
P.O. Box 29
Represa, CA 95671

IAB Case No.: 0821402          Local Log No.: SAC-09-00203

This matter was reviewed on behalf of the Director of the California Department of Corrections and
Rehabilitation (CDCR) by Appeals Examiner S. Hemenway, Facility Captain. All submitted documentation
and supporting arguments of the parties have been considered.

**I    APPELLANT'S ARGUMENT:** It is the appellant's position that he is being designated as a member of a
prison gang. The appellant refutes the validation stating that he is not a member of the Mexican
Mafia (EME) prison gang, or even an associate. He claims that pursuant to the California Code of
Regulations, Title 15, Section (CCR) 3312(c)(1-3) the CDCR failed to provide any Rules Violation
Report(s). His gang validation is vague and overbroad thus violating his First, Fifth, Sixth, Eighth and 14th
Amendment. The appellant is refuting items dated June 2, 2008, September 26, 2007, December 4, 2006,
July 11, 2005, February 26, 2003, and July 17, 2002. The appellant is requesting release from the Security
Housing Unit (SHU); expungement of any information that was used to support the SHU term/gang
validation/active gang status; reversal of active gang validation; comply with the Administrative Procedures
Act (APA) and to promulgate clear and fair regulations.

**II    SECOND LEVEL'S DECISION:** The reviewer found that the appellant was interviewed at the Second
Level of Review (SLR) by Correctional Lieutenant (Lt.) T. Ventimiglia, Institution Gang Investigator (IGI)
on March 5, 2009, regarding this appeal. Lt. Ventimiglia stated in his report that the appellant met all the
guidelines identifying him as a current active associate of the EME prison gang. He explained to the
appellant that the validation process is lengthy and thorough to ensure inmates are afforded every opportunity
to be issued the source items being used against them; and, to dispute the source items and appeal the
validation. After a thorough investigation, there was sufficient evidence to substantiate the appellant's
participation in gang activities with validated EME prison gang members/associates. This information was
subsequently corroborated by the Office of Correctional Safety (OCS). Regarding the appellant's
constitutional rights, the constitution does not authorize membership or associations with prison gangs. A
total of six items were submitted to the OCS for review, two of which were used as supporting documents.
The appellant's request that all erroneous information be removed from his central file and that the CDCR
comply with the APA as outlined in the Government Code (GC) sections was granted. All the documents
used in support of the appellant's validation were factual. Due to the above, that information will remain in
the appellant's central file and his gang validation status will remain as an active associate of the EME Prison
Gang. Based on the appellant's current active gang status, he will remain in the SHU. The appellant's request
for reversal of the validation was denied.

**III    DIRECTOR'S LEVEL DECISION:** Appeal is denied.

**A. FINDINGS:** Despite the appellant's dissatisfaction, the SLR provided him with an appropriate, very
thorough, and detailed response. The appellant has not provided sufficient documentation, information
or evidence to warrant any modification of the decision reached at the SLR. An investigation was
conducted and the information gathered formulated the active EME associate status. The appellant was
appropriately reviewed for this status according to the laws and procedures for validating prison gang
members. The information gathered by the IGI was appropriately forwarded to the OCS for their review
and validation. The OCS is considered to be expert in their review and determination of validation
documents. According to the information received, the appellant was appropriately validated as an EME
associate, pursuant to law. Pursuant to CCR 3023(b) and 3341.5(c)(2)(A)2, the appellant is considered a

54

RANDY REAL, T35897
CASE NO.:0821402
PAGE 2

threat to the security and safety of the institution staff and inmates. The appellant stated in section "H" of his appeal that there is no factual evidence with a direct link. The appellant's one page written rebuttal to the IGI validation process is part of the validation package. According to the attached, the appellant refused to exit his cell to participate in the interview process. The appellant has not presented any convincing evidence that the decision made by the OCS should warrant any modification at the DLR. Due to the appellant's active association with the EME, he is appropriately housed in a SHU. He will remain in the SHU until it is deemed appropriate to release him. Based upon the aforementioned information, no relief is warranted at the Director's Level of Review.

**B.   BASIS FOR THE DECISION:**
GC: 6254(f), 11342.600
California Penal Code Section: 5058
CCR: 3000, 3001, 3005, 3023, 3270, 3321, 3341.5, 3376, 3378

**C.   ORDER:** No changes or modifications are required by the Institution.

This decision exhausts the administrative remedy available to the appellant within CDCR.

N. GRANNIS, Chief
Inmate Appeals Branch

cc:     Warden, SAC
         Appeals Coordinator, SAC

55

STATE OF CALIFORNIA                                                      DEPARTMENT OF CORRECTIONS
ADMINISTRATIVE SEGREGATION UNIT PLACEMENT NOTICE
CDC 114-D (Rev 10/98)

| DISTRIBUTION: | |
|---|---|
| WHITE - CENTRAL FILE | CANARY - WARDEN |
| BLUE - INMATE (2ND COPY) | PINK - HEALTH CARE MGR |
| GREEN - ASU | GOLDENROD - INMATE (1ST COPY) |

| INMATE'S NAME | CDC NUMBER |
|---|---|
| REAL, Randy (HISP/EME) CSP-SAC. | T-35897 |

## REASON(S) FOR PLACEMENT (PART A)

[X] PRESENTS AN IMMEDIATE THREAT TO THE SAFETY OF SELF OR OTHERS

[ ] JEOPARDIZES INTEGRITY OF AN INVESTIGATION OF ALLEGED SERIOUS MISCONDUCT OR CRIMINAL ACTIVITY

[X] ENDANGERS INSTITUTION SECURITY   [ ] UPON RELEASE FROM SEGREGATION, NO BED AVAILABLE IN GENERAL POPULATION

DESCRIPTION OF CIRCUMSTANCES WHICH SUPPORT THE REASON(S) FOR PLACEMENT: You are being placed in the Administrative Segregation Unit (ASU) on Wednesday, July 02, 2008, based on information that you are actively involved with the Mexican Mafia (EME) prison gang. Specifically, on 07-02-08, the CSP-SAC Institutional Gang Investigation (IGI) Unit completed an investigation in which the following documents: Confidential Memorandum (CM) dated 06-02-08, CM dated 09-26-07, CM dated 12-04-06; CDCR 128-B dated 07-11-05; CM dated 02-26-03 and CM dated 07-17-02, identify you as conducting activities indicative of an EME associate. Based on the information above, a validation package will be submitted to the Office of Correctional Safety (OCS). You will be seen by the Institutional Classification Committee (ICC) within ten (10) days for appropriate program and housing consideration. MEDICATION: YES (NO) **   EOP: YES (NO) **   CCCMS: YES NO **   SINGLE CELL YES NO

[ ] CONTINUED ON ATTACHED PAGE (CHECK IF ADDITIONAL) [N] [X] IF CONFIDENTIAL INFORMATION USED, DATE OF DISCLOSURE: 07/02/08

| DATE OF ASU PLACEMENT | SEGREGATION AUTHORITY'S PRINTED NAME | SIGNATURE | TITLE |
|---|---|---|---|
| July 02, 2008 | T. S. Ventimiglia | | ISU Lt., 2W |
| DATE NOTICE SERVED | TIME SERVED | PRINTED NAME OF STAFF SERVING ASU PLACEMENT NOTICE | SIGNATURE | STAFF'S TITLE |
| July 02, 2008 | 0800 | T. S. Ventimiglia | | LT |

| [X] INMATE REFUSED TO SIGN | INMATE SIGNATURE | CDC NUMBER |
|---|---|---|
| | | T-35897 |

## ADMINISTRATIVE REVIEW (PART B)
*The following to be completed during the initial administrative review by Captain or higher by the first working day following placement*

| STAFF ASSISTANT (SA) | | INVESTIGATIVE EMPLOYEE (IE) | |
|---|---|---|---|
| STAFF ASSISTANT NAME | TITLE | INVESTIGATIVE EMPLOYEE'S NAME | TITLE |
| N/A | | N/A | |

### IS THIS INMATE:

| | | | |
|---|---|---|---|
| LITERATE? | [X] YES [ ] NO | EVIDENCE COLLECTION BY IE UNNECESSARY | [X] YES [ ] NO |
| FLUENT IN ENGLISH? | [X] YES [ ] NO | DECLINED ANY INVESTIGATIVE EMPLOYEE | [ ] YES [X] NO |
| ABLE TO COMPREHEND ISSUES? | [X] YES [ ] NO | ASU PLACEMENT IS FOR DISCIPLINARY REASONS | [ ] YES [X] NO |
| FREE OF MENTAL HEALTH SERVICES DELIVERY SYSTEM NEEDS? | [X] YES [ ] NO | DECLINED 1ST INVESTIGATIVE EMPLOYEE ASSIGNED | [ ] YES |
| DECLINING FIRST STAFF ASSISTANT ASSIGNED? | [ ] YES N/A | | |

Any "NO" requires SA assignment                    Any "NO" may require IE assignment

[X] NOT ASSIGNED                                    [X] NOT ASSIGNED

### INMATE WAIVERS

[ ] INMATE WAIVES OR DECLINES INTERVIEW WITH ADMINISTRATIVE REVIEWER   [ ] INMATE WAIVES RIGHT TO 72 HOURS PREPARATION TIME

[ ] NO WITNESSES REQUESTED BY INMATE   INMATE SIGNATURE _____ DATE 7-3-08

### WITNESSES REQUESTED FOR HEARING

| WITNESS' NAME | TITLE/CDC NUMBER | WITNESS' NAME | TITLE/CDC NUMBER |
|---|---|---|---|
| N/A | | N/A | |
| WITNESS' NAME | TITLE/CDC NUMBER | WITNESS' NAME | TITLE/CDC NUMBER |
| | | | |

**DECISION:** [ ] RELEASE TO UNIT/FACILITY _____ [X] RETAIN PENDING ICC REVIEW [X] DOUBLE CELL [ ] SINGLE CELL PENDING ICC

REASON FOR DECISION: Inmate presents an immediate threat to staff and institutional security.

| ADMINISTRATIVE REVIEWER'S PRINTED NAME | TITLE | DATE OF REVIEW | TIME | ADMINISTRATIVE REVIEWER'S SIGNATURE |
|---|---|---|---|---|
| R. Ramos | Captain (A) | 7/3/08 | 0850 | R. Ramos |
| CORRECTIONAL ADMINISTRATOR'S PRINTED NAME (if necessary) | | CORRECTIONAL ADMINISTRATOR'S CO-SIGNATURE (if necessary) | | DATE OF REVIEW |

See chronological Classification Review document (CDC 128 - G) for specific hearing information

56

# EXHIBIT COVER PAGE $\boxed{C}$



EXHIBIT

Description if this exhibit:

*Inmate Appeal Filed on 10·19·08 Disputing The confiscation of my ADDress Book with no justification.*

*LOG # SAC-08-02372*

Number of pages to this exhibit: __14__ pages.

**JURISDICTION**: (Check One Only)

        ☐ MUNICIPAL COURT
        ☐ SUPERIOR COURT
        ☐ APPELLATE COURT
        ☐ STATE SUPREME COURT
        ☒ UNITED STATES DISTRICT COURT
        ☐ STATE CIRCUIT COURT
        ☐ UNITES STATES SUPREME COURT
        ☐ GRAND JURY

STATE OF CALIFORNIA —DEPARTMENT OF CORRECTIONS AND REHABILITATION                    ARNOLD SCHWARZENEGGER, GOVERNOR

**INMATE APPEALS BRANCH**

1515 S Street, Sacramento, CA 95814
P.O. Box 942883
Sacramento, CA 94283-0001



March 18, 2009


REAL, RANDY, T35897
California State Prison, Sacramento
P.O. Box 29
Represa, CA  95671



RE: IAB# 0817755    SAC-08-02372    PROPERTY

Mr. REAL:

The Inmate Appeals Branch, California Department of Corrections and Rehabilitation (CDCR) acts for the Director, Division of Adult Institutions, at the third level of appeal.  The Branch examines and responds to inmate and parolee appeals that are submitted on a CDC Form 602, Inmate/Parolee Appeal Form, after the institution or parole region has responded at the Second Level of Appeal.

Institution and parole staff are available to assist you in obtaining additional copies of forms and documents required to submit an appeal.  The inmate library offers resources and assistance to obtain general information regarding regulations, procedures, policies, and government agency addresses.  Additionally, your assigned Counselor or Parole Agent, or the Appeals Coordinator can answer any questions you may have regarding the appeals process.  The Inmate Appeals Branch appreciates your responsible use of the appeal system to address your grievance.

The Inmate Appeals Branch has received an appeal from you and has determined that it does not comply with the appeal procedures established in California Code of Regulations (CCR) Title 15, Article 8, and is being screened-out and returned to you pursuant to CCR 3084.3 for the following reason(s):

Your appeal was rejected, withdrawn or cancelled at the institution level.  If you disagree with that decision, contact the Appeals Coordinator.  You must comply with instructions from that office.



N. GRANNIS, Chief
Inmate Appeals Branch

****PERMANENT APPEAL ATTACHMENT-DO NOT REMOVE****

58

## DIRECTOR'S REVIEW

I am SEEKING DIRECTOR'S REVIEW DUE TO STAFF AT CSP-Sacramento obstructing my Appeal By the Following ways;
ON 9·14·08 I FILED a complaint on %o PARKER (IGI) FOR taking a personal ADDRESS BOOK with no justification, inWhich I HAVE NOT BEEN given back NOR a reason Why it's kept from me! My 602 was lost so I filed a 2ND which was processed.

ON NOV. 16, 08. I RECEIVED a Cancellation on my APPEAL for the reason that I REFUSED TO BE interviewed By STAFF. (SEE 1ST LEVEL REVIEW) This was not the case. So I 602 AND ASK %o D T·ll (OFFICE mentioned) that if I REFUSED NOR if He GAVE this STATMENT. He Told me NO AND if He NEED me to call as a witness. he would.

IT IS NOW that Appeals Coordinator Pool fails to Process my 602 for the merit; my 602 Has. I ATTEMPT a 2ND Try which resulted in the Same Cancellation.

STAFF Are failing to INTERVIEW %o D. Till AND GRANT my 602 FOR the merits I HAVE IN my FAVOR.

C/o Parker (I.C.I) Took my Address Book which was mine, with out any Due Process. I have not received any 115 RVR, or 128-G chrono that would justify my Address Book being with held. At this point I Hold Pool (Appeals Coordinator) liable in his personal capacity For violation of my Due process Right.

Action requested:
① process 602 Dated 11·30·08 And invesgate the issue with in the 602. ② my 602 Address Give Back to me. And Any other Request with in the Body of 602's Dated 10·19·08, 11·30·08 and 1·5·09.



Randy Rosal

60

State of California
Department of Corrections

California State Prison-
Sacramento
P.O. Box 29, Represa, CA 95671

## INMATE/PAROLEE APPEAL SCREENING FORM

PLEASE FOLLOW INSTRUCTIONS AND RETURN WITH YOUR CDC 602-

Name _____REA/_____   CDC#: _735897_   Issue: _10_   Housing: _12-126_

YOUR CDC 602/1824 APPEAL FORM DATED _____ IS BEING RETURNED TO YOU FOR THE FOLLOWING REASON(S):

☐ 1. The action or decision being appealed is not within the jurisdiction of this department.

☑ 2. You have submitted a duplicate appeal on the same issue. Check one:
☐ Your first appeal is currently under review at the _____ level – Log # _____.
☐ This appeal has been withdrawn.
☑ Your appeal was completed, Log # _SAC-S-08-02312_ (CANCELLED)

☐ 3. You are appealing an action not yet taken.

☐ 4. You have not attempted to resolve the problem at the informal level with: _____
☐ Counselor   ☐ Dental Office   ☐ Visiting Sgt.   ☐ Records   ☐ Housing Unit C/O
☐ Medical Clinic   ☐ Trust Office   ☐ Mailroom   ☐ Law Library   ☐ C/O who Inventoried Prop
☐ Psyche Clinic   ☐ I/M Assignment Office   ☐ R&R   ☐ Fac. Prop. C/O   ☐ Other _____

☐ 5. You have not adequately completed the Inmate/Parolee form (CDC 602) or attached the proper documents.

*Please attach the following items or explain why they are not available and send what you have back to the Appeals Office ASAP*

☐ CDC 115 After Completion of RVR
☐ CDC 115A   ☐ Supplemental   ☐ Incident Report
☐ CDC 1858 Rights and Responsibilities Statement
☐ CDC 1845 Inmate/Parolee Disability Verification
☐ CDC 128-G Initial Classification Committee
☐ CDC 128-G ICC/UCC Classification Committee Action
☐ CDC 128-G UCC   ☐ CSR Referral   ☐ Annual Review
☐ CDC 128-G ASU/ICC Chrono as checked: ☐ Walk Alone
☐ CDC 128-G Ad/Seg Initial Chrono   ☐ CDC 114D
☐ CDC 128-G Ad/Seg ICC Class. Committee CSR Referral
☐ CDC 128-G CSR Endorsement
☐ CDC 629-A/B SHU Term Assessment Sheet
☐ CDC 7219 Medical Report
☐ Other (See Below)
☐ You may not request forms/documents thru the appeal process
☐ Submit Inmate Request for Interview not a 602
☐ You may only file 1 non-emergency appeal per 7 days, CCR 3084.4(a)
☐ Staff Complaint or _____
☐ Failed to reasonably demonstrate, action, policy or condition as having an adverse affect upon the inmate's welfare, per CCR 3084.1(a).

☐ Appeal not ADA ISSUE
☐ CDC 1819 Denied Publications
☐ CDC 1030 Confidential Disclosure form
☐ CDC 128-A   ☐ CDC 128-B   ☐ CDC 128-C
☐ CDC 128-B1 Request for Removal from Assignment
☐ CDC 128-B2 SSU/IGI Gang Validation
☐ Resubmit First Level Response
☐ Single Cell   ☐ Release from ASU   ☐ SHU Recommendation
☐ CDC 143 Prop./Trans. Receipt   ☐ Cell Search Receipt
☐ Appeal Process not to be used for interrogatory process
☐ CDC 839/840 Classification/Reclassification Score Sheet
☐ Complete Section: _____   ☐ Sign & Date Section: _____
☐ Not Staff Complaint – Reviewed by Hiring Authority
☐ Emergency Processing Not Warranted Per CCR 3084.7
☐ You must start appeal in Section A/B (then add 1 page)
☐ You cannot write "See Attached" in Section A or B

(choose one) (If staff complaint complete form 1858.)

☐ 6. The appeal exceeds the 15 working day time limit and the inmate has failed to offer a credible explanation as to why he could not submit the appeal within established time limits, CCR 3084.2(c), 3084.3(c)(6), 3084.6(c).

☐ 7. A limit of only one continuation page, front and back, may be attached to the appeal to describe the problem and action requested in Sections A and B. CCR 3084.2(a)(1)

☐ 8. You may not submit an appeal on behalf of another inmate.

☐ 9. You must re-attach all previous Screening Forms (CDC 695's) relative to this appeal before the appeal can be processed any further.

☐ 10. Submit CDC 7362 (Health Care Request -pay) to health care to request medical, mental health, or dental treatment. Do not submit an appeal with the 7362. The facility Triage Nurse should see you within one working day of receiving your 7362. If you disagree with the treatment provided, you may submit a 602 explaining your dissatisfaction.

COMMENTS:

K. POOL, CCII - Appeals Coordinator CSP-Sacramento

Date _1/16/09_

61

NOTE: This screening action may not be appealed unless you allege that the above reason is inaccurate. In such case, please return this form to

# INMATE/PAROLEE
# APPEAL FORM
CDC 602 (12/87)

| Location: | Institution/Parole Region | Log No. | | Category |
|---|---|---|---|---|
| | 1. _____ | 1. _____ | | *10* |
| | 2. _____ | 2. _____ | | |

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| Real | T 35897 | | FSC 126 |

A. Describe Problem: I am filing this 602 on the Response / Appeal Screening. My 602 on Sgt. J. Stewart CAN NOT BE CANCELLED, it is not a Duplicate Appeal. I'm appeal that no one come to talk to me about a 602 Hearing, I HAVE C/O D. Till AD-SEG OFFICER will STATE that he never tryed to pull me OUT. The ISSUE that was cancelled was on C/O PARKER. There fore the 602 Should be Heared, AND process.

If you need more space, attach one additional sheet.

B. Action Requested: 1) process 602 DATED 11.30.08  2) Invesgate AND Question C/O D. Till AS to the STATEMENT and IF He Tried to pull me out For a 602 Hearing. 3) Reopen my Original 602 DATED. 10.19.08 LOG SAC.S-08-2372

Inmate/Parolee Signature: _____   Date Submitted: 1-5-09

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

_____

_____

_____

Staff Signature: _____   Date Returned to Inmate: _____

*RECEIVED   FEB 10 2009   INMATE APPEALS BRANCH*

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

_____

_____

_____

Signature: _____   Date Submitted: _____

*2009 JAN -7  PM 12:49*

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

CDC Appeal Number: _____

*RECEIVED   CSP - SAC   APPEALS*

1/16/09

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: _____ Due Date: _____

Interviewed by: _____

_____

_____

_____

_____

Staff Signature: _____ Title: _____ Date Completed: _____

Division Head Approved:                                          Returned

Signature: _____ Title: _____ Date to Inmate: _____

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

_____

_____

_____

_____

Signature: _____ Date Submitted: _____

Second Level    ☐ Granted     ☐ P. Granted     ☐ Denied     ☐ Other _____

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: _____ Due Date: _____

☐ See Attached Letter

Signature: _____ Date Completed: _____

Warden/Superintendent Signature: _____ Date Returned to Inmate: _____

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

*SEE ATTACHED DIRECTOR REVIEW (DISSATISFIED)*

_____

_____

Signature: _____ Date Submitted: 2·6·07

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION: ☐ Granted     ☐ P. Granted     ☐ Denied     ☐ Other _____

☐ See Attached Letter

                                                     Date: _____

CDC 602 (12/87)

State of California
Department of Corrections

California State Prison-
Sacramento
P.O. Box 29, Represa, CA 95671

## INMATE/PAROLEE APPEAL SCREENING FORM

-PLEASE FOLLOW INSTRUCTIONS AND RETURN WITH YOUR CDC 602-

Name _____ *Neal* _____   CDC#: _735-897_   Issue: _10_   Housing: _FSC 128_

YOUR CDC 602/1824 APPEAL FORM DATED _11/30/06_ IS BEING RETURNED TO YOU FOR THE FOLLOWING REASON(S):

☐ 1. The action or decision being appealed is not within the jurisdiction of this department.

☑ 2. You have submitted a duplicate appeal on the same issue.  Check one:
    ☐ Your first appeal is currently under review at the _____ level – Log # _____.
    ☐ This appeal has been withdrawn.
    ☑ Your appeal was completed, Log # _SAC-S-06-02372_ *(Cancelled)*

☐ 3. You are appealing an action not yet taken.

☐ 4. You have not attempted to resolve the problem at the informal level with: _____
    ☐ Counselor  ☐ Dental Office  ☐ Visiting Sgt.  ☐ Records  ☐ Housing Unit C/O
    ☐ Medical Clinic  ☐ Trust Office  ☐ Mailroom  ☐ Law Library  ☐ C/O who Inventoried Prop
    ☐ Psyche Clinic  ☐ I/M Assignment Office  ☐ R&R  ☐ Fac. Prop. C/O  ☐ Other _____

☐ 5. You have not adequately completed the Inmate/Parolee form (CDC 602) or attached the proper documents.

*Please attach the following items or explain why they are not available and send what you have back to the Appeals Office ASAP*

☐ CDC 115  After Completion of RVR
☐ CDC 115A  ☐ Supplemental  ☐ Incident Report
☐ CDC 1858  Rights and Responsibilities Statement
☐ CDC 1845  Inmate/Parolee Disability Verification
☐ CDC 128-G  Initial Classification Committee
☐ CDC 128-G  ICC/UCC Classification Committee Action
☐ CDC 128-G  UCC  ☐ CSR Referral  ☐ Annual Review
☐ CDC 128-G  ASU/ICC Chrono as checked:  ☐ Walk Alone
☐ CDC 128-G  Ad/Seg Initial Chrono  ☐ CDC 114D
☐ CDC 128-G  Ad/Seg ICC Class. Committee  CSR Referral
☐ CDC 128-G  CSR Endorsement
☐ CDC 629-A/B SHU Term Assessment Sheet
☐ CDC 7219  Medical Report
☐ Other (See Below)
☐ You may not request forms/documents thru the appeal process
☐ Submit Inmate Request for Interview not a 602
☐ You may only file 1 non-emergency appeal per 7 days, CCR 3084.4(a)
☐ Staff Complaint or _____

☐ Appeal not ADA ISSUE
☐ CDC 1819  Denied Publications
☐ CDC 1030  Confidential Disclosure form
☐ CDC 128-A  ☐ CDC 128-B  ☐ CDC 128-C
☐ CDC 128-B1 Request for Removal from Assignment
☐ CDC 128-B2 SSU/IGI Gang Validation
☐ Resubmit First Level Response
☐ Single Cell  ☐ Release from ASU  ☐ SHU Recommendation
☐ CDC 143 Prop./Trans. Receipt  ☐ Cell Search Receipt
☐ Appeal Process not to be used for interrogatory process
☐ CDC 839/840 Classification/Reclassification Score Sheet
☐ Complete Section: _____  ☐ Sign & Date Section: _____
☐ Not Staff Complaint – Reviewed by Hiring Authority
☐ Emergency Processing Not Warranted Per CCR 3084.7
☐ You must start appeal in Section A/B (then add 1 page)
☐ You cannot write "See Attached" in Section A or B

(choose one) (If staff complaint complete form 1858.)
☐ Failed to reasonably demonstrate, action, policy or condition as having an adverse affect upon the inmate's welfare, per CCR 3084.1(a).

☐ 6. The appeal exceeds the 15 working day time limit and the inmate has failed to offer a credible explanation as to why he could not submit the appeal within established time limits, CCR 3084.2(c), 3084.3(c)(6), 3084.6(c).

☐ 7. A limit of only one continuation page, front and back, may be attached to the appeal to describe the problem and action requested in Sections A and B. CCR 3084.2(a)(1)

☐ 8. You may not submit an appeal on behalf of another inmate.

☐ 9. You must re-attach all previous Screening Forms (CDC 695's) relative to this appeal before the appeal can be processed any further.

☐ 10. Submit CDC 7362 (Health Care Request -pay) to health care to request medical, mental health, or dental treatment. Do not submit an appeal with the 7362. The facility Triage Nurse should see you within one working day of receiving your 7362. If you disagree with the treatment provided, you may submit a 602 explaining your dissatisfaction.

COMMENTS:

_____

_____
K. POOL, CCII - Appeals Coordinator CSP-Sacramento

_12/14/06_
Date

NOTE: This screening action may not be appealed unless you allege that the above reason is inaccurate. In such case, please return this form to

64

**INMATE/PAROLEE
APPEAL FORM**
CDC 602 (12/87)

| Location: | Institution/Parole Region | Log No. | Category |
|---|---|---|---|
| 1. | | 1 | /O |
| 2. | | 2 | |

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115's, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| DEAL | T-35897 | AD-SEG | FSC 128 |

A. Describe Problem: Employee misconduct Appeal is being Filed on SGT J STEWART for FAlsiFying inForMation, obstruction oF Justice, And Denial oF My Due Process Rights. on Nov.24,08 I was served, via MAil, a Cancellation oF An Appeal I HAD Previous Filed on EGI Parker (SEE ATTACHED) 602 LOG, SAC-S-08-02372 ) Due to Allege Lack oF COOPERATION Per. Tit 15 3084.4 (d). SGT J STEWART STATED THAT "C/O D.Till STATED HE ATTEMPTED TO Escort ME TO A Holding Cell AND THAT I DID NOT WANT TO COME OUT OF THE Cell AND participATE IN THE interview portion oF THE AppealS process." THis iS NOT True! AFTER QUESTIONING C/O D.Till HE STATED HE NEVER GAVE
If you need more space, attach one additional sheet. ATTACHED. CDCR 1858, 602 (LOG SAC-S-08-02372) AND ADDITIONAl SHEET.

CONTINUE →

B. Action Requested: PERVIOUS Appeal (LOG SAC-S-08-02372) be GrANTED IN FUll DUE TO SGT J.STEWART "INAppropriate STATEMENT" PER TIT 15 3084.4 (6). 2) SGT J STEWART BE INVESTIGATED AND IMPOSE DisciplinAry ACTION 3) SGT J. STEWART SignN RightS AND RESPONSibility STATEMENT PER. PEN.CODE 148.6, CDCR 1858, 4) QUESTION C/O D.TiTH OF HIS Allege STATEMENT.

Inmate/Parolee Signature: _____    Date Submitted: 11.30.08

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

_____

_____

Staff Signature: _____   Date Returned to Inmate: _____

*(stamp, rotated): E APPEALS BRANCH   FEB 10 2009   RECEIVED*

**D. FORMAL LEVEL**
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

_____

_____

_____

Signature: _____   Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E, Inmate Claim.

*(stamp, inverted): 2008 DEC 9   HW 1:38   APPEALS   CSP - SAC   RECEIVED*

CDC Appeal Number: [          ]

First Level ☐ Granted ☐ P. Granted ☐ Denied ☐ Other _____

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: _____ Due Date: _____

Interviewed by: _____

_____

_____

_____

_____

_____

_____

Staff Signature: _____ Title: _____ Date Completed: _____

Division Head Approved:      Returned

Signature: _____ Title: _____ Date to Inmate: _____

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

_____

_____

_____

_____

Signature: _____ Date Submitted: _____

Second Level ☐ Granted ☐ P. Granted ☐ Denied ☐ Other _____

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: _____ Due Date: _____

☐ See Attached Letter

Signature: _____ Date Completed: _____

Warden/Superintendent Signature: _____ Date Returned to Inmate: _____

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

_____

_____

_____

_____

_____

Signature: _____ Date Submitted: _____

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION: ☐ Granted ☐ P. Granted ☐ Denied ☐ Other _____

☐ See Attached Letter

Date: _____

CDC 602 (12/87)

THAT STATEMENT. THEREFORE I HOLD SGT. J STEWART liable

in his individual capacity FOR Falsifing information, OBSTRUCTION

OF JUSTICE, AND DENIAL OF my DUE Process Right.

Nov. 30 08

67

STATE OF CALIFORNIA
RIGHTS AND RESPONSIBILITY STATEMENT
CDCR 1858 (Rev. 10/06)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

## RIGHTS AND RESPONSIBILITY STATEMENT

*The California Department of Corrections and Rehabilitation has added departmental language (shown inside brackets, in non-boldface type) for clarification purposes.*

*Pursuant to Penal Code 148.6, anyone wishing to file an allegation of misconduct by a departmental peace officer must read, sign and submit the following statement:*

YOU HAVE THE RIGHT TO MAKE A COMPLAINT AGAINST A POLICE OFFICER [this includes a departmental peace officer]   FOR ANY IMPROPER POLICE   [or peace] OFFICER CONDUCT. CALIFORNIA LAW REQUIRES THIS AGENCY TO HAVE A PROCEDURE TO INVESTIGATE CITIZENS' [or inmates'/parolees'] COMPLAINTS. YOU HAVE A RIGHT TO A WRITTEN DESCRIPTION OF THIS PROCEDURE. THIS AGENCY MAY FIND AFTER INVESTIGATION THAT THERE IS NOT ENOUGH EVIDENCE TO WARRANT ACTION ON YOUR COMPLAINT; EVEN IF THAT IS THE CASE, YOU HAVE THE RIGHT TO MAKE THE COMPLAINT AND HAVE IT INVESTIGATED IF YOU BELIEVE AN OFFICER BEHAVED IMPROPERLY.   CITIZEN [or inmate/parolee] COMPLAINTS AND ANY REPORTS OR FINDINGS RELATING TO COMPLAINTS MUST BE RETAINED BY THIS AGENCY FOR AT LEAST FIVE YEARS.

*ComplainANT AGAINST*

*SGT. J STEWART*

| COMPLAINANT'S PRINTED NAME | COMPLAINANT'S SIGNATURE | DATE SIGNED | |
|---|---|---|---|
| INMATE/PAROLEE PRINTED NAME  *RANDY REAl* | INMATE/PAROLEE'S SIGNATURE | CDC NUMBER  *735899* | DATE SIGNED  *Nov. 30.08* |
| RECEIVING STAFF'S PRINTED NAME | RECEIVING STAFF'S SIGNATURE | DATE SIGNED | |

DISTRIBUTION:
ORIGINAL -
Public - Institution Head/Parole Administrator
Inmate/Parolee - Attach to CDC form 602
Employee - Institution Head/Parole Administrator
COPY - Complainant

State of California                                  California Department of Corrections and Rehabilitation (CDCR)



**RE:**   California State Prison-Sacramento (SAC)
          First Level Reviewer's Response
          Appeal Log #: SAC-S-08-02372
          Date: November 13, 2008

   **INMATE:** REAL, Randy (T-35897)

   **APPEAL ISSUE**

   CASE INFO/RECORDS

   **APPEAL DECISION**

   CANCELLED

   **APPEAL RESPONSE**

   Correctional Sergeant J. Stewart was assigned to investigate your appeal at the First Level of
   Review.  On November 13, 2008, an interview was attempted in the Stand Alone (SA) Administrative
   Segregation Unit (ASU).

   All submitted documentation and supporting arguments have been considered.   Additionally, a
   thorough inquiry was conducted regarding the claim presented by you and evaluated in accordance
   with SAC's Operational Procedures (OP's), California Code of Regulations (CCR), Title 15, and the
   Departmental Operational Manual (DOM).

   **SUMMARY OF APPEAL**

   In your appeal, you indicate that your personal address book was confiscated from your assigned
   cell "pending investigation".   You indicated that you requested to have it returned to you by
   Institutional Gang Investigative (IGI) staff, and you were informed that it would not be returned to
   you because it contained the names and addresses of several third party community contacts
   related to the Mexican Mafia (EME) prison gang.

   You.are requesting to have the address book returned to you.

   **SUMMARY OF INVESTIGATION**

   On November 13, 2008, at approximately 1000 hours, I attempted to interview you in the SA ASU.
   Officer D. Till reported to your assigned cell FSC-128 and attempted to escort you to a holding cell in
   the SA ASU. You informed Officer Till that you did not want to come out of the cell and participate in
   the interview portion of the appeals process.

   According to CCR, Title 15, Section 3084.4, which states in part:

   *3084.4. Appeal System Abuse.*

   *(d) Lack of cooperation.   An appellant's refusal to be interviewed or cooperate with the reviewer*
   *shall result in cancellation of the appeal.*

First Level Reviewer's Response
Appeal Log #: SAC-S-08-02372
Inmate: REAL (T-35897))
Page 2 of 2

## APPEAL DECISION

Based on your refusal to participate in the appeals process, your appeal is **CANCELLED**.


Sergeant J. Stewart
Assistant Institutional Gang Investigator
Investigative Services Unit

cc:     C-File
        Inmate Appeals Office

7𝐷

*151*

**INMATE/PAROLEE**
**APPEAL FORM**
CDC 602 (12/87)

Location: Institution/Parole Region

1. _CSP  S_   1. _08·2372_   Category _5_

2. _____   2. _____

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|------------|------------------|
| Resa | T35897 | ASU | PSC 128 |

A. Describe Problem: This 602 is being Resubmitted Due to Failure to Respond. I Have Filed a Complaint on 9·14·08 on ℅ IGI Parker inwhich my Complaint has been Ignored. This Acts as my 2ND Attempt. — 602/complaint is being filed on ℅ IGI Parker for his unprofessional Behavor on 8·12·08 ℅ Parker Confiscated a personal Address Book through a Cell Search for "pending investigation", I Had sent an Inmate Request Asking When will I recieve my Address book, inwhich No written Response was Given, But a Verble that I was NOT Going to have my Address Book Back Due to Allege of a Address is Gang Activity. ——→ continues

If you need more space, attach one additional sheet. 4 PAGE TATOL in this packet.

B. Action Requested: ① My Address be Returned, ② ℅ Parker be trained AND counseled of his job titled ③ that this complaint be placed IN his personal file of his conduct.

Inmate/Parolee Signature _____   Date Submitted: 10·19·08

C. INFORMAL LEVEL (Date Received: _____)

Staff Response: _____

BYPASS

Staff Signature: _____   Date Returned to Inmate: _____

INMATE APPEALS BRANCH

RECEIVED
FEB 10 2009

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

BYPASS

2008 OCT 21  PM 3:29

Signature: _____   Date Submitted: _____
Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E, Inmate Claim   CDC Appeal Number: _____

APPEALS
CSP - SAC
RECEIVED

1-5

1'

First Level    ☐ Granted    ☐ P. Granted    ☐ Denied    ☒ Other _____ CANCEL _____

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: **OCT 3 1 2008**    Due Date: **DEC 1 7 2008**

Interviewed by: _____

Staff Signature: _____    Title: _____ Sgt- _____    Date Completed: 11-13-08

Division Head Approved: _____
Signature: _____    Title: _____ LT _____    Returned
                                                         Date to Inmate: 11/14/08

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

DISSATISFIED, SGT J STEWART BASE HIS CANCELLATION ON INAPPROPRIATE
STATEMENT ON HIS OWN BEHAVE, THIS VIOLATES THE 602 PROCESS, DUE
PROCESS, PER TIT 15 3084·4 (b) THIS 602 SHOULD BE GRANTED, SEE ATTACHED
602 DATED NOV 30.08

Signature: _____    Date Submitted: NOV. 30.08

Second Level    ☐ Granted    ☐ P. Granted    ☐ Denied    ☐ Other _____

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: _____ Due Date: _____
☐ See Attached Letter

Signature: _____    Date Completed: _____

Warden/Superintendent Signature: _____    Date Returned to Inmate: _____

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

Signature: _____    Date Submitted: _____

For the Director's Review, submit all documents to: Director of Corrections
                                                     P.O. Box 942883
                                                     Sacramento, CA 94283-0001
                                                     Attn: Chief, Inmate Appeals

0817755

T35897

DIRECTOR'S ACTION:    ☐ Granted    ☐ P. Granted    ☐ Denied    ☐ Other _____
☐ See Attached Letter

Date: _____

CDC 602 (12/87)

72

Until this DAY I have NOT GiveN NO EVidENCE That ANY conduct was found. THERE for S/o PARKER HAS ACTED OUT OF Scope OF his Job TiTle, Acttiing upprofessional as well individual behavior By Denying my Due Process for The Right to my Property.

SEE. ① Rights AND Responsibility STATEMENT. DATED. 9·14·08
COPY.
② Rights AND Responsibility STATEMENT. DATED. 10·19·08
NEW

74

## Cell Search Worksheet

TE __8·12·08__   TIME: __1/00__   CELL # __FSC·128__

### INMATES ASSIGNED TO THIS CELL

NAME __MURAKAMI__   NUMBER: __V01451__   NAME: __REAL__   NUMBER: __T35897__

### SEARCH CONDUCTED BY :

SUPERVISING OFFICER: __D LIGHTFIELD__   POSITION: __SGT__

CORRECTIONAL OFFICER (S): __BAKER__ / __PARKER__ POSITION: _____

CELL CONDITION: __okay__
( INDICATE IF THE CELL CONTAINED ANY OF THE FOLLOWING ITEMS
AND IF THEY WERE PROPERLY FUNCTIONING AND LOCATED )

TELEVISION: _____ SERIAL #:_____/_____ WORKING:_____ NOT WORKING:_____
RADIO: _____ SERIAL #:_____/_____ WORKING:_____ NOT WORKING:_____
CASSETTE: _____ SERIAL #:_____/_____ WORKING:_____ NOT WORKING:_____
OTHER: _____ SERIAL #:_____/_____ WORKING:_____ NOT WORKING:_____
COMMENTS:_____

### ITEMS CONFISCATED DURING SEARCH
** NOTE: INCLUDE REASON CONFISCATED AND DISPOSITION OF ALL ITEMS

EM (S): (1) address Book belonging to REAL (R=35897); bag of
plastic bags; (2) card board's (hardware); bag of syrup ejellies
empty paper bags; +stuff

REASON: PENDING INVESTIGATION;
SGT
PARKER

LOCATION: WITHIN PERSONAL PROPERTY

DISPOSITION: SEE ABOVE

WAS A RULES VIOLATION REPORT ( CDC- 115 ) ISSUED FOR CONFISCATED CONTRABAND? YES / NO

IF YES:   REPORT WRITTEN BY:_____ POSITION:_____

ISSUED TO INMATE (S)_____ /_____

SUPERVISOR:_____ POSITION:_____

OTE: CELL SEARCHES ARE NOT INTENDED AS PUNISHMENT  SUPERVISORY STAFF SHALL BE RESPONSIBLE
JR ENSURING ALL STAFF RESPECTS INMATES PROPERTY DURING ANY CELL SEARCH. AND DOCUMENT
ALL ITEMS CONFISCATED FROM CELL AND THE REASON FOR THE CONFISCATION. A COPY OF THIS
WORKSHEET WILL BE LEFT IN THE CELL WHEN THE SEARCH HAS BEEN COMPLETED

STATE OF CALIFORNIA                                          DEPARTMENT OF CORRECTIONS AND REHABILITATION
RIGHTS AND RESPONSIBILITY STATEMENT
CDCR 1858  (Rev. 10/06)

# RIGHTS AND RESPONSIBILITY STATEMENT

*The California Department of Corrections and Rehabilitation has added departmental language (shown inside brackets, in non-boldface type) for clarification purposes.*

**Pursuant to Penal Code 148.6, anyone wishing to file an allegation of misconduct by a departmental peace officer must read, sign and submit the following statement:**

YOU HAVE THE RIGHT TO MAKE A COMPLAINT AGAINST A POLICE OFFICER [this includes a departmental peace officer]  FOR ANY IMPROPER POLICE  [or peace] OFFICER CONDUCT. CALIFORNIA LAW REQUIRES THIS AGENCY TO HAVE A PROCEDURE TO INVESTIGATE CITIZENS' [or inmates'/parolees'] COMPLAINTS.  YOU HAVE A RIGHT TO A WRITTEN DESCRIPTION OF THIS PROCEDURE.  THIS AGENCY MAY FIND AFTER INVESTIGATION THAT THERE IS NOT ENOUGH EVIDENCE TO WARRANT ACTION ON YOUR COMPLAINT; EVEN IF THAT IS THE CASE, YOU HAVE THE RIGHT TO MAKE THE COMPLAINT AND HAVE IT INVESTIGATED IF YOU BELIEVE AN OFFICER BEHAVED IMPROPERLY.   CITIZEN [or inmate/parolee] COMPLAINTS AND ANY REPORTS OR FINDINGS RELATING TO COMPLAINTS MUST BE RETAINED BY THIS AGENCY FOR AT LEAST FIVE YEARS.

Complainant Against
c/o IGI Parker

| COMPLAINANT'S PRINTED NAME | COMPLAINANT'S SIGNATURE | DATE SIGNED |
|---|---|---|
| RANDY REAL | | 10 / 19 / 08 |
| INMATE/PAROLEE PRINTED NAME | INMATE/PAROLEE'S SIGNATURE | CDC NUMBER / DATE SIGNED |
| RANDY REAL | | T35897  10·19·08 |
| RECEIVING STAFF'S PRINTED NAME | RECEIVING STAFF'S SIGNATURE | DATE SIGNED |

DISTRIBUTION:
ORIGINAL -
Public  Institution Head/Parole Administrator
Inmate/Parolee - Attach to CDC form 602
Employee - Institution Head/Parole Administrator
COPY - Complainant

75

# EXHIBIT COVER PAGE 

EXHIBIT

Description if this exhibit:

*Inmate Appeal Filed on 8/24/08
Disputing Failure To Appoint Investigative
Employee For Allegation Of Validation.*

*LOG# SAC-08-01962*

Number of pages to this exhibit: __21__ pages.

**JURISDICTION**: (Check One Only)

- ☐ MUNICIPAL COURT
- ☐ SUPERIOR COURT
- ☐ APPELLATE COURT
- ☐ STATE SUPREME COURT
- ☒ UNITED STATES DISTRICT COURT
- ☐ STATE CIRCUIT COURT
- ☐ UNITES STATES SUPREME COURT
- ☐ GRAND JURY

76

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

## DIRECTOR'S LEVEL APPEAL DECISION

Date:    MAR 1 1 2009

In re:    Randy Real, T35897
California State Prison, Sacramento
P.O. Box 29
Represa, CA 95671

IAB Case No.: 0815032          Local Log No.: SAC-08-01962

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner J. Hutchins, Facility Captain. All submitted documentation and supporting arguments of the parties have been considered.

**I    APPELLANT'S ARGUMENT:**   It is the appellant's position that he requested the assistance of an Investigative Employee (IE) on July 3, 2008, when he was issued a CDC Form 114-D, Administrative Segregation Unit Placement Notice, and his request was denied. The appellant reports that he appealed this issue earlier, however, he never received a response. He contends that his due process rights have been violated. The appellant requests the following: an explanation as to why his earlier appeal was not answered; the assignment of an IE; and that all proceedings be stayed to allow an IE to provide a defense on his behalf.

**II    SECOND LEVEL'S DECISION:**   The reviewer found that the Appeals Office at California State Prison - Sacramento (SAC) has no record of the allegedly missing appeal ever being filed by the appellant, explaining why he has not received a response. It could not be established that the document ever existed. With regard to the issue of an IE, the Second Level of Review (SLR) informed the appellant that his claim is not supported by the documentation. There is no indication that the appellant requested an IE at the time of his administrative review, as he now claims. Further, the appellant was informed by the SLR that he has been provided all documentation that is being utilized and considered in his possible validation as a gang member; consequently, there is no need to assign an IE at this time. The SLR determined that staff followed relevant departmental regulations and governing laws in this matter and denied the appeal.

**III    DIRECTOR'S LEVEL DECISION:**   Appeal is denied.

**A.   FINDINGS:**   The documentation and evidence reveal that the appellant was placed into the Administrative Segregation Unit at SAC on July 2, 2008. On July 3, 2008, an administrative hearing was conducted, by a staff member at the appropriate rank, relative to his placement. There is no indication that the appellant requested an IE or that the Classification Hearing Officer (CHO) deemed the assignment of an IE as being necessary pursuant to the provision of California Code of Regulations, Title 15, Section (CCR) 3339(b). The actions taken by the CHO conform to the requirements of CCR 3337 and 3338. It is noted that the appellant did not request any witnesses when the hearing took place. It is evident that the appellant's procedural safeguards have been observed in this matter. His argument that he was denied an IE is not supported by any evidence or an argument that could be considered persuasive. The Director's Level of Review finds no reason to intervene in this matter. Therefore, the appeal is denied.

**B.   BASIS FOR THE DECISION:**
CCR: 3001, 3023, 3270, 3335, 3337, 3338, 3341.5, 3378

**C.   ORDER:**   No changes or modifications are required by the Institution.

71

RANDY REAL, T35897
CASE NO. 0815032
PAGE 2

This decision exhausts the administrative remedy available to the appellant within CDCR.

N. GRANNIS, Chief
Inmate Appeals Branch

cc:    Warden, SAC
        Appeals Coordinator, SAC

**INMATE/PAROLEE
APPEAL FORM**
CDC 602 (12/87)

Location: Institution/Parole Region

1. SACC-C

2. _____

Log No.

1. 08.1962

2. _____

Category

1. _____

2. _____

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|-----------|------------------|
| REAL | T35897 | AD-SEG | PSC 128 |

A. Describe Problem: This 602 is being filed for the 2ND time. On 7.4.08 I filed a 602 for the below matter and it is now there has been no reply. The matter of this 602 is; I have been denied an Investigative Employee (I.E.) at my request per Title 15 3337(b) & 3338(4)(b). CPT R. Ramos issued me a 114-D Lock-up order on 7-3-08 in which I stated I would like an I.E., in reply he stated "I am not entitled on at this point due to it's an Investigation being done" I reply to CPT R. Ramos that "I am placed in AD-SEG for possible Validation and I am entitled to present witness & evidence in my defence." CPT R. Ramos still declined to appoint one to ⇒

If you need more space, attach one additional sheet. Continued of added page. Three pages in all. 114D 07-03-08 attached.

B. Action Requested: ① Given reason why my 602 dated 7-4-08 was not answered ② Appoint an I.E. to the allegation stated in my placement in AD-SEG (114-D) ③ to stay all proceedings to my placement, to allow my I.E. provide a defense on my be half.

Inmate/Parolee Signature: _____     Date Submitted: 8.24.08

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

BYPASS

Staff Signature: _____     Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

BYPASS

Signature: _____     Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim.

CDC Appeal Number: _____

First Level  ☐ Granted  ☒ P. Granted  ☐ Denied  ☐ Other

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: _____  Due Date: _____

Interviewed by: _____

Staff Signature: _____  Title: Lieutenant  Date Completed: 10/14/08

Division Head Approved:
Signature: _____  Title: FC  Returned Date to Inmate: OCT 17 2008

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

1) Original 114-D show I requested an I.E. Its not on the copy due to officer wrote on original I requested I.E. 2) Purpose of this 602 is rectify an error. That I requested an I.E. and one was not appointed. This should act as one. 3) I am entitled to an I.E. 3) Any officer obstructing me of I.E. is liable in his individual composty for violation of my due process.

Signature: _____  Date Submitted: 10.24.08

Second Level  ☐ Granted  ☒ P. Granted  ☐ Denied  ☐ Other

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: NOV 04 2008  Due Date: NOV 25 2008

☒ See Attached Letter

Signature: _____ AW-C  Date Completed: 12-23/08

Warden/Superintendent Signature: _____  Date Returned to Inmate: 12/26/08

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

I am dissatisfied due to it is the response that because I signed the 114D I waived my rights to an I.E. As said in my second level response, response was never answer to what I wrote. Rather ignored. Therefore my original argument and second level argument still stands. Failure to rectify is liable in theres personal capacity. Action requested: Re-hear, my validation due to no I.E.

Signature: _____  Date Submitted: 1.5.09

For the Director's Review, submit all documents to:  Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION:  ☐ Granted  ☐ P. Granted  ☒ Denied  ☐ Other _____
☒ See Attached Letter  Date: MAR 11 2009

CDC 602 (12/87)

0815032

T35897

80

my CASE. IT should be noted that The I.E. That I am
Requesting is essential to my Right to present a Defense.
Therefore I am entitle An I.E. If failure to Do So, this
institution as well as Cpt R. Ramos Are clearly in Violating
my Due process Right to present a Defense to The Allegation
Being placed on me. See (Attached 114-D Dated 7.3.08)

6'

**RE:**  California State Prison-Sacramento (SAC)
First Level Reviewer's Response
Appeal Log #: SAC-C-08-01962
Date: October 14, 2008

**INMATE: REAL (T-35897)**
**APPEAL – DENIED**

### APPEAL RESPONSE:

Lieutenant D. Sims was assigned to investigate your appeal at the First Level of Review, and you were interviewed on October 11, 2008.

### SUMMARY OF APPEAL

You are submitting an appeal regarding remanded to Administrative Segregation on July 2, 2008, due to pending the validation process by Office of Correctional Safety. You allege that you were denied your Due Process Rights during the Administrative Review by Captain (A) R. Ramos of the Administration Segregation Unit Placement Notice, CDC 114-D dated July 2, 2008. You allege Captain (A) Ramos denied you an Investigative Employee for the CDC 114-D. You also alleged you filed an Appeal on July 4, 2008, regarding the placement which you claim was never answered.

You are requesting a reason as to why your appeal dated July 4, 2008, was never answered. You are requesting that an Investigative Employee be appointed for the placement in Administrative Segregation. Also, that all proceedings to your placement are stayed, to allow the Investigative Employee to gather evidence for a defense on your behalf.

### SUMMARY OF INQUIRY

The First Level of Review has closely examined your claims of being denied your Due Process Rights during the Administrative Review by Captain (A) R. Ramos of the Administration Segregation Unit Placement Notice, CDC 114-D dated July 2, 2008.

The Appeals Office was contacted and a review of the Appeal Log indicates an appeal dated July 4, 2008, was never received by their office.

A Central File review indicated the CDC 114-D dated July 2, 2008, authored by Lieutenant T.S. Ventimiglia was based on information that you are actively involved with the Mexican Mafia (EME) prison gang, as a result of an investigation conducted by the CSP-SAC Institutional Gang Investigations (IGI) Unit. This confidential information was documented in a Confidential Memo, dated June 2, 2008, authored by Officer G. Parker; Confidential Memo, dated September 26, 2007, authored by Officer G. Parker; Confidential Memo, dated December 4, 2006, authored by Officer G. Parker; Confidential Memo, dated February 26, 2003, authored by Officer R. Parrilla; Confidential Memo, dated July 17, 2002, authored by Officer R. Parrilla; located in the Confidential Section of your Central File and CDCR C128-B Informative Chrono dated July 11, 2005, authored by Officer R. Parrilla, located in your Central File. This information was documented in five (5) Confidential Information Disclosure Forms (CDC 1030) dated July 2, 2008, authored by Sergeant J. Stewart which was provided to you on July 2, 2008, by Lieutenant T.S. Ventimiglia during the 114-D issuance process, as documented on the CDC 114-D.

Per your signature on the CDC 114-D under inmate waivers, indicates you waived the right to 72 hours preparation time. The CDC 114-D does not reflect any notes under the Investigative Employee that you requested an Investigative Employee at the time of review as you alleged in your interview of October 11, 2008. The copy that you submitted with the appeal accurately reflects the original CDC 114-D.

The Department's rules regarding this issue are contained in CCR Section 3321 (a) (1)(2), CCR Section 3321 (d)(3), CCR Section 3335 (a), CCR Section 3337 (b)(c), CCR Section 3338 (d)(f)(h)(i), CCR Section 3339 (b), CCR Section 3378 (c) (6)(A)(B)(C)(D)E)(F)(G) (g) which states in part:

> **3321. Confidential Material**
> (a) The following types of information shall be classified as confidential:
> (1) Information which, if known to the inmate, would endanger the safety of any person.
> (2) Information which would jeopardize the security of the institution.

8ᒼ

First Level Reviewer Response
Appeal Log #SAC-C-08-01962
REAL (T-35897)
October 14, 2008
Page 2 of 4

**3321. Confidential Material**
(d) Filing confidential material.
(3) Classification committee shall review the material filed in the confidential folder of each case considered. Any material not approved but designated confidential shall be removed from the folder and submitted to the designated staff person for review and determination.

**3335. Administrative Segregation.**
(a) When an inmate's presence in an institution's general inmate population presents an immediate threat to the safety of the inmate or others, endangers institution security or jeopardizes the integrity of an investigation of an alleged serious misconduct or criminal activity, the inmate shall be immediately removed from general population and be placed in administrative segregation. Administrative segregation may be accomplished by confinement in a designated segregation unit or, in an emergency, to any single cell unit capable of providing secure segregation.

**3337. Review of Segregation Order.**
On the first work day following an inmate's placement in administrative segregation, designated staff at not less than the level of correctional captain will review the order portion of the CDC Form 114-D. If retention in administrative segregation is approved at this review, the following determinations will be made at this level:
(b) Determine the inmate's desire to call witnesses or submit other documentary evidence. If the inmate requests the presence of witnesses or submission of documentary evidence at a classification hearing on the reason or need for retention in segregated housing, an investigative employee will be assigned to the case. A request to call witnesses and the names of witnesses must be submitted in writing by the inmate.
(c) Determine if the inmate has waived the 72-hour time limit in which a classification hearing cannot be held, as indicated on the CDC Form 114-D, or if the inmate desires additional time to prepare for a classification hearing. A request and the reason for needing additional time to prepare for a hearing must be submitted in writing by the inmate. In the absence of an inmate's waiver of the 72-hour preparation period or an approved request for additional preparation time, a classification hearing cannot be held earlier than 72 hours after the inmate's placement in segregated housing, but will be held as soon thereafter as it is practical to do so.

**3338. Hearing on Segregated Housing Order.**
(d) The primary purpose of the initial hearing on an administrative segregation order, CDC Form 114-D, is to determine the need for continued retention in administrative segregation pending criminal prosecution, disciplinary proceedings, the resolution of nondisciplinary issues or considerations, and reclassification by the institution's main classification committee for assignment to a specialized security housing unit, or an action on the main which a classification hearing cannot be held, as indicated on the classification committee's recommendation for transfer to an institution with appropriate specialized security housing units.

(f) When the reason for an inmate's placement in administrative segregation is for nondisciplinary reasons, the hearing will consider all available evidence or information relating to the validity of the reasons given for such placement as well as the need to retain the inmate in administrative segregation pending resolution of the situation or circumstances set forth in the administrative segregation order.
(h) Based upon the finding of the investigative employee, the initial hearing or the main classification committee will permit the inmate to present witnesses and documentary evidence at the hearing unless the initial hearing officer or the chairperson of the committee determines in good faith that permitting such evidence will be unduly hazardous to the institution safety or correctional goals. The reason for disallowing witnesses or evidence will be documented in the "hearing" portion of the segregation order, CDC Form 114-D, and in the classification committee's report (CDC Form 128-G) depending upon the hearing at which the presentation of such evidence or witnesses would have otherwise been presented.

83

First Level Reviewer Response
Appeal Log #SAC-C-08-01962
REAL (T-35897)
October 14, 2008
Page 3 of 4

(i) The determinations arrived at in the classification hearing will be documented in the hearing portion of the segregation order, CDC Form 114-D, and in the classification committee report, CDC Form 128-G, depending upon the hearing at which the need for segregated housing is resolved. Such documentation will include an explanation of the reason and the information and evidence relied upon for the action taken. A copy of the completed CDC Form 114-D and any CDC Form 128-G resulting from hearings will be routed to the inmate's central file. The inmate will also be given copies of all completed forms and of all other documents relied upon in the hearing except those containing confidential information.

**3339. Release from Administrative Segregation and Retention in Administrative Segregation.**
(b)(4) The inmate shall be given a reasonable opportunity to present witnesses and documentary evidence unless institution officials determine in good faith that presentation of the evidence would be unduly hazardous to institutional safety or correctional goals. The reason for disallowing designated evidence will be explained in writing by the hearing body on the segregated housing order.

**3378. Documentation of Critical Case Information.**
(c) Gang involvement allegations shall be investigated by a gang coordinator/investigator or their designee.
(6) The verification of an inmate/parolee's gang identification shall be validated or rejected by the chief, office of correctional safety (OCS), or a designee.
(A) Prior to submission of a validation package to the OCS, or during the inactive status review process, the subject of the investigation shall be interviewed by the Institution Gang Investigator, or designee, and given an opportunity to be heard in regard to the source items used in the validation or inactive status review.
(B) Inmates shall be given written notice at least 24 hours in advance of the interview. The interview may be held earlier if the inmate waives, in writing, the 24-hour preparation period.
(C) All source items referenced in the validation or inactive status review shall be disclosed to the inmate at the time of notification. The inmate shall be given copies of all nonconfidential documents unless otherwise requested in writing by the inmate. Confidential information used in the validation or inactive status review shall be disclosed to the inmate via a CDC Form 1030 (Rev. 12/86), Confidential Information Disclosure Form.
(D) The interview shall be documented and include a record of the inmate's opinion on each of the source items used in the validation. Staff shall record this information and provide a written record to the inmate within fourteen (14) calendar days and prior to submission of the validation package to OCS.
(E) The documented interview shall be submitted with the validation package to the OCS for consideration to approve or reject the validation. The documented interview shall be submitted with the inactive status review to the OCS for consideration of the inmate's continued current active or inactive status.
(F) The inmate's mental health status and/or need for staff assistance shall be evaluated prior to interview. Staff assistance shall be assigned per guidelines set forth in section 3318.
(G) The validation and/or rejection of evidence relied upon shall be documented on a CDC Form 128-B2 (Rev. 5/95), Gang Validation/Rejection Review, and forwarded to the facility or parole region of origin for placement in the inmate/parolee's central file. Upon receipt of the CDC Form 128-B2, the Classification and Parole Representative or Parole Administrator I, or their designee, shall clearly note in some permanent manner upon the face of every document whether or not the item met validation requirements.
(g) The procedures relating to the initial validation or rejection of gang members or associates as described in this section shall be followed when reviewing the present status of an inactive gang member or associate. Verification of an inmate's active status shall be approved or rejected by the chief, OCS, or a designee. This determination shall be forwarded for placement in the inmate's central file.

*California State Prison-Sacramento*
First Level Reviewer Response
Appeal Log #SAC-C-08-01962
REAL (T-35897)
October 14, 2008
Page 4 of 4

Your request for a reason as to why your appeal dated July 4, 2008, was never answered.  This is GRANTED due to the reason is the Appeals Office never received an appeal with this date.

You are requesting that an Investigative Employee be appointed for the placement in Administrative Segregation. Also, that all proceedings to your placement are stayed, to allow the Investigative Employee to gather evidence for a defense on your behalf.  These issues are DENIED.

**APPEAL RESPONSE**

Based on the above review, your appeal is PARTIALLY GRANTED.

D. SIMS
Correctional Lieutenant

DS:ds

cc:     C-File
        Inmate Appeals Office

85

FSC-126

**RE:**    California State Prison-Sacramento (SAC)
Second Level Reviewer Response
Appeal Log #SAC-C-08-01962
Date:  December 22, 2008

Inmate:   REAL T-35897

## APPEAL ISSUE

Segregated Hearings

## APPEAL DECISION

Partially Granted

## APPEAL RESPONSE

K. M. Pool, Appeals Investigator, was assigned to review your appeal at the Second Level of Review (SLR).  All submitted documentation and supporting arguments have been considered, including your interview at the First Level of Review (FLR).  A thorough inquiry was conducted regarding the claim presented by you and evaluated in accordance with the Department Operations Manual, CSP-SAC's Operational Procedures (OP's) and the California Code of Regulations (CCR), Title 15.

## SUMMARY OF APPEAL

You claim you filed a previous appeal on July 4, 2008, regarding the following issue(s) for which there has been no reply.  You claim you have been denied an Investigative Employee (I.E.) for which you have requested in accordance with CCR Title 115 section 3337 (b) and 3338 (4)(b).  You claim, Captain (A) R. Ramos issued you a CDC 114D Administrative Segregation Unit Placement Notice on July 3, 2008, at which time, you claim you requested an I.E. was denied.  You claim you informed Captain (A) Ramos that you were entitled to an I.E., with no avail.  You claim the I.E. should have been assigned to assist you in preparing for a defense for a possible prison gang validation which was identified in the CDC 114D.  You claim Captain (A) Ramos violated your due process rights to present a defense to the allegations being used against you.

You are requesting the following: to be given a reason why your CDC 602 dated July 4, 2008, was not answered; to have an Investigative Employee (I.E.) appointed to investigate the allegation(s) for placement in Administrative Segregation (CDC-114); and to stay all proceedings for your placement in AD-SEG to allow the I.E. to provide a defense on your behalf.

## SUMMARY OF INQUIRY

The Department's rules regarding this issue are contained in CCR Sections 3045.1, 3270, 3320, 3335, 3336, 3337, 3338, 3341.5, 3375, and DOM Chapter 5 Section 52080.24, which state in part:

> ### CCR 3045.1. Timekeeping for Inmates in Administrative Segregation.
> *(a) A classification committee shall evaluate the reasons for an inmate's Administrative Segregation (AD-SEG.) placement to ensure appropriate work-time credits are awarded the inmate. If the placement was for: (1) A disciplinary infraction for which the finding was not guilty or pending an investigation where the inmate was released, the inmate shall retain their work/training group status at the time of their placement in AD-SEG unless otherwise impacted by a classification or disciplinary action.*

> ### CCR 3270. General Policy.
> *The primary objectives of the correctional institutions are to protect the public by safely keeping persons committed to the custody of the Director of Corrections, and to afford such persons with every reasonable opportunity and encouragement to participate in rehabilitative activities. Consistent effort will be made to insure the security of the institution and the effectiveness of the treatment programs within the framework of security and safety. Each employee must be trained to understand how physical facilities, degree of custody classification, personnel, and operative procedure affect the*

86

California State Prison-Sacramento (SAC)
Second Level Reviewer Response
Appeal Log #SAC-C-08-01962
Date:  December 22, 2008
Inmate:   REAL T-35897
Page 2

*maintenance of inmate custody and security.   The requirement of custodial security and of staff, inmate and public safety must take precedence over all other considerations in the operation of all the programs and activities of the institutions of the department.*

**CCR 3320. Hearing Procedures and Time Limitations.**
*(1) Providing the inmate with a copy of the classified CDC Form 115, CDC Form 115-A, and CDC Form 115-C (if applicable) may be delayed beyond 15 days, but no more than an additional 30 days for a total of 45 days, and shall not prohibit forfeiture of credits as a penalty for the misconduct when all of the following criteria are met: (A) The misconduct could be prosecuted as murder, attempted murder, or battery on staff. (B) An investigation is continuing to identify others involved in the misconduct. (b) The charges shall be heard within 30 days from the date the inmate is provided a classified copy of the CDC Form 115 unless the charges were referred for possible prosecution and the inmate has been granted a request for postponement of the disciplinary proceedings pending the outcome of the referral, if exceptional circumstances exist pursuant to section 3000, or the inmate is transferred out of the custody of the department.*

**CCR 3321. Confidential Material.**
*(a) The following types of information shall be classified as confidential: (1) Information which, if known to the inmate, would endanger the safety of any person. (2) Information which would jeopardize the security of the institution. (d) Filing confidential material. (3) Classification committee shall review the material filed in the confidential folder of each case considered. Any material not approved but designated confidential shall be removed from the folder and submitted to the designated staff person for review and determination.*

**CCR 3335.  Administrative Segregation.**
*(a) When an inmate's presence in an institution's general inmate population presents an immediate threat to the safety of the inmate or others, endangers institution security or jeopardizes the integrity of an investigation of an alleged serious misconduct or criminal activity, the inmate shall be immediately removed from general population and be placed in administrative segregation.*
*(c) An inmate's placement in segregation shall be reviewed by the Institutional Classification Committee (ICC) within 10 days of receipt in the unit and under provisions of section 3338(a) of these regulations.  Action shall be taken to retain the inmate in segregation or release to general population.*
*(e) Inmate Retention in administrative segregation beyond the initial segregation ICC hearing shall be referred fro CSR review and approval within 30 days and then thereafter in accordance with subsection (d) above. Initiating such reviews an ICC shall recommend one of the following possible outcomes:*
*(2) Transfer to a Segregated Program Housing Unit in accordance with section 3341.5.*
*(g) Inmates in segregation who have approved Security Housing Unit (SHU) term status, but are till awaiting other processes (i.e., court proceedings, adjudication of other rule violation reports, gang validation, etc.) shall be reviewed by ICC in accordance with the SHU classification process noted in subsection 3341.8.*

**CCR 3336.  Segregation Order.**
*Authority to order an inmate to be placed in administrative segregation, before such action is considered and ordered by a classification hearing, may not be delegated below the staff level of correctional lieutenant except when a lower level staff member is the highest-ranking official on duty.*
*(a) The reasons for ordering an inmate's placement in administrative segregation will be clearly documented on a CDC Form 114-D (Order and Hearing on Segregated Housing) by the official ordering the action at the time the action is taken.*
*(d) A copy of the CDC Form 114-D will, with the "order" portion of the form completed, will if practical, be given to the inmate prior to placement in administrative segregation but no later than 48 hours after such placement*

87

California State Prison-Sacramento (SAC)
Second Level Reviewer Response
Appeal Log #SAC-C-08-01962
Date: December 22, 2008
Inmate: REAL T-35897
Page 3

**CCR 3337. Review of Segregation Order.**
*On the first work day following an inmate's placement in administrative segregation, designated staff at not less than the level of correctional captain will review the order portion of the CDC Form 114-D. If retention in administrative segregation is approved at this review, the following determinations will be made at this level:*
*(b) Determine the inmate's desire to call witnesses or submit other documentary evidence. If the inmate request the presence of witnesses or submission of documentary evidence at a classification hearing on the reason or need for retention in segregated housing, an investigative employee will be assigned to the case. A request to call witnesses must be submitted in writing by the inmate.*

**CCR 3338. Hearing on Segregated Housing Order.**
*(a) A classification hearing for consideration and determination of the need to retain an inmate in segregated housing, for the reasons set forth in a segregation order, CDC Form 114-D, will be held as soon as it is practical and possible to do so, but in no case longer than 10 days from the date the inmate was initially placed in segregated housing.*
*(b) The hearing on an administrative segregation order, CDC Form 114-D, may be conducted by a single classification hearing officer (facility captain, correctional captain, correctional counselor III, or experienced correctional lieutenant, correctional program supervisor III, or correctional counselor II). This does not preclude the use of classification committees or subcommittees of classification for such hearings if such committee hearings can be scheduled and conducted within the time constraints required for such hearings. This option is left to the discretion of each warden and superintendent.*
*(c) The inmate will be present at the initial hearing on an administrative segregation order except under the applicable conditions as described in section 3320(g) of the director's rules relating to disciplinary hearings.*
*(d) The primary purpose of the initial hearing on an administrative segregation order, CDC Form 114-D, is to determine the need for continued retention in administrative segregation pending criminal prosecution, disciplinary proceedings, the resolution of non-disciplinary issues or considerations, and reclassification by the institution's main classification committee for assignment to a specialized security housing unit, or an action on the main classification committee's recommendation for transfer to an institution with appropriate specialized security housing units.*

**CCR 3341.5. Segregated Program Housing Units.**
*Special housing units are designated for extended term programming inmates not suited for general population. Placement into and release from these units requires approval by a classification staff representative (CSR).*

**CCR 3375. Classification Process**
*(b) The classification process shall take into consideration the inmate's needs, interests and desires, his/her behavior and placement score in keeping with the department and institution's/facility's program and security missions and public safety.*
*(c) Each determination affecting an inmate's placement within a institution/facility, transfer between facilities, program participation, privilege groups, or custody designation shall be made by a classification committee composed of staff knowledgeable in the classification process.*

**California Department of Corrections and Rehabilitation, Departmental Operations Manual, Chapter 5, Section 52080.24, AD-SEG.**
*When an inmate's presence in an institution's inmate general population presents an immediate threat to the safety of the inmate or others, endangers institution security or jeopardizes the integrity of an investigation of an alleged serious misconduct or criminal activity, the inmate shall be immediately removed from general population and be placed in AD-SEG. AD-SEG may be accomplished by confinement in a designated segregation unit or, in an emergency, to any single cell unit capable of providing secure segregation. Temporary AD-SEG: pending a classification committee determination of the inmate's housing assignment, which may include assignment to one*

California State Prison-Sacramento (SAC)
Second Level Reviewer Response
Appeal Log #SAC-C-08-01962
Date:  December 22, 2008
Inmate:   REAL T-35897
Page 4

*of the segregation program units or to the inmate general population, an inmate may be placed in a designated temporary housing unit.   An inmate's placement in temporary segregation shall be reviewed by the Institutional Classification Committee (ICC) within ten days of receipt in the unit. Action shall be taken to retain the inmate in temporary segregation or release to general population. ICC shall review the inmate at least every 30 days thereafter until the inmate is removed from temporary segregation.  ICC shall refer for CSR review and approval any case in which an inmate is retained in temporary AD-SEG for more than 30 days beyond initial ICC action.  ICC shall designate an anticipated length of time needed to complete the investigation or conclude court proceedings. ICC shall recommend one of the following: Transfer to another facility or Continue in temporary AD-SEG pending completion of an investigation or resolution of court proceedings.*

The FLR was comprehensive and appropriate.  All your issues were noted and your concerns were addressed. The FLR noted that your primary reason for this appeal was to establish your due process rights were violated and that you should be assigned an I.E. to help present a defense for the reason(s) for a possible prison gang validation.

An inquiry into this matter was conducted by the SLR on December 22, 2008.  You provided no additional information or documentation during the FLR that would identify any violation(s) of the rules and regulations regarding the issue(s) you are appealing.

The SLR notes, the FLR identified that you signed the CDC 114D under the "inmate Waivers" section, indicating you waived the right to 72 hours preparation time.  The SLR notes, the FLR identified the CDC 114D does not reflect any notes under the Investigative Employee (I.E.) that you requested an I.E. at the time of the administrative review as you alleged in your appeal and FLR interview.

Your request to be given a reason why your CDC 602 dated July 4, 2008, was not answered is granted, based on the FLR identified that the CSP-SAC Appeals office has no record of receiving a CDC 602 of this date and was unable to establish if the CDC 602 actually existed.  Your request to be appointed an I.E. to assist you in the allegations stated for the reason(s) of Administrative Segregation placement is denied, based on the FLR identified that you signed your CDC 114D in the inmate waivers section and could not established that you requested an I.E. at the administrative review of your CDC 114D.  Your Request to have all proceedings for your AD-SEG placement stayed to allow an I.E. provide a defense on your behalf is denied, based on it was not established by the FLR that you requested an I.E. and that you were provided all evidence that was being used against you, was provided to you by the Institutional Gang Investigator.

All submitted documentation and supporting arguments have been considered, and you have failed to raise any significant new issues or compelling information in appealing this matter to the SLR.  In closing, CDCR clearly recognizes all your constitutional right, which is established, and you are entitled in accordance with State and Federal law.  After close review of this matter, it has been established, staff acted appropriately and in accordance with state law, the CCR, and the DOM.

## APPEAL RESPONSE

For the reasons cited above, your appeal is **PARTIALLY GRANTED.**


JAMES WALKER
Warden


JW:   kmp

cc:    Inmate Appeals Unit, Central File

84

DISTRIBUTION:
WHITE - CENTRAL FILE
BLUE - INMATE (2ND COPY)
GREEN - ASU
CANARY - WARDEN
PINK - HEALTH CARE MGR
GOLDENROE - INMATE (1ST COPY)

| INMATE'S NAME | CDC NUMBER |
|---|---|
| **REAL, Randy** (HISP/EME) CSP-SAC. | **T-35897** |

## REASON(S) FOR PLACEMENT *(PART A)*

[X] PRESENTS AN IMMEDIATE THREAT TO THE SAFETY OF SELF OR OTHERS

[ ] JEOPARDIZES INTEGRITY OF AN INVESTIGATION OF ALLEGED SERIOUS MISCONDUCT OR CRIMINAL ACTIVITY

[X] ENDANGERS INSTITUTION SECURITY  [ ] UPON RELEASE FROM SEGREGATION, NO BED AVAILABLE IN GENERAL POPULATION

DESCRIPTION OF CIRCUMSTANCES WHICH SUPPORT THE REASON(S) FOR PLACEMENT: **You are being placed in the Administrative Segregation Unit (ASU) on Wednesday, July 02, 2008, based on information that you are actively involved with the Mexican Mafia (EME) prison gang. Specifically, on 07-02-08, the CSP-SAC Institutional Gang Investigations (IGI) Unit completed an investigation in which the following documents: Confidential Memorandum (CM) dated 06-02-08; CM dated 09-26-07; CM dated 12-04-06; CDCR 128-B dated 07-11-05; CM dated 02-26-03 and CM dated 07-17-02, identify you as conducting activities indicative of an EME associate. Based on the information above, a validation package will be submitted to the Office of Correctional Safety (OCS). You will be seen by the Institutional Classification Committee (ICC) within ten (10) days for appropriate program and housing considerations.**
**MEDICATION: YES/NO ** EOP: YES/NO ** CCCMS: YES/NO ** SINGLE CELL YES/NO**

| [ ] CONTINUED ON ATTACHED PAGE (CHECK IF ADDITIONAL) [✓] IF CONFIDENTIAL INFORMATION USED, DATE OF DISCLOSURE: 07/02/08 |
|---|

| DATE OF ASU PLACEMENT | SEGREGATION AUTHORITY'S PRINTED NAME | SIGNATURE | TITLE |
|---|---|---|---|
| **July 02, 2008** | **T. S. Ventimiglia** | | **ISU Lt. 2/W** |

| DATE NOTICE SERVED | TIME SERVED | PRINTED NAME OF STAFF SERVING ASU PLACEMENT NOTICE | SIGNATURE | STAFF'S TITLE |
|---|---|---|---|---|
| **July 02, 2008** | 0920 | **T. S. Ventimiglia** | | Lt |

| [X] INMATE REFUSED TO SIGN | INMATE SIGNATURE | CDC NUMBER |
|---|---|---|
| RTS | | T-35897 |

## ADMINISTRATIVE REVIEW (PART B)
*The following to be completed during the initial administrative review by Captain or higher by the first working day following placement*

| STAFF ASSISTANT (SA) | | INVESTIGATIVE EMPLOYEE (IE) | |
|---|---|---|---|
| STAFF ASSISTANT NAME  N/A | TITLE | INVESTIGATIVE EMPLOYEE'S NAME  N/A | TITLE |

### IS THIS INMATE:

| | | | | |
|---|---|---|---|---|
| LITERATE? | [✓] YES [ ] NO | EVIDENCE COLLECTION BY IE UNNECESSARY | [✓] YES | [ ] NO |
| FLUENT IN ENGLISH? | [✓] YES [ ] NO | DECLINED ANY INVESTIGATIVE EMPLOYEE | [ ] YES | [✓] NO |
| ABLE TO COMPREHEND ISSUES? | [✓] YES [ ] NO | ASU PLACEMENT IS FOR DISCIPLINARY REASONS | [ ] YES | [✓] NO |
| FREE OF MENTAL HEALTH SERVICES DELIVERY SYSTEM NEEDS? | [✓] YES [ ] NO | DECLINED 1ST INVESTIGATIVE EMPLOYEE ASSIGNED | [ ] YES | [ ] NO |
| DECLINING FIRST STAFF ASSISTANT ASSIGNED? | [ ] YES  N/A | | | |

Any "NO" requires SA assignment   [X] NOT ASSIGNED
Any "NO" may require IE assignment   [X] NOT ASSIGNED

## INMATE WAIVERS

[ ] INMATE WAIVES OR DECLINES INTERVIEW WITH ADMINISTRATIVE REVIEWER   [ ] INMATE WAIVES RIGHT TO 72 HOURS PREPARATION TIME

| [ ] NO WITNESSES REQUESTED BY INMATE | INMATE SIGNATURE | DATE 7-3-08 |
|---|---|---|

## WITNESSES REQUESTED FOR HEARING

| WITNESS' NAME  N/A | TITLE/CDC NUMBER | WITNESS' NAME  N/A | TITLE/CDC NUMBER |
|---|---|---|---|
| WITNESS' NAME | TITLE/CDC NUMBER | WITNESS' NAME | TITLE/CDC NUMBER |

**DECISION:** [ ] RELEASE TO UNIT/FACILITY____ [X] RETAIN PENDING ICC REVIEW [X] DOUBLE CELL [ ] SINGLE CELL PENDING ICC

REASON FOR DECISION: *Inmate presents an immediate threat to staff and institutional security.*

| ADMINISTRATIVE REVIEWER'S PRINTED NAME  R. Ramos | TITLE  Captain (A) | DATE OF REVIEW  7/3/08 | TIME  0850 | ADMINISTRATIVE REVIEWER'S SIGNATURE  R. Ramos |
|---|---|---|---|---|
| CORRECTIONAL ADMINISTRATOR'S PRINTED NAME (if necessary)  D. BAUGHMAN | TITLE  AW(a) | CORRECTIONAL ADMINISTRATOR'S CO-SIGNATURE (if necessary) | | DATE OF REVIEW  7/3/08 |

**See chronological Classification Review document (CDC 128 - G) for specific hearing information**

STATE OF CALIFORNIA                                                    DEPARTMENT OF CORRECTIONS
CDC 1030 (07/2000)

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER   **T-35897**            INMATE NAME:   **REAL, Randy**

1) Use of Confidential Information.

    Information received from a confidential source(s) has been considered in the:

    a)  CDC-115, Disciplinary Report dated  **N/A**                                    submitted by

                                    STAFF NAME, TITLE

    b)  CDC-114-D, Order and Hearing for Placement in Segregated Housing dated   **07/02/08**   .

2) Reliability of Source.

    The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

    This information is considered reliable because:

    a) ☐  This source has previously provided confidential information, which has proven to be true.

    b) ☐  This source participated in and successfully completed a Polygraph examination.

    c) ☐  More than one source independently provided the same information.

    d) ☒  This source incriminated himself/herself in a criminal activity at the time of providing the information.

    e) ☒  Part of the information provided by the source(s) has already proven to be true.

    f) ☒  Other (Explain)

        Disclosure of this information would threaten the safety and security of the institution.   .

3) Disclosure of information received.

## The information received indicated the following:

A Confidential Memorandum dated June 2, 2008, authored by Correctional Officer G. Parker (SAC) identified **REAL** by his gang moniker, CDCR #, and geographical gang neighborhood, on a list of active EME gang associates housed in the Stand Alone (SA) Administrative Segregation Unit (ASU) at SAC. Specifically, the list was discovered on May 15, 2008, during a cell search of inmate **GASCON, Rene (T-80383) aka "Bouncer/ Smith", a validated EME associate**. These lists are commonly used by the leadership of the EME prison gang as a means of monitoring the location of the EME subservient inmates throughout the California prison system.

(If additional space needed, attach another sheet.)

4) Type and current location of documentation, (for example: CDC-128-B of 5-15-86 in the confidential material folder).

    Confidential Memorandum dated June 2, 2008, authored by Correctional G. Parker is located in the confidential section of REAL's Central File.

**Sergeant J. Stewart**                                    **07/02/2008**
        STAFF SIGNATURE, TITLE                                      DATE DISCLOSED

DISTRIBUTION: WHITE -- Central File;  GREEN -- Inmate;  YELLOW -- Institution Use

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER ___T-35897___     INMATE NAME: ___REAL, Randy___

1) Use of Confidential Information.

   Information received from a confidential source(s) has been considered in the:

   a) CDC-115, Disciplinary Report dated ___N/A___ submitted by

   _____ .
   STAFF NAME, TITLE

   b) CDC-114-D, Order and Hearing for Placement in Segregated Housing dated ___07/02/08___ .

2) Reliability of Source.

   The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.
   This information is considered reliable because:

   a)☐ This source has previously provided confidential information, which has proven to be true.

   b)☐ This source participated in and successfully completed a Polygraph examination.

   c)☐ More than one source independently provided the same information.

   d)☒ This source incriminated himself/herself in a criminal activity at the time of providing the information.

   e)☒ Part of the information provided by the source(s) has already proven to be true.

   f)☒ Other (Explain)

      Disclosure of this information would threaten the safety and security of the institution.                .

3) Disclosure of information received.

   ### The information received indicated the following:

   A Confidential Memorandum dated September 26, 2007, authored by Correctional Officer G. Parker (SAC) identified **REAL** by his gang moniker, CDCR #, and geographical gang neighborhood, on a list of active EME gang associates housed in the SA ASU at SAC. Specifically, the list was discovered on September 4, 2007, during a cell search of inmate **BANUELOS, Eseubio (C-48117) aka "Peaches", a validated EME associate**. These lists are commonly used by the leadership of the EME prison gang as a means of monitoring the location of the EME subservient inmates throughout the California prison system.

   (If additional space needed, attach another sheet.)

4) Type and current location of documentation, (for example: CDC-128-B of 5-15-86 in the confidential material folder). _____

   Confidential Memorandum dated September 26, 2007, authored by Correctional G. Parker is located in the confidential section of REAL's Central File.

__Sergeant J. Stewart__ _____     ___07/02/2008___
STAFF SIGNATURE, TITLE                              DATE DISCLOSED

DISTRIBUTION: WHITE -- Central File;  GREEN -- Inmate;  YELLOW -- Institution Use

42

STATE OF CALIFORNIA                                                    DEPARTMENT OF CORRECTIONS
CDC 1030 (07/2000)

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER   **T-35897**              INMATE NAME:   **REAL, Randy**

1) Use of Confidential Information.

   Information received from a confidential source(s) has been considered in the:

   a) CDC-115, Disciplinary Report dated   **N/A**                                        submitted by

   _____
   STAFF NAME, TITLE

   b) CDC-114-D, Order and Hearing for Placement in Segregated Housing dated   07/02/08   .

2) Reliability of Source.

   The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

   This information is considered reliable because:

   a) ☐ This source has previously provided confidential information, which has proven to be true.

   b) ☐ This source participated in and successfully completed a Polygraph examination.

   c) ☐ More than one source independently provided the same information.

   d) ☐ This source incriminated himself/herself in a criminal activity at the time of providing the information.

   e) ☒ Part of the information provided by the source(s) has already proven to be true.

   f) ☒ Other (Explain)

      Disclosure of this information would threaten the safety and security of the institution.   .

3) Disclosure of information received.

   **The information received indicated the following:**

   A Confidential Memorandum dated December 4, 2006, authored by Correctional Officer G. Parker (SAC) identified **REAL** by his gang moniker, CDCR #, and geographical gang neighborhood, on a list of active EME gang associates housed in the SA ASU at SAC. Specifically, the list was discovered on November 30, 2006, in the SAC ASU SA during a cell search of inmate **SALAZAR, Victor (E-68204) aka "Smiley", a validated EME associate**. These lists are commonly used by the leadership of the EME prison gang as a means of monitoring the location of the EME subservient inmates throughout the California prison system.

   (If additional space needed, attach another sheet.)

4) Type and current location of documentation, (for example: CDC-128-B of 5-15-86 in the confidential material folder). _____

   Confidential Memorandum dated December 4, 2006, authored by Correctional G. Parker is located in the confidential section of REAL's Central File.

**Sergeant J. Stewart**                                    **07/02/08**
            STAFF SIGNATURE, TITLE                                    DATE DISCLOSED

DISTRIBUTION: WHITE -- Central File; GREEN -- Inmate; YELLOW -- Institution Use

93

STATE OF CALIFORNIA                                                          DEPARTMENT OF CORRECTIONS
CDC 1030 (07/2000)

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER   **T-35897**                      INMATE NAME:   **REAL, Randy**

1) Use of Confidential Information.

   Information received from a confidential source(s) has been considered in the:

   a)  CDC-115, Disciplinary Report dated   **N/A**                                    submitted by

   _____
                                      STAFF NAME, TITLE

   b)  CDC-114-D, Order and Hearing for Placement in Segregated Housing dated   07/02/08   .

2) Reliability of Source.

   The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.
   This information is considered reliable because:

   a)☐ This source has previously provided confidential information, which has proven to be true.

   b)☐ This source participated in and successfully completed a Polygraph examination.

   c)☐ More than one source independently provided the same information.

   d)☐ This source incriminated himself/herself in a criminal activity at the time of providing the information.

   e)☒ Part of the information provided by the source(s) has already proven to be true.

   f)☒ Other (Explain)

      Disclosure of this information would threaten the safety and security of the institution.   .

3) Disclosure of information received.

   ### The information received indicated the following:

   A Confidential Memorandum, dated February 26, 2003, authored by Correctional Officer R. Parrilla (CCI)
   identified **REAL** as being responsible for conducting the "Roll Call" of EME subservient inmates housed at CCI.
   The "Roll Call" is a way for EME members and associates to greet each other every morning and evening and is
   conducted on a daily basis in the ASU and SHU.  **REAL** was identified by a validated associate of the EME
   prison gang as being respected enough to be responsible for the "Roll Call" at CCI.

   (If additional space needed, attach another sheet.)

4)  Type and current location of documentation, (for example: CDC-128-B of 5-15-86 in the confidential material

folder).  _____

   Confidential Memorandum dated February 26, 2003, authored by Correctional R. Parrilla is located in the confidential
   section of REAL's Central File.

**Sergeant J. Stewart**                                              **07/02/2008**
            STAFF SIGNATURE, TITLE                                    DATE DISCLOSED

94

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER    **T-35897**                    INMATE NAME:    **REAL, Randy**

1) Use of Confidential Information.

   Information received from a confidential source(s) has been considered in the:

   a) CDC-115, Disciplinary Report dated  **N/A**                                                           submitted by

   _____

                                    STAFF NAME, TITLE

   b) CDC-114-D, Order and Hearing for Placement in Segregated Housing dated    07/02/08    .

2) Reliability of Source.

   The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

   This information is considered reliable because:

   a) ☐ This source has previously provided confidential information, which has proven to be true.

   b) ☐ This source participated in and successfully completed a Polygraph examination.

   c) ☐ More than one source independently provided the same information.

   d) ☐ This source incriminated himself/herself in a criminal activity at the time of providing the information.

   e) ☒ Part of the information provided by the source(s) has already proven to be true.

   f) ☒ Other (Explain)

       Disclosure of this information would threaten the safety and security of the institution.    .

3) Disclosure of information received.

   **The information received indicated the following:**
   A Confidential Memorandum, dated July 17, 2002, authored by Correctional Officer R. Parrilla (CCI) identified REAL as committing *Battery On Inmate With The Use Of A Weapon* on March 4, 2002, on inmate **RANGLE, Randy (H-88305) aka "Malo"**,  on behalf of a validated EME Member housed at CCI.  Specifically, REAL committed the Battery on RANGLE due to a conflict and power struggle between **CRUZ, Johnny (J-38316) aka "Capone", a validated EME associate,** wanting to take control over one of the CCI Facilities.  **CRUZ** was using **RANGLE** as his representative to try and take control of the Facility without the permission of **ACUNA, Victor (D-33299) aka "Terco", a validated EME Member** housed at CCI SHU.  The report identified **REAL** as conducting the Battery on **RANGLE** with a weapon on the orders of EME member **ACUNA**.

                          (If additional space needed, attach another sheet.)

4) Type and current location of documentation, (for example: CDC-128-B of 5-15-86 in the confidential material folder).  _____

   Confidential Memorandum dated July 17, 2002, authored by Correctional R. Parrilla is located in the confidential section of REAL's Central File.

**Sergeant J. Stewart**                                                **07/02/2008**
                    STAFF SIGNATURE, TITLE                                     DATE DISCLOSED

95

On Thursday, April 14, 2005, while assigned as the Assistant Institutional Gang Investigator, position #266351, I reviewed the address book belonging to Inmate **Real, Randy, T-35897**, aka "Shadow" & "Tatas", non-validated member of the "Sureno - East Side Duarte" disruptive group. The address book was reviewed in the Facility IV-B, Receiving and Release (R&R), were all of **Real'** personal property was being stored. During a review of **Real'** address book, I found the name and mail-drop address of a validated associate of the Mexican Mafia (EME) prison gang.

Found was the name and address of Jesse Enriquez, 2456 Lyndale Ave., Pomona, Ca. 91786. This is identified as Inmate **Enriquez, Jesse, K-67325**, aka "Bam", validated associate of the Mexican Mafia (EME) prison gang, who is currently housed in the Facility IV-A, Security Housing Unit (SHU). After reviewing **Enriquez'** CDC 120 Visiting Card, I found that the address of 2456 Lyndale Ave., Pomona, Ca. 91786, belongs to the mother and father of Inmate **Enriquez**.



Since inmates are not allowed to correspond directly with one another, an inmate from one Institution will send a correspondence to a person on the streets (mail-drop), who will then forward the correspondence to an inmate housed at another Institution. This is common practice for members and associates of prison gangs. This is done so that members and associates of prison gangs can relay messages to one another regarding the activities of their organization without being detected by Custody Staff. By **Real** being in possession of this mail-drop address, he is showing his association with a validated associate of the EME prison gang. Also by possessing this address, **Real** has the ability to directly correspond with an associate of the EME prison gang. Therefore, this chrono should be used as one source (written material / association) towards validating **Real, Randy, T-35897**, as an associate of the Mexican Mafia (EME) prison gang. **Real'** and **Enriquez'** activities and behavior should be closely monitored and documented whenever gang activity and association are present.

This chrono should be placed in the following central files:

| NAME | NUMBER | MONIKER | GANG STATUS |
|------|--------|---------|-------------|
| Enriquez, Jesse | K-67325 | Bam | Validated Associate EME Prison Gang |
| Real, Randy | T-35897 | Tatas | Non-Validated E/S Duarte Disruptive Group |

R. Parrilla
Correctional Officer
Assistant Institutional Gang Investigator

(CCI / Tehachapi)
DATE: 7/11/2005

**GANG INFORMATION / IGI REVIEW (written material)**

CDC 128-B

96



REAL, T-35897
128 B
7/11/2005

91



REAL, T-35897
128 8
7/11/2005

98

ADMINISTRATIVE SEGREGATION UNIT PLACEMENT NOTICE
CDC 114-D (Rev 10/98)

| DISTRIBUTION | |
|---|---|
| WHITE - CENTRAL FILE | CANARY - WARDEN |
| BLUE - INMATE (2ND COPY) | PINK - HEALTH CARE MGR |
| GREEN - ASU | GOLDENROD - INMATE (1ST COPY) |

| INMATE'S NAME | CDC NUMBER |
|---|---|
| REAL, Randy  (HISP/EME) CSP-SAC. | T-35897 |

## REASON(S) FOR PLACEMENT (PART A)

[X] PRESENTS AN IMMEDIATE THREAT TO THE SAFETY OF SELF OR OTHERS

[ ] JEOPARDIZES INTEGRITY OF AN INVESTIGATION OF ALLEGED SERIOUS MISCONDUCT OR CRIMINAL ACTIVITY

[X] ENDANGERS INSTITUTION SECURITY        [ ] UPON RELEASE FROM SEGREGATION, NO BED AVAILABLE IN GENERAL POPULATION

DESCRIPTION OF CIRCUMSTANCES WHICH SUPPORT THE REASON(S) FOR PLACEMENT:    **You are being placed in the Administrative Segregation Unit (ASU) on Wednesday, July 02, 2008, based on information that you are actively involved with the Mexican Mafia (EME) prison gang. Specifically, on 07-02-08, the CSP-SAC Institutional Gang Investigations (IGI) Unit completed an investigation in which the following documents: Confidential Memorandum (CM) dated 06-02-08; CM dated 09-26-07; CM dated 12-04-06; CDCR 128-B dated 07-11-05; CM dated 02-26-03 and CM dated 07-17-02, identify you as conducting activities indicative of an EME associate. Based on the information above, a validation package will be submitted to the Office of Correctional Safety (OCS). You will be seen by the Institutional Classification Committee (ICC) within ten (10) days for appropriate program and housing considerations.**
MEDICATION:   YES/NO, **     EOP:  YES/NO, **    CCCMS:  YES/NO **    SINGLE CELL  YES/NO

| [ ] CONTINUED ON ATTACHED PAGE (CHECK IF ADDITIONAL) [N] | IF CONFIDENTIAL INFORMATION USED, DATE OF DISCLOSURE: 07/21/08 | |
|---|---|---|
| DATE OF ASU PLACEMENT  July 02, 2008 | SEGREGATION AUTHORITY'S PRINTED NAME  T. S. Ventimiglia | SIGNATURE | TITLE  ISU Lt, 2/W |
| DATE NOTICE SERVED  July 02, 2008 | TIME SERVED  0850 | PRINTED NAME OF STAFF SERVING ASU PLACEMENT NOTICE  T. S. Ventimiglia | SIGNATURE | STAFF'S TITLE  LT |
| [X] INMATE REFUSED TO SIGN  R.J.S. | | INMATE SIGNATURE | CDC NUMBER  T-35897 |

## ADMINISTRATIVE REVIEW (PART B)
*The following to be completed during the initial administrative review by Captain or higher by the first working day following placement*

| STAFF ASSISTANT (SA) | | INVESTIGATIVE EMPLOYEE (I.) | |
|---|---|---|---|
| STAFF ASSISTANT NAME  N A | TITLE | INVESTIGATIVE EMPLOYEE'S NAME  N A | TITLE |

**IS THIS INMATE:**

| | | | |
|---|---|---|---|
| LITERATE? | [X] YES  [ ] NO | EVIDENCE COLLECTION BY IE UNNECESSARY | [X] YES  [ ] NO |
| FLUENT IN ENGLISH? | [X] YES  [ ] NO | DECLINED ANY INVESTIGATIVE EMPLOYEE | [ ] YES  [X] NO |
| ABLE TO COMPREHEND ISSUES? | [X] YES  [ ] NO | ASU PLACEMENT IS FOR DISCIPLINARY REASONS | [ ] YES  [X] NO |
| FREE OF MENTAL HEALTH SERVICES DELIVERY SYSTEM NEEDS? | [ ] YES  [ ] NO | DECLINED 1ST INVESTIGATIVE EMPLOYEE ASSIGNED | [ ] YES |
| DECLINING FIRST STAFF ASSISTANT ASSIGNED? | [ ] YES  N/A | | |

Any "NO" requires SA assignment          Any "NO" may require IE assignment
[X] NOT ASSIGNED                              [X] NOT ASSIGNED

## INMATE WAIVERS

[ ] INMATE WAIVES OR DECLINES INTERVIEW WITH ADMINISTRATIVE REVIEWER    [ ] INMATE WAIVES RIGHT TO 72 HOURS PREPARATION TIME

[ ] NO WITNESSES REQUESTED BY INMATE     | INMATE SIGNATURE | DATE 7-3-08 |

## WITNESSES REQUESTED FOR HEARING

| WITNESS' NAME  N A | TITLE/CDC NUMBER | WITNESS' NAME  N A | TITLE/CDC NUMBER |
|---|---|---|---|
| WITNESS' NAME | TITLE/CDC NUMBER | WITNESS' NAME | TITLE/CDC NUMBER |

**DECISION:** [ ] RELEASE TO UNIT/FACILITY _____  [X] RETAIN PENDING ICC REVIEW  [X] DOUBLE CELL  [ ] SINGLE CELL PENDING ICC

REASON FOR DECISION:    *Inmate presents an immediate threat to staff and institutional security.*

| ADMINISTRATIVE REVIEWER'S PRINTED NAME  R. Ramos | TITLE  Captain (A) | DATE OF REVIEW  7/3/08 | TIME  0850 | ADMINISTRATIVE REVIEWER'S SIGNATURE  R. Ramos |
|---|---|---|---|---|
| CORRECTIONAL ADMINISTRATOR'S PRINTED NAME (if necessary) | | CORRECTIONAL ADMINISTRATOR'S CO-SIGNATURE (if necessary) | | DATE OF REVIEW |

See chronological Classification Review document (CDC 128 - G) for specific hearing information

69

# EXHIBIT COVER PAGE



E

EXHIBIT

Description if this exhibit:

*CSP - SACRAMENTO AND CCI - TEHACHAPI*
*Committee Action Summary*

Number of pages to this exhibit: ___4___ pages.

**JURISDICTION**: (Check One Only)

☐ MUNICIPAL COURT
☐ SUPERIOR COURT
☐ APPELLATE COURT
☐ STATE SUPREME COURT
☒ UNITED STATES DISTRICT COURT
☐ STATE CIRCUIT COURT
☐ UNITES STATES SUPREME COURT
☐ GRAND JURY

100

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS
CDC 128G (Rev. 2/69)

Housing: FB2-104

NO.: T-35897 NAME : REAL MEPD 5/10/2056 55 YRS TO LIFE
Custody: CLO A                    WG/PG: A2/B

PS: 115        REV: 11/06
Assignment: SS & ACAD W/L; I/R;
RELEASE TO C-FAC, SET CUST @
CLO A, B/O ENEMY IN B-FAC;
FD/FHC; DBL CELL; TABE NIF;
NGPC; NBDC

REAL appeared before B-FAC Initial Classification Committee for the purpose of program determination. The CDC 128-B-1 dated 3/10/06 was issued 72 hours prior to this classification hearing. See CDC 128-B-1 which is in file.

CASE FACTORS: S is a Hispanic, 1st-termer, received in CDC on 11/16/01 from Los Angeles County subsequent to a conviction for Attempted Murder 1st. DOB: 2/3/79. S received a sentence of 55 yrs to Life. S was received at SAC on 3/8/06 from CCI-IV for Level IV placement based upon adverse transfer. Sex Offenses: None. SVP applicable: No. S does not meet the MDO Screening offense criteria. Arson: None. Registration: None. PC 296 (DNA): Has been completed. Notification: PC 296 & 3058.6. Escapes: None. Holds: None. Enemies: Refer to CDC 812/812C. Gangs/Disruptive Group: Duarte Eastsider, AKA "Shadow". The MCSF Screening Form is in file. The MCSF Screening Form was last updated on 3/16/06. Disciplinary History Overview: Battery on I/M 3/15/05; Destruction to State Property 3/3/04; Battery on I/M W/Weapon 11/20/02, 3/4/02; Mutual Combat 11/16/01. S is eligible for 180 design Level IV housing based upon A1. Medical: Full Duty/Food Handling clear, per CDC 128-C dated 11/20/05. DPP issues: None. DDP issues: S is designated NCF per CDC 128C-2 completed on 12/7/05. Psych: None noted, per CDC 128-C dated 12/7/05. Mental health screening completed on 12/7/05. TB Alert Code: 22, per CDC 128-C dated 5/9/05. Work Skills: None. Violence Exclusion Review: Does Apply CSR endorsed. S is not eligible for Camp, MSF, CCRC, CCF, MCCF, Restitution Center, or Substance Abuse Program placement based upon Life term. Confidential Information: Present and Reviewed. Committee notes that S's I.D. photo in C-file is current. Restitution fines have been queried in DDPS. DDPS indicates a balance of unknown. Release Program Study has not been completed and mailed based upon Life term. County of last legal residence is Los Angeles. S does not have a Discharge number. Next BPT Hearing: INIT and next anticipated BPT Hearing date is scheduled for 4/2055.

Program Expectations: The "NO WARNING SHOT" & "NO TOBACCO PRODUCTS" policies were explained.

Inmate Comments: S agrees with committee's actions.

Additional Comments: TABE score: Reading: None.

Committee Action: Committee acts to release from Orientation status to C-FAC. Committee acts to place S on double cell status based upon lack of sufficient documentation to warrant single cell status. Committee acts to set custody at CLO A based on S is not within 7 yrs of MEPD. S's WG/PG will be A2/B effective 3/8/06. Place on the SS & ACAD W/L's with no gate pass clearance and no back dock clearance based upon institutional needs. S's next regularly scheduled Annual Review is scheduled for 11/06.

CONCUR: _____
D. BAUGHMAN, FC

D. CADE, CCI/RECORDER/jrb
D. BAUGHMAN, FC/CHAIRPERSON
R. CARTER, CCII

COMMITTEE MEMBERS: D. PADILLA, LT/I/M ASGT; G. SINSLEY, EDU

cc: Inmate, CCRA

3/16/06            B21-3-16            B FAC: INIT            SAC

STATE OF CALIFORNIA

**INMATE COPY**

DEPARTMENT OF CORRECTIONS
CDC-128G (REV.2/69)

**NO.: T35897**  **NAME: REAL**  **HOUSING: 7A-206**

**Custody: MAX**  **CS: 115**  **LEVEL: IV**  **WG/PG: D1/D**  **Eff. Date: 3/15/05**
**Type/Release Date: MEPD: 5/10/2056**
**TT: 55-LIFE**  **BPT: IPCH: 4/1/2055**  **Assignment/Action Taken: 90 ASU REVIEW/IN PERSON/WAIVE**
**S.A./RETAIN ASU PENDING TX SAC-IV-180/REF IEM-WA EX YD**
**D/C/A2B & CLO-B UPON TX**

Inmate Real's was seen by ICC in person this date for the purpose of **PROGRAM REVIEW**. Subject stated that he was in good health, and was ready to proceed. Subject waived Staff Assistant as the Subject is not illiterate and the issues are not complex. Effective communication was established by communicating in English and having subject explain his understanding of the issues. Subject was originally placed in ASU 7/31/05 at CCI-IVB upon the completion of SHU term. Subject was subsequently transferred to CCI-IVA ASU and endorsed for transfer to SAC-IV 180. Subject is presently awaiting transfer.

**COMMITTEE DECISION:** After review of all case factors, ICC elects to retain subject in ASU pending transfer to SAC-IV-180 as endorsed per CSR action dated 12/20/05. Committee notes that transfer is valid until 4/19/06. Subjects WG/PG will be CLO B and A2B upon transfer. Exercise yard categories were discussed and explained with the Subject. Committee acts to reaffirm the Subject on the IEM-WA Exercise Yard based on Inmate's request and Committee review of the Central File. Committee reviewed Subject's Central File to determine housing assignment. Subject meets the criteria for Double Cell Status based on no in-cell misconduct or predatory behavior. Subject is in agreement with both his yard and cell status. Custody MAX is appropriate. WG/PG D1/D is appropriate. Subject actively participated in Committee discussion and decision stating that he understands committee's actions. Subject was advised of his appeal rights and behavioral expectations..

**CASE FACTORS:** DOB: 02/03/1979, Subject is a 26-year old, Hispanic, 1st-Termer, New Commitment received into CDC on 2/26/01 from Los Angeles County for the offense of Attempted Murder 1st. **GPL:** Unk. **TRL:** Unk. Subject was reviewed for **DDP/DPP** and does not meet the criteria. **Medical status:** Full Duty With Camp per CDC 128C dated 11/2/01. **Psych Concerns:** Clear per CDC 128C dated 1/23/04. Subject was reviewed for **MDO** consideration and does not meet the criteria. **TB Code:** 22 per CDC 128C dated 05/09/05. **Escapes:** Clear. **Arson:** Clear. **Sex Related Offenses:** Clear. **HWDs:** Clear. Past substance use: Marijuana and Alcohol. **CDC 812/812C** notes enemies, yes. **Gang Affiliation:** Durante Eastside. **Moniker:** "Shadow" "TaTas". **Confidential information:** Yes, and all materials have been reviewed and approved. **Registration required:** None. **Notification required:** PC 296 / PC 3058.6. **Restitution ordered: $1,000. Past disciplinary history** consists of notable CDC-115s for: Destruction of State Property, Mutual Combat, Assault on Inmate with Weapon. Subject is disqualified from Minimum Support Facility, Fire Camp, Community Correctional Facility, Substance Abuse Program, Restitution Center or Community Correctional Re-entry Center Programs based on VIO/LIFE .

**COMMITTEE:**

D. Cowee, CC-II (A)
W. D. Nelson FC (A)
Dr. Minkus

M. Carrasco, CDW (A)
Chairperson

J. Ramos, Asst C&PR
Recorder

**Date**  2/2/06  dac  **Classification:** ICC  **Inst: CCI-IVA ASU**

102

## CALIFORNIA DEPARTMENT OF CORRECTIONS

NAME: **REAL, R.**                    CDC #: **T35897**                    BED: **S-C-126U**

### COMMITTEE ACTION SUMMARY

RETAIN IN AD SEG PENDING: TRANSFER. RETAIN CUSTODY AT MAX. WG/PG D1/D EFFECTIVE 7/2/2008. RETAIN ON DOUBLE CELL. RETAIN ON W/A YARD. ASSESS AND IMPOSE AN INDETERMINATE SHU DUE TO S'S VALIDATION AS AN ASSOCIATE OF THE MEXICAN MAFIA PRISON GANG. REFER TO CSR RX APPROVAL OF INDETERMINATE SHU AND TRANSFER TO PBSP SHU W/ALTERNATE COR SHU.

### COMMITTEE'S COMMENTS

Inmate REAL appeared before California State Prison, Sacramento's (SAC's) Administrative Segregation Unit (ASU) Institutional Classification Committee (ICC) today for his Program/Annual Review. REAL stated that his health was good and was willing to proceed. REAL received his 72-hour notice for the purpose of this review. Prior to committee reviewing and discussing this case, REAL was introduced to the committee members. According to REAL'S CDC 114D, he was retained in SAC's ASU on 7/2/08 for: Pending investigation by IGI/OCS into S's prison gang status.

Based upon a review of REAL'S CDC 114D, Investigation, Central File, case factors, and through discussion with him, committee elects to: Retain in AD SEG pending: Transfer. Retain custody at MAX. WG/PG D1/D effective 7/2/2008. Retain on double cell. Retain on W/A yard. Assess and impose an Indeterminate SHU due to S's validation as an associate of the Mexican Mafia prison gang. Refer to CSR Rx approval of Indeterminate SHU and transfer to PBSP SHU w/alternate COR SHU.

The investigation by IGI/OCS has been completed. Refer to CDCR 128B-2 dated 12/5/08.

**Double Cell w/compatible inmate** based on lack of sufficient documentation to warrant single cell status.

**Walk Alone** yard concerns are based on yard availability.

Additional Comments: ICC notes the investigation has been received from OCS resulting in S's validation as an associate of the Mexican Mafia (EME) prison gang per CDCR 128B-2 dated 12/5/08. S's active/inactive review eligibility date is 5/14/2014. ICC acts to assess and impose an Indeterminate SHU and to refer this case to the CSR for transfer to PBSP SHU w/alternate COR SHU. ICC acts to conduct S's Annual Review.

ICC notes Staff Assistance, for purposes Effective Communication was discharged on 7/9/08.

Mental Health Assessment: The treating clinician presented ICC with a Mental Health assessment that included S's LOC, treatment needs, ability to understand/participate in the classification hearing, and effects of this psychological state if ordered retained in segregated housing. Committee members agreed that the Staff Assistant is not necessary in future classification reviews.

This transfer recommendation is based on Level-IV placement score, Indeterminate SHU status. This is an adverse transfer. S's WG/PG will be D1/D upon arrival at the receiving institution. S is retained at Maximum Custody and is eligible for double cell housing upon transfer. See CDC 128-G dated 3/16/06 for case factors. The following case factors have been updated: CDC 840/812/812A/812C/127/MCSF/2160. TB Alert Code: 22 per CDC 128-C dated 5/2/08. MHSDS/Psych Screening Form: GP, per CDC 128-C dated 12/17/08.

Inmate Comments: S stated that he does not believe that he should receive an Indeterminate SHU – that there has been no conduct on his part that would meet the criteria for threatening the safety and security of the institution. S stated he is compatible with his cell partner.

S was informed that his next Committee hearing is scheduled on or before 6/17/09 for a 6-month SHU Review.

At the conclusion of this review, REAL was informed of his Appeal Rights with regards to his committee's actions. REAL acknowledged his understanding but disagreed with committee's actions.

**STAFF ASSISTANT**
NOT ASSIGNED: ISSUES NOT COMPLEX AND NON-PARTICIPANT IN MHSDS.

### INMATE CASE FACTORS

| CUSTODY | CS/LEVEL | WG/PG & EFF. DATE | RELEASE DATE | GPL | RECLASS | ETHNIC | PSYCH - DATE 128C | NEXT BPH DATE |
|---------|----------|-------------------|--------------|-----|---------|--------|-------------------|---------------|
| MAX | 146/IV | D1/D – 7/2/2008 | MEPD – 5/10/2056 | NIF | 11/2009 | MEX | GP – 12/17/2008 | IPCH – 4/2055 |

### COMMITTEE MEMBERS

MEMBERS
D. Leiber, Capt; B. Cross, Sgt; S. Handian, PsyD

CHAIRPERSON
R. HILL, CDW (A)

RECORDER
C. LACY, CCII

| Committee Date: 12/17/2008 | **PROGRAM/ANNUAL REVIEW** | AS9-12-17 | Committee: S-121708-CRL-3 |

## CALIFORNIA DEPARTMENT OF CORRECTIONS

NAME: **REAL, R.**                    CDC #: **T35897**                    BED: **S-C-128U**

### COMMITTEE ACTION SUMMARY

RETAIN IN AD SEG PENDING: COMPLETION OF INVESTIGATION BY OCS INTO S'S PRISON GANG STATUS. RETAIN CUSTODY AT MAX. WG/PG D1/D EFFECTIVE 7/2/2008. RETAIN ON DOUBLE CELL. RETAIN ON W/A YARD. REFER TO CSR FOR AN ADDITIONAL 90-DAY AD SEG EXTENSION.

### COMMITTEE'S COMMENTS

Inmate REAL appeared before California State Prison, Sacramento's (SAC's) Administrative Segregation Unit (ASU) Institutional Classification Committee (ICC) today for his Program Review. REAL stated that his health was good and was willing to proceed. REAL received his 72-hour notice for the purpose of this review. Prior to committee reviewing and discussing this case, REAL was introduced to the committee members. According to REAL'S CDC 114D, he was placed into SAC's ASU on 7/2/08 for: Pending investigation by IGI/OCS into S's prison gang status.

Based upon a review of REAL'S CDC 114D, Central File, case factors, and through discussion with him, committee elects to: Retain in AD SEG pending: Completion of investigation by OCS into S's prison gang status. Retain custody at MAX. WG/PG D1/D effective 7/2/08. Retain on double cell. Retain on W/A yard. Refer to CSR for an additional 90-day AD SEG extension.

The investigation by IGI/OCS has not been completed.

**Double Cell w/compatible inmate** based on lack of sufficient documentation to warrant single cell status.

**Walk Alone** yard concerns are based on yard availability.

Additional Comments: ICC notes that the investigation from OCS into S's prison gang status has not been received. Consequently, ICC is requesting an additional 90-day extension to facilitate receipt of the investigation.

ICC notes Staff Assistance, for purposes Effective Communication was discharged on 7/9/08.

Mental Health Assessment: The treating clinician presented ICC with a Mental Health assessment that included S's LOC, treatment needs, ability to understand/participate in the classification hearing, and effects of this psychological state if ordered retained in segregated housing. Committee members agreed that the Staff Assistant is not necessary in future classification reviews.

Inmate Comments: S stated he is compatible with his cell partner.

S was informed that his next Committee hearing is scheduled on or before 2/4/09 for a Subsequent Review.

At the conclusion of this review, REAL was informed of his Appeal Rights with regards to his committee's actions. REAL acknowledged his understanding and agreement with committee's actions.

**STAFF ASSISTANT**
NOT ASSIGNED: ISSUES NOT COMPLEX AND NON-PARTICIPANT IN MHSDS.

### INMATE CASE FACTORS

| CUSTODY | CS/LEVEL | WG/PG & EFF. DATE | RELEASE DATE | GPL | RECLASS | ETHNIC | PSYCH - DATE 128C | NEXT BPH DATE |
|---|---|---|---|---|---|---|---|---|
| MAX | 148/IV | D1/D – 7/2/2008 | MEPD – 5/10/2056 | NIF | 5/2009 | MEX | GP – 7/9/2008 | IPCH – 5/10/2056 |

### COMMITTEE MEMBERS

MEMBERS
D. Baughman Capt; K. Porter, Sgt; S. Handian, PsyD

CHAIRPERSON
T. VIRGA, CDW

RECORDER
C. LACY, CCII

| Committee Date: 12/3/2008 | **PROGRAM REVIEW** | AS2-12-3 | Committee: S-120308-CRL-3 |
|---|---|---|---|

Typed By: GRR - Distribution: C-File & Inmate, CSR   **CALIFORNIA STATE PRISON, SACRAMENTO**   Classification Chrono CDC 128G (Rev: 5/01)

104

# EXHIBIT COVER PAGE



EXHIBIT

Description if this exhibit: *Declaration By : 1) Randy Real / dated 9/21/09*
*2) Cesar Morales Sept. 13, 2009 , 3) Robert Rodriguez Sept 15, 2009 4) John*
*Mutakami 9·24·09 5) Michael Mutakami 9·24·09*

Number of pages to this exhibit: _____10_____ pages.

**JURISDICTION**: (Check One Only)

- ☐ MUNICIPAL COURT
- ☐ SUPERIOR COURT
- ☐ APPELLATE COURT
- ☐ STATE SUPREME COURT
- ☒ UNITED STATES DISTRICT COURT
- ☐ STATE CIRCUIT COURT
- ☐ UNITES STATES SUPREME COURT
- ☐ GRAND JURY

105

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RANDY REAL
           PLAINTIFF,

      V.

JOHN DOE, JAMES WALKER;
R. Hill, T. VIRGA, T. VENTINIGLIA;
J. STEWART; G. PARKER; R. PUTINA;
EVERETT W. FISHER; SCOTT S. KISSER;
G. WILLIAMS; R. RAMOS; D. BAUGHMAN;
D. SIMS; K. POOL; KIM. POOL; S. HEMENWAY;
W. GRANNIS; D. TILL.

      DEFENDANTS.

Declaration By;

RANDY REAL

Civil Action No;

  I RANDY REAL Hereby declares;

1.) THAT THE Above mention Defendants HAVE violated my U.S. constitutional Rights By wrongfully VALIDATING me as A Associate of a prison Gang in which HAS placed me in a security Housing Unit / Administrative Segregation.

2.) THE placement of is an Indeterminate Segregation in-which THERE is No set Date in when I can be released from S.H.U. EVEN THough a 6 YEAR Review is establish it is Not a DEFINITE Release Date. This places a Liberty interest on me.

3.) SINCE being placed in Administrative Segregation, I HAVE SUFFERED From ANXIETY ATTACTS, panicky ATTACTS, paranoid reactions, depression, Hostility, lack of insight causing me To HAVE Day Dreams, vision impairment, Frequent HEADaches, SHORTNESS of breath, Exhaustion, insomnia and ANXIETY ANXIETY ATTACTS AT Night, SEVERE mood swings, which causes me to FEAR of correctional Employees And medical And psychiatic personal.

4.) Within the Complaint I HAVE STATED THAT G. Parker (I.G.I) (DEFendant) deliberately REFUSE to give my ADDRESS BOOK and that He indeed made their STATEMENT

THAT "your NOT GETTING your address BOOK BACK, thats
How we Do Things AROUND heRE". IN ReLation to this
Situation, when I filed an Appeal, I was NeveR
Asked to participate IN the Appeal process, %0 D.Till
NOR any OTHER OFFICER NEVER attempted to pull me out
TO see J. STEWART (IGI - SGT) FOR Appeal inteRview.
5.) I declare that All of the complaint's contents
is TRUE and correct to the best OF my knowledge
AND That I HAVE been deliberately misclassified
as a Associate OR a prison GANG in which I declare
THAT AM NOT.

I declare under penalty of perjury that this foregoing
is true and correct to the best of my knowledge.
executed at RePRESA CALIFORNIA on 9/21/09.

RANDY ReAl plaintiff.

101

IN THE United STATES DISTRICT COURT
For the EASTERN   DISTRICT OF CALIFORNIA

RANDY REAL
        Plaintiff

V.

JOHN DOE; JAMES WALKER;
R. Hill; T. VIRGA; T. VENTIMIGLIA;
J. STEWART, G. PARKER; R. PANGILIA;
EVERETT W. FISHER; SCOTT S. KISSER;
G. Williams; R. RAMOS; D. BAUGHMAN;
D. SIMS; K. POOL; K. M. POOL; S. HEMENWAY;
N. GRANNIS; D. Till.

DECLARATION By
CESAR-, MORALES # T24425

Civil ACTION NO.

                DEFENDANTS

    I  CEASAR, MORALES Hereby declares;
1. That I HAVE known the plaintiff RANDY REAL FOR
OVER a YEAR NOW, AND HAVE known him IN the passed
while AT LOS ANGELES COUNTY JAIL. While IN CSP-SACRAMENTO
AD-SEG, RANDY WAS my NEXT DOOR Neighbor (cell) I was
IN 129 while Randy WAS IN 128. These to cell HAVE
a ARE VENT where WE COULD TALK through AT any
TIME WE like, IN which RANDY AND I would Socialize
EVERY day since HE Arrived TO AD-SEG, IN the month
OF July, 2008.
2. I Declare that while Knowing RANDY, I NOTICE mood
Swings From time to time. He would be DEPRESSED AT
TIMES, HE Also complained to me of his trouble sleeping
AT night AND Headaches he would get a lot of the times.
This type of character is unlike Randy's Character. I HAVE
NEVER Heared of him complaining of trouble Sleeping AND
HAVING ANXIETY ATTACKS, NOR HAVE I EVER Seen him
DEPRESS, or HAVE panicky or paranoid ATTACKS.
3. I declare that I witness that on a WEDNESDAY (Actual
DATE unknown) I. G. I PARKER (G. Parker) Telling RANDY
That HE WAS NOT intitled to his address book back
AND that "that's how they do things Around here"

108

I was NEXT DOOR to RANDY IN cell 129 AND RANDY was IN 128 when this took place AT CSP-SACRAMENTO STATE prISON AD-SEG.

4.) I declare Also that I witness RANDY confront c/o D. Till on an Appeal issue concerning RANDY ADDRESS book. I observe RANDY ask c/o D. Till if He made a STATEMENT that RANDY REFUSED to be escort to participate in a interview. c/o D. Till said he NEVER made that statement nor that he AGREE with that STATEMENT. I Then witness RANDY Ask c/o D. Till To sign a Declaration to that STATEMENT in which c/o D. Till said he wouldn't, but will Help RANDY out on a 602 HEARING. At no time DID I ever witness RANDY REFusing to nor participate in an Appeal issue.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge. EXECUTED AT REPRESA California, on sept. 13 2009

CESAR , MORALES #724425
(DeclaranT)

IN THE UNITED STATE DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

RANDY REAL
　　　　　Plaintiff

　　　✓

JOHN DOE; James WALKER;
R. Hill; T. VIRGA; T. VENTIMGLIA;
J. STEWART; G. PARKER; R. VAILLHA;
EVERETT W. Fisher; SCOTT S KISSEN;
G. WILLIAMS; R. RAMOS; D. BAVGHMAN,
D. SIMS; K. POOl; K.M. POOl; S. HEMENWAY;
N. Grannis; D. Till;

　　　　DEFENDANTS,

Declaration By
Robert Rodriguez #P06379

Civil ACTION NO.

　　I   ROBERT   Rodriguez, Hereby declare;
1. THAT   I  HAVE   KNOWN  THE plaintiff RANDY REAL FOR
OVER  a  YEAR  AND  ABOUT  SIX months. I know RANDY
from  C YARD AT CSP-SACRAMENTO AND IN AD.SEG.
Randy is my NEXT DOOR NEIGHBOR   IN AD.SEG. I
am in 129 while RANDY was IN 128 for awhile and
MOVED TWO CELLS DOWN to 126. I would SEE RANDY
AT YARD AND I would socialize with him at YARD
and on THE TIER/HALLWAY IN THE SECTION WHERE OUR
CELLS WHERE located. While ME AND RANNY WHERE
NEXT DOOR NEIGHBORS, WE would Socialize EVERY Day
SINCE HE ARRIVED to AD-SEG in the month of July,
2008
2. I Declare that while Knowing RANDY. I NOTICE
mood Swing's From him, DEpressed and complained of Trouble
sleeping at NIGHT. RANDY Also complained about Headaches
he would get alot. THIS TYPE of chARACter is NOT like
RANNY, I've KNOWN Randy as a HAPPY person, good health,
and NEVER would complain OF SYMPton iF they did not
AFFECT him.
3. I declare that I witness that ON a WEDNESDAY

110

(ACTUAL date unknown) with my ceilie (CESAR morales,
I.G. I PARKER (G. PARKER) TElling RANDY That He WAS
NOT intitled to his Address book back And that "thats
how they do things Around here". I WAS NEXT DOOR
to RANDY's cell in cell 129 AND RANDY WAS in 128 when
this took place at CSP-SACRAMENTO STATE prison AD-SEG.
4.) Also I witness RANDY confront c/o D.TIll said
he NEVER made that STATEMENT NOR that he AGREE
with that STATEMENT. I then witness RANDY ASK c/o
D.TIll to sign a Declaration to that STATEMENT
inwhich c/o D.TIll said he wouldn't, but will help
RANDY OUT on a 602 hearing. AT NO Time DID I EVER
witness RANDY REFUSIng to NOT participate IN an
Appeal issue.

I declare under penalty of perjury that the foreging
is true AND Correct to THE best of my knowledge.
Excected at Represa CALIFORNIA. on SepT. 13, 2009

ROBERT RodRiguez # P06379
(Declarant)

IN THE UNITED STATE DISTRICT COURT
FOR the EASTERN DISTRICT OF CALIFORNIA.

Randy REAL
          plaintiff,
     V.

JOHN DOE ; JAMES WALKER;
R. HILL; T. VIRGA; T. VENTIMIGLIA;
J. STEWART; G. PARKER; R. Parrilla;
EVERETT W. FISHER; SCOTT S. KISSER;
G. WILLIAMS; R. RAMOS; P. BAUGHMAN;
D. SIMS; K. POOL; K.W. POOL; S. HEMENWAY;
N. GRANNIS; D. TILL.

          DEFENDANTS.

Declaration BY
John MURAKAMI #V01451

Civil ACTION NO.

I JOHN MURAKAMI , HEREBY declare THE following;
1. THAT HAVE BEEN THE plaintiff (RANDY REAL) Cell mate FROM
July 2, 2008 until the time I was able to cell-up (TAKE as
cellmate) with my Brother michael MURAKAMI. RANDY AND I
WHERE placed in Administrative SEGERGATION on the same
Day and from the SAME YARD AT CSP-SACRAMENTO STATE
prison on C YARD.
2. I personality Know RANDY REAL ATFER AND before we
WHERE placed in AD-SEG. THEREfore I declare that while
WE where cellmate'S I STARTED TO NOTICE Randy Suffering
FROM ANXIETY ATTACTS, HE would OFTEN complain OF HEADACHES
AND SHORTNESS OF BREATH. I would NOTICE mood SWING'S FROM
time to time, Depression AND Trouble Sleeping at night.
All these Symptom'S STARTED while we where in our second
to Third month in Administrative-SEGERGATION. I HAVE NEVER
SEEN this type OF BEHAVOR while I KNEW RANDY ON the
GENERAL population on C-YARD, CSP-SACRAMENTO.
3. ON the Day R.RAMOS SERVED RANDY AND myself a Lock-
Up order (Reason OF placement IN AD-SEG) R. RAMOS TRYED
TO TELL US WE WHERE NOT INTITLE an I.E / STAFF ASSISTANCE.
HFTER BACK AND forth Discussion BETWEEN RANDY and R.
RAMOS, Ramos Agreed to ASign an I.E. / STAFF ASSISTANCE.

112

in which I seen R. Ramos write a note on our 114-D that he was going to asign an I.E./Staff Assistance. We where never given one. This took place the following day AFTER being placed in Ad-Seg (July 3, 2008).

4. I Also Declare that on a Wednesday (Date unknown/can not Recall) I personaly witness G. Parker tell Randy that he was not going to get his address book back and that "that's how they do things Around Here." This took place in Ad-Seg at CSP-Sacramento C-Pod while Randy and I where cellmates in Cell 128.

5. I Also Declare that while being cell mates with Randy, He was taking action to regain his address Book back through an Inmate Appeal, in which while being his cell-mate, c/o D. Till nor any other correctional officer Attempted to pull out Randy (out of our cell) to participate in a Inmate Appeal for Appeal issues of his Address book.

6. I Also Declare that witness Randy confront c/o D. Till on a statement that was made that c/o D. Till stated that he attempted to escort Randy to an Appeal interview, but that Randy refused to go! When Randy confronted c/o D. Till and showed him the Reply on his 602, c/o D. Till stated that he did not make that statement nor was it true what was said. Randy Ask Till to sign a declaration but c/o Till Refuses to.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge. Executed at Repiesa California on 9/24/2009.

John Murakami CDCR# V01451
Declarant.

John Murakami                    9-24-09

113

IN THE UNITED STATE DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

RANDY REAL
         Plaintiff

         V.

JOHN DOE; JAIME WALKER;
R. HILL; T. VIRGA; T. VENTIMIGLIA;
J. STEWART; G. PARKER; R. PARRILLA;
EVERETT W FISHER; SCOTT S. KISSER;
G. WILLIAMS; R. RAMOS; D. BAUGHMAN;
D. SIMS; K. POOL; K. M. POOL;
S. HEMENWAY; N. GRANNIS; D. TILL;

                    DEFENDANTS

Declaration By
Michael MURAKAMI #P86999

Civil ACTION NO:

I MICHAEL MURAKAMI, HEREBY declare THE Following;
1. THAT I HAVE KNOWN the plaintiff RANDY REAL FOR OVER a
YEAR NOW. HE HAS BEEN MY Neighbor IN AD-SEG FOR a YEAR,
INWHICH I HAVE Socialize with him EVERY day SINCE WE
HAVE BEEN NEIGHBORS, AT CSP-SACRAMENTO STATE PRISON.
2. I DECLARE THAT While Knowing RANDY REAL, I NOTICE
mood swings From time to time. He would be Depressed
more OFTEN, HE Also complained to me OF his Trouble sleeping
at night and the HEADaches he would get.
3. I declare THAT I witness That on a committee DAY (which
is on wednesday, ACTUAL DATE unKnown) I.C.I G. PARKER
Tell RANDY THAT HE WAS NOT INTITLED to his ADDRESS book
back AND that "That's How they Do things AROUND HERE".
This took place While I was NEXT Door to my Brother
John inURAKAMI AND RANDY REAL, I WAS IN CELL 127, and
my Brother was iN 128, AT CSP-SACRAMENTO STATE PRISON.
4. I declare Also THAT I witness RANDY CONFRONT ¼
D. Till on an Appeal issue CONCERNING RANDY Address Book.
I Observe Randy Ask ¼ D. Till iF He made a STATEMENT that
RANDY REFUSED TO BE eScort TO participate iN a INTERVIEW.
¼ D. Till Said he NEVER made that STATEMENT NOR that
he Agree with that STATEMENT.

114

5. I Also declare that at no time did I ever witness RANDY Refussing to not participate in Appeal issue.

I declare under penalty of perjury that the Foregoing is true and Correct to THE best OF my knowledge. EXECUTED at RepresA CALiforNiA, ON 9/24/2009

michAel murAkAmi #D86999
(Declarant)
Michael Murakami   9-24-09

115

IN THE UNITED STATE DISTRICT
COURT FOR THE EASTERN DISTRICT OF
CALIFORNIA

RANDY RETAL,
            PLAINTIFF

        V.

JOHN DOE, DIRECTOR OF CDCR
JAMES WALKER, WARDEN CSP-SAC
R. HILL, ASSOCIATE WARDEN CSP-SAC
T. VIRGA, CDW - ASSOCIATE WARDEN
T. VENTIMIGLIA LT. (IGI)
J. STEWART. SGT (IGI)
G. PARKER, C/O (IGI)
R. PARRILLA, C/O (IGI)
EVERETT W. FISHER (SSU GANG REVIEW)
SCOTT S. KISSER (SSU GANG REVIEW)
G. WILLIAMS (SSU GANG REVIEW)
R. RAMOS (CSP-SAC CPT.)
D. BAUGHMAN (CSP-SAC CPT)
D. SIMS (LT. CSP-SAC)
K. POOL (II - APPEALS COORDINATOR.)
K. M. POOL (APPEALS INVESTIGATOR)
S. HEMENWAY (APPEAL EXAMINER)
N. GRANNIS (CHIEF INMATE APPEALS)
D. TILL CORRECTIONAL OFFICER CSP-SAC.

ORDER TO SHOW CAUSE
FOR AN INJUNCTION!
"A TEMPORARY RESTRAINING
ORDER TO RELEASE PLAINTIFF
FROM AD-SEG/S.H.U. (SEGREGATION)
DUE PLAINTIFF DOES NOT POSE
A THREAT TO OTHERS, SELF, OR
AND TO THE INSTITUTION SECURITY"
FED. R. CIVIL. P. 65(a).
CIVIL ACTION NO: 2:09-
                        CV-03273-
                        KJN

        UPON THE COMPLAINT, THE SUPPORTING AFFIDAVITS OR
PLAINTIFFS, AND THE MEMORANDUM OF LAW SUBMITTED HEREWITH,
IT IS:

        ORDERED that defendants, "JOHN DOE, DIRECTOR OF CDCR; 2.
JAMES WALKER, WARDEN AT CSP-SAC; 3. R. HILL, ASSOCIATE WARDEN CSP-SAC; 4.
T. VIRGA, CDW-ASSOCIATE WARDEN; 5. T. VENTIMIGLIA LT. (IGI), 6. J.
STEWART, SGT (IGI) 7. EVERETT W. FISHER (SSU GANG REVIEW) 8. SCOTT. S.
KISSER (SSU GANG REVIEW); 9. G. WILLIAMS (SSU GANG REVIEW); 10. R. RAMOS
CPT. CSP-SAC., TO SHOW CAUSE IN ROOM _____. OF THE
UNITED STATES COURTHOUSE, 501 "I" ST. SUITE 4-200, SACRAMENTO,
CA. 95814, TEL (916) 930-4000, ON THE ___ ___ DAY OF _____,
2010, AT _____ O'CLOCK, TO WHY A PRELIMINARY INJUNCTION
SHOULD NOT ISSUE PURSUANT TO RULE 65(a) OF THE FEDERAL
RULES OF CIVIL PROCEDURE ENJOINING THE DEFENDANTS, THEIR
SUCCESSORS IN OFFICE, AGENTS AND EMPLOYEES AND ALL OTHER

116

persons acting in concert and participation with them, From the following actions;

A preliminary and permant injunction which prohibits and requires Defendants, their agents, employees and successors to;

A. Cease the practice of placing confidential information into plaintiffs and or inmates, prison file without giving a CDC 1030 Form with in 72 Hours from placement of said information into plaintiffs and or inmates, prison File.

B. Cease the practice of validating plaintiff and or inmates as a prison gang member or associate without giving an opportunity to present his view and marshal evidence on his behalf threw a investigative employee or staff assistance being appointed to plaintiffs and or inmates.

C. Cease the scheme of using unreliable, untrue or and insufficient information in imposing gang validation and indeterminate SHU term.

D. Cease the practice of conducting meaningless reviews at classification committees.

E. Cease the practice to "stack up 1030 chronos of gang activity" to validate plaintiff and or inmates with and to only validate inmates with the required amount needed to validate inmates with (3) three 1030 chronos of gang activity.

F. Cease the practice of confiscating personal item, such as Address Books, books .... ect, (any item) that does not have gang activitie and that is not being used in validating inmates. It shall be return to the inmates, and plaintiffs Address Book shall be return back to him.

G. Cease the practice of placing inmates in AD/SEG - SHU if they do not poses an Immediat Threat to the safety or others and or endangers Institution Security, and Release plaintiff from AD/SEG - SHU.

H. Cease the practice in using Hearsay information in 1030 chronos, and gang activity allegations.

118

IT IS FURTHER ORDERED THAT EFFECTIVE Immediately, AND pending the HEARING, And determination of this order, AND. Through out FINAL Findings/judgment of Relief REQUESTED, TO Show Cause, THE DEFendants John DOE, (DIRECTOR of CDCR) James WALKER (WARDEN) AND EACH of THEIR OFFICERS, AGENTS, EMployers, and All person's ACTING IN CONCERT OR participation with them, ARE RESTrained From Holding plaintiff IN AD-SEG, AND OR S.H.U AND TO RELEASE plaintiff TO THE General population Due TO plaintiff DOES NOT AND HAS NOT pose an Immediate THREAT NOR has HE, TO THE SAFETY OF OTHERS AND DOES NOT ENDANGERS INSTITUTION Security.

IT IS FURTHER ORDERED that THE ORDER to SHOW Cause, AND All OTHER papers ATTACHED TO this Application, BE SERVED ON the aforesaid PARTIES by _____.
                                        DATE

_____
     Judge's SIGNATURE

DATE:
UNITED STATES District Judge

118

UNITED STATE DISTRICT COURT

EASTERN District of CALIFORNIA

Randy Real
         Plaintiff

    v.

James Walker (WARDEN) ET Al.,
        DEFENDANT

CASE NO: 2:09-CV-3273 KJN

Proof of service

I Hereby certify that on MARCh 12, 10, I served a copy of THE ATTACHED Amended complaint and order to show cause for an injunction- A temporaRARY Restraining order to Release Plaintiff From AD-seg/s.H.U, due To Plaintiff Does NOT pose a THREAT to others, self, or AND To THE institution Security, Fed. R. Civil. P. 65 (a).,

By Placing a copy in a postage paid ENVELOPE Addressed to the person Hereinafter listed, by depositing said Envelope in the United STATES mail AT P.B.S.P., Crescent City CALifornia, P.O. Box 7500 zip code 95531.

    Served parties: U.S. DISTRICT COURT For THE EASTERN DISTRICT OF
                         CALIFORNIA. CLERK'S OFFICE
                         501 I Street, ROOM 4-400
                         SACRAMENTO. CA. 95814

I declare under penalty of perjury THAT THE Foregoing is true and Correct.

    DATE:
    MARCH 12, 2010

Respectfully submitted

RANDY REAL (pro se)

