1

2

3

4

5

6

7

8          IN THE UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10  RANDY REAL,

11          Plaintiff,                    No. 2:09-cv-3273 GEB KJN P

12      vs.

13  JAMES WALKER, Warden, et al.,

14          Defendants.              FINDINGS AND RECOMMENDATIONS

15  _____/

16          Plaintiff is a state prisoner, in the custody of the California Department of

17  Corrections and Rehabilitation ("CDCR"), who is incarcerated in the Segregated Housing Unit

18  ("SHU") at Pelican Bay State Prison ("PBSP").  Plaintiff proceeds without counsel, and in forma

19  pauperis, in this action filed pursuant to 42 U.S.C. § 1983.  Plaintiff challenges his validation as

20  an associate of the Mexican Mafia ("EME") prison gang, and matters related to that process and

21  decision.  Pending is defendants' motion to dismiss.  (Dkt. Nos. 29, 30.)[1]  Plaintiff filed an

22  opposition (Dkt. No. 39); defendants filed a reply (Dkt. No. 42).  For the reasons that follow, this

23  court recommends that defendants' motion be granted in part, and that plaintiff be granted leave

24  to file a Second Amended Complaint, subject to the limitations set forth herein.

25  _____

26          [1]  Defendants' motion to dismiss is set forth in Docket No. 29; defendants' amended
memorandum in support of their motion to dismiss is set forth in Docket No. 30.

I. Background

This action proceeds on plaintiff's First Amended Complaint, filed on March 22, 2010. (Dkt. No. 14.) Attached thereto are, inter alia, copies of plaintiff's pertinent administrative grievances. The court sets forth both the allegations of the complaint, and the substance of plaintiff's relevant administrative grievances.

A. The First Amended Complaint

The First Amended Complaint ("complaint") identifies twenty-seven "causes of action"[2] against eighteen defendants,[3] based on the following factual allegations.

---

[2] Plaintiff alleges the following "causes of action" in his First Amended Complaint:

(1) that defendants Walker, Ventimiglia, Stewart, Parker, Fisher, Kisser, Williams, Hemenway, and Grannis, by relying on three challenged "gang rosters," violated plaintiff's rights under the Fourth Amendment (First Cause of Action), and Fourteenth Amendment (Second Cause of Action); and, because reliance on the rosters supported plaintiff's SHU placement, violated plaintiff's rights under the Eighth Amendment (Third Cause of Action);

(2) that defendants Walker, Ventimiglia, Stewart, Parker, Fisher, Kisser, Williams, Hemenway, and Grannis, by relying on plaintiff's chrono dated July 11, 2005 (concerning the existence of an alleged gang "mail drop address" in plaintiff's address book), violated plaintiff's rights under the First Amendment (Fourth Cause of Action), Fourth Amendment (Fifth Cause of Action), and Fourteenth Amendment (Sixth Cause of Action);

(3) that defendants Walker, Ventimiglia, Stewart, Parker, Fisher, Kisser, Williams, Hemenway, and Grannis, by relying on plaintiff's chrono dated February 26, 2003 (concerning plaintiff's alleged "roll call" with a validated gang member), violated plaintiff's rights under the First Amendment (Seventh Cause of Action), Fourth Amendment (Eighth Cause of Action), and Fourteenth Amendment (Ninth Cause of Action);

(4) that defendants Walker, Ventimiglia, Stewart, Parrilla, Fisher, Kisser, Williams, Hemenway, and Grannis, by relying on plaintiff's chrono dated July 17, 2002 (concerning plaintiff's alleged battery of another inmate on behalf of a validated gang member), violated plaintiff's rights under the Fourth Amendment (Tenth Cause of Action), and Fourteenth Amendment (Eleventh Cause of Action);

(5) that defendants Walker, Ventimiglia, Stewart, Parker, and Parrilla, by failing to inform plaintiff of the above-noted chronos when the alleged conduct occurred ("even wait[ing] until plaintiff moved prisons to bring to light that plaintiff conducted 'gang activity'"), violated plaintiff's rights under the Fourth Amendment (Twelfth Cause of Action), and Fourteenth Amendment (Thirteenth Cause of Action);

(6) that defendants Walker, Hill, Virga, Ventimiglia, and Stewart, by placing plaintiff in ad seg

Plaintiff alleges that, on July 2, 2008, when he was incarcerated at California State Prison-Sacramento ("CSP-SAC"), he was served with a gang validation packet by defendant Stewart, a CSP-SAC Correctional Sergeant and Institutional Gang Investigator ("IGI").  The packet identified plaintiff as an associate of the Mexican Mafia prison gang known as "EME," based on six "source items."  Plaintiff was placed in administrative segregation ("ad seg") pending the outcome of the validation process, and was so informed by defendant Ventimiglia, CSP-SAC IGI Lieutenant, who had prepared the gang validation packet.

The six source items in plaintiff's validation packet were the following:  (1)-(3) as

pending the validation investigation, violated plaintiff's rights under the Fourth Amendment (Fourteenth Cause of Action), and Fourteenth Amendment (Fifteenth Cause of Action);

(7) that defendants Walker, Ventimiglia, Hemenway, and Grannis, on March 5, 2009 [the correct date is March 6, 2009], by rejecting plaintiff's appeal of his validation and SHU placement at the Second Level Review, violated plaintiff's rights under the Fourth Amendment (Sixteenth Cause of Action), and Fourteenth Amendment (Seventeenth Cause of Action);

(8) that defendants Stewart, Parker, Pool, and Grannis, by confiscating plaintiff's address book on August 12, 2008, and by refusing to return it, violated plaintiff's rights under the First Amendment (Eighteenth Cause of Action), and Fourth Amendment (Nineteenth Cause of Action), and Fourteenth Amendment (Twentieth Cause of Action);

(9) that defendants Stewart and Till, by allegedly falsely stating that plaintiff refused to be interviewed on November 13, 2008, relative to the chrono concerning the confiscation of plaintiff's address book, violated plaintiff's rights under the Fourth Amendment (Twenty-First Cause of Action), and Fourteenth Amendment (Twenty-Second Cause of Action);

(10) that all defendants participated and conspired to obtain plaintiff's validation and placement in the SHU, in "reckless [dis]regard," of plaintiff's rights under the Eighth Amendment (Twenty-Third Cause of Action), and Fourteenth Amendment (Twenty-Fourth Cause of Action);

(11) that all defendants, except Till, participated and conspired to deliberately misclassify plaintiff and place him in the SHU, in violation of plaintiff's rights under the Eighth Amendment (Twenty-Fifth Cause of Action); and

(12) that defendants Tilton, Walker, Ramos, Sims, Pool, and Grannis, in denying plaintiff's July 3, 2008 request for appointment of an investigative employee, and subsequent appeal of this matter, violated plaintiff's rights under the Fourth Amendment (Twenty-Sixth Cause of Action), and Fourteenth Amendment (Twenty-Seventh Cause of Action).

[3]  Plaintiff named "John Doe" as the Director of CDCR; defendant Tilton appears in that capacity.  Plaintiff twice named defendant Pool (as "K. Pool," and "K. M. Pool"), whom defendants have identified as the same person.

set forth in three confidential memoranda ("CM"), three separate "gang rosters" listing plaintiff as an active EME associate, obtained pursuant to cell searches of three validated EME associates (conducted on June 2, 2008, September 26, 2007, and December 4, 2006); these rosters allegedly identify plaintiff by his gang moniker, CDCR number, and geographical gang neighborhood (see Dkt. No. 14 at 39-41, 92-94);[4] (4) an informational chrono (CDC 128B), dated July 11, 2005, prepared by defendant Parilla (a correctional officer and Assistant IGI at California Correctional Institution ("CCI"), in Tehachapi), that identifies one of the addresses in plaintiff's address book as a "mail drop" address of a validated EME gang associate[5] (id. at 42, 97); (5) a CM, prepared on February 26, 2003, by defendant Parilla, that identifies plaintiff as the inmate "responsible for conducting the 'Roll Call' of EME subservient inmates housed at CCI"[6] (id. at 43, 95); and (6) a CM prepared on July 17, 2002, by defendant Parilla, stating that plaintiff had, on March 4, 2002, battered another inmate "on behalf of a validated EME Member housed at CCI" (id. at 44, 96). Each of these matters -- with the apparent exception of No. 4 (regarding plaintiff's address book) -- was set forth in a "Confidential Information Disclosure Form" (CDC 1030).

Plaintiff alleges that, on July 3, 2008, he was served with a 114-D Lock-up Order (an "Administration Segregation Unit Placement Notice"), by defendant Ramos, CSP-SAC

---

[4] Unless otherwise noted, references to pages contained in filed documents reflect the court's electronic pagination ("CM/ECF"), which may not coincide with the internal pagination of the document.

[5] This alleged "mail drop" address is identified as the address of the parents of a validated EME associate. (Dkt. No. 14 at 97.) The chrono explains in part: "Since inmates are not allowed to correspond directly with one another, an inmate from one institution will send a correspondence to a person on the streets (mail-drop), who will then forward the correspondence to an inmate housed at another institution. This is common practice for members and associates of prison gangs. This is done so that members and associates of prison gangs can relay messages to one another regarding the activities of their organization without being detected by Custody Staff." (Id.)

[6] The subject CM provides that, "[t]he 'Roll Call' is a way for EME members and associates to greet each other every morning and evening and is conducted on a daily basis in the ASU and SHU. REAL was identified by a validated associate of the EME prison gang as being respected enough to be responsible for the 'Roll Call' at CCI." (Dkt. No. 14 at 95.)

Captain.  The order stated that plaintiff would remain in ad seg pending the investigation of his proposed validation.  Plaintiff states that, "at this point," he requested the assistance of an "Investigative Employee" ("IE") in the preparation of his defense, but Ramos denied the request. Plaintiff alleges that he filed a grievance on July 4, 2008, challenging such denial, but never received a response.  Plaintiff states that he filed a second grievance on August 24, 2008, again challenging the denial of his request for the assistance of an IE, which was administratively exhausted.  (Log No. SAC-C-08-01962.)  Plaintiff also states that, on September 3, 3008, he provided correctional officer Lynch (not a defendant in this action) with a "notification of violation of due process in denying plaintiff . . . an investigative/ staff assistance employee," and requested that it be placed in plaintiff's central file "to notify higher personnel" of the alleged violation.  (Dkt. No. 14 at 7.)  Plaintiff states, that at "every appearance to committee, from Sept. 3rd 2008 until March 11, 2009, plaintiff . . . raised the issue that he was denied an IE/staff assistance employee." (Id.)

Plaintiff alleges that, on August 12, 2008, his cell was searched by defendant Parker, a CSP-SAC correctional officer, who confiscated plaintiff's personal items, including his address book.  (It appears that plaintiff's address book was reviewed, but not confiscated, in 2005; this matter needs to be clarified in plaintiff's further amended pleading.)  Plaintiff states that, during the month of September 2008, he and defendant Parker exchanged words, and plaintiff learned for the first time that his address book was confiscated and retained because it allegedly contained evidence of plaintiff's gang activity.  Plaintiff alleges that, on September 14, 2008, he filed an administrative appeal that challenged the confiscation of his address book, but it was ignored.  On October 19, 2008, plaintiff made a "second attempt" to file an administrative grievance challenging the confiscation of his address book, which was accorded a log number. (Log No. SAC-C-08-02372).  However, plaintiff alleges that, on November 24, 2008, defendant Stewart "cancelled" this appeal based on an alleged statement by defendant Till, a CSP-SAC correctional officer, that plaintiff had refused to exit his cell to participate in a November 3, 2008

1    interview on the appeal.  Plaintiff states that Till informed plaintiff that he did not make this

2    alleged statement.  Plaintiff then sought, on November 30, 2008, to lodge a grievance against

3    Stewart, but defendant Pool allegedly screened it out because the "issue of [the] address book"

4    had been "completed and cancelled."  Plaintiff alleges that, on January 5, 2009, he sought to file

5    another inmate grievance challenging this matter, then sought the "highest level review" on

6    February 6, 2009, which was denied on March 18, 2009.  (Dkt. No. 14 at 8.)

7             The complaint provides that, on December 12, 2008, plaintiff was notified by the

8    members of the gang validation committee (defendants Fisher, Kisser and Williams), that he had

9    been validated as an active associate of the EME prison gang.  Plaintiff alleges that on the same

10   date, December 12, 2008, he filed an inmate appeal challenging his validation and SHU

11   placement, which was administratively exhausted.  (Log No. SAC-D-09-00203).

12            Plaintiff seeks declaratory and injunctive relief, including a reversal of his gang

13   validation and its expungement from plaintiff's central file, and termination of plaintiff's SHU

14   placement.  Plaintiff also seeks compensatory and punitive damages, and costs.

15       B.  Administrative Grievances

16            The relevant underlying administrative grievances, attached to the complaint,

17   provide the following additional details in support of plaintiff's claims.

18            1.  Log No. SAC-C-08-01962 (Denial of Investigative Employee)

19            In his grievance filed August 24, 2008, plaintiff sought the appointment of an IE.

20   Plaintiff alleged therein that, on July 3, 2008, when defendant Ramos presented plaintiff with the

21   114-D Lock-Up Order, plaintiff requested an IE, which Ramos denied.  Plaintiff also alleged that

22   he filed a similar administrative grievance on July 4, 2008, but never received a response.

23   Plaintiff sought an explanation of why his initial grievance was ignored, requested the

24   appointment of an IE, and requested a stay of all proceedings until the IE had an opportunity to

25   prepare plaintiff's defense.  (Dkt. No. 14 at 80.)  This grievance was denied at the First Level

26   Review, on October 14, 2008, pursuant to an interview and decision by defendant Sims, a CSP-

6

SAC Correctional Lieutenant, on the ground that plaintiff had waived the appointment of an IE. The First Level denial provided (id. at 83):

> Per your signature on the CDC 114-D under inmate waivers, indicates you waived the right to 72 hours preparation time. The CDC 114-D does not reflect any notes under the Investigative Employee that you requested an Investigative Employee at the time of review as you alleged in your interview of October 11, 2008. The copy that you submitted with the appeal accurately reflects the original CDC 114-D.

The grievance was granted insofar as officials provided an explanation why plaintiff had not received a response to his grievance filed July 4, 2008, viz., that "the Appeals Office never received an appeal with this date." (Id. at 86.)

Plaintiff sought Second Level Review based on his allegation that his request for an IE was written by "the officer" (presumably Ramos) on the original 114-D, not on the copy given to plaintiff and submitted by him in support of his grievance. (The subject 114-D Order, issued by defendant Ventimiglia, was signed by defendant Ramos, and approved by defendant Baughman, CSP-SAC Correctional Administrator. (Id. at 91, 100.)) Plaintiff maintained that he timely made the request, and it had been duly noted; that plaintiff was now attempting to "rectify an error;" and that perhaps an officer is "obstructing me of IE." (Id. at 81.) Plaintiff was interviewed by defendant Pool, CSP-SAC Appeals Investigator, and a Second Level Decision was rendered on December 22, 2008, by defendant Walker, CSP-SAC Warden. Plaintiff's request for appointment of an IE was denied for the reasons stated in the First Level Decision. (Id. at 90.)

The Director's Level Decision, issued March 11, 2009, on behalf of the CDCR Director, appears to be signed by "R. Manuel," on behalf of defendant Grannis, Chief of CDCR Inmate Appeals, based on a review by "Appeals Examiner J. Hutchins,[7] Facility Captain." (Id. at 78-79.) The Director's Level Decision denied plaintiff's grievance. In addition to the reasons

---

[7] Although plaintiff challenges Hutchins' conduct in his opposition to the motion to dismiss, Hutchins is not identified as a defendant in the First Amended Complaint.

stated in the previous administrative decisions, the Director's Level Decision provided in

pertinent part (id. at 78):

> On July 3, 2008, an administrative hearing was conducted, by a staff member at the appropriate rank, relative to [plaintiff's/ appellant's] placement.  There is no indication that the appellant requested an IE or that the Classification Hearing Officer (CHO) deemed the assignment of an IE as being necessary pursuant to the provision of California Code of Regulations, Title 15, Section (CCR) 3339(b).  The actions taken by the CHO conform to the requirements of CCR 3337 and 3338.  It is noted that the appellant did not request any witnesses when the hearing took place.  It is evident that the appellant's procedural safeguards have been observed in this matter.

### 2.  Log No. SAC-S-08-02372 (Confiscation of Plaintiff's Address Book)

The complaint alleges that plaintiff sought several times to pursue and exhaust an administrative grievance challenging the confiscation of his address book; however, the claim was never exhausted.  Pursuant to these efforts, plaintiff sought to challenge defendant Parker's August 12, 2008 search of plaintiff's cell, the confiscation and retention of plaintiff's address book, and the alleged misconduct of defendant Stewart when he cancelled plaintiff's grievance on the allegedly false ground that plaintiff refused to participate in the appeals process.  (Dkt. No. 14 at 58-76.)  Plaintiff also challenged the role of defendant Pool, Appeals Coordinator, in screening out these matters.  (Id. at 61-65.)  Pursuant to his complaint, plaintiff also challenges the conduct of Grannis, CDCR Inmate Appeals Chief, in rejecting these matters at the "highest level."  (Id. at 9, 16, 59.)

### 3.  Log No. SAC-D-09-00203 (Plaintiff's Gang Validation and SHU Placement)

On December 22, 2008, plaintiff submitted an administrative grievance directly challenging his gang validation and SHU term.  (Dkt. No. 14 at 24-27.)  Plaintiff challenged the validity of the source items, and the failure of prison officials to earlier inform plaintiff of the information contained therein.  The appeal was initially screened out as untimely.  (Id. at 48.)  Plaintiff responded that the appeal was timely (id. at 47), and it was subsequently processed.

First Level Review was bypassed.  (Id. at 24-25.)  Pursuant to the Second Level

Review, defendant Ventimiglia interviewed plaintiff, and noted that plaintiff failed to "provide any additional information," and thus that "[a]ll submitted documentation and supporting documents have been considered." (Id. at 28.) The Second Level Decision, issued March 6, 2009, by defendant Walker, CSP-SAC Warden, granted plaintiff's request that any erroneous information be removed from his central file, but denied plaintiff's grievance based on a rejection of plaintiff's challenges to the source items underlying his validation (Id. at 28-35; see also id. at 36-46.)

A Director's Level Decision was issued on June 8, 2009, authored by an unidentified official (the signature appears to be that of defendant Pool), pursuant to a review by Appeals Examiner S. Hemenway, and on behalf of defendant Grannis, Inmate Appeals Chief. (Id. at 22-23, 55-56.) The decision found, in pertinent part, that plaintiff "has not provided sufficient documentation, information or evidence to warrant any modification of the decision reached at the SLR [Second Level Review]." (Id. at 22.) The decision also noted that plaintiff "refused to exit his cell to participate in the interview process" (id. at 23), an apparent reference to the following statement of defendant Stewart, on July 3, 2008, in plaintiff's initial gang validation package (id. at 38):

> On July 3, 2008, Sergeant J. Stewart attempted to interview REAL regarding the validation source items. REAL refused to exit the cell and participate in the interview process. He did comment through the cell door that he disagreed with the validation and he submitted (1) one handwritten page of information disputing the items documents during the investigation.

On July 19, 2009, plaintiff submitted another grievance, contesting defendant Ventimiglia's role in reviewing grievance Log No. SAC-D-09-0203, because Ventimiglia had participated in the underlying validation investigation. (Id. at 52.) On July 28, 2009, defendant Pool, as CSP-SAC Appeals Coordinator, screened out the grievance as duplicative of Log No. SAC-D-09-00203, then exhausted. (Id. at 51.) Plaintiff sought Director's Level Review (id. at 53), which was denied on September 1, 2009, on the ground that plaintiff had improperly

9

1  bypassed the Appeals Coordinator (id. at 51, 53).

2  II.  Discussion

3          Defendants contend that each of plaintiff's claims should be dismissed pursuant to

4  Federal Rule of Civil Procedure 12(b)(6),[8] for failure to state a claim.

5          A.  Legal Standards Under Federal Rule of Civil Procedure 12(b)(6)

6          A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6),

7  challenges the sufficiency of the pleadings set forth in the complaint.  Vega v. JPMorgan

8  ChaseBank, N.A., 654 F. Supp. 2d 1104, 1109 (E.D. Cal. 2009).  Under the "notice pleading"

9  standard of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide a "short

10 and plain statement" of plaintiff's claims showing entitlement to relief.  Fed. R. Civ. P. 8(a)(2);

11 see also Paulsen v. CNF, Inc., 559 F.3d 1061, 1071 (9th Cir. 2009).  In order to survive dismissal

12 for failure to state a claim, a complaint must contain more than "a formulaic recitation of the

13 elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to

14 relief above the speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 554 (2007).

15 "A complaint may survive a motion to dismiss if, taking all well-pleaded factual allegations as

16 true, it contains 'enough facts to state a claim to relief that is plausible on its face.'"  Coto

17 Settlement v. Eisenberg, 593 F.3d 1031, 1034 (9th Cir. 2010) (quoting Ashcroft v. Iqbal, 129 S.

18 Ct. 1937, 1949 (2009)).  "'A claim has facial plausibility when the plaintiff pleads factual content

19 that allows the court to draw the reasonable inference that the defendant is liable for the

20 misconduct alleged.'"  Caviness v. Horizon Cmty. Learning Ctr., Inc., 590 F.3d 806, 812 (9th

21 Cir. 2010) (quoting Iqbal, 129 S. Ct. at 1949).  The court accepts "all facts alleged as true and

22 construes them in the light most favorable to the plaintiff."  County of Santa Clara v. Astra USA,

23

24      [8]  Although defendants' motion and supported memorandum are framed as a motion to
    dismiss, plaintiff opposed the motion based on the standards for opposing a motion for summary
25  judgment.  Despite this error in plaintiff's briefing -- and defendants' factually-based reply -- the
    court has adhered to the standards for assessing a motion to dismiss under Federal Rule of Civil
26  Procedure 12(b)(6).

1  Inc., 588 F.3d 1237, 1241 n.1 (9th Cir. 2009).  The court is "not, however, required to accept as

2  true conclusory allegations that are contradicted by documents referred to in the complaint, and

3  [the court does] not necessarily assume the truth of legal conclusions merely because they are

4  cast in the form of factual allegations."  Paulsen, 559 F.3d at 1071 (citations and quotation marks

5  omitted).

6          In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court "may

7  generally consider only allegations contained in the pleadings, exhibits attached to the complaint,

8  and matters properly subject to judicial notice."  Outdoor Media Group, Inc. v. City of

9  Beaumont, 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted).  However,

10  under the "incorporation by reference" doctrine, a court may also review documents "whose

11  contents are alleged in a complaint and whose authenticity no party questions, but which are not

12  physically attached to the [plaintiff's] pleading."  Knievel v. ESPN, 393 F.3d 1068, 1076 (9th

13  Cir. 2005) (citation omitted and modification in original).  The incorporation by reference

14  doctrine also applies "to situations in which the plaintiff's claim depends on the contents of a

15  document, the defendant attaches the document to its motion to dismiss, and the parties do not

16  dispute the authenticity of the document, even though the plaintiff does not explicitly allege the

17  contents of that document in the complaint."  Id.

18          B.  Plaintiff's Due Process Claims

19          Plaintiff makes eleven due process claims challenging his validation and

20  segregation.  (See Dkt. No. 14; Second, Sixth, Ninth, Eleventh, Thirteenth, Fifteenth,

21  Seventeenth, Twentieth, Twenty-Second, Twenty-Fourth, and Twenty-Seventh Causes of

22  Action.)

23          1.  Legal Standards

24          The Fourteenth Amendment's Due Process Clause protects against the deprivation

25  of liberty without the procedural protections to which one is legally entitled.  Wilkinson v.

26  Austin, 545 U.S. 209, 221 (2005).  Protected liberty interests may arise from the Due Process

1   Clause itself, or from state laws or regulations deemed to have created a liberty interest

2   cognizable as a civil right.  Meachum v. Fano, 427 U.S. 215, 224–27 (1976).

3          The following state regulations, which govern prison gang validations and

4   placements, have been held to create cognizable due process interests.  See e.g. Bruce v. Ylst,

5   351 F.3d 1283, 1287-88 (9th Cir. 2003), and cases cited therein.  A prisoner's gang involvement

6   is considered "information . . . which is or may be critical to the safety of persons inside or

7   outside" of California prisons.  Cal. Code Regs. tit. 15, § 3378(a).  In response to this concern,

8   institutional gang investigators are assigned to each prison to investigate allegations of gang

9   involvement.  Id., § 3378(c).  Allegations that a prisoner is involved in gang activity are to be set

10  forth on a "CDC Form 812-A or B," id., § 3378(c)(1), wherein documented gang activity within

11  the past six years is deemed "current activity," id.  An inmate may be validated as a gang member

12  or associate based upon "at least three (3) independent source items of documentation indicative

13  of actual membership [or association]," with "at least one (1) source item [demonstrating] a

14  direct link to a current or former validated member or associate of the gang."  Id., §§ 3378(c)(3),

15  (4).  Such information may include, inter alia, statements from other inmates, debriefing reports,

16  written materials and communications, and observation by staff.  Id., § 3378(c)(8).  Statements

17  from informants may be relied upon only if their information is independently corroborated or

18  the informant is otherwise known to be reliable.  Id., §§ 3378(c)(8)(H); 3321(b)(1).

19         Pending completion of an investigation whether an inmate warrants gang

20  validation, the inmate may be placed in administrative segregation.  Id., § 3335 (authorizing

21  "immediate" segregation of an inmate whose "presence in the general inmate population presents

22  an immediate threat to the safety of the inmate or others, endangers institution security or

23  jeopardizes the integrity of an investigation of an alleged serious misconduct or criminal

24  activity").  Once the prison determines that an inmate is a member or associate of a prison gang,

25  the inmate is routinely transferred to a Security Housing Unit.  Id., § 3341.5(c)(2)(A) (2) ("a

26  validated prison gang member or associate is deemed to be a severe threat to the safety of others

12

or the security of the institution and will be placed in a SHU for an indeterminate term"). Thereafter, the inmate must be free of any gang activity for at least six years before he may be considered for release.  Id., §§ 3341.5(c)(5), 3378(e).  (Alternatively, an inmate may be released from the SHU if he chooses to "debrief," that is, admit his gang affiliation, identify other gang members, and reveal all he knows about gang structure.  Id., § 3378.1(d)).  An inmate placed in the SHU receives periodic reviews, at intervals of 180 days.  Id., § 3341.5(c)(2)(A).

The regulations require the appointment of a an investigative employee "[w]hen an inmate requests witnesses at a classification hearing on a segregation order . . ."  15 Cal. Code Regs. tit. 15, § 3341.  "[T]he investigative employee's duties and functions will be essentially the same as described in section 3318. . . ." (id.), which provides that "The investigative employee shall:  (A) Interview the charged inmate.  (B) Gather information.  (C) Question all staff and inmates who may have relevant information.  (D) Screen prospective witnesses.  (E) Submit a written report . . . to include witness statements and a summary of the information collected specific to the violation charged," id. § 3318 (a)(1).

The Ninth Circuit has held that these procedures comport with constitutional requirements.  "California's policy of assigning suspected gang affiliates to the SHU [or ad seg] is not a disciplinary measure, but an administrative strategy designed to preserve order in the prison and protect the safety of all inmates.  Although there are some minimal legal limitations, the assignment of inmates within the California prisons is essentially a matter of administrative discretion."  Munoz v. Rowland, 104 F.3d 1096, 1098 (9th Cir. 1997), citing Toussaint v. McCarthy, 801 F.2d 1080 (9th Cir.1986), cert. denied, 481 U.S. 1069 (1987).  To comply with due process standards, the initial segregation of a suspected gang associate requires the following:

> Prison officials must hold an informal nonadversary hearing within
> a reasonable time after the prisoner is segregated.  The prison
> officials must inform the prisoner of the charges against the
> prisoner or their reasons for considering segregation.  Prison
> officials must allow the prisoner to present his views. . . . [T]he

13

1    due process clause does not require detailed written notice of
     charges, representation by counsel or counsel-substitute, an
2    opportunity to present witnesses, or a written decision describing
     the reasons for placing the prisoner in administrative segregation.
3

4  Toussaint v. McCarthy, supra, 801 F.2d at 1100-01 (fn. omitted); accord, Bruce v. Ylst, supra,

5  351 F.3d at 1287.

6          Thereafter, a prisoner's challenge to a SHU placement, based on an affirmative

7  gang validation, turns on whether the gang validation comports with due process standards.  If

8  prison officials have complied with the "minimal legal limitations" required to initially place an

9  inmate in ad seg, pending the validation investigation, "the [next] relevant issue is whether there

10 was 'some evidence' to support [plaintiff's] validation."  Bruce, 351 F.3d at 1287, citing

11 Superintendent v. Hill, 472 U.S. 445, 454 (1985). A single piece of evidence may be sufficient to

12 meet the "some evidence" requirement, if that evidence has "sufficient indicia of reliability."  Id.,

13 at 1288.  In applying this standard the court is not required to "examine the entire record,

14 independently assess witness credibility, or reweigh the evidence; rather, 'the relevant question is

15 whether there is any evidence in the record that could support the conclusion.'"  Id. (citing Hill,

16 472 U.S. at 455-56).

17          2.  Analysis

18              a.  Ad Seg Placement Pending Validation Investigation

19          The court finds that plaintiff fails to state a cognizable due process claim premised

20 on his initial placement in ad seg, pending the investigation of his proposed validation.

21 Plaintiff's allegation that his ad seg placement was "wrongful" because he didn't pose a threat to

22 inmate safety and security (Dkt. No. 14 at 15 (Fifteenth Cause of Action)), fails to assert a

23 recognized basis for challenging the provisional placement.  Plaintiff does not allege that

24 defendants failed to convene an informal hearing within a reasonable time, failed to inform

25 plaintiff of the charges against him, or denied plaintiff the opportunity to present his initial views.

26 See Toussaint, supra, 801 F.2d at 1100-01 (fn. omitted); Bruce, supra, 351 F.3d at 1287.

14

1    Therefore, this court recommends dismissal of plaintiff's Fifteenth Cause of

2  Action, without leave to amend.

3         b.  Disclosure of Source Items

4    Plaintiff contends that defendants violated his due process rights by failing to

5  inform him of the content of the "source items" at the time the alleged events occurred.

6  Defendants disclosed these matters -- each of the alleged "gang rosters" (dated 2006, 2007,

7  2008); plaintiff's alleged battery of another inmate at the direction of a validated EME associate

8  (2002); and plaintiff's alleged responsibility for CCI's EME "roll call" (2003) -- pursuant to

9  confidential memoranda in support of plaintiff's proposed validation.

10    Pursuant to CDCR regulations, it is within the discretion of prison officials to

11  withhold from prisoners information that is classified as "confidential;" to the extent that such

12  information is disclosed to a prisoner, the disclosure must be limited by considerations of prison

13  security and inmate safety.  See Cal. Code Regs., tit. 15, § 3321.  Thus, the allegedly untimely

14  disclosure to plaintiff of the confidential material contained in his validation "source items" does

15  not state a due process claim.  Accord, Castaneda v. Marshall, 1997 WL 123253, *7 (N.D. Cal.

16  1997) ("The Court finds that Defendants' non-disclosure of the information contained in the

17  CDC 1030 forms does not impose an 'atypical and significant hardship' on Plaintiff or affect the

18  duration of his sentence . . . . [T]he failure to provide nine CDC 1030 forms or the providing of

19  some of the forms on an untimely basis does not constitute a violation of the Due Process

20  Clause").

21    Therefore, this court recommends dismissal of plaintiff's Thirteenth Cause of

22  Action, without leave to amend.

23         c.  Address Book

24    Plaintiff does not state a cognizable due process claim based on the confiscation

25  of his address book.  While an authorized, intentional deprivation of property is generally

26  actionable under the Due Process Clause, see e.g. Quick v. Jones, 754 F.2d 1521, 1524 (9th Cir.

1  1985); cf. Hudson v. Palmer, 468 U.S. 517, 532 (1984) (unauthorized or random deprivation of

2  property does not state due process claim, provided there exists an adequate post-deprivation

3  remedy), plaintiff's address book was allegedly confiscated and withheld because it contains

4  evidence of plaintiff's alleged gang activity.  An inmate does not have a property interest in

5  possessing contraband.  Steffey v. Orman, 461 F.3d 1218, 1221 (10th Cir. 2006); Lyon v. Farrier,

6  730 F.2d 525, 527 (8th Cir. 1984).  Gang-related materials fall within California's definition of

7  contraband.  15 Cal. Code Regs. § 3006(c)(16) ("material that is reasonably deemed to be a threat

8  to legitimate penological interests").  Because plaintiff has no property interest in possessing

9  gang-related material, he was not entitled to procedural due process when this alleged material

10  was removed from his possession,[9] pursuant to a legitimate penological objective.  Steffey, 461

11  F.3d at 1221.

12          Therefore, plaintiff's Twentieth Cause of Action should be dismissed, without

13  leave to amend.

14          d.  Gang Validation and SHU Term

15          Plaintiff challenges, on due process grounds, the decision validating him as a gang

16  associate, and hence his placement in the SHU.  These claims -- separately challenging the

17  validity and reliability of each source item (Second, Sixth, Ninth, and Eleventh Causes of

18  Action); the alleged failure of defendants to provide plaintiff with an IE (Twenty-Seventh Cause

19  of Action); and the allegedly malicious and/or conspiratorial intent of defendants (Twenty-Fourth

20  Cause of Action) -- are scattered throughout the complaint, mingled with other claims.  While the

21  court finds each of these claims potentially cognizable, substantive analysis (e.g. pursuant to a

22  motion for summary judgment), will require their clarification and consolidation in a further

23  amended complaint.

24          Three matters require special note.  First, plaintiff may not rely on the procedures

25

26      [9]  On the other hand, as discussed infra, plaintiff may state a potentially cognizable First
Amendment claim premised on the retention of his address book.

1   agreed to in Castillo v. Terhune, Case No. C 94-2847-MAGISTRATE JUDGE-JCS (N.D. Cal.

2   1994).  The violation of consent decrees, settlements, or injunctions in other cases does not

3   provide liability in this action.  See Frost v. Symington, 197 F.3d 348, 353 (9th Cir. 1999) (where

4   litigant seeks enforcement of consent decree, litigant must proceed through class counsel in the

5   action in which consent decree entered); Coleman v. Wilson, 912 F. Supp. 1282, 1294 (E.D. Cal.

6   1995) (same).  In addition, "alleged noncompliance with the agreement cannot be the basis for

7   granting an individual inmate relief regarding his gang validation." Garcia v. Stewart, 2009 WL

8   688887, *7 (N.D. Cal. 2009).

9           Second, plaintiff's myriad and multiple allegations that defendants conspired to

10  deprive him of his civil rights fail to state cognizable conspiracy claims.  Plaintiff may, but need

11  not, re-allege a conspiracy claim in his further amended complaint, provided that plaintiff

12  specifically identifies the alleged conspiratorial conduct of each allegedly involved defendant.[10]

13          Third, the court notes that the current evidence of record appears to lend some

14  support for plaintiff's challenge to the denial of an IE; this issue does not presently appear to be

15  as clear cut as defendants contend.[11]

16

_____

17      [10]  To state a claim for civil conspiracy, under 42 U.S.C. § 1983, a plaintiff must allege
    that "two or more persons . . ., by some concerted action, intend[ed] to accomplish some
18  unlawful objective for the purpose of harming [plaintiff] which results in damage." Gilbrook v.
    City of Westminster, 177 F.3d 839, 856-57 (9th Cir. 1999) (en banc), quoting Vieux v. East Bay
19  Regional Park District, 906 F.2d 1330, 1343 (9th Cir. 1990) (internal quotation marks omitted).
    "[T]he party must provide material facts that show an agreement among the alleged conspirators
20  to deprive the party of his or her civil rights," Margolis v. Ryan, 140 F.3d 850, 853 (9th Cir.
    1998) (citations omitted), and must identify the alleged harm.  Facts alleged in support of a
21  conspiracy theory must be specific, and clearly articulate the alleged involvement of each
    identified defendant.

22
        [11]  The subject CDC-114 Order provides, in pertinent part, that an IE was "not assigned,"
23  based on the following answers to form questions:  (1) "Evidence Collection by IE Unnecessary"
    (answer, "Yes"); (2) "Decline Any Investigative Employee" (answer, "No");  and (3) "ASU
24  Placement is for Disciplinary Reasons" (answer, "No").  (Dkt. No. 14 at 91, 100.)
        Perhaps significantly, the form further provides that "Any 'NO' [answer to this block of
25  questions] may require IE assignment." (Id.)
        Moreover, plaintiff's signature within the box entitled "Inmate Waivers" does not include
26  checking any of the three identified waivers, none of which directly address assignment of an IE,

1    For these reasons, the court recommends dismissal, with leave to amend, of

2    plaintiff's Second, Sixth, Ninth, Eleventh, Twenty-Fourth, and Twenty-Seventh Causes of

3    Action.  Plaintiff should be permitted to re-allege these claims in a further amended complaint,

4    challenging the merits of plaintiff's gang validation and SHU placement.

5    e. <u>Administrative Grievance Process</u>

6    Plaintiff's due process challenges to the administrative grievance process itself

7    fail to state cognizable claims.  These challenges are set forth in plaintiff's Seventeenth and

8    Twenty-Second Causes of Action.  Prisoners have no stand-alone due process rights related to

9    the administrative grievance process.  <u>See</u> <u>Mann v. Adams</u>, 855 F.2d 639, 640 (9th Cir. 1988);

10   <u>see</u> <u>also</u> <u>Ramirez v. Galaza</u>, 334 F.3d 850, 860 (9th Cir. 2003) (holding that there is no liberty

11   interest entitling inmates to a specific grievance process).  Thus, prison officials are not required

12   under federal law to process inmate grievances in a specific way or to respond to them in a

13   favorable manner.  Because there is no right to any particular grievance process, plaintiff cannot

14   state a cognizable civil rights claim for violation of his due process rights based on allegations

15   that prison officials ignored or failed to properly process grievances.  <u>See</u> <u>e.g.</u> <u>Wright v. Shannon</u>,

16   2010 WL 445203 at *5 (E.D. Cal. 2010) (plaintiff's allegations that prison officials denied or

17   ignored his inmate appeals failed to state a cognizable claim under the First Amendment);

18   <u>Walker v. Vazquez</u>, 2009 WL 5088788, *6–7 (E.D. Cal. 2009) (plaintiff's allegations that prison

19   officials failed to timely process his inmate appeals failed to state a cognizable claim under the

20   Fourteenth Amendment); <u>Williams v. Cate</u>, 2009 WL 3789597, *6 (E.D. Cal. 2009) ("Plaintiff

21   has no protected liberty interest in the vindication of his administrative claims.").

22   Therefore, this court recommends that plaintiff's Seventeenth and Twenty-Second

23   Causes of Action be dismissed, without leave to amend.

24   Application of these principles also requires the dismissal of defendants Sims

25

26   viz., "Inmate Waives or Declines Interview with Administrative Reviewer," "Inmate Waives
     Right to 72 Hours Preparation Time," "No Witnesses Requested by Inmate."  ( <u>Id.</u>)

(named only for denying one of plaintiff's grievances (Log No. SAC-C-08-01962) at the First

Level Review); Baughman (named only for denying the same grievance at the Second Level

Review); and Hemenway (named only for conducting the review underlying the Director's Level

Decision in Log No. SAC-D-09-00203).

### 3.  Summary of Due Process Claims

For the reasons set forth above, this court recommends that plaintiff be granted

leave to amend the claims challenging his gang validation and SHU placement, currently set

forth in his Second, Sixth, Ninth, Eleventh, Twenty-Fourth, and Twenty-Seventh Causes of

Action.  Plaintiff's other due process claims should be dismissed, without leave to amend.

### C.  Plaintiff's Eighth Amendment Claim

Plaintiff alleges that his SHU placement violates his Eighth Amendment right to

be free of cruel and unusual punishment.  Although plaintiff asserts an Eighth Amendment claim

in the context of other challenges -- viz., defendants' reliance on the challenged "gang rosters"

(Third Cause of Action), and allegations that defendants acted with reckless disregard (Twenty-

Third Cause of Action), and with malice (Twenty-Fifth Cause of Action) -- it is clear that this

claim is premised on the conditions of plaintiff's SHU placement.  Significant to this claim are

plaintiff's allegations that this placement has "subjected plaintiff to conditions of severe physical

and mental pain and suffering."  (Dkt. No. 14 at 18; see also Plaintiff's Declaration (id. at 107-

08), and supporting declarations of other inmates.)[12]

---

[12]  In support of his complaint, plaintiff filed a sworn declaration that provides in part (Dkt. No. 14 at 107):

> Since being placed in administrative segregation, I have suffered from anxiety attacts (sic), panicky attacts, paranoid reactions, depression, hostility, lack of insight causing me to have day dreams, vision impairment, frequent headaches, shortness of breath, exhaustion, insomnia and anxiety attacts at night, severe mood swings, which causes me to fear []correctional employees and medical and psychiatric personal (sic).

In addition, plaintiff filed the sworn declarations of four inmates, each of whom states

1    The Eighth Amendment requires that conditions of prison confinement meet

2  "civilized standards, humanity and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976).

3  Prison officials must provide prisoners with adequate shelter, food, clothing, sanitation, medical

4  care, and personal safety.  Farmer v. Brennan, 511 U.S. 825, 832  (1994).  "Deliberate

5  indifference" is evidenced when "the official knows of and disregards an excessive risk to inmate

6  health or safety; the official must both be aware of the facts from which the inference could be

7  drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at

8  835.  "Mere negligence is insufficient for liability. . . . Instead, the official's conduct must have

9  been wanton, which turns not upon its effect on the prisoner, but rather, upon the constraints

10  facing the official." Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002) (citations and internal

11  quotations omitted).  In general, "prison officials have a legitimate penological interest in

12  administrative segregation, and they must be given 'wide-ranging deference in the adoption and

13  execution of policies and practices that in their judgment are needed to preserve internal order

14  and discipline and to maintain institutional security.'" Anderson v. County of Kern, 45 F.3d

15  1310, 1316 (9th Cir. 1995), quoting Bell v. Wolfish, 441 U.S. 520, 546-47 (1979).  However, a

16  SHU placement may constitute cruel and unusual punishment for inmates who are mentally ill, or

17  "at an unreasonably high risk of suffering serious mental illness as a result of [the] conditions in

18  the SHU." Madrid v. Gomez, 889 F. Supp. 1146, 1267 (N.D. Cal. 1995).

19    As currently framed, plaintiff's Eighth Amendment claims -- set forth in his

20  Third, Twenty-Third, and Twenty-Fifth Causes of Action -- must be dismissed for lack of

21  cognizability.  However, this court recommends that plaintiff be granted leave to allege, in a

22  further amended complaint, a single Eighth Amendment claim based on the allegedly unique

23  conditions of plaintiff's SHU placement.

24  _____

that they have personally observed negative changes in plaintiff's mental health since his
25  placement in the SHU.  (Dkt. No. 14 at 109-16.)

   Plaintiff asserts, in his opposition to the motion to dismiss, that he has sought mental
26  health treatment, but the "psychologist remedy was to debrief."  (Dkt. No. 39 at 18.)

1    D.  Plaintiff's Fourth Amendment Claims

2          The Fourth Amendment protects the "[t]he right of the people to be secure in their

3    persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const.,

4    amend. IV.  However, the Supreme Court has held that, within the prison context, inmates have

5    no Fourth Amendment right of privacy in their cells.  Hudson v. Palmer, 468 U.S. 517, 525-28

6    (1984) (prisoner's expectation of privacy must yield to matters of institutional security).  "Prison

7    officials must be free to seize from cells any articles which, in their view, disserve legitimate

8    institutional interests."  Id. at 528 n.8.

9          Applying these standards, it is clear that plaintiff's Fifth and Nineteenth Causes

10   of Action, which challenge the search of plaintiff's prison cell and confiscation of his address

11   book, and defendants' subsequent reliance thereon, while properly framed under the Fourth

12   Amendment, fail to state cognizable claims.  Therefore, plaintiff's Fifth and Nineteenth Causes

13   of Action should be dismissed, without leave to amend.

14         In addition to these limitations, plaintiff has no standing to challenge the

15   confiscation of items from the cells of other inmates.  "A person who is aggrieved by an illegal

16   search and seizure only through the introduction of damaging evidence secured by a search of a

17   third person's premises or property has not had any of his Fourth Amendment rights infringed."

18   Rakas v. Illinois, 439 U.S. 128, 134 (1978).  Therefore, plaintiff First Cause of Action, which

19   challenges defendants' reliance on gang rosters seized from other inmates, should be dismissed

20   without leave to amend.

21         More broadly, plaintiff improperly relies on the Fourth Amendment to assert

22   several "due process" claims; these claims are only cognizable, if at all, pursuant to the

23   Fourteenth Amendment (see discussion, supra).  On this basis, plaintiff's Fourth Amendment

24   "due process" claims -- set forth in his Eighth, Tenth, Twelfth, Fourteenth, Sixteenth, Twenty-

25   First, and Twenty-Sixth Causes of Action -- should be dismissed.

26         For the foregoing reasons, this court recommends dismissal of each of plaintiff's

Fourth Amendment claims.  Therefore, plaintiff's First, Fifth, Eighth, Tenth, Twelfth,

Fourteenth, Sixteenth, Nineteenth, Twenty-First, and Twenty-Sixth Causes of Action should be

dismissed, without leave to amend.

       E.  Plaintiff's First Amendment Claims

       Plaintiff alleges violation of his First Amendment rights to free speech and

association, based on the retention of plaintiff's address book (Eighteenth Cause of Action);

defendants' reliance on the putative "mail drop address" found in plaintiff's address book (Fourth

Cause of Action); and defendants' reliance on plaintiff's alleged participation in the EME "roll

call" (Seventh Cause of Action).

       The First Amendment to the U.S. Constitution provides:  "Congress shall make no

law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging

the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to

petition the Government for redress of grievances." U.S. Const. amend. I.  "[A] prison inmate

retains [only] those First Amendment rights that are not inconsistent with his status as a prisoner

or with the legitimate penological objectives of the corrections system."  Pell v. Procunier, 417

U.S. 817, 822 (1974).  Moreover, "[i]t is clear . . . that prisons have a legitimate penological

interest in stopping prison gang activity."  Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir. 2003)

(citing Bell v. Wolfish, 441 U.S. 520 (1979); and Madrid v. Gomez, 889 F. Supp. 1146,

1240-1241 (N.D. Cal. 1995).)

       In Turner v. Safley, 482 U.S. 78 (1987), the Supreme Court identified four factors

to be considered in evaluating the reasonableness, and hence constitutionality, of a prison policy

or regulation.  These principles also apply in assessing the constitutionality of a discrete prison

decision that impacts prison security and day-to-day management concerns.  See e.g. Pitts v.

Thornburgh, 866 F.2d 1450, 1454 (C.A.D.C. 1989) ("The cases that Turner drew upon in

formulating the reasonableness standard confirm that the case applies most directly to the daily

oversight of inmate behavior, with the attendant security concerns and necessary limitations upon

'prisoners' rights.'")  (citations omitted.); <u>see also</u> <u>Winson v. Marshall</u>, 108 F.3d 1387 (9th Cir.

1997) (applying <u>Turner</u> analysis to discrete decision); <u>cf.</u> <u>Jeldness v. Pearce</u>, 30 F.3d 1220, 1231

(9th Cir. 1994) (declining to apply less-stringent <u>Turner</u> analysis to Title IX challenge which

triggered heightened scrutiny).

> As summarized by the Ninth Circuit, the <u>Turner</u> "reasonableness" factors are:
>
> (1)    Whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;
>
> (2)    Whether there are alternative means of exercising the right that remain open to prison inmates;
>
> (3)    Whether accommodation of the asserted constitutional right will impact . . . guards and other inmates, and . . . the allocation of prison resources generally; and
>
> (4)    Whether there is an absence of ready alternatives versus the existence of obvious, easy alternatives.

<u>Shakur v. Schriro</u>, 514 F.3d 878, 884 (9th Cir. 2008), citing <u>Turner</u>, 482 U.S. at 89-90 (additional

citations and internal quotation marks omitted).  These factors are to be considered in light of the

competing principles that exist in a prison setting, specifically, that although prisoners retain

some constitutional rights, the courts are ill-equipped to address matters of prison administration.

<u>Turner</u>, at 84.  "To maintain the necessary balance between these two basic principles, [courts]

must apply a deferential standard of review to challenges regarding prison regulations and uphold

the regulation 'if it is reasonably related to legitimate penological interests.'"  <u>Mauro v. Arpaio</u>,

188 F.3d 1054, 1058 (9th Cir. 1999) (en banc), <u>cert.</u> <u>denied</u>, 529 U.S. 1018 (2000), quoting

<u>Turner</u>, 482 U.S. at 89.

Given the legitimate penological interest in stopping gang activity within the

prisons, plaintiff's First Amendment challenges, as framed, fail to articulate cognizable claims.

Nonetheless, plaintiff's allegations reflect the type of considerations this court must make in

assessing First Amendment challenges.  For example, plaintiff alleges that the putative "mail

drop address" identified in his address book reflects nothing more than plaintiff's "innocuous

1  association with another inmate" (Fourth Cause of Action); that plaintiff's verbal recognition of

2  another inmate (denominated by officials as a gang "roll call") reflects nothing more than

3  "greeting another inmate's good morning and/or goodnight," another asserted "innocuous

4  association" (Seventh Cause of Action); and that the retention of plaintiff's address book,

5  without "justification," has denied plaintiff "access to friends, family and attorneys" (Dkt. No. 39

6  at 17) (alleged in support of plaintiff's Eighteenth Cause of Action).  Should plaintiff be able to

7  demonstrate that he was improperly validated, these allegations, properly framed,[13] may support

8  cognizable claims under the First Amendment.

9          For these reasons, this court recommends that plaintiff's First Amendment claims,

10  set forth in his Fourth, Seventh and Eighteenth Causes of Action, be dismissed with leave to

11  amend.

12      F.  Defendants

13          1.  Supervisory Defendants

14          Defendants seek to dismiss supervisory defendants Tilton (CDCR Director), and

15

16          [13] Although plaintiff's grievance challenging the confiscation and retention of his address
    book was not formally exhausted, plaintiff alleges that defendant Grannis' rejection of the
17  grievance (Log. No. SAC-C-08-02372) demonstrates that no further administrative remedies
    were available.  (Dkt. No. 14 at 9.)  If proven, this factor may excuse the exhaustion requirement.
18  There appears to be an issue, however, whether plaintiff's administrative remedies relative to this
    matter were effectively unavailable.
19          Plaintiff is directed to the following authority.  The administrative exhaustion
    requirement may be waived in extraordinary circumstances where a prisoner's administrative
20  remedies are effectively unavailable.  Nunez v. Duncan, 591 F.3d 1217, 1220-21, 1225-26 (9th
    Cir. 2010); accord Martinez v. Robinson, 2010 WL 3001381, *3 (N.D. Cal. 2010) (improperly
21  told three times that his appeal was duplicative, plaintiff had no available remedy and was thus
    excused from further exhaustion efforts); see also Sapp v. Kimbrell, 623 F.3d 813, 822 (9th Cir.
22  2010) ("improper screening of an inmate's administrative grievances renders administrative
    remedies 'effectively unavailable' such that exhaustion is not required under the PLRA").
23  However, unavailability must be adequately demonstrated.  Brown v. Valoff, 422 F.3d 926,
    934-35 (9th Cir. 2005) (the obligation to exhaust persists as long as some administrative remedy
24  is available); see also Newman v. McLean, 2009 WL 688859, *6 (N.D. Cal. 2009) ("[p]laintiff
    did not pursue all the remedies that were available since he could have appealed the alleged
25  improper screening out of the inmate appeal as being duplicative but failed to do so"); Smiley v.
    Martinez, 2010 WL 309459, *3 (N.D. Cal. 2010) (plaintiff did not timely challenge the screening
26  out of his appeals based on untimeliness and duplication).

1   Grannis (CDCR Inmate Appeals Chief).  Supervisory liability may be imposed in an individual

2   capacity only when the supervisor participated in or directed the violations, or knew of the

3   violations of subordinates and failed to act to prevent them.  Corales v. Bennett, 567 F.3d 554,

4   570 (9th Cir. 2009).  "Under Section 1983, supervisory officials are not liable for actions of

5   subordinates on any theory of vicarious liability.  A supervisor may be liable if there exists either

6   (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal

7   connection between the supervisor's wrongful conduct and the constitutional violation."  Hansen

8   v. Black, 885 F.2d 642, 645-46 (9th Cir. 1989) (citations omitted).  Thus, "[a]lthough there is no

9   pure respondeat superior liability under § 1983, a supervisor is liable for the acts of his

10  subordinates 'if the supervisor participated in or directed the violations, or knew of the violations

11  [of subordinates] and failed to act to prevent them.'"  Preschooler II v. Clark County School Bd.

12  of Trustees, 479 F.3d 1175, 1182 (9th Cir. 2007), quoting Taylor v. List, 880 F.2d 1040, 1045

13  (9th Cir. 1989).  Facts consistent with at least one of these scenarios must be specifically alleged

14  in order to state a potentially cognizable claim against a supervisory defendant.

15          The allegations of the complaint fail to state potentially cognizable claims against

16  defendant Tilton.  Although several causes of action name Tilton (plaintiff's Twenty-Third

17  through Twenty-Seventh Causes of Action), none allege Tilton's personal knowledge, direction,

18  or endorsement of any alleged misconduct.  This omission is underscored by plaintiff's general

19  statement, in his opposition, that he is suing Tilton in "his official and individual capacity for his

20  supervisor responsibility for creating a policy and custom, allowing and encouraging the illegal

21  act the management of the employee[s] he is supported to supervise. . . " ( Dkt. No. 39 at 31.)

22          Therefore, this court recommends the dismissal of defendant Tilton, without leave

23  to amend.

24          In contrast, plaintiff's allegations against Grannis, replete throughout the

25  complaint, are facially supported by Grannis' "hands  off" (alleged failure to act) approach in

26  exercising his final decision-making authority when addressing the merits of plaintiff's

1  grievances challenging plaintiff's gang validation and the denial of an IE.  Grannis appears to

2  have delegated this authority to "R. Manuel" and J. Hutchins, to conduct the Director's Level

3  Review of plaintiff's grievance challenging the denial of an IE; and to Pool and Hemenway, to

4  conduct the Director's Level Review of plaintiff's grievance challenging his validation and SHU

5  placement.  In contrast, Grannis allegedly personally "cancelled" plaintiff's efforts to grieve the

6  confiscation and retention of his address book.  Because Grannis was the "final stop" on the

7  merits of these substantive challenges, his lack of apparent involvement gives the court pause.

8  Accordingly, plaintiff should be permitted to include Grannis as a defendant in a further amended

9  complaint if plaintiff can include adequate factual allegations to have Grannis named as a

10  defendant.

11      Therefore, this court recommends that Grannis not be dismissed from this case, at

12  this time.

13      2.  Other Defendants

14      To state a claim under Section 1983, a plaintiff must allege facts demonstrating an

15  actual connection or link between the actions of the defendants and the deprivations alleged to

16  have been suffered by plaintiff.  See Monell v. Department of Social Services, 436 U.S. 658

17  (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  "A person 'subjects' another to the deprivation of

18  a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in

19  another's affirmative acts or omits to perform an act which he is legally required to do that

20  causes the deprivation of which complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th

21  Cir. 1978).  "The inquiry into causation must be individualized and focus on the duties and

22  responsibilities of each individual defendant whose acts or omissions are alleged to have caused

23  a constitutional deprivation."  Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988).

24      The court finds that plaintiff has failed to allege any affirmative act, actionable

25  under Section 1983, against defendants Virga, Till, or Hill.  Accordingly, these defendants should

26  be dismissed from this action, without leave to amend.

1    In addition, pursuant to the dismissal of plaintiff's Fourth Amendment claim,

2  defendant Parker should be dismissed from this action, without leave to amend.

3    Finally, as previously stated relative to plaintiff's challenges to the administrative

4  appeals process, defendants Baughman, Hemenway, and Sims, should be dismissed, without

5  leave to amend.

6    The court finds that plaintiff has stated potentially cognizable claims against the

7  remaining defendants, for the reasons stated elsewhere in these findings and recommendations.

8  Plaintiff may, but need not, name any of the remaining defendants -- Ramos, Stewart,

9  Ventimiglia, Parilla, Pool, Grannis, Walker, Fisher, Kisser, and Williams -- in a Second

10 Amended Complaint.  However, plaintiff is reminded that any allegations against each of these

11 defendants must identify affirmative conduct, or a failure to act, by each such defendant that

12 resulted in the alleged deprivation of plaintiff's constitutional rights.

13    G.  Qualified Immunity

14    Defendants contend that the court should dismiss each of the claims in this action

15 because they are entitled to qualified immunity.  "Government officials enjoy qualified immunity

16 from civil damages unless their conduct violates 'clearly established statutory or constitutional

17 rights of which a reasonable person would have known.'" Jeffers v. Gomez, 267 F.3d 895, 910

18 (9th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The qualified

19 immunity analysis involves two inquiries:  whether the facts alleged by plaintiff establish a

20 constitutional violation, and whether the right at issue was clearly established at the time.

21 Saucier v. Katz, 533 U.S. 194, 201 (2001).

22    It is premature for the court to address this contention.  On a motion to dismiss,

23 the plaintiff "does not need to show with great specificity how each defendant contributed to the

24 violation of his constitutional rights.  Rather, he must state the allegations generally so as to

25 provide notice to the defendants and alert the court as to what conduct violated clearly

26 established law.  See Hydrick v. Hunter, 466 F.3d 676, 689-90 (9th Cir. 2006) (denying

27

1   policy-making officials qualified immunity at the motion to dismiss stage based on inferences

2   that the officials played an instrumental role in the alleged abuses)." Preschooler II, at 1182.

3          For these reasons, the court does not reach, at this time, defendants' qualified

4   immunity defense.

5   III.  Summary

6          For the reasons set forth above, this court recommends dismissal of plaintiff's

7   First Amended Complaint, with leave to file a Second Amended Complaint, that is limited to:

8   (1) two Fourteenth Amendment Due Process claims premised, respectively, on plaintiff's

9   challenges to the denial of an IE, and the merits of his gang validation/SHU placement (thus

10  reflecting plaintiff's due process claims currently set forth in his Second, Sixth, Ninth, Eleventh,

11  Twenty-Fourth, and Twenty-Seventh Causes of Action); (2) one First Amendment claim, based

12  on the alleged denial of plaintiff's rights to free speech and association (as currently reflected in

13  plaintiff's Fourth, Seventh and Eighteenth Causes of Action); and (3) one Eighth Amendment

14  claim, based on the allegedly unique conditions of plaintiff's SHU placement.

15         Finally, this court recommends that plaintiff be granted leave to file a further

16  amended complaint, the court does not recommend further consideration of its order filed May

17  26, 2011 (Dkt. No. 38), which denied plaintiff's requests to file a supplemental complaint, and

18  for appointment of counsel, pending review of defendants' motion to dismiss.  Pertinent

19  allegations set forth in plaintiff's proposed supplemental complaint may be included in plaintiff's

20  Second Amended Complaint; however, no new defendants may be added.  Additionally, while

21  plaintiff may request the voluntary assistance of counsel at any time, pursuant to 28 U.S.C.

22  § 1915(e)(1), such requests may only be granted based on a showing of exceptional

23  circumstances, Terrell v. Brewer, 935 F.2d 1015, 1017 (9th Cir. 1991), pursuant to an evaluation

24  of plaintiff's ability to articulate his claims in light of the complexity of the legal issues involved,

25  and plaintiff's likelihood of success on the merits of his claims, Agyeman v. Corrections

26  Corporation of America, 390 F.3d 1101, 1103 (9th Cir. 2004) (citations omitted).  As the court

previously found, plaintiff has demonstrated an adequate understanding of his claims and competence in their articulation.  The court further finds, at this time, that plaintiff has not demonstrated a likelihood that he will prevail of the merits of this action.

IV.  <u>Conclusion</u>

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1.  Defendants' motion to dismiss (Dkt. No. 29), should be granted in part;

2.  Defendants Tilton, Baughman, Hemenway, Sims, Virga, Till, Hill, and Parker should be dismissed from this action;

3.  This action should potentially proceed against defendants Ramos, Stewart, Ventimiglia, Parilla, Pool, Grannis, Walker, Fisher, Kisser, and Williams;

4.  Plaintiff's First Amended Complaint should be dismissed, with leave to file and serve, within thirty days after the adoption of these findings and recommendations, a Second Amended Complaint limited to the claims and defendants identified herein;[14] and

5.  Failure of plaintiff to timely file and serve a Second Amended Complaint should result in the dismissal of this action.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within 14 days after service of the objections.  The parties are

////

////

////

---

[14]  Nothing herein is intended to preclude defendants from bringing a legally supported, fully developed motion to dismiss in response once plaintiff files such an amended complaint.

advised that failure to file objections within the specified time may waive the right to appeal the

District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 1, 2012

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

real3273.mtd

30