1  KAMALA D. HARRIS, State Bar No. 146672
Attorney General of California
2  THOMAS S. PATTERSON, State Bar No. 202890
Supervising Deputy Attorney General
3  JAIME M. GANSON, State Bar No. 230206
Deputy Attorney General
4    1300 I Street, Suite 125
P.O. Box 944255
5    Sacramento, CA 94244-2550
Telephone:  (916) 324-6421
6    Fax:  (916) 324-5205
E-mail:  Jaime.Ganson@doj.ca.gov
7  *Attorneys for Defendants Beard, Fisher, Kisser,
Parilla, Parker, Pool, Ramos, Stewart, Ventimiglia,*
8  *Walker, and Williams*

9

10                    IN THE UNITED STATES DISTRICT COURT

11                   FOR THE EASTERN DISTRICT OF CALIFORNIA

12                            SACRAMENTO DIVISION

13

14  | | |
|---|---|
| **RANDY REAL,** | 2:09-cv-3273 LJO KJN |
| Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT** |
| v. | |
| **JAMES WALKER, Warden, et al.,** | Judge:        Honorable Kendall J. Newman |
| Defendants. | Action Filed:  3/22/2010 |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

STATEMENT OF THE CASE ............................................................................................ 1

I.   RELEVANT PROCEDURAL HISTORY ................................................................. 1

II.  REAL'S SECOND AMENDED COMPLAINT ....................................................... 2

    A.   Real Alleges Violations of the First, Eighth and Fourteenth
        Amendments. ....................................................................................... 2

    B.   The Officials' Alleged Involvement in Real's Gang Validation and
        SHU Confinement. ............................................................................... 2

III. RELEVANT BACKGROUND INFORMATION CONCERNING CDCR'S
     TREATMENT OF PRISON GANGS. ....................................................................... 4

    A.   In California Prisons, "Gang Validation" Is an Administrative
        Action Taken to Preserve Order and Protect the Safety of All
        Inmates. ............................................................................................... 4

    B.   Debriefing Is Not the Only Means for a Validated Inmate to Be
        Released from the SHU. ....................................................................... 5

    C.   CDCR's Management of Prison Gangs Has Changed Extensively,
        as Evidenced by the Implementation of the New Security Threat
        Group Policy. ...................................................................................... 6

LEGAL STANDARD FOR DISMISSAL ........................................................................... 7

ARGUMENT ........................................................................................................................ 7

I.   REAL'S FOURTEENTH AMENDMENT CLAIMS ARE NOT COLORABLE. .......... 7

    A.   The Officials Are Entitled to Qualified Immunity because Real's
        Investigative-Employee Allegations Fail to State a Claim and There
        Is No Clearly Established Right to Appointment of an Investigative
        Employee. ............................................................................................ 7

        1.   Neither Stewart, Pool, nor Walker was responsible for
            deciding whether to appoint Real an investigative employee. ........ 9

        2.   There is no clearly established right to the appointment of
            an investigative employee during gang-validation
            proceedings. .................................................................................. 10

    B.   Real Cannot State a Claim Based on the Purported Lack of
        Meaningful Classification Reviews because His Allegations Are
        Conclusory and There Was No Clearly Established Right to
        Classification Reviews. ....................................................................... 12

    C.   Defendants Are Qualifiedly Immune from Real's Evidentiary-Due-
        Process Claim Grounded in the Six Evidentiary Items Used to
        Validate Him. ..................................................................................... 13

        1.   A reasonable officer could believe that documenting Real's
            gang activity and relying on that documentation validate
            him was lawful. ............................................................................. 13

i

# TABLE OF CONTENTS
(continued)

Page

2.   A reasonable officer relying on Supreme Court precedent could believe that no right to an evidentiary review exists........... 15

3.   A reasonable officer could have believed that Real's validation decision did not violate due process because it was supported by "some evidence."............................................... 16

    a.   Each of the three gang rosters is "some evidence" of Real's affiliation with the gang. ....................................... 16

    b.   The documentation of Real's possession of a gang mail-drop address also is some evidence of his affiliation with the gang. .................................................... 18

    c.   The documentation of Real's responsibility for conducting gang "roll call" is some evidence of his affiliation with the gang. .................................................... 19

    d.   The documentation of Real's battery of another inmate for the Mexican Mafia is some evidence of his gang affiliation............................................................. 21

D.   The Fourteenth Amendment Is Not Violated by CDCR's Procedures for Dissociating from the Gang or Obtaining Release from the SHU. ....................................................................................... 22

II.   THE OFFICIALS ARE QUALIFIEDLY IMMUNE FROM REAL'S EIGHTH AMENDMENT CONDITIONS-OF-CONFINEMENT CLAIM. ........................................... 22

A.   The Eighth Amendment Is Not Violated by An Indeterminate Placement in the SHU. ............................................................................. 22

B.   Qualified Immunity Bars Real's Eighth Amendment Claim Because the Individual-Capacity Defendants Are Not Alleged to Have Any Authority Over the Conditions of Real's Confinement in the SHU. ........ 23

C.   Qualified immunity Also Bars Real's Eighth Amendment Claim Because Real Has Not Alleged the Objective Component of an Eighth Amendment Violation. ......................................................... 24

D.   Qualified Immunity Also Bars Real's Eighth Amendment Claim Because Real Has Not Alleged the Subjective Component of an Eighth Amendment Violation. ......................................................... 26

III.   REAL'S FIRST AMENDMENT CLAIMS ARE NOT COLORABLE................................. 27

A.   Secretary Beard Should Be Dismissed from Real's First Amendment Claims.......................................................................... 27

B.   The Individual-Capacity Officials Are Qualifiedly Immune from Real's First Amendment Claims Because Officials Cannot Be Held Liable for Violations That They Did Not Cause..................................... 28

C.   The Individual-Capacity Officials Also Are Qualifiedly Immune Because the Challenged Conduct Did Not Clearly Violate the First Amendment. ......................................................................................... 28

1.   "Freedom of association is among the rights least compatible with incarceration." ................................................... 28

ii

**TABLE OF CONTENTS**
(continued)

Page

2. No clearly established First Amendment violation occurred. ....... 29

3. Whether Real was properly validated, and whether the challenged conduct was actually innocent behavior, has no bearing on the *Turner* analysis. ..................................................... 32

IV. REAL'S INJUNCTIVE-RELIEF CLAIMS ARE SUBSUMED BY THE *ASHKER* CLASS ACTION. ........................................................................................................ 33

A. This Court Should Dismiss Real's Injunctive-Relief Claims Because His Status as An *Ashker* Class Member Mandates That He Pursue His Injunctive-Relief Claims Through the *Ashker* Class Litigation. ................................................................................................. 33

B. Alternatively, This Court Should Dismiss Real's Injunctive-Relief Claims Because CDCR's Gang-Classification Procedures Have Changed: Real's Gang Status Will Be Re-Assessed under the New Security-Threat Group Policy. ................................................................. 35

CONCLUSION ............................................................................................................ 36

iii

Memo. P&As Supp. Mot. Dismiss (2:09-cv-3273 GEB KJN)

# TABLE OF AUTHORITIES

**Page**

CASES

*Anderson v. County of Kern*
    45 F.3d 1310 (9th Cir. 1995)..............................................................................24

*Anderson v. Creighton*
    483 U.S. 635 (1987)..............................................................................................8

*Andrade v. Lewis*
    C 11-3528 SI (PR), 2013 WL 5694331 (N.D. Cal. Oct. 18, 2013).......................17

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009)......................................................................................*passim*

*Ashker v. Governor of State of California*
    (N.D. Cal. No. C 09-5796).............................................................................33, 34

*Baker v. Lewis*
    C 11-3493 LHK PR, 2012 WL 1932867 (N.D. Cal. May 29, 2012)....................11

*Barrios v. Gonzales*
    No. 1:10-CV-01122, 2011 WL 2620374 (E.D. Cal. July 1, 2011).......................17

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544 (2007)..............................................................................................7

*Bostic v. Brackney*
    976 F.2d 736 (9th Cir. 1992)..........................................................................20, 21

*Bostic v. Carlson*
    884 F.2d 1267 (9th Cir.1989)...............................................................................20

*Brown v. Oregon Dep't of Corr.*
    11-35628, 2014 WL 1687758 (9th Cir. Apr. 29, 2014)......................................13

*Bruce v. Ylst*
    351 F.3d 1283 (9th Cir. 2003)................................................................................5

*Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*
    532 U.S. 598 (2001)............................................................................................27

*Castro v. Prouty*
    No. 1:09-CV-01763-GBC PC, 2011 WL 529493, *4 (E.D. Cal. Feb. 3, 2011)....18

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Castro v. Terhune*
   712 F.3d 1304 (9th Cir. 2013)................................................................ 16, 17, 19

*Cato v. Rushen*
   824 F.2d 703 (9th Cir.1987)............................................................................ 20

*City of Los Angeles v. Lyons*
   461 U.S. 95 (1983) ......................................................................................... 35

*Cook v. Cate*
   No. 1:13-CV-00331-SKO PC, 2014 WL 2174574 (E.D. Cal. May 23, 2014) ................ 18, 19

*Cota v. Scribner*
   No. 09-cv-2507-AJB BLM, 2011 WL 4914934 (S.D. Cal. June 27, 2011) .................... 25, 31

*Crawford v. Bell*
   599 F.2d 890 (9th Cir.1979)............................................................................ 33

*Davis v. Scherer*
   468 U.S. 183 (1984) ..................................................................................... 8, 11

*Devereaux v. Abbey*
   263 F.3d 1070 (9th Cir. 2001)........................................................................... 8

*Dunn v. Castro*
   621 F.3d 1196 (9th Cir. 2010)........................................................................... 8

*Elder v. Holloway*
   510 U.S. 510 (1994) ....................................................................................... 11

*Escalante v. Hubbard*
   No. C 10-1583, 2010 WL 4916404 (N.D. Cal. Nov. 22, 2010)............................... 17

*Escalante v. Lewis*
   C 10-4417 RS PR, 2012 WL 215253 (N.D. Cal. Jan. 24, 2012) ........................... 17

*Farmer v. Brennan*
   511 U.S. 825 (1994).............................................................................. 22, 26, 27

*Freeman v. Rideout*
   808 F.2d 949 (2d Cir. 1986)....................................................................... 14, 22

*Gallegos v. Gipson*
   No. 1:13-CV-00221, 2013 WL 1907513 (E.D. Cal. May 7, 2013) ....................... 18

# TABLE OF AUTHORITIES
## (continued)

**Page**

*George v. Smith*
   507 F.3d 605 (7th Cir. 2007) .......................................................................... 10

*Gillespie v. Crawford*
   858 F.2d 1101 (5th Cir. 1988) ........................................................................ 33

*Greenholtz v. Inmates of Neb. Penal and Correctional Complex*
   442 U.S. 1 (1979) ............................................................................................ 15

*Grossman v. City of Portland*
   33 F.3d 1200 (9th Cir. 1994) .......................................................................... 14

*Hafer v. Melo*
   502 U.S. 21 (1991) ............................................................................. 13, 27, 34

*Harlow v. Fitzgerald*
   457 U.S. 800 (1982) ......................................................................................... 8

*Hart v. Cambra*
   C 96-0924 SI, 1997 WL 564059 (N.D. Cal. Aug. 22, 1997) ................... 18, 19, 24

*Hearns v. Terhune*
   413 F.3d 1036 (9th Cir.2005) ......................................................................... 22

*Hernandez v. Stainer*
   *No.* 1:12-CV-01177 AWI, 2012 WL 4363736 (E.D. Cal. Sept. 20, 2012) ............ 15

*Hewitt v. Helms*
   459 U.S. 460 (1983) .................................................................................. 15, 24

*Hoptowit v. Ray*
   682 F.2d 1237 (9th Cir. 1982) ........................................................................ 25

*Hydrick v. Hunter*
   500 F.3d 978 (9th Cir. 2007) .......................................................................... 27

*Johnson v California*
   543 U.S. 499 (2005) ........................................................................................ 28

*Johnson v. Lewis*
   217 F.3d 726 (9th Cir.2000) ........................................................................... 24

*Jones v. Cannedy*
   No. 2:10-cv-2174 KJM KJN P, 2012 WL 3260457 (E.D. Cal. Aug. 8, 2012) ...... 10

1

## TABLE OF AUTHORITIES
### (continued)

2
**Page**

3

*Jones v. Williams*
    297 F.3d 930 (9th Cir.2002)................................................................... 7

4

5

*Keenan v. Hall*
    83 F.3d 1083 (9th Cir.1996)................................................................. 25

6

*Leer v. Murphy*
    844 F.2d 628 (9th Cir. 1988)....................................................... 9, 23, 28

7

8

*Lopez v. Galaza*
    No. civ-s-02-2563, 2006 WL 3147686 (E.D. Cal. Nov. 1, 2006)......................................... 11

9

10

*Madrid v. Gomez*
    889 F.Supp. 1146 (N.D. Cal. 1995) ................................. 13, 23, 24, 26

11

*Mann v. Adams*
    855 F.2d 639 (9th Cir. 1988)............................................................... 10

12

13

*Mattos v. Agarano*
    661 F.3d 433 (9th Cir. 2011).......................................................... 8, 27

14

15

*McNeil v. Guthrie*
    945 F.2d 1163 (10th Cir.1991) ........................................................... 33

16

*Motley v. Parks*
    432 F.3d 1072 (9th Cir. 2005)................................................. 13, 14, 33

17

18

*Norwood v. Vance*
    591 F.3d 1062 (9th Cir. 2010)............................................................ 32

19

20

*Oakland Tribune, Inc. v. Chronicle Publishing Company, Inc.*
    762 F.2d 1374 (9th Cir.1985)............................................................. 35

21

*Overton v. Bazzetta*
    539 U.S. 126 (2003)........................................................................... 29

22

23

*Pearson v. Callahan*
    555 U.S. 223 (2009)........................................................... 8, 14, 21, 32

24

25

*Peralta v. Dillard*
    744 F.3d 1076 (9th Cir. 2014)................................................. 9, 14, 23

26

*Perkins v. Crum*
    476 F. App'x 136 (9th Cir. 2012) ................................................. 24, 25

27

28

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Pina v. Scavetta*
467 F. App'x 605 (9th Cir. 2012) ................................................................. 24, 25

*Pitts v. Thornburgh*
866 F.2d 1450 (1989) ............................................................................................ 29

*Pride v. Correa*
719 F.3d 1130, 1137 (9th Cir. 2013) ................................................................... 34

*Ramirez v. Galaza*
334 F.3d 850 (9th Cir. 2003) ................................................................................ 10

*Rhodes v. Chapman*
452 U.S. 337 (1981) ....................................................................................... 22, 25

*Ruiz v. Cate*
436 F. App'x 760 (9th Cir. 2011) ........................................................................ 26

*Sandigo v. Lewis*
No. C 12-0085, 2014 WL 1379278 (N.D. Cal. Apr. 8, 2014) ......................... 17, 19

*Sandin v. Conner*
515 U.S. 472 (1995) ................................................................................. 11, 13, 25

*Saucier v. Katz*
533 U.S. 194 (2001) ............................................................................................... 8

*Scott v. Harris*
550 U.S. 372 (2007) ........................................................................................ 7, 20

*Shaw v. Murphy*
532 U.S. 223 (2001) ............................................................................................. 29

*Shehee v. Luttrell*
199 F.3d 295 (6th Cir. 1999) ............................................................................... 10

*Sprewell v. Golden State Warriors*
266 F.3d 979 (9th Cir. 2001) ............................................................................... 20

*Stearns v. Flores*
No. CV F 00 6331, 2005 WL 1836915 (E.D. Cal. July 28, 2005) ................... 20, 21

*Stewart v. Alameida*
418 F. Supp. 2d 1154 (N.D. Cal. 2006) .................................................... 29, 30, 31

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Superintendent v. Hill*
    472 U.S. 445 (1985).......................................................................... 16, 21

*Swarthout v. Cooke*
    131 S. Ct. 859 (2011) ...................................................................... 15, 16

*Sweaney v. Ada County, Idaho*
    119 F.3d 1385 (9th Cir. 1997).............................................................. 11

*Throop v. Sec'y of Corr.*
    2010 WL 3418353 (S.D. Cal. Aug. 27, 2010) ................................ 24, 26

*Toussaint v. Yockey*
    722 F.2d 1490 (9th Cir.1984)........................................... 11, 14, 23, 24

*Turner v. Safley*
    482 U.S. 78 (1987) ......................................................................*passim*

*Vasquez v. Stainer*
    No. CV 09-03029 AHM SS, 2011 WL 3565056 (C.D. Cal. July 20, 2011) ....................... 18

*W. Mining Council v. Watt*
    643 F.2d 618 (9th Cir. 1981)................................................................... 7

*Wal-Mart Stores, Inc. v. Duke*
    131 S.Ct. 2541 (2011) ......................................................................... 33

*Whitely v. Albers*
    475 U.S. 312 (1986) ............................................................................ 22

*Wilkenson v. Austin*
    545 U.S. 209 (2005).......................................................................*passim*

*Williams v. Bennett*
    689 F.2d 1370 (11th Cir.1982)................................................................ 9

*Wilson v. Seiter*
    501 U.S. 294 (1991) ............................................................................ 22

*Winter v. Natural Res. Defense Council*
    555 U.S. 7 (2008) ................................................................................ 35

*Zimmerlee v. Keeney*
    831 F.2d 183 (9th Cir. 1987)......................................................... 16, 20

# TABLE OF AUTHORITIES
## (continued)

**Page**

**STATUTES**

United States Code

    Title 28

        § 1915(e)(2)(B)(ii) ........................................................................................................ 7

California Code of Regulations

    Title 15

        § 3139 .................................................................................................................... 30
        § 3318 .................................................................................................................... 11
        § 3335 ............................................................................................................... 5, 23
        § 3337 ...................................................................................................................... 9
        § 3338 .................................................................................................................... 23
        § 3339 .................................................................................................................... 11
        § 3341.5 ............................................................................................................ *passim*
        § 3376 ........................................................................................................... 5, 12, 13
        § 3378 ............................................................................................................... *passim*

**CONSTITUTIONAL PROVISIONS**

Eighth Amendment ............................................................................................................ *passim*

Eleventh Amendment ............................................................................................................... 27

First Amendment ............................................................................................................... *passim*

Fourteenth Amendment ...................................................................................................... *passim*

United States Constitution .......................................................................................................... 11

**COURT RULES**

Federal Rules of Civil Procedure

    23 ............................................................................................................................. 33

x

Memo. P&As Supp. Mot. Dismiss (2:09-cv-3273 GEB KJN)

1    **INTRODUCTION**

2          Prisoner-plaintiff Randy Real fails to state First, Eighth, and Fourteenth Amendment claims

3    regarding his validation as an associate of the Mexican Mafia prison gang and subsequent

4    indeterminate confinement in the Security Housing Unit (SHU).  Initially, Real's willingness, in

5    the Second Amended Complaint, to contradict the representations he previously made to this

6    Court under penalty of perjury calls into question the truthfulness of his allegations.  But

7    regardless, this Court should dismiss this action because the Second Amended Complaint fails to

8    state a claim or demonstrate any clearly established violation of law, and because Real's

9    allegations exceed the scope of this Court's order allowing amendment of the complaint.

10   **STATEMENT OF THE CASE**

11   **I.    RELEVANT PROCEDURAL HISTORY**

12         Real, previously proceeding pro se, filed his First Amended Complaint asserting numerous

13   claims against eighteen correctional officials for alleged constitutional violations surrounding his

14   validation as an associate of the Mexican Mafia prison gang.  (First Amend. Comp. (FAC), ECF

15   No. 14.)  The Court partially granted the officials' motion to dismiss for failure to state a claim

16   with partial leave to amend, but declined to consider the officials' qualified-immunity defense.

17   (Findings & Recommendations (F&R), ECF No. 43; Order, ECF No. 47.)

18         The officials appealed the denial of qualified immunity interlocutorily.  (Not. Appeal, ECF

19   No. 57.)  The Ninth Circuit denied the appeal on jurisdictional grounds and remanded the action.

20         On remand, Real was assigned an attorney to assist him with filing a second amended

21   complaint.  (Order, ECF No. 67, 47; F&R, ECF No. 43.)  This Court clarified that certain

22   defendants had been dismissed without prejudice and directed Real to file an amended complaint

23   limited to specified claims alleged in the First Amended Complaint, including:  (1) a Fourteenth

24   Amendment due-process claim concerning the denial of an investigative employee; (2) a

25   Fourteenth Amendment due-process claim concerning Real's gang validation and SHU

26   placement; (3) a First Amendment freedom-of -association claim; and (4) an Eighth Amendment

27   indeterminate-SHU confinement claim.  (Order, ECF No. 67; F&R, ECF No. 43.)

28   / / /

1

## II.   REAL'S SECOND AMENDED COMPLAINT

### A.   Real Alleges Violations of the First, Eighth and Fourteenth Amendments.

Real filed a Second Amended Complaint against correctional officials Beard, Fisher, Kisser, Parilla, Parker, Pool, Ramos, Stewart, Ventimiglia, Walker, and Williams.  (Second Am. Comp. (SAC), ECF No. 69.)  He alleges that officials Stewart, Ramos, Pool, and Walker violated the Fourteenth Amendment by denying his request for assignment of an investigative employee. (SAC ¶¶ 52-55.)  He alleges that all eleven correctional officials violated the Fourteenth Amendment by validating him as a gang associate, housing him in the SHU on an indeterminate basis, failing to provide meaningful classification reviews, and using the gang-validation and debriefing procedures as pretext to justify his indefinite SHU confinement.  (*Id.* ¶¶ 56-58.)  Real further alleges that his indefinite SHU confinement violates the Eighth Amendment because he was erroneously validated and that he cannot obtain release from the SHU unless he debriefs from the gang, which he cannot do because debriefing requires him to provide information about the gang that he does not have.  (*Id.*  ¶¶ 59-73.)  Finally, Real challenges under the First Amendment the confiscation of his address book, and the use of the gang-mail-drop address therein and reports of his participation in gang roll call to support his gang validation.  (*Id.*  ¶¶ 59-73.)

### B.   The Officials' Alleged Involvement in Real's Gang Validation and SHU Confinement.

Secretary Beard is named solely in his official capacity, for purposes of Real's injunctive-relief claim.  Real does not allege that Beard personally participated in, or was aware of, the events at issue in the Second Amended Complaint.[1]  (*Id.* ¶ 4.)

Institutional Gang Investigator (IGI) Parilla was employed at California Correctional Institution at Tehachapi.  (*Id.* ¶ 11.)  In 2002, Parilla questioned Real about his involvement in an inmate stabbing.  Real later was found guilty of a disciplinary rules violation charge for

---

[1] Real's First Amended Complaint named the Director of CDCR as a doe defendant. Former Secretary Tilton waived service and responded, but the allegations against him were later dismissed, with leave to amend.  (Mot. Dismiss, ECF No. 24; Order, ECF No. 67.)  Real's Second Amended Complaint, filed with assistance of counsel, specifies that the current Secretary Beard should be named because Real is seeking injunctive relief.  (SAC ¶ 4.)

2

Memo. P&As Supp. Mot. Dismiss (2:09-cv-3273 LJO KJN)

1  perpetrating the stabbing, and served a determinate SHU term as a result.  (*Id.* ¶¶ 20-21.)  IGI

2  Parilla authored three confidential memoranda that were later relied on as evidence of gang

3  association by a gang-validation committee at California State Prison, Sacramento.  (*Id.* ¶ 26(a)-

4  (c).)  These memoranda indicate that:  (1) a confidential informant stated that Real perpetrated the

5  stabbing on behalf of a validated member of the Mexican Mafia prison gang; (2) a confidential

6  informant identified Real as conducting gang roll call of inmates subservient to that same gang;

7  and (3) Real's address book was found to include a mail-drop address belonging to a validated

8  associate of the gang.  (*Id.*; FAC 33, 37, 97.)

9          All remaining defendant correctional officials were employed at California State Prison,

10  Sacramento, where the gang- validation decision was made.

11          IGI Parker authored three confidential memoranda, which also supported the validation

12  decision.  (SAC ¶¶ 7, 26(d)-(f).)  These memoranda indicate that, on three separate occasions—in

13  2006, 2007, and 2008—during three separate cell searches of validated Mexican Mafia associates,

14  correctional staff discovered gang rosters that identified Real by his gang moniker, CDCR

15  number, and geographical gang area.  (*Id.,* FAC 39-41.)  Gang leaders typically use the rosters to

16  monitor subservient inmate's locations throughout the prison system.  (FAC 39-41.)  IGI Parker

17  also confiscated Real's address book because it contained the name and mail-drop address of a

18  validated Mexican Mafia gang associate.  (SAC ¶¶ 23, 47-48, FAC 33, 37, 97.)

19          IGI Lieutenant Ventimiglia served Real with a gang-validation packet on July 2, 2008 and,

20  two days later, signed the notice informing Real that the reason for his temporary placement in

21  Administrative Segregation was that his involvement with the gang was being investigated.

22  (SAC ¶¶ 6, 26, 34, 45-46; FAC 91.)  Ventimiglia also reviewed Real's prison grievance

23  challenging the validation decision, but did not find his arguments persuasive.  (SAC ¶¶ 6, 26, 34.)

24          Captain Ramos served Real with the Administrative Segregation placement notice and

25  denied his request for an investigative employee.  (*Id.* ¶¶ 8, 34-36.)

26          IGI Sergeant Stewart interviewed Real regarding the validation evidence and accepted

27  Real's handwritten objections.  (*Id.* ¶¶ 6, 33; FAC 46.)  Stewart allegedly later cancelled Real's

28  / / /

3

Memo. P&As Supp. Mot. Dismiss (2:09-cv-3273 LJO KJN)

grievance based on purportedly erroneous information that Real refused to participate in a grievance interview with a nonparty officer.  (SAC ¶¶ 49-50.)

Fisher, Kisser, and Williams sat on the December 12, 2008 committee that validated Real as a gang associate.  (*Id*. ¶¶ 12-14, 38; FAC pp. 36.)

Appeals Coordinator Pool and Warden Walker's involvement was limited to processing Real's prison grievances.  They reviewed Real's grievance after his request for an investigative employee was denied and after the validation decision issued, and denied the grievance.  (SAC ¶¶ 5-10, 38-40.)  Pool later screened out Real's appeal to the Director's level of review, although Real later resubmitted it.  (*Id*. ¶¶ 10, 39-40.)

Real seeks monetary damages and injunctive relief in the form of (1) changing the information that can be relied on to impose gang validations and indeterminate SHU terms, (2) requiring CDCR to assign suspected gang affiliates investigative employees, and (3) expunging his gang validation and reassessing his security-classification and housing status.  (*Id*. ¶¶ 16-17.)

## III.   RELEVANT BACKGROUND INFORMATION CONCERNING CDCR'S TREATMENT OF PRISON GANGS.

### A.   In California Prisons, "Gang Validation" Is an Administrative Action Taken to Preserve Order and Protect the Safety of All Inmates.[2]

"Validation" is the process by which California state prisons document and approve an inmate's affiliation with a prison gang.  Cal. Code Regs. tit. 15, § 3378(c)(6) (2008).[3]  Typically, when sufficient intelligence suggests that an inmate is a prison gang member or associate, he is removed from the prison's general population and placed in administrative segregation while an investigation is conducted.  The Institutional Gang Investigator (IGI) is tasked with investigating allegations of gang involvement and holding an informal hearing where the inmate receives advance notice of the charges and an opportunity to present his views.  *Id*. § 3378(c)(2)-(6).  The

---

[2] California's management of prison gangs has recently changed.  This section addresses the regulations in place at the time of Real's gang validation.  But the new "Security Threat Group" policy (currently in the process of being adopted as regulations, and expected to be adopted by October 2014) also are discussed where relevant to Real's claims.

[3] For the Court's convenience, a copy of the California Code of Regulations relied on are provided at Attachment A.

4

1   IGI then submits the gang-validation packet to the gang-validation committee for review.  *Id.* §

2   3378(c)(6).

3       The initial classification committee determines whether to impose an indeterminate SHU

4   term based on the validation determination.  *Id.* §§ 3335, 3338.  The prison regulations then in

5   effect deemed validated prison-gang members and associates to be "a severe threat to the safety

6   of others or the security of the institution" and directed, with few exceptions, that those inmates

7   "be placed in a SHU for an indeterminate term."  *Id.* § 3341.5(c)(2)(A)(2).

8       Placing validated gang affiliates in the SHU is not a disciplinary measure, but an

9   administrative action taken to preserve order and protect the safety of all inmates.  *Wilkinson v.*

10  *Austin*, 545 U.S. 209, 227-28 (2005) (acknowledging serious and detrimental effect prison gangs

11  have on prison security).  Although there are some minimal legal limitations, the assignment of

12  inmates to the SHU is essentially a matter of administrative discretion.  *Bruce v. Ylst*, 351 F.3d

13  1283, 1287 (9th Cir. 2003).

14      The Classification Services Representative (CSR) reviews the validation decision, the

15  committee's housing recommendation, and endorses the inmate for transfer to a SHU.  Cal. Code

16  Regs. tit. 15, § 3378(c)(6)(G).  At the institution where the inmate is serving the SHU term, the

17  Unit Classification Committee reviews the inmate's housing every 180 days, and the Institutional

18  Classification Committee reviews his housing and gang classification annually.  *Id.* §§

19  3341.5(c)(2)(A), 3376(c)(2), 3378(c)(6)(G)(7).

20      **B.**    **Debriefing Is Not the Only Means for a Validated Inmate to Be Released**
21              **from the SHU.**

22      CDCR provides multiple avenues for validated inmates to obtain release from the SHU.  An

23  inmate is considered for release if an IGI verifies he is a "gang dropout" through the debriefing

24  process.  *Id.* §§ 3341.5(c)(4), 3378.1.  Also, if the inmate has not been identified as having been

25  involved in gang activity for at least six years, the Departmental Review Board may consider him

26  for inactive-status review.  *Id.* §§ 3341.5(c)(5), 3378(e).[4]  And an inmate can now obtain release

27  _____

28       [4] As explained in the following section, the new policy reduces this period to four years.

5

from the SHU without debriefing through CDCR's newly implemented "Step Down Program." (Req. Jud. Not., Ex. A.)

### C. CDCR's Management of Prison Gangs Has Changed Extensively, as Evidenced by the Implementation of the New Security Threat Group Policy.

CDCR has extensively revised its gang-management policies.[5] (*Id.* at Ex. B.)  Newly identified gang affiliates (members and associates) are now evaluated under new criteria. (*Id.*) An objective point-based component was implemented that gives each source item a weighted point value between two and seven points.  (*Id.*)  Each validation must now include three independent sources with a cumulative total of 10 points or more.  (*Id.* at Ex. C.)  When the identified behavior includes a list of names or identifying information found in another offender's possession, only the individual in possession of the list is held accountable for the contents of the list.  (*Id.*)  Unsubstantiated confidential information from a single source is no longer sufficient to confirm the existence of gang-related behavior.  *Id.*  And newly validated gang affiliates are no longer automatically placed in the SHU.  (*Id.* at Ex. B.)

A Step Down Program has been implemented.  This incentive-based, multi-step process affords validated inmates the opportunity to earn enhanced privileges, demonstrate their ability to refrain from gang-related activity, and obtain release from the SHU without  requiring them to drop out of the gang. (*Id.* at Exs. A, C.)  Further,

The Departmental Review Board is in the process of reviewing every inmate validated under the previous regulations through a new case-by-case review process.  (*Id.* at Ex. C.)  Identified gang-related behavior is only considered if that behavior occurred within the four years preceding the Board's review.  (*Id.*)  And, once a validated gang affiliate undergoes the case-by-case review, his future classification and housing decisions are controlled at the institutional level, allowing for his release into the general population and for his credit-earning status to change.  (*Id.*)  As of October 2013, CDCR endorsed for release to its general population more than half of the validated inmates who were reviewed under the Security Threat Group policy.  (*Id.*)

---

[5] The new regulations are available at the Request for Judicial Notice, at Exhibits E and F.

6

**LEGAL STANDARD FOR DISMISSAL**

To survive dismissal, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007); 28 U.S.C. § 1915(e)(2)(B)(ii) (directing the court to dismiss the case "at any time" if it is determined that the allegations fail to state a claim). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to state a claim. *Iqbal*, 556 U.S. at 678, *citing Bell At. Corp.*, 550 U.S. at 555. While factual allegations are accepted as true, conclusory allegations and legal conclusions are not. *Iqbal*, 556 U.S. at 678; *W. Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir. 1981) (holding that the court need not accept as true implausible allegations, unreasonable inferences, or conclusory allegations cast in the form of factual allegations). A plaintiff must demonstrate that each defendant personally participated in the alleged constitutional deprivation. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir.2002). This requires the presentation of factual allegations sufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 678-79. The mere possibility of misconduct does not meet this standard. *Id.* And "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record . . . a court should not adopt that version of the facts." *Scott v. Harris,* 550 U.S. 372, 380 (2007) (on summary judgment).

**ARGUMENT**[6]

**I.    REAL'S FOURTEENTH AMENDMENT CLAIMS ARE NOT COLORABLE.**

    **A.    The Officials Are Entitled to Qualified Immunity because Real's Investigative-Employee Allegations Fail to State a Claim and There Is No Clearly Established Right to Appointment of an Investigative Employee.**

Real seeks to hold correctional officials Stewart, Ramos, Pool, and Walker liable for not appointing an investigative employee to assist him in challenging his gang validation. (SAC ¶¶ 33-41, 52-55.) These officials are qualifiedly immune because the allegations against them fail to

---

[6] The correctional officials reserve the right to raise the issue of administrative exhaustion at a later date. And because the Second Amended Complaint does not name Baughman, Grannis, Hemenway, Hill, Sims, Till, Tilton, or Virga, or contain any allegations against them, these defendants should be dismissed with prejudice from this action.

7

1  state a claim and because Real has no clearly established right to appointment of an investigative

2  employee.

3         The determination whether a right is so clearly established as to defeat qualified immunity

4  is an issue of law for the court to decide, and is appropriate for consideration on motion to

5  dismiss. *Dunn v. Castro,* 621 F.3d 1196, 1198-99 (9th Cir. 2010).  Qualified immunity shields

6  state officials performing discretionary functions from liability for damages. *Harlow v.*

7  *Fitzgerald*, 457 U.S. 800, 818 (1982).  The qualified-immunity analysis considers two questions:

8  whether a constitutional violation occurred and whether the right was "clearly established in light

9  of the specific context of the case" at the time of the events in question. *Mattos v. Agarano*, 661

10  F.3d 433, 440 (9th Cir. 2011) (cautioning against defining clearly established law at a high level

11  of generality); *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001).  Courts may consider these two

12  questions in either order, and a favorable determination for the defendants on either establishes

13  qualified immunity. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

14         Real carries the burden of establishing the violation of a clearly established right. *Davis v.*

15  *Scherer*, 468 U.S. 183, 187 (1984).  The law concerning the right at issue must be "sufficiently

16  clear that *every* reasonable official would have understood that what he is doing violates that

17  right." *Mattos,* 661 F.3d at 442 (internal quotation marks omitted, emphasis added); *Anderson v.*

18  *Creighton*, 483 U.S. 635, 640 (1987).  Prison officials are entitled to qualified immunity unless

19  the challenged conduct has been found unconstitutional under facts not distinguishable in a fair

20  way from the facts presented in the case at hand. *Devereaux v. Abbey,* 263 F.3d 1070, 1074 (9th

21  Cir. 2001).

22         Officials do not forfeit their immunity from suit merely by failing to comply with a state

23  regulation. *Davis*, 468 U.S. at 193-94, n.12.  And qualified immunity shields officials when their

24  decisions—even if constitutionally deficient—reasonably mistake the facts or misapprehend the

25  law governing the circumstances confronted. *See Saucier*, 533 U.S. at 205-06.  Thus, prison

26  officials who are mistaken about the sufficiency of the evidence supporting a gang validation or

27  the procedural protections due process requires are still qualifiedly immune if they acted

28  / / /

8

Memo. P&As Supp. Mot. Dismiss (2:09-cv-3273 LJO KJN)

1   reasonably.  Here, the law was not so clearly established that every reasonable correctional

2   official would understand that the challenged conduct to be unlawful.

3           **1.      Neither Stewart, Pool, nor Walker was responsible for deciding whether to appoint Real an investigative employee.**

4

5         Stewart, Pool, and Walker are qualifiedly immune because they were not responsible for

6   the decision not to appoint Real an investigative employee, and they cannot be held liable for the

7   actions of others.  *Iqbal*, 556 U.S. at 676; *Peralta v. Dillard,* 744 F.3d 1076, 1082-83 (9th Cir.

8   2014) (explaining that the duty owed is limited by the official's discretion and the extent of his

9   authority); *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (explaining that liability exists only

10  if the official's actions or omissions "cause" the deprivation); *Williams v. Bennett,* 689 F.2d 1370,

11  1388 (11th Cir.1982) ("Although each prison employee owes a duty to the inmates affected by his

12  function, that duty must be measured by the scope of discretion and extent of his authority.")

13        Prison regulations delegate the decision whether to assign an investigative employee to a

14  designated staff person, who holds a position "at not less than the level of correctional captain."

15  Cal. Code Regs., tit. 15, § 3337.  IGI Stewart (a correctional Sergeant) and Appeals Coordinator

16  Pool (a Correctional Counselor) could have had no authority over the appointment decision

17  because they did not hold a rank of correctional captain or higher.  (SAC ¶¶ 7, 10.)  Further,

18  neither Stewart, Pool, nor Walker are alleged to have been the designated staff person.  *Iqbal*, 556

19  U.S. at 678 (requiring sufficient facts to support a reasonable inference that the defendant is liable

20  for the misconduct alleged); (*See also* FAC 100 (administrative-segregation placement notice,

21  showing that Captain Ramos was responsible for the decision).)

22        Real does not allege that he requested from Stewart the appointment of an investigative

23  employee.  (SAC ¶¶ 33-34; FAC 6 (indicating that he did not request appointment of an

24  investigative employee until his contact with Captain Ramos two days later).)  Nor does he allege

25  that Warden Walker or Appeals Coordinator Pool denied his request for an investigative

26  employee.  *Iqbal,* 556 U.S. at 678.  They merely reviewed Real's prison grievance concerning the

27  denial after the decision had been made.  (SAC ¶ 39.)  Pool also screened out Real's appeal to the

28  / / /

1   final level of review, but this screening was inconsequential because Real resubmitted the appeal

2   and it was accepted for review.  (*Id.* ¶¶ 40-41.)

3      Ruling against a prisoner on an administrative grievance "does not cause or contribute to

4   the violation."  *George v. Smith,* 507 F.3d 605, 609-10 (7th Cir. 2007); *Shehee v. Luttrell*, 199

5   F.3d 295, 300 (6th Cir. 1999) (holding that officials whose only roles involved denying prison

6   grievances cannot be held liable under § 1983).  Further, the right to due process does not ensure

7   the proper processing of prison administrative grievances.  (F&R 18-19, ECF No. 43

8   (acknowledging that Real "cannot state a cognizable civil rights claim for violation of his due

9   process rights based on allegations that prison officials ignored or failed to properly process

10   prison grievances.") (citing *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) and *Mann v.*

11   *Adams*, 855 F.2d 639, 640 (9th Cir. 1988)));[7] *see also Jones v. Cannedy,* No. 2:10-cv-2174 KJM

12   KJN P, 2012 WL 3260457 (E.D. Cal. Aug. 8, 2012) (holding that inmates "cannot state a

13   cognizable civil rights claim based solely on allegations that prison officials ignored, inadequately

14   responded to, or failed to properly process, [his] administrative grievances."*)*, *report and*

15   *recommendation adopted by* 2012 WL 4460818 (Sept. 25, 2012).

16      Officials Pool, Walker, and Stewart are qualifiedly immune because, under established law,

17   it would not have been clear to a reasonable official that their alleged actions violated the

18   Fourteenth Amendment.

19      **2. There is no clearly established right to the appointment of an**
          **investigative employee during gang-validation proceedings.**

20

21      Real's investigative employee claim should be dismissed because no clearly established

22   right to the appointment of an investigative employee exists.  The court previously considered this

23   claim and, without reaching the officials' entitlement to qualified immunity, dismissed the claim

24   with leave to amend because the requirements detailed on a prison form suggested there was a

25   *possibility* that prison policy required assignment of an investigative employee.  (F&R 17-18,

26   ECF No. 43.)  But neither the prison's actual regulations nor the referenced prison form required

       [7] While the Court dismissed other claims and Defendants on this ground, it did not address
the instant claims.

27

28

10

Memo. P&As Supp. Mot. Dismiss (2:09-cv-3273 LJO KJN)

1    the appointment of an investigative employee.  An investigative employee, when assigned, is

2    designated to gather information for the senior hearing officer.  Cal. Code Regs. tit. 15, §§

3    3318(a), 3341, 3341.5 (c)(2)(A), 3339; *Sandin v. Conner*, 515 U.S. 472, 482 (1995) (holding that

4    state prison regulations are "not designed to confer rights on inmates").  The assignment is done

5    as a representative of the hearing official, not of the inmate.  *Id.* § 3318(a)(3).  And Captain

6    Ramos determined that no evidence collection was required by an investigative employee,

7    because an investigation already was being conducted.  (SAC ¶ 34; *see also* FAC 100.)

8         Regardless, a federal due-process claim requires a violation of the Fourteenth Amendment,

9    not merely a violation of prison policy.  *Davis*, 468 U.S. at 194 ("Officials sued for constitutional

10   violations do not lose their qualified immunity merely because their conduct violates some [state]

11   statutory or administrative provision."); *Sweaney v. Ada County, Idaho,* 119 F.3d 1385, 1391 (9th

12   Cir. 1997).  To defeat qualified immunity, Real must allege the violation of the same clearly

13   established right on which the claim for relief is based.  *Davis*, 468 U.S. at 193-94, n.12; *Elder v.

14   Holloway*, 510 U.S. 510, 515 (1994).

15        But no established legal authority recognizes a federal due-process right to the assignment

16   of an investigative employee during gang-validation proceedings.  *Toussaint*, 801 F.2d at 1100-01

17   (holding that when prison officials determine whether to segregate an inmate for administrative

18   reasons, "the due process clause does not require. . . representation by counsel or counsel-

19   substitute") (abrogated on other grounds by *Sandin*, 515 U.S. 472); *Baker v. Lewis*, C 11-3493

20   LHK PR, 2012 WL 1932867, *3 (N.D. Cal. May 29, 2012) ("due process does not mandate that

21   Plaintiff receive an investigative employee to assist in his [gang re-validation] hearing."); *Lopez v.

22   Galaza,* No. civ-s-02-2563, 2006 WL 3147686 (E.D. Cal. Nov. 1, 2006), *report and

23   recommendation adopted by* 2006 WL 3531736 (Dec. 7, 2006) (holding that the right to the

24   services of an investigative employee is not a right guaranteed by the United States Constitution

25   and does not support a federal due process claim).  The law is not so clear that every reasonable

26   officer would understand that not assigning Real and investigative employee violated the

27   Fourteenth Amendment.  Thus, Pool, Walker, Ramos, and Stewart are qualifiedly immune, and

28   this claim should be dismissed in its entirety.

11

Memo. P&As Supp. Mot. Dismiss (2:09-cv-3273 LJO KJN)

**B.    Real Cannot State a Claim Based on the Purported Lack of Meaningful Classification Reviews because His Allegations Are Conclusory and There Was No Clearly Established Right to Classification Reviews.**

Real alleges that the failure to provide meaningful classification reviews violated his Fourteenth Amendment rights.  (SAC ¶ 56.)  This claim fails because it exceeds the scope of amendments specifically allowed by this Court.  The Court explicitly restricted the claims that could be raised when authorizing Real to file a second-amended complaint.  (Order 3, ECF No. 67 (directing that the Second Amended Complaint must "comply with the limitations set forth in the magistrate judge's findings and recommendations" at ECF No. 43).)  The Court specified which claims would be allowed, permitting Real only to amend his allegations concerning the merits of the gang-validation and SHU-placement decisions, as set forth in the First Amended Complaint's Second, Sixth, Ninth, Eleventh, Twenty-Fourth, and Twenty-Seventh causes of action.  (F&R 28, ECF No. 43.)  These specified claims do not address any right to meaningful classification reviews.  (FAC 10-12, 17-18.)  Real's attempt to state a due-process claim based on his alleged lack of classification reviews exceeds the scope of this Court's order, and should not be permitted.

Moreover, Real's classification-review allegations are wholly conclusory and fail to state a plausible claim for relief.  The Second Amended Complaint does not contain any facts that could show that the officials denied Real meaningful classification reviews.  *Iqbal*, 556 U.S. at 663, 678.  While Real broadly claims that his classification reviews were not meaningful (SAC ¶¶ 58(b)), he does not state who conducted the reviews or why the reviews allegedly were deficient.  Moreover, none of the officials are employed at Pelican Bay State Prison, where Real is serving his indeterminate-SHU term and where his classification reviews are conducted.[8]  (*Id.* ¶¶ 3, 6-14); *see also* FAC 104 (showing that no named defendant sat on the committee that imposed Real's indeterminate-SHU term).)

_____

[8] Classification reviews are regularly conduced by the Institutional Classification Committee and Unit Classification Committee after an inmate's placement in the SHU.  Cal. Code Regs., tit. 15 §§ 3341.5(c)(2)(A), 3376(c)(2), 3378(c)(6)(G)(7).

12

This claim also fails because Real had no clearly established right to a periodic, post-placement review of his retention in segregated confinement.  *Brown v. Oregon Dep't of Corr.*, 11-35628, 2014 WL 1687758, *5 (9th Cir. Apr. 29, 2014) (holding that although a lengthy confinement without meaningful post-placement review may require due-process protections, the qualified-immunity doctrine shields against those claims because the law had not previously recognized such a right); *see also Madrid v. Gomez,* 889 F.Supp. 1146, 1278 (N.D. Cal. 1995) (holding that subsequent decisions to retain a validated inmate in the SHU need not independently reexamine the basis of the validation decision).  To the extent that prior case law recognized any such liberty interest by relying on the wording of prison regulations, the test for determining the existence of a liberty interest was refocused by the Supreme Court in 1995, before Real's SHU confinement began.  (SAC ¶ 16); *Brown*, 2014 WL 1687758, *13 *citing Sandin,* 515 U.S. at 485.

Real also has not alleged sufficient facts to support his injunctive-relief claim.  Because a suit against Secretary Beard in his official capacity is a suit against the state, a state policy or procedure must have caused the injury claimed.  *Hafer v. Melo*, 502 U.S. 21, 25 (1991).  But Real does not allege that the purported lack of meaningful classification review was grounded in any CDCR policy.  Moreover, CDCR regulations provide for regular classification reviews to be conducted by the classification committees at the institution where the inmate is housed.  Cal. Code Regs., tit. 15, §§ 3341.5(c)(2)(A), 3376(c)(2), 3378(c)(6)(G)(7).  Real has not alleged a colorable Fourteenth Amendment claim based on the alleged denial of meaningful classification reviews.

**C.    Defendants Are Qualifiedly Immune from Real's Evidentiary-Due-Process Claim Grounded in the Six Evidentiary Items Used to Validate Him.**

**1.    A reasonable officer could believe that documenting Real's gang activity and relying on that documentation validate him was lawful.**

While Real asserts his evidentiary due-process claim against all eleven defendants, he identifies only three officials—Fisher, Kisser, and Williams—as being responsible for the validation decision.  (SAC ¶ 30.)  Even if these three officials had validated Real in error, they still are qualifiedly immune because they reasonably relied on six reports, authored by Parker and Parilla, documenting Real's association with the gang.  (SAC ¶ 26); *Motley v. Parks,* 432 F.3d

13

1  1072, 1081 (9th Cir. 2005) (law enforcement officers are entitled to reasonably rely on the reports

2  of other officers); *Pearson,* 555 U.S. at 231 (qualified immunity applies even when mistake of

3  fact occurs).

4      And Real offers no legal basis for imputing liability beyond the actual decision makers, to

5  the officials who processed his grievances, served him with prison notices, and documented

6  reports of his conduct.  Real must link each putative defendant to the validation and

7  indeterminate-SHU-placement decisions that implicated this liberty interest.  *Iqbal*, 556 U.S. at

8  670.  To the extent the validation decision required "some evidence" of his association with the

9  gang, Defendants Parilla, Parker, Pool, Ramos, Stewart, Ventimiglia, and Walker are not alleged

10 to have made the validation decision, or to have had any responsibility for ensuring that "some

11 evidence" supported that decision.  Thus, these officials are not proper defendants.  *Peralta,* 744

12 F.3d at 1082-83.

13     Further, Parker and Parilla cannot be held liable under the guise of due process, even if the

14 documentation they provided was inaccurate.  *See Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir.

15 1986) (holding that being falsely accused of conduct which implicates an inmate in a disciplinary

16 infraction fails to state a due-process claim where the required procedural protections were later

17 provided at a disciplinary hearing).  Prison inmates have no constitutionally guaranteed immunity

18 under the Fourteenth Amendment from being falsely or wrongly accused of conduct which may

19 result in the deprivation of a protected liberty interest.  *Id.; Toussaint* 801 F.2d at 1093.  Further,

20 that Parker and Parilla's reports were authorized by prison regulations further mitigates in favor

21 of qualified immunity.  *Grossman v. City of Portland,* 33 F.3d 1200, 1208 (9th Cir. 1994); Cal.

22 Code Regs. tit. 15 §§ 3378 (c)(8)(E) (authorizing officers to document information that

23 reasonably indicates gang activity), 3378(c)(8)(C) (permitting reliance on written materials and

24 membership lists), 3378(c)(8)(G) (authorizing reliance on the inmate's association with validated

25 gang affiliates), 3378(c)(8)(H) (authorizing reliance on informants).

26     In sum, no legal authority provides sufficient notice, such that every reasonable officer

27 would understand Real's due-process rights were violated by documenting his gang activity or

28 relying on that documentation to support the validation decision.  And there is certainly no clearly

14

1    established violation for those who took part in the decision.  Thus, the officials are qualifiedly

2    immune from Real's due-process claim.

3              **2.      A reasonable officer relying on Supreme Court precedent could
                         believe that no right to an evidentiary review exists.**

4

5              Defendants also are entitled to qualified immunity because a reasonable officer could

6    understand the Supreme Court's decision in *Swarthout v. Cooke*, 131 S. Ct. 859 (2011), to imply

7    that inmates can bring only procedural due-process challenges to gang-validation decisions.

8    *Swarthout* clarified that prisoners challenging parole denials—which involve a more substantial

9    liberty interest in freedom from incarceration—can seek review only over the due-process

10   procedures followed, and not whether "some evidence" supports the decision.  *Id*. at 862.

11             Application of this principle to prison-segregation cases is further supported by *Wilkinson*

12   *v. Austin*, 545 U.S. 209 (2005)*,* in which the Supreme Court held that assignment to Ohio's

13   "Supermax" prison implicated a liberty interest, but looked only at whether Ohio's policy of

14   assignment "provides a sufficient level of process" and made no mention of any evidentiary

15   review.  *Id*. at 224-30.  *Wilkinson* explains that administrative-segregation placement requires less

16   due-process protection "than in cases where the right at stake is the right to be free from

17   confinement at all."  *Id*. at 225.  Here, where "the inquiry draws more on the experience of prison

18   administrators, and where the State's interest implicates the safety of other inmates and prison

19   personnel, the informal, nonadversary procedures [of notice and an opportunity to be heard]

20   provide the appropriate model."  *Id*. at 228-29 (citing *Greenholtz v. Inmates of Neb. Penal and*

21   *Correctional Complex*, 442 U.S. 1 (1979) and *Hewitt v. Helms*, 459 U.S. 460 (1983).)

22             Recent decisions in this court also have found no due-process right to a "some evidence"

23   review of gang-validation decisions based on these cases.  *See, e.g. Hernandez v. Stainer,* No.

24   1:12-CV-01177 AWI, 2012 WL 4363736, *6 (E.D. Cal. Sept. 20, 2012) (noting that "the Ninth

25   Circuit and district courts within the circuit had previously applied the 'some evidence' standard"

26   to validated inmates' placement in the SHU, but expressly denying the due-process claim because

27   "[t]he Supreme Court has not held that the procedural protections include any evidentiary

28

                                                    15

1    sufficiency requirement for the decision to place an inmate in administrative segregation," citing

2    *Swarthout* and *Wilkinson*).[9]

3         **3.    A reasonable officer could have believed that Real's validation**
              **decision did not violate due process because it was supported by**
4             **"some evidence."**

5         Even if this Court were to apply the "some evidence" standard, the individual-capacity

6    defendants still are qualifiedly immune because this standard requires only a modicum of

7    evidence that *could* support the validation decision.  *Castro v. Terhune,* 712 F.3d 1304, 1314 (9th

8    Cir. 2013) (applying "some evidence" standard of review to gang validation decision).  Due

9    process does not require that the correct decision be made.  *Hill*, 472 U.S. at 457.  The Supreme

10   Court has found that the some-evidence standard is satisfied even by "meager" evidence.  *Id.*

11        Further, the Ninth Circuit has cautioned that it is not the role of the courts to "examine the

12   entire record, independently assess witness credibility, or reweigh the evidence."  *Castro,* 712

13   F.3d at 1314.  Evidence need only bear "some indicia of reliability."  *Id.*  This standard is met

14   even if the evidence does not "logically preclude[ ] any conclusion but the one reached."  *Id.*

15   (citing *Hill*, 472 U.S. at 457).  Further, prison-gang experts' validation decisions should not be

16   lightly second-guessed.  *Turner v. Safley*, 482 U.S. 78, 84 (1987) ("[C]ourts are ill equipped to

17   deal with the increasingly urgent problems of prison administration and reform.").  As detailed

18   below, each source item supporting Real's validation independently satisfies the minimal some-

19   evidence standard.  But only one of the six source items need withstand scrutiny for Real's

20   evidentiary due-process claim to fail.  *Zimmerlee v. Keeney,* 831 F.2d 183, 186-87 (9th Cir. 1987)

21   (requiring only one piece of evidence to support the decision).

22        **a.    Each of the three gang rosters is "some evidence" of Real's**
              **affiliation with the gang.**
23

24        Real challenges the prison's reliance on Parker's reports documenting three separate rosters

25   of Mexican Mafia associates to support the validation decision. (SAC ¶¶ 26, 32, 58.)  He

26   ─────────────────────

27        [9] In *Castro v. Terhune,* 712 F.3d 1304, 1314 (9th Cir. 2013), the Ninth Circuit applied the
     "some evidence" standard of review to gang-validation decisions, but did not address *Wilkinson.*
     And regardless, *Castro* was decided after the validation decision challenged here.
28

16

1    challenges these rosters because, although they identify him as an active associate of the gang by

2    his street-gang moniker, CDCR number, and geographical gang neighborhood (SAC ¶ 26; FAC

3    39-41, 92-94), they contain only information that is readily available to other inmates and do not

4    specify his involvement in any overt gang-related act.  (SAC ¶¶ 32.)  These factors do not render

5    the rosters unreliable.  *Castro,* 712 F.3d at 1314 (requiring only "some indicia of reliability").

6          Real's classification of the rosters as an impermissible "laundry list," is misplaced.  The

7    term "laundry list" refers to a uncorroborated confidential source, such as a debriefing inmate

8    who merely lists the names of inmates who are part of the gang.  (FAC 33.)  But the three rosters

9    identifying Real were created for use by members of the gang, and were involuntarily seized

10   during the cell searches of three different validated gang associates.  (SAC ¶ 26; FAC 39-41, 92-

11   94.)  Each "roster's reliability is reasonably based on the fact that it was seized as contraband, and

12   therefore was not prepared by an informant for correctional officers as part of a debriefing . . . and

13   suspect thereby because it was an attempt to curry favor with prison officials."  *Escalante v.*

14   *Lewis*, No. C 10-4417 RS PR, 2012 WL 215253, *4 (N.D. Cal. Jan. 24, 2012).  Moreover, each

15   roster is corroborated by the other two rosters.  These rosters bear sufficient indicia of reliability.

16         CDCR's regulations specifically authorize reliance on any evidence of gang activity,

17   including written material and membership lists, to support a validation decision.  Cal. Code Regs.

18   tit. 15 § 3378(c)(8)(C).  These regulations have never have been found unlawful.  Moreover, the

19   courts of this circuit have repeatedly recognized gang rosters as meeting the federal some-

20   evidence standard.  *Sandigo v. Lewis*, No. C 12-0085, 2014 WL 1379278, *7-8 (N.D. Cal. Apr. 8,

21   2014) (holding that rosters of gang associates prepared for use by the gang, and identifying

22   inmate by his neighborhood of origin and gang moniker, comported with due-process

23   requirements and were "reliable because they were confiscated from known gang associates and

24   were not volunteered by confidential informants"); *Andrade v. Lewis*, No. C 11-3528 SI (PR),

25   2013 WL 5694331, *5-6 (N.D. Cal. Oct. 18, 2013) (same); *Escalante v. Hubbard*, No. C 10-1583,

26   2010 WL 4916404, *4 (N.D. Cal. Nov. 22, 2010) (same); *Barrios v. Gonzales*, No. 1:10-CV-

27   01122, 2011 WL 2620374, *6 (E.D. Cal. July 1, 2011) (holding that written roster of active gang

28   associates is "reliable evidence").

17

Because numerous decisions expressly authorizes reliance on gang rosters as reliable evidence of an inmate's gang association, a reasonable officer could believe that relying on the gang rosters to support Real's validation was lawful.  Thus, the officials are qualifiedly immune from Real's evidentiary due-process challenge.

> **b.**     **The documentation of Real's possession of a gang mail-drop address also is some evidence of his affiliation with the gang.**

Real's challenge to the gang mail-drop address (SAC ¶¶ 26, 31, 58) also fails.  Prison gangs use mail-drop addresses to communicate incognito, evading detection by custody staff.  (FAC 42.)  The mail-drop address at issue belongs to the parents of validated Mexican Mafia associate Jesse Enriquez.  (SAC ¶¶ 26, 31, 58; FAC 42.)  Thus, it was reasonable for the officials to assume that Real had the mail-drop address to communicate with a validated gang associate.

Real now contends that he innocently obtained the mail-drop address only to communicate with a female companion of Enriquez after Enriquez paroled.  (SAC ¶ 23.)  This explanation contrasts starkly with Real's previous representation to this Court—under penalty of perjury—where he denied possession of the address altogether and argued that even if he did have the address, he had no intention of using it.  (Opp'n 13, 35, ECF No. 39; Opp'n (part 2) 71-72, ECF No. 39-1; FAC 46.)  Should the court consider Real's new explanation—which never was provided to the officials tasked with making the validation decision—Real's due-process challenge still fails.  (FAC at 26-27, 46); *Hart v. Cambra*, No. C 96-0924 SI, 1997 WL 564059, *6 (N.D. Cal. Aug. 22, 1997) ("the existence of innocent explanations is not at issue in considering whether due process was afforded").

Courts in this circuit have recognized that mail-drop addresses meet the federal some-evidence standard.  *Gallegos v. Gipson*, No. 1:13-CV-00221, 2013 WL 1907513, *6 (E.D. Cal. May 7, 2013); *Vasquez v. Stainer*, No. CV 09-03029 AHM SS, 2011 WL 3565056, * 5 (C.D. Cal. July 20, 2011) *report and recommendation adopted*, 2011 WL 3568224 (C.D. Cal. Aug. 11, 2011) (finding possession of mail-drop address "clearly indicative of gang membership"); *Castro v. Prouty*, No. 1:09-CV-01763-GBC PC, 2011 WL 529493, *4 (E.D. Cal. Feb. 3, 2011), *aff'd*, 478 F. App'x 449 (9th Cir. 2012); *see also Cook v. Cate*, 1:13-CV-00331-SKO PC, 2014 WL 2174574,

18

1  *3 (E.D. Cal. May 23, 2014) (holding that name and address of a validated gang associate found

2  in the plaintiff's personal property constituted some evidence).

3       It is immaterial whether Real used the address to communicate with anyone, or that the

4  address book was not immediately confiscated from him.[10]  Due process requires only that the

5  evidence "could" support the validation decision.  *Castro v. Terhune,* 712 F.3d at 1314.  In light

6  of the decisions expressly authorizing reliance on an inmate's possession of a mail-drop address,

7  a reasonable officer would believe that relying on the mail-drop addresses to support Real's

8  validation was lawful.  Thus, the officials are qualifiedly immune from Real's due-process

9  challenge, in its entirety.

10       c.    **The documentation of Real's responsibility for conducting gang
            "roll call" is some evidence of his affiliation with the gang.**

11

12       Real challenges the officials' reliance on a report indicating that he conducted "roll call" of

13  Mexican Mafia subservient inmates for the gang.  (SAC  ¶¶ 26, 28-30, 58.)  Real claims that the

14  officials relied on a gang note confiscated from another inmate, which directed "the recipient of

15  the note to 'speak up' because 'Shadow' was having a hard time hearing the prisoner."  (*Id.* ¶ 29.)

16  Real concedes that his street-gang moniker was "Shadow," but argues that the note is unreliable

17  because the moniker "Shadow" is not unique to him, and the note was not in his possession.  (*Id.*)

18  Real's dispute with the evidence, however, does not render it unreliable.  *Hart*, 1997 WL 564059,

19  *6 ("the existence of innocent explanations is not at issue in considering whether due process was

20  afforded.").  Indeed, that the note was confiscated from an inmate, not willingly provided to

21  prison staff, suggests reliability.  *Sandigo*, 2014 WL 1379278, *7-8.  Moreover, Real's mistaken-

22  identity argument ignores that the validation decision also relied on the report of a validated

23  Mexican Mafia associate who both identified Real as conducting roll call, and of being respected

24  enough by the gang to have that responsibility.  (FAC 43.)

25

26

27       [10] Immediate confiscation of the address book would have notified Real that he was being
    investigated, which could hinder the progress of the investigation by allowing him to further
    conceal his gang activity.

28

19

Memo. P&As Supp. Mot. Dismiss (2:09-cv-3273 LJO KJN)

1    Real also asserts that the roll-call evidence is inadmissible hearsay.  It is not.  The Ninth

2    Circuit has held that the *uncorroborated* statement of a confidential informant, which was based

3    on hearsay rather than the informant's first-hand knowledge, is insufficient to satisfy due process.

4    *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir.1987).  But the Ninth Circuit also has held that

5    statements by confidential informants are sufficient when the record contains both facts from

6    which it could be reasonably concluded that the information was reliable and a prison official's

7    statement that safety prevented the disclosure of the inmate's name.  *Bostic v. Carlson*, 884 F.2d

8    1267, 1274 (9th Cir.1989) (citing *Zimmerlee,* 831 F.2d at 186 (finding unidentified informant's

9    eyewitness account reliable)).  Here, the report of Real's participation in roll call was

10   corroborated by the information provided by a validated associate of the gang.  (SAC ¶ 29; FAC

11   43.)  And the informant's information was determined to be reliable because part of the

12   information he provided had already proven to be true.  (FAC 43 (also noting that safety concerns

13   preclude the disclosure of the inmate's identity)); *Bostic v. Brackney,* 976 F.2d 736 (9th Cir. 1992)

14   (holding that hearsay statement accompanied by corroborating evidence satisfied due process).

15   Real also argues that there is no evidence that Parilla, the reporting officer, personally

16   appeared before the validation committee, testified under oath about the report's veracity, or

17   testified on the record that he considered the source of the information reliable based on the

18   informant's past record.  But none of these things are required for "some indicia of reliability" to

19   exist in the gang-validation context.  And, to the extent Real claims that no finding was made on

20   the record that the informant was a reliable witness, this allegation is not entitled to the

21   presumption of truth because it directly contradicts the prison form disclosing the informant's

22   report.  (FAC 43); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988, as amended, 275 F.3d

23   1187 (9th Cir. 2001) (holding that the court may reject allegations of the complaint that contradict

24   matters "properly subject to judicial notice or by exhibit"); *Scott,* 550 U.S. at 380 (holding that,

25   even at summary judgment, a court should not adopt that version of the facts which is blatantly

26   contradicted by the record).

27   This Court recognizes that evidence of an inmate's participation in roll call "more than

28   meets the 'some evidence' standard." *Stearns v. Flores,* No. CV F 00 6331, 2005 WL 1836915

20

1    (E.D. Cal. July 28, 2005), *report and recommendation adopted by* 2005 WL 2089843 (Aug. 30,

2    2005), *aff'd* 465 F. App'x 680 (9th Cir. 2012).  Thus, even if prison officials had incorrectly

3    believed that the note referred to Real when it actually referred to another inmate with the same

4    moniker, no clearly established due-process violation occurred.  *Hill,* 472 U.S. at 457 (holding

5    that evidence susceptible to more than one logical conclusion meets the standard); *Pearson,* 555

6    U.S. at 231 (holding that qualified immunity applies when a mistake of fact is made).

7            **d.    The documentation of Real's battery of another inmate for the**
             **Mexican Mafia is some evidence of his gang affiliation.**
8

9            Real challenges the officials' reliance on the July 2002 report documenting his battery of

10   another inmate on behalf of the Mexican Mafia.  (SAC ¶¶ 18-21, 28, 30, 58.)  He asserts that the

11   documentation of his role in the battery is false and that he could not have committed the battery

12   on behalf of the gang because he had just transferred to the prison where the battery occurred, had

13   been on lockdown until the day of the battery, and neither was housed with nor personally knew

14   the gang inmate who directed the attack.  (*Id.*)

15          Due process does not ensure that the correct result be reached: there need only be some

16   evidence that *could* support the validation decision.  *Hill*, 472 U.S. at 457.  Regardless, Real

17   never provided his current explanation regarding the battery to the prison officials charged with

18   making the validation decision.  Even if he had, the officials would not have had to believe it over

19   the confidential informant's statement identifying Real as committing the battery on behalf of the

20   gang, since other inmates could have passed the message directing the assault to Real without him

21   having direct contact with, or knowledge of the inmate who directed the attack.  (SAC ¶ 26.)

22          And, as explained above, Real's inadmissible-hearsay challenge fails because hearsay

23   statements accompanied by corroborating evidence satisfy due process in the prison context.

24   *Brackney,* 976 at 736.  Here, the prison disciplinary action Real received for battering the inmate

25   provides the necessary corroboration.  (SAC ¶ 21.)  The officials' reliance on the report did not

26   clearly violate any due process right.

27   / / /

28   / / /

**D.    The Fourteenth Amendment Is Not Violated by CDCR's Procedures for Dissociating from the Gang or Obtaining Release from the SHU.**

Real claims that his right to due process is violated because he cannot obtain release from the SHU unless he divulges information he does not have, and that the system of gang validation and debriefing is used as pretext to justify his indefinite confinement.  (SAC ¶ 58.)  These contentions are wholly unsupported by the factual allegations and are contradicted by CDCR's regulations and policy, which permit inmates to obtain release from the SHU without debriefing. Cal. Code Regs. tit. 15, §§ 3341.5(c)(5) (inactive-status review); (Req. Jud. Not., Ex. A). Moreover, the Fourteenth Amendment does not prohibit liberty deprivations, it merely ensures that due process of law is provided.  *Freeman*, 808 F.2d at 951.  As explained above, Real received all process that was due.

**II.    THE OFFICIALS ARE QUALIFIEDLY IMMUNE FROM REAL'S EIGHTH AMENDMENT CONDITIONS-OF-CONFINEMENT CLAIM.**

**A.    The Eighth Amendment Is Not Violated by An Indeterminate Placement in the SHU.**

Prison conditions do not violate the Eighth Amendment unless they amount to "unquestioned and serious deprivations of basic human needs" or the "minimal civilized measure of life's necessities." *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981); *Wilson v. Seiter*, 501 U.S. 294, 298–300 (1991).  "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoners' interest or safety." *Whitely v. Albers*, 475 U.S. 312, 319 (1986) (internal quotations and citations omitted). To state a claim, prisoners must satisfy a two-part test. *Hearns v. Terhune,* 413 F.3d 1036, 1042 (9th Cir.2005).  First, they "must make an objective showing that the deprivation was 'sufficiently serious' to form the basis for an Eighth Amendment violation." *Id.* (citing *Wilson,* 501 U.S. at 298).  Second, they "must make a subjective showing that the prison official acted 'with a sufficiently culpable state of mind.'" *Id.*  A prison official may be liable for denying humane conditions of confinement only if he knows that an inmate faces a substantial risk of harm and deliberately disregards that risk by failing to take reasonable measures to abate it. *Farmer*, 511 U.S. at 837-45.  Placement in segregated housing, even for an indeterminate period, does not by

22

1    itself constitute an Eighth Amendment violation. *Toussaint v. Yockey,* 722 F.2d 1490, 1494 n.6

2    (9th Cir. 1984); *Madrid,* 889 F.Supp. at 1155, 1264-65.

3         **B.    Qualified Immunity Bars Real's Eighth Amendment Claim Because the**
              **Individual-Capacity Defendants Are Not Alleged to Have Any Authority**
4             **Over the Conditions of Real's Confinement in the SHU.**

5         To state a claim, Real must allege that the officials' deliberate indifference caused the

6    deprivation alleged, by providing facts showing that each individual defendant was in a position

7    to take steps to avert the harm, but intentionally failed to do so. *Peralta,* 744 F.3d at 1082-83;

8    *Leer*, 844 F.2d at 633-34 (requiring "a very individualized approach which accounts for the

9    duties, discretion, and means of each defendant.")  Real has not met this burden.

10        Real challenges his indefinite confinement in the SHU.  (SAC ¶ 62.)  While Real names all

11   eleven officials as liable under the Eighth Amendment, none of these officials have any direct

12   authority over the conditions of his confinement in the Pelican Bay SHU.  To the contrary, each

13   of the individual-capacity defendants are employed at other prisons.  (SAC ¶¶ 3, 6-14.)  And none

14   of these officials were members of the classification committee that imposed Real's indeterminate

15   SHU term.  Cal. Code. Regs. tit. 15 §§ 3335, 3338 (establishing that the institutional

16   classification committee determines whether to impose an indeterminate SHU term when an

17   inmate is validated); (SAC, generally; *see also* FAC 104 (showing that no named defendant sat on

18   the committee that imposed Real's indeterminate-SHU term).)

19        Real's allegations concerning the events surrounding his validation are insufficient to link

20   these officials to any constitutional violation caused by the conditions of his confinement in the

21   Pelican Bay SHU.  Moreover, mere involvement in the validation process is insufficient to import

22   liability for the conditions of confinement in the SHU.  This Court should dismiss the Eighth

23   Amendment claim, in its entirety, because the requisite causation has not been alleged.[11]

24   / / /

25   / / /

26   / / /

27        _____
          [11] Beard has been CDCR's Secretary since 2012, and is named solely in his official
28   capacity.  SAC ¶ 4; (Req. Jud. Not, Ex. D.)

                                    23

1

**C.    Qualified Immunity Also Bars Real's Eighth Amendment Claim Because Real Has Not Alleged the Objective Component of an Eighth Amendment Violation.**

2

3      The basis of an Eighth Amendment violation is formed only when "those deprivations

4 denying 'the minimal civilized measure of life's necessities' are sufficiently grave." *Johnson v.*

5 *Lewis,* 217 F.3d 726, 731 (9th Cir.2000) (citations omitted).  "Prison officials have a duty to

6 ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and

7 personal safety." *Id.* (citations omitted).  An indeterminate administrative sentence in

8 segregation, without more, does not constitute cruel and unusual punishment in violation of the

9 Eighth Amendment.  *Hewitt,* 459 U.S. at 468 ("[T]he transfer of an inmate to less amenable and

10 more restrictive quarters for nonpunitive reasons is well within the terms of confinement

11 ordinarily contemplated by a prison sentence."); *Anderson v. County of Kern,* 45 F.3d 1310,

12 1315-16 (9th Cir. 1995) (no contact with other segregated inmates either for exercise, day room

13 access, or otherwise, was not cruel and unusual punishment); *Toussaint,* 722 F.2d at 1494 n.6

14 ("Even an indeterminate sentence to punitive isolation does not without more constitute cruel and

15 unusual punishment"); *Perkins v. Crum*, 476 F. App'x 136, 137 (9th Cir. 2012) (affirming

16 dismissal of Eighth Amendment SHU claim resulting from a gang validation because

17 "administrative segregation is within the terms of confinement ordinarily contemplated by a

18 sentence.")(internal citations and quotations omitted); *Pina v. Scavetta*, 467 F. App'x 605, 606

19 (9th Cir. 2012) (same); *Throop v. Sec'y of Corr*., No. 08CV2109-MMA CAB, 2010 WL

20 3418353, *7 (S.D. Cal. Aug. 27, 2010) ("The simple placement and retention of a plaintiff in

21 segregated housing, even for an indeterminate period of time, does not in and of itself implicate

22 the Eighth Amendment."); *Hart*, 1997 WL 564059, *8 (same).

23      Further, Real was a member of the *Madrid* class action, which included "all prisoners who

24 are, or will be," incarcerated in the Pelican Bay SHU.  *Madrid,* 889 F.Supp. at 1155, 1264-65.

25 There, the court held that the harsh state of the conditions in the Pelican Bay SHU do not *per se*

26 violate the Eighth Amendment, except for a limited class of inmates "at a particularly high risk

27 for suffering very serious or severe injury to their mental health."  *Id.*;  Real has not alleged that

28 he falls within *Madrid's* group of high risk inmates.

24

1   And Real has not alleged that he was subjected to any additional conditions of confinement

2   that would violate the Eighth Amendment.  (SAC ¶ 27, 62.)  The alleged inability to "freely

3   communicate" with other prisoners, the limitations imposed on family visits, restricted

4   programming opportunities and availability of recreational equipment, and deprivation of

5   "normal" human contact (SAC ¶¶ 27, 62), are typical of SHU confinement and do not violate the

6   Eighth Amendment.  *Perkins*, 476 F. App'x at 137 (indeterminate SHU placement, without more,

7   does not violate the Eighth Amendment); *Pina*, 467 F. App'x at 606 (same); *Keenan v. Hall,* 83

8   F.3d 1083, 1092 (9th Cir.1996) (holding that there is no constitutional right to visitors); *Hoptowit*

9   *v. Ray*, 682 F.2d 1237, 1255 (9th Cir. 1982) (holding that there is no constitutional right to

10  rehabilitative programs), *overruled on other grounds by Sandin*, 515 U.S. 472.

11  Real's conclusory allegations that his prolonged confinement has affected his mental and

12  physical health, physical exercise, sleep, nutrition, and meaningful activity (SAC ¶ 62, 63), also

13  fail to satisfy the objective component.  *Iqbal*, 556 U.S. 662.  That SHU prisoners are served

14  "food which is inferior to that served to other California Prisoners" (SAC ¶ 27), does not show

15  that the food is nutritionally inadequate.  (*Id.*)  And similarly, Real's broad allegation that SHU

16  inmates are denied "standard medical care" is insufficient to state a claim, especially where Real

17  does not allege that he was ever denied any necessary medical care.  (*Id.*); *Iqbal*, 556 U.S. 662.

18  To the extent that prison conditions "are restrictive and even harsh, they are a part of the penalty

19  that criminal offenders pay for their offenses against society."  *Rhodes v. Chapman,* 452 U.S. 337,

20  347 (1981).

21  And neither Real's claim that his gang validation was in error nor that he is unable to

22  debrief (SAC ¶ 61, 64) satisfies the Eighth Amendment's objective component.[12]  *Cota v.*

23  *Scribner*, No. 09-cv-2507-AJB BLM, 2011 WL 4914934,  *2, 6-7 (S.D. Cal. June 27, 2011)

24  (confinement based on false reports did not violate Eighth Amendment), *report and*

25  *recommendation adopted by*, 2011 WL 4914878 (Oct. 17, 2011), amended, 2011 WL 5970752

26  (Oct. 26, 2011).  The reasons for Real's indeterminate confinement have no bearing on the

27  ───────────────

28
[12] Further, Real is incorrect that he must remain in the SHU until he debriefs.  Cal. Code
Regs., tit. 15, §§ 3341.5(c)(4), 3378.1 (gang-inactivity provisions); (Req. Jud. Not., Exs. A and C).

25

Memo. P&As Supp. Mot. Dismiss (2:09-cv-3273 LJO KJN)

1    severity of the conditions to which he was subjected.  Likewise, whether debriefing would put

2    Real and his family at risk (SAC ¶ 65) also is inapposite.  *Throop*, 2010 WL 3418353, *2, 6-7

3    (holding that the mere possibility of that a plaintiff will be attacked if he chooses to debrief does

4    not demonstrate an Eighth Amendment violation).  Real's claim of disproportionate punishment

5    (SAC ¶ 66) is similarly misplaced.[13]  *Ruiz v. Cate,* 436 F. App'x 760, 761 (9th Cir. 2011)

6    (affirming dismissal of prisoner's Eighth Amendment claim that his SHU sentence was

7    disproportionate to his conduct).

8         Numerous courts of this circuit have considered allegations nearly identical to Real's, and

9    found that no Eighth Amendment violation had been alleged.  For example, plaintiffs have

10   challenged their indeterminate-SHU confinement, on the grounds that being locked in a cell 22½

11   hours per day caused various psychological effects and the denial of job opportunities, contact

12   visits, and the greater privileges provided to general population inmates.  *Madrid,* 889 F.Supp. at

13   1227–30, 1260–65 ("[t]he Eighth Amendment simply does not guarantee that inmates will not

14   suffer some psychological effects from incarceration or segregation" and holding that "the overall

15   conditions of the [Pelican Bay SHU] do not violate the Eighth Amendment for the non-mentally

16   ill inmates therein."); *Throop*, 2010 WL 3418353, *7 (same).

17        Absent allegations that he was deprived of adequate food, clothing, shelter, sanitation,

18   medical care, or personal safety, Real has not shown the objective "denial of the minimal

19   civilized measure of life's necessities" necessary to state a claim.  Real also has not alleged any

20   violation of clearly established law.  *Farmer v. Brennan,* 511 U.S. 825, 834 (1994) (internal

21   quotation marks omitted).   Thus, the officials are entitled to qualified immunity.

22        **D.     Qualified Immunity Also Bars Real's Eighth Amendment Claim Because
              Real Has Not Alleged the Subjective Component of an Eighth Amendment

23              Violation.**

24        Real has not alleged the subjective element of an Eighth Amendment claim.  He alleges

25   only that "defendants have been aware of all the deprivations complained of herein, and have

26   condoned them or been deliberately indifferent to such deprivations."  (SAC ¶ 67.)  This

27        ───────────────
              [13] Real's indeterminate-SHU placement, moreover, is an administrative placement, and is
28   not punishment at all.

26

Memo. P&As Supp. Mot. Dismiss (2:09-cv-3273 LJO KJN)

1   conclusory statement is insufficient to allege deliberate indifference. *Iqbal*, 556 U.S. at 678.

2   None of the named officials are employed at Pelican Bay, where Real is serving his indeterminate

3   SHU term. The allegations do not show that the officials either knew of, or deliberately

4   disregarded, any substantially serious risk to Real. *Farmer*, 511 U.S. at 826. Nor could they have

5   because none of the individual-capacity Defendants had authority over the conditions of Real's

6   confinement in the Pelican Bay SHU. (SAC ¶¶ 5-14.)

7       The individual-capacity officials are qualifiedly immune because the allegations fail to state

8   a colorable Eighth Amendment claim, and because the then-existing precedent was not so clear

9   that "every reasonable official would have understood, beyond debate" that their alleged actions

10  violate the Eighth Amendment. *Mattos*, 661 F.3d at 448.

11  **III.   REAL'S FIRST AMENDMENT CLAIMS ARE NOT COLORABLE.**

12      Real First Amendment freedom-of-association claims, grounded in the officials'

13  confiscation of his address book, reliance on the mail-drop address therein, and both report of and

14  reliance on reports that he conducted gang roll call (SAC ¶¶ 68-73), fail to state a claim.

15          **A.   Secretary Beard Should Be Dismissed from Real's First Amendment
                   Claims.**
16

17      Secretary Beard, named only in his official capacity (SAC ¶ 4), is entitled to Eleventh

18  Amendment immunity from any damages claim. *Buckhannon Bd. & Care Home, Inc. v. W. Va.*

19  *Dep't of Health & Human Res.,* 532 U.S. 598, 609 (2001) ("state officers acting in their official

20  capacity are immune from suits for damages in federal court."). Beard also cannot be held

21  personally liable because he is not alleged to have been personally involved in, or to have set in

22  motion, the events underlying Real's mail-drop-address and gang-roll-call claims. *Hydrick v.*

23  *Hunter*, 500 F.3d 978, 988 (9th Cir. 2007).

24      Real also has not alleged any entitlement to injunctive relief under the First Amendment.

25  Real seeks only injunctive relief prohibiting the use of "unreliable, untrue or insufficient

26  information" to support validation and indeterminate-SHU decisions. (Id. at ¶ 4, pp. 16-17.)

27  Because a suit against Secretary Beard in his official capacity is a suit against the state, a state

28  policy or procedure must have caused the injury claimed. *Hafer*, 502 U.S. at 25. Real's

27

Memo. P&As Supp. Mot. Dismiss (2:09-cv-3273 LJO KJN)

1   conclusory allegations do not identify any policy that violates the First Amendment.  *Iqbal*, 556

2   U.S. at 663.  Real's assertion that the specific information relied upon to validate him was

3   misconstrued by prison officials is not grounded in any policy or procedure.  Thus, Secretary

4   Beard is entitled to dismissal.

**B.   The Individual-Capacity Officials Are Qualifiedly Immune from Real's First Amendment Claims Because Officials Cannot Be Held Liable for Violations That They Did Not Cause.**

7   Correctional officials Pool, Ramos, Stewart, Ventimiglia, and Walker are qualifiedly

8   immune from Real's First Amendment claims because it is not clear, under established law, that

9   they can be held liable for violations they did not cause.  When an inmate seeks to hold an official

10  liable in his individual capacity, courts must "take a very individualized approach which accounts

11  for [his] duties, discretion, and means."  *Leer,* 844 F.2d at 633-34.  The complaint must state a

12  causal link between each defendant and the affirmative act or omission that is alleged to have

13  caused the constitutional violation.  *Id; Iqbal*, 556 U.S. at 678.

14  Real does not allege that Pool, Ramos, Stewart, Ventimiglia, or Walker were personally

15  involved in the actions that allegedly restricted his freedom of association.  Rather, Parilla is

16  alleged to have documented the mail-drop address, which Parker later confiscated.  SAC ¶¶ 26,

17  30, 31, 33, 47-48.)  Parker also documented Real's participation in gang roll call, and Defendants

18  Fisher, Kisser, and Williams presumptively relied on these reports when making the validation

19  decision.  (*Id.*)  Real did not link the remaining officials to any action that improperly restricted

20  his freedom of association.  *Iqbal,* 556 U.S. at 678.  Pool, Ramos, Stewart, Ventimiglia, and

21  Walker are qualifiedly immune from Real's First Amendment claims because they are not linked

22  to any constitutional violation.

**C.   The Individual-Capacity Officials Also Are Qualifiedly Immune Because the Challenged Conduct Did Not Clearly Violate the First Amendment.**

**1.   "Freedom of association is among the rights least compatible with incarceration."**

26  Inmates retain only those First Amendment rights that are consistent with their status as

27  prisoners and the prison's legitimate penological objectives.  *Johnson v California,* 543 U.S. 499,

28  510 (2005).  Some curtailment of First Amendment freedoms "must be expected in the prison

28

1  context." *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003) ("Freedom of association is among the

2  rights least compatible with incarceration.") (citations omitted).  And the First Amendment is not

3  violated when those curtailments are reasonably related to legitimate penological goals.  *Id.* at

4  132.  Prison officials remain the primary arbiters of problems that arise in prison management.

5  *Shaw v. Murphy*, 532 U.S. 223, 230 (2001).  Because courts are ill-equipped to address matters of

6  prison administration, *Turner,* 482 U.S. at 84, they must accord substantial deference to the

7  judgment of the correctional officials, who bear a significant responsibility for defining the

8  legitimate goals of a corrections system and for determining the most appropriate means to

9  accomplish them.  *Overton*, 539 U.S. at 132.

10     **2.     No clearly established First Amendment violation occurred.**

11     The officials are qualifiedly immune because they are not alleged to have engaged in any

12  conduct that clearly violates the First Amendment.[14]  In *Turner*, the Supreme Court identified

13  four factors for evaluating the constitutionality of prison decisions affecting prison security and

14  day-to-day management concerns:

15       (1)  Whether there is a valid, rational connection between the regulation and the legitimate

16  governmental interest put forward to justify it;

17       (2)  Whether alternative means of exercising the right exist;

18       (3)  Whether accommodation of the asserted constitutional right will affect other officers

19  and inmates, and the allocation of prison resources generally; and

20       (4)  Whether ready, obvious, and easy alternatives exist.

21  *Turner*, 482 U.S. at 78, 89-90; *Pitts v. Thornburgh*, 866 F.2d 1450, 1454 (1989) (applying *Turner*

22  to discreet decisions); *Stewart v. Alameida*, 418 F. Supp. 2d 1154, 1164 (N.D. Cal. 2006)

23  (applying *Turner* to First Amendment association claim arising out of a gang validation, and

24  finding that no violation occurred).

25     *Turner's* first factor is satisfied because the officials' reliance on the mail-drop address and

26  reports of Real's participation in gang roll call were rationally connected to the legitimate

---

27   [14] When previously considering Real's First Amendment claim, this Court did not reach
the issue of qualified immunity.  (F&R, ECF No. 43; Order, ECF No. 60.)

28

29

1    penological goal of curbing gang activity.  The gang mail-drop address permitted Real to

2    communicate with gang members.  The policy of separating and isolating gang members is

3    frequently used to control gang activity, and is logically furthered by restrictions on prisoner-to-

4    prisoner association and correspondence.  *Turner,* 482 U.S. at 78, 92 ("Undoubtedly,

5    communication with other felons is a potential spur to criminal behavior: this sort of contact

6    frequently is prohibited even after an inmate has been released on parole."); *Wilkinson,* 545 U.S.

7    at 227 (stating that prison gangs are fundamentally incompatible with inmate and staff safety).

8         Prison regulations prohibited Real from corresponding with Enriquez because—whether

9    paroled or not—Enriquez was a validated gang affiliate.  Cal. Code Regs. tit. 15, § 3139(1),(3)

10   (establishing that inmates cannot correspond with parolees or other inmates absent written

11   permission); 3139(b) (prohibiting such approval when *either* inmate is a known gang affiliate).

12   The mere possibility of incognito correspondence with a validated gang member implicates

13   security concerns, regardless of whether Real was properly validated.  *Wilkinson,* 545 U.S. at 227.

14   Prison officials are entitled to isolate threats before their potential is realized, and need not wait

15   until security breaches occur.  *Stewart v. Alameida,* 418 F. Supp. 2d 1154, 1163 (N.D. Cal. 2006).

16   Further, when addressing the confiscation of Real's address book under other constitutional

17   amendments, this court recognized that "prison officials must be free to seize . . . any articles

18   which, in their view, disserve legitimate institutional interests."  (F&R 16, 21, ECF No. 43

19   (considering same allegations under Fourth and Fourteenth Amendments).)  Identical penological

20   interests exist here.

21        *Turner's* second factor is satisfied because Real had alternative means to communicate and

22   express his views: he was merely prevented from retaining an address book containing a gang-

23   mail-drop address and conducting the gang's roll call.

24        The third *Turner* factor is satisfied because accommodation of Real's free-association rights

25   through incognito communications and direct participation in gang activities such as roll call

26   would endanger staff and inmates alike.  *Wilkinson,* 545 U.S. at 227 (Prison gangs are

27   fundamentally incompatible with inmate and staff safety).  A "valid, rational connection" exists

28   / / /

1   between prison security and "regulations designed to isolate threats before their potential is

2   realized." *Stewart,* 418 F. Supp. 2d at 1163.

3          In *Cota v. Scribner,* an inmate asserted a First Amendment association claim based on the

4   confiscation of his address book, which he claimed was coded to protect family and friends in

5   case of loss, theft, or misplacement.  No. 09-cv-2507, 2010 WL 5093524, *2, 9-10 (S.D. Cal. Nov.

6   10, 2010), *report and recommendation adopted by* 2011 WL 666891 (Feb. 14, 2011).  Although

7   the parties there disputed whether the address book contained gang information, *Cota* was

8   dismissed with prejudice based on the "unique dangers" presented by prison gangs.  *Id.,* *10.

9   *Turner's* third factor favors a finding that no violation occurred because, as in *Stewart* and *Cota,*

10  allowing association here would endanger staff and inmates alike.

11         The fourth *Turner* factor is satisfied because no obvious, easy alternatives are feasible.

12  Restricting Real's access to a gang mail-drop address and his ability to conduct in roll call is

13  necessary to prison security.  *Wilkinson,* 545 U.S. at 227.  There simply is no obvious, easy way

14  to permit Real to engage in these activities while ensuring institutional security.  Monitoring

15  Real's speech and associations would impose more than a de minimis cost on the pursuit of

16  legitimate corrections goals.  *Turner,* 482 U.S. at 93 (upholding restriction banning inmate-to-

17  inmate correspondence because there "would be an appreciable risk of missing dangerous

18  messages" and that risk, "taken together with the sheer burden on staff resources required to

19  conduct item-by-item censorship" shows that no feasible alternative exists.)  *Id.*

20         In light of *Cota* and *Stewart* the law was not so clearly established that every reasonable

21  prison official would have understood that confiscating the address book and relying on the mail-

22  drop address and Real's participation in roll call clearly violated the First Amendment.  (*See also*

23  F&R 22-24, ECF No. 43 (recognizing that these same factual allegations failed to state a claim

24  because legitimate penological interests justified the challenged conduct.)  Qualified immunity

25  precludes this claim.

26  / / /

27  / / /

28  / / /

31

1

    **3.**    **Whether Real was properly validated, and whether the challenged conduct was actually innocent behavior, has no bearing on the *Turner* analysis.**

2

3         This Court, without reaching the qualified-immunity defense, previously found that Real's

4  claims could be cognizable if his validation were overturned.  (F&R 22-24, ECF No. 43.)  But

5  even proof of improper validation cannot save Real's First Amendment claims.  Qualified

6  immunity shields governmental officials from immunity when a mistake of fact has been made.

7  *Pearson*, 555 U.S. at 231.  Further, no legal authority provides notice that acting on a potential

8  risk of harm can somehow give way to liability if it is later determined that the risk was not what

9  it initially seemed.  Any such holding would undermine qualified immunity's purpose by

10  hindering prison officials from taking necessary preventive measures for fear of personal liability

11  if it were later determined that the initial assessment of the risk was incorrect, thus crippling their

12  ability to do their jobs.  *Turner* protects against this result by considering the prison's legitimate

13  interests in relation to the risk faced.  Assessing the risk prison officials faced with the benefit of

14  hindsight undermines *Turner's* reasonableness analysis because it substitutes later-obtained

15  information for the risk the officials actually faced.  *Norwood v. Vance,* 591 F.3d 1062, 1069 (9th

16  Cir. 2010) (explaining that the reasonableness analysis is not judged with the benefit of hindsight).

17        Likewise, Real's new, purportedly innocuous explanation of his possession of the mail-drop

18  address, that he obtained the address to only communicate with a female companion of inmate

19  Enriquez (SAC ¶ 23), does not save his claim.  This explanation contradicts Real's previous

20  sworn representation to this Court denying possession of the address altogether and arguing that

21  even if he did have it, he had no intention of using it.  (Opp'n 13, 35, ECF No. 39; Opp'n (part 2)

22  71-72, ECF No. 39-1; FAC 46.)  Further, had he given this explanation to prison officials, there

23  still would have been an inherent risk that the explanation was a ruse used to cover-up

24  impermissible gang activity.  The officials were entitled to act on the potential threat identified.

25        And even if Parilla and Parker had erroneously misconstrued innocent conduct as gang

26  activity, their mistake of fact would be shielded by the doctrine of qualified immunity.  *Pearson,*

27  555 U.S. at 231.  Further, any such error cannot be imputed to the remaining officials who—to

28  the extent they were involved at all—were entitled to rely on Parker and Parilla's reports and act

32

Memo. P&As Supp. Mot. Dismiss (2:09-cv-3273 LJO KJN)

1   on the threat faced.  *Motley,* 432 F.3d at 1081 (holding that law enforcement officers are entitled

2   to reasonably rely on reports by other officers).

3   **IV.   REAL'S INJUNCTIVE-RELIEF CLAIMS ARE SUBSUMED BY THE *ASHKER* CLASS ACTION.**

4

5       **A.   This Court Should Dismiss Real's Injunctive-Relief Claims Because His Status as An *Ashker* Class Member Mandates That He Pursue His Injunctive-Relief Claims Through the *Ashker* Class Litigation.**

6

7       A plaintiff whose claims for injunctive relief are within the purview of a pending class

8   action cannot seek individualized relief that is also sought by the class, but must instead pursue

9   relief through class counsel.  *Crawford v. Bell*, 599 F.2d 890, 892–93 (9th Cir. 1979) (authorizing

10  dismissal of individual plaintiff's claims when the plaintiff is member of a pending class action

11  raising the same claims); *McNeil v. Guthrie*, 945 F.2d 1163, 1165 (10th Cir. 1991) ("Individual

12  suits for injunctive and equitable relief from alleged unconstitutional prison conditions cannot be

13  brought where there is an existing class action . . . . To permit them would allow interference with

14  the ongoing class action."); *Gillespie v. Crawford*, 858 F.2d 1101, 1103 (5th Cir. 1988) (same).

15      Real is a member of *Ashker v. Governor of State of California*, (N.D. Cal. No. C 09-

16  5796)—a federal class action comprised of validated gang inmates housed in Pelican Bay's SHU.

17  Because *Ashker* was certified under Federal Rules of Civil Procedure 23b(1) and (b)(2), Real

18  cannot opt out as a class member.  *Ashker v*, 2014 WL 2465191, *2-4 (N.D. Cal. June 2, 2014);

19  *Wal-Mart Stores, Inc. v. Duke*, 131 S. Ct. 2541, 2558 (2011) (holding that classes certified under

20  Rules 23(b)(1) and (b)(2) are "mandatory classes" and cannot opt out).

21      *Ashker's* "Due Process Class" consists of all inmates who are allegedly "serving

22  indeterminate sentences at the Pelican Bay SHU on the basis of gang validation, none of whom

23  have been or will be afforded meaningful review or procedurally adequate review of their

24  confinement." *Ashker*, 2014 WL 2465191, *2-4.  Real alleges that he also is serving an

25  indeterminate SHU sentence and has not received meaningful classification reviews.  (SAC, ¶ 58

26  (b)-(d).)  And like *Ashker's* Due Process Class, Real also challenges the gang-validation

27  procedures that were in place before CDCR's implementation of the Security Threat Group

28  program.  *Id.* at *4-5.

*Ashker's* "Eighth Amendment Class" consists of "all inmates who are now, or will be in the future, assigned to the Pelican Bay SHU for a period of more than ten continuous years." *Id.* at *5-6.  Real's allegations place him in this class.

The *Ashker* plaintiffs also seek injunctive relief against the same parties.  *Ashker* names as defendants CDCR and Pelican Bay.  Here, Real names Secretary Beard in his official capacity. (SAC ¶ 4.)  Official-capacity suits are another way of pleading an action against an entity of which an officer is an agent, and official-capacity suits against CDCR officials are treated as suits against CDCR.  *Hafer*, 502 U.S. at 25.

And Real seeks nearly the same injunctive relief as the *Ashker* plaintiffs, who seek an injunction compelling CDCR to alleviate the complained-of conditions of confinement in the SHU, adopt new procedures for reviewing SHU assignments, and to transfer every inmate who has been assigned to the SHU for more than ten years into the general prison population. *Compare Ashker* 2014 WL 2465191, *1, *with* SAC 16-17 (seeking an injunction requiring CDCR to change the gang-validation policy, reassess his validation decision, and re-determine his security classification and housing status, and to reclassify him as a general population inmate); *Pride v. Correa*, 719 F.3d 1130, 1137 (9th Cir. 2013) (holding that a district court may decline to exercise its jurisdiction over a California prisoner's claim for injunctive relief where the allegations and relief sought are duplicative of an ongoing class action).

Moreover, this Court should defer to the *Ashker* class action because there all dispositive court findings will flow to the class as a whole.  There are hundreds of validated gang members who experience long-term SHU confinement like Real.  "If each of the hundreds of proposed members of either the Due Process Class or the Eighth Amendment Class were forced to adjudicate his claims individually, there would be a significant risk of inconsistent judgments." *Ashker*, 2014 WL 2465191, *7.  Additionally, it would harshly burden an already overtaxed judiciary to permit prisoners to bring actions individually, rather than deferring to *Ashker* to resolve these claims collectively.

1

**B.    Alternatively, This Court Should Dismiss Real's Injunctive-Relief Claims Because CDCR's Gang-Classification Procedures Have Changed: Real's Gang Status Will Be Re-Assessed under the New Security-Threat Group Policy.**

2

3

4    Injunctive relief is an "extraordinary remedy, never awarded as of right." *Winter v. Natural*

5   *Res. Defense Council*, 555 U.S. 7, 22 (2008). The party seeking injunctive relief must show

6   either (1) a likelihood of success on the merits and the possibility of irreparable injury, or (2) the

7   existence of serious questions going to the merits and the balance of hardships tipping in their

8   favor. *Oakland Tribune, Inc. v. Chronicle Publ'g Co., Inc.*, 762 F.2d 1374, 1376 (9th Cir.1985)

9   (internal citations omitted); *City of L.A. v. Lyons*, 461 U.S. 95, 101–102 (1983) (requiring "real

10  and immediate" threat of injury).

11    No irreparable injury flows from CDCR's previous gang-validation regulations, because the

12  new Security Threat Group policy employ provides for the reassessment of all validated inmates

13  under new standards. *City of L.A.*, 461 U.S. at 101–02 (requiring that plaintiff show a "case or

14  controversy" and "real and immediate" threat of injury). Real's request to have his gang-

15  validation, security classification, and housing status, reassessed also fails to demonstrate any

16  possibility of irreparable injury because CDCR's newly implemented Security-Threat Group

17  policy provides for the reassessment of Real's validation and SHU-placement, along with all

18  other validated inmates indeterminately housed in the SHU, under the new standards. (SAC 16-

19  17; Req. Jud. Not., Ex. B.) And, the new policy is in the process of being adopted as a permanent

20  regulation. (Req. Jud. Not., Exs. E-F.) For all of these reasons, this Court should dismiss Real's

21  claims for injunctive relief.

22  / / /

23  / / /

24  / / /

25

26

27

28

1

**CONCLUSION**

2      This Court should dismiss Real's Second Amended Complaint, in its entirety because his

3   allegations exceed the scope of this Court's order allowing amendment of the complaint, and the

4   Defendants are entitled to qualified immunity against the damages claims, and the injunctive

5   claims are precluded by an ongoing class action and are moot regardless.

6   Dated:  August 29, 2014                          Respectfully Submitted,

7                                                    KAMALA D. HARRIS
                                                     Attorney General of California
8                                                    THOMAS S. PATTERSON
                                                     Supervising Deputy Attorney General

9                                                    /s/ Jaime M. Ganson

10
                                                     JAIME M. GANSON
11                                                   Deputy Attorney General
                                                     *Attorneys for Defendants Beard, Fisher,*
12                                                   *Kisser, Parilla, Parker, Pool, Ramos,*
                                                     *Stewart, Ventimiglia, Walker, and Williams*
13   SA2011300866
     11416024.doc
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

36