# ATTACHMENT A

Case 2:09-cv-03273-GEB-KJN   Document 76-2   Filed 08/29/14   Page 2 of 18

# State of California

# California Code of Regulations

# Title 15.   Crime Prevention and Corrections



## Division 3.

## Rules and Regulations of

## Adult Institutions, Programs and Parole

## Department of Corrections and Rehabilitation

Updated through September 30, 2013

2. Amendment of section heading and section filed 7-17-2008; operative 7-17-2008 pursuant to Government Code section 11343.4 (Register 2008, No. 29).

### 3138. Indigent Inmates.

(a) Upon an indigent inmate's request, writing paper, envelopes, a writing implement, and the postage required for five 1-ounce First-Class letters per week shall be supplied. Inmates are not allowed to trade, transfer, or swap indigent inmate supplies with another inmate.

(b) Except as provided in subsection 3138(h) for mail to the courts or to the Attorney General, indigent inmates may request to mail any type of correspondence that weighs more than one ounce. Indigent inmates must relinquish the appropriate number of indigent envelopes to either their assigned Correctional Counselor or housing unit staff with the item to be mailed. If the item to be mailed weighs more than five ounces, the indigent inmate must relinquish all five indigent envelopes. Staff must forward the indigent envelopes with the item to be mailed to the mailroom with the notation that it is to be mailed for the indigent inmate. In order to facilitate this mailing, if requested, staff shall provide the indigent inmate with one appropriately sized envelope.

(c) Foreign mail requiring postage in excess of the minimum required for First-Class Mail shall be limited to two of the five letters.

(d) Indigent envelopes issued to an inmate become their property. The inmate shall be allowed to utilize the envelopes regardless of current financial status. A charge shall not be placed against future deposits to the inmate's trust account to recover the cost of materials and postage provided, while the inmate was indigent as defined in subsection 3133(a)(5).

(e) All inmate requests for indigent envelopes shall be authorized by the Institutional Inmate Trust Account Office.

(f) Any inmate attempting to use a State issued envelope intended for another inmate who is indigent shall receive progressive discipline pursuant to CCR section 3312.

(g) Indigent inmates desiring to correspond with their attorney or any other confidential correspondent shall be required to utilize their weekly allotment of indigent supplies to send such correspondence.

(h) In addition to indigent writing supplies and postage for the five (5) one (1) ounce letters per week, indigent inmates shall have free and unlimited mail to any court or the Attorney General's Office.

(1) Upon request, institutions shall also provide indigent inmates free copying of the legal documents limited to the number of copies of a document required by the court, plus one copy for the opposing party and one copy for the inmate's records.

(2) If the case is accepted by the court, the need for future copies of legal documents and necessary postage will be evaluated on a case-by-case basis.

(3) A charge shall not be placed against future deposits to the inmate's trust account to recover the cost of materials, copying and postage provided, while the inmate was indigent.

(i) Each institution shall establish local procedures for the issuance of writing supplies to indigent inmates.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 2601 and 4570, Penal Code; and *Procunier v. Martinez*, 416 U.S. 396; and *Bell v. Wolfish*, 99 S. Ct. 1861.

HISTORY:
1. Amendment filed 1-3-95 as an emergency; operative 1-3-95 (Register 95, No. 1). A Certificate of Compliance must be transmitted to OAL 6-12-95 or emergency language will be repealed by operation of law on the following day.
2. Reinstatement of section as it existed prior to emergency amendment filed 7-25-95 by operation of Government Code section 11346.1(f) (Register 95, No. 30).
3. Amendment of subsections (a)-(c) filed 7-25-95 as an emergency; operative 7-25-95 (Register 95, No. 30). A Certificate of Compliance must be transmitted to OAL by 11-22-95 or emergency language will be repealed by operation of law on the following day.
4. Certificate of Compliance as to 7-25-95 order transmitted to OAL 11-17-95 and filed 1-3-96 (Register 96, No. 1).
5. Renumbering of former subsections 3147(a)(9)(G) through (a)(9)(J) to newly designated subsections 3138(d) through (g), amendment of newly designated subsections (d)(1), (f)(1)-(f)(2), (g) and Note filed 6-6-96; operative 6-6-96 pursuant to Government Code section 11343.4(d) (Register 96, No. 23).
6. Amendment of subsection (d)(1) filed 12-30-2003 as an emergency; operative 1-1-2004 (Register 2004, No. 1). Pursuant to Penal Code section 5058.3(a)(1), a Certificate of Compliance must be transmitted to OAL by 6-9-2004 or emergency language will be repealed by operation of law on the following day.
7. Withdrawal and repeal of 12-30-2003 amendment filed 5-27-2004 as an emergency; operative 5-27-2004 (Register 2004, No. 22). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 9-24-2004 or emergency language will be repealed by operation of law on the following day.
8. Amendment of subsection (d)(1) and Note filed 5-27-2004 as an emergency; operative 5-27-2004 (Register 2004, No. 22). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 11-3-2004 or emergency language will be repealed by operation of law on the following day.
9. Certificate of Compliance as to 5-27-2004 order transmitted to OAL 10-28-2004 and filed 12-14-2004 (Register 2004, No. 51).
10. Renumbering of former section 3138 to section 3134 and renumbering of former section 3134 to new section 3138, including repealer and new section, filed 7-17-2008; operative 7-17-2008 pursuant to Government Code section 11343.4 (Register 2008, No. 29).

### 3139. Correspondence Between Inmates, Parolees, and Probationers.

Inmates shall obtain written authorization from the Warden/Regional Parole Administrator or their designee/assigned probation officer, person in charge of the County Jail and/or other State Correctional Systems, at a level not less than Correctional Captain/Facility Captain or Parole Agent III, to correspond with any of the following:

(1) Inmates under the jurisdiction of any county, state or federal, juvenile or adult correctional agency.

(2) Persons committed to any county, state or federal program as a civil addict.

(3) Persons on parole or civil addict outpatient status under the jurisdiction of any county, state or federal, juvenile or adult correctional agency.

(4) Persons on probation.

(b) Inmates may initiate requests to correspond with the above by contacting their Correctional Counselor I (CCI). Parolees may initiate request by contacting their Parole Agent (PA).

Inmates may be allowed to correspond with the persons described in subsections 3139(a)(1) through (4) provided those persons meet the criteria of approval of no known gang affiliation, or involvement with a known terrorist group or racketeering enterprise.

(c) The CCI/PA shall interview the inmate/parolee and/or review their C-file/Field File to obtain the information required to process an inmate's Request for Correspondence Approval, CDC Form 1074 (Rev. 08/87). If an inmate's request to correspond with another inmate/parolee is denied, the CCI/PA shall advise the inmate in writing.

(1) When reviewing the initiating inmates C-file, staff shall ascertain whether prior approval exists. If prior approval exists, a copy of the previously approved CDC Form 1074 shall be forwarded to both institutional mailrooms.

(2) When an initiating inmate's request to correspond with another inmate meets the criteria for approval per section 3139(b), and no prior approval exists, the CCI/PAI shall ensure that a CDC Form 1074 is completed.

(3) If the request is approved, staff shall retain the fifth page in the C-File/Field/File at the requesting institution/parole office. The remaining four pages shall be forwarded, intact, to the institution/parole office/probation office/other county, state or federal facility where the other requested correspondent is housed. Neither a photocopy of the CDC Form 1074, nor the fifth page, shall be forwarded to the C-File or mailroom while the correspondence approval is pending.

(4) If the request to correspond is denied at the institution/parole office/probation office/other state correctional facility, the reason for denial shall be annotated on the CDC Form 1074, and it shall be returned, in its entirety, to the sending institution/ parole office.

(5) Copies/photocopies shall not be delivered to the requested inmate, the receiving institutions mailroom, or the housing unit.

(6) Upon receipt of the disapproved CDC 1074, staff at the sending institution/field office shall ensure that the 2nd page is returned to the initiating inmate.

(7) If correspondence is approved at the institution/parole office, staff shall ensure that the CDC Form 1074 is completed. They shall retain the third and fourth pages for distribution. If the third page and fourth pages are not legible, the CCI/PAI shall make photocopies of the first page prior to forwarding the completed CDC Form 1074 to the sending institution. The approved CDC Form 1074 will be distributed as directed on the form.

(8) Photocopies of the CDC Form 1074 shall not be made for the housing unit(s). The housing units shall not keep records of approved correspondents.

(9) The mailroom supervisor shall establish and maintain a record of approved CDC Form 1074s.

(10) When a CDCR inmate requests to correspond with an inmate in a county, state, or federal facility, or if the request is from a county, state, or federal inmate, the CCI shall ensure that a CDC Form 1074 is completed along with a cover letter that thoroughly explains the need for the CDC Form 1074. If the request is denied, the CCI shall ensure that a letter is forwarded to the requesting agency thoroughly explaining the denial.

(d) There shall be no limits set on the number of times approved inmates/parolees/probationers can correspond with one another unless revoked. The approval to correspond may be revoked due to disciplinary violations involving correspondence between the inmates/parolees or as a result of a classification action based on safety and security. Any such restriction, or revocation of approval, shall be communicated to inmate(s)/parolee(s) and to the warden(s)/parole administrator(s) of the institution/facility where the inmate(s)/parolee(s) are housed.

(e) Wardens at institutions where there are segregated housing units such as, but not limited to, Security Housing Units (SHU), Administrative Segregation Units (ASU), and Psychiatric Services Units (PSU), shall outline in their local procedure any further restrictions on correspondence due to safety and security concerns, limited to those specific housing units.

(f) The most restrictive a facility can be with respect to inmate mail privileges is to limit correspondence between inmates to only the following:

(1) Immediate Family Members as defined in section 3000.
(2) Co-litigants on active cases, until the case is resolved.
(3) Incarcerated natural parent of the inmate's child.

A facility may not restrict mail privileges between an inmate and any of the above three types of correspondents, unless the inmate or the correspondent violates section 3006 or other CCR section.

(g) Approval to correspond shall remain in effect upon transfer to another departmental facility or another parole office.

(h) If an inmate's transfer is based on case factors that create security concerns, such as, but not limited to, placement in SHU, ASU, or PSU, a reexamination by committee of all approved correspondence shall be conducted. The CCI shall review and recommend to committee whether to continue approval of the correspondence.

(i) If an institution/parole office receives mail from an unapproved inmate/parolee correspondent, staff shall mark the envelope with "Not an Approved Correspondent" or equivalent language and return it to the sender.

(j) Inmates confined in departmental facilities may correspond with former inmates. Prior approval of the warden, superintendent, or person in charge of the correctional facility is required if the person was discharged from a facility within the past twelve months.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 2601 and 4570, Penal Code; *Procunier v. Martinez*, 416 U.S. 396; and *Bell v. Wolffish*, 99 S. Ct 1861.

HISTORY:
1. Change without regulatory effect amending first paragraph and subsection (b) filed 4-4-2001 pursuant to section 100, title 1, California Code of Regulations (Register 2001, No. 14).
2. Amendment of section heading and section, including renumbering and amendment of former section 3140 to new subsection 3139(j), filed 7-17-2008; operative 7-17-2008 pursuant to Government Code section 11343.4 (Register 2008, No. 29).

**3140. Funds Enclosed in Correspondence.**

(a) Funds may be mailed to an inmate in the form of a money order, certified check, personal check, or any other negotiable means except cash and Travelers Checks.

(1) The check or money order shall be made payable to the California Department of Corrections and Rehabilitation with the inmate's last name and departmental identification number. This information shall be on the face of the check or money order.

(2) Funds from other inmates/parolees shall be only accepted from approved correspondents, pursuant to section 3139, who are members of the same family, or the parent of the inmate's child(ren).

(3) Funds received in the mail shall be removed from the envelope by mailroom staff, and the envelope shall be imprinted with a stamp that reads "Funds Enclosed." The date, amount, and initials of the person processing the funds shall be recorded on the envelope before it is forwarded to the inmate. The stamped envelope is the inmate's receipt for the funds.

(4) Cash received in incoming mail will be returned to the sender. Mailroom staff shall notify the inmate in writing, informing them that cash was received and will be returned to sender. The envelope containing the cash and two copies of the memo will be forwarded to the Inmate Trust Office to be returned to the sender.

(5) Mailroom staff shall arrange the day's remittances in numerical order. The remittances shall be listed in sequence on the report of collections. This report shall include each inmate's name, departmental identification number, type of payment amount and the total received.

(b) Generally, inmates are not eligible to receive Supplemental Security Income (SSI) checks from the Social Security Administration, Veteran Affairs Benefits, or Welfare checks from the California Department of Social Services/County Welfare agencies. Depending upon eligibility, inmates may be allowed to receive tax refund checks.

(1) A facility representative shall be appointed by the Associate Warden, Business Services, to assist outside agencies in determining an inmate's eligibility.

(2) Mailroom staff shall deliver all received SSI, Veteran Affairs Benefits, and/or welfare and/or tax refund checks to the Inmate Trust Office. The Accounting Officer shall notify the facility representative that checks are being held pending determination of

6. Editorial correction deleting formerly relocated text (Register 95, No. 34).
7. Amendment of section heading and subsection (a), and repealer of subsections (b)–(b)(2) filed 8-23-95 as an emergency; operative 8-23-95 (Register 95, No. 34). A Certificate of Compliance must be transmitted to OAL by 1-30-96 or emergency language will be repealed by operation of law on the following day.
8. Certificate of Compliance as to 8-23-95 order transmitted to OAL 1-8-96 and filed 2-16-96 (Register 96, No. 7).

**3318. Assistance to Inmates for Serious Rule Violations.**
(a) Investigative employee. The investigative employee is designated to gather information for the senior hearing officer or disciplinary hearing committee as described in section 3315(d)(1)(A).
(1) The investigative employee shall:
(A) Interview the charged inmate.
(B) Gather information.
(C) Question all staff and inmates who may have relevant information.
(D) Screen prospective witnesses.
(E) Submit a written report to the senior hearing officer or disciplinary committee chairperson to include witness statements and a summary of the information collected specific to the violation charged.
(2) A copy of the investigative employee's report shall be provided to the inmate no less than 24 hours before a disciplinary hearing is held.
(3) When an investigative employee provides assistance to an inmate, in lieu of or in addition to that provided by a staff assistant, the investigative employee shall do so as a representative of the official who will conduct the disciplinary hearing rather than as a representative of the inmate.
(4) An investigative employee is not subject to the confidentiality provisions of subsection (b)(2)(A) and shall not withhold any information received from the inmate.
(b) Staff Assistant.
(1) The assigned staff assistant shall:
(A) Inform inmates of their rights and of the disciplinary hearing procedures.
(B) Advise and assist in the inmate's preparation for a disciplinary hearing, represent the inmate's position at the hearing, ensure that the inmate's position is understood, and that the inmate understands the decisions reached.
(C) Refrain from giving legal counsel or specifying the position the inmate should take in any disciplinary, classification or criminal proceeding.
(2) The inmate shall be informed that:
(A) The staff assistant shall keep confidential any information the inmate may disclose concerning the charges for which the staff assistant was assigned.
(B) All evidence and information obtained and considered or developed in the disciplinary process may be used in court if the violation has been or is to be referred for criminal prosecution.
(3) If the staff assistant becomes aware that the inmate is contemplating future criminal conduct, the staff assistant shall disclose this information if necessary to protect potential victims and prevent the contemplated crime.
(4) The staff assistant shall inform the inmate that all evidence and information obtained and considered or developed in the disciplinary process may be used in court if the same charges have been or are to be referred to the district attorney for possible criminal prosecution.
NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 2932 and 5054, Penal Code.
HISTORY:
1. Amendment filed 2-24-77; effective thirtieth day thereafter (Register 77, No. 9).

2. Amendment filed 8-17-79 as an emergency; effective upon filing (Register 79, No. 33). A Certificate of Compliance must be filed within 120 days or emergency language will be repealed on 12-15-79.
3. New subsection (e) filed 11-1-79 as an emergency; effective upon filing (Register 79, No. 44). A Certificate of Compliance must be filed within 120 days or emergency language will be repealed on 3-1-80.
4. Certificate of Compliance as to 8-17-79 order filed 12-14-79 (Register 79, No. 50).
5. Certificate of Compliance as to 11-1-79 order filed 2-15-80 (Register 80, No. 7).
6. Amendment filed 2-15-80; effective thirtieth day thereafter (Register 80, No. 7).
7. Amendment filed 5-4-83; designated effective 6-1-83 pursuant to Government Code Section 11346.2(d) (Register 83, No. 19).
8. Amendment of section heading and section filed 5-5-95; operative 6-5-95 (Register 95, No. 18).
9. Amendment of subsections (a), (a)(1)(E) and (b)(2)(A)–(B) filed 8-4-2008; operative 8-4-2008 pursuant to Government Code section 11343.4 (Register 2008, No. 32).

**3319. Investigative Employees.**
HISTORY:
1. Amendment of subsection (a) filed 5-13-77; effective thirtieth day thereafter (Register 77, No. 20).
2. Amendment filed 8-18-78; effective thirtieth day thereafter (Register 78, No. 33).
3. Repealer filed 5-4-83; designated effective 6-1-83 pursuant to Government Code section 11346.2(d) (Register 83, No. 19).

**3320. Hearing Procedures and Time Limitations.**
(a) A classified copy of the CDC Form 115 per section 3313(a), CDC Form 115-A (Rev. 07/88), and any additional/supplemental information documented via the CDC Form 115-C (Rev. 5/95) containing any elements of the violation charged shall normally be provided to the inmate within 15 days from the date the information leading to the charges is discovered by staff or, in the case of an escapee, within 15 days after the escapee's return to the department's custody.
(1) Providing the inmate with a copy of the classified CDC Form 115, CDC Form 115-A, and CDC Form 115-C (if applicable) may be delayed beyond 15 days, but no more than an additional 30 days for a total of 45 days, and shall not prohibit forfeiture of credits as a penalty for the misconduct when all of the following criteria are met:
(A) The misconduct could be prosecuted as murder, attempted murder, or battery on staff.
(B) An investigation is continuing to identify others involved in the misconduct.
(C) Within 15 days of discovering the misconduct, a written request to delay the inmate's notification, including the reasons for the delay, is approved by the chief disciplinary officer.
(2) Time limitations for a re-issued CDC Form 115 shall commence on the date the chief disciplinary officer orders the re-hearing pursuant to Subsection 3320(a)(1) above.
(b) The charges shall be heard within 30 days from the date the inmate is provided a classified copy of the CDC Form 115 unless the charges were referred for possible prosecution and the inmate has been granted a request for postponement of the disciplinary proceedings pending the outcome of the referral, if exceptional circumstances exist pursuant to section 3000, or the inmate is transferred out of the custody of the department.
(1) The Hearing for a CDC Form 115 ordered re-issued/re-heard shall be conducted pursuant to Subsection 3320(b) above relative to the re-issued copy.
(c) A disciplinary hearing shall not be held until the inmate has been provided:

(2) Inmates in the BMU shall possess property as authorized in section 3190(c).

(3) Inmates assigned to the BMU upon the initial placement will have their unauthorized property as outlined in 3334(g)(1) and 3334(g)(2) stored, provided:

(A) Initial BMU placement is for no more than 90 days.

(B) Inmate participates in the BMU program and progresses to the next step at each 30 day review as outlined in section 3334(e).

(C) Inmate does not receive any property related disciplinary violations while in the BMU program.

(4) Should the inmate fail to comply with these provisions above, all unauthorized property as outlined in 3334(g)(1) and 3334(g)(2) shall be disposed of as provided in section 3191(c).

(5) Inmates assigned to the BMU upon the second or subsequent placements shall have all unauthorized property, as outlined in 3334(g)(1) and 3334(g)(2), disposed of as provided in section 3191(c).

(h) Canteen. BMU inmates will be allowed only one (1) draw per month. Canteen privileges shall be established by the Classification Committee as follows:

Step 1—One fourth the maximum monthly canteen draw as authorized in section 3044(f).

Step 2—One fourth the maximum monthly canteen draw as authorized in section 3044(f).

Step 3—One half the maximum monthly canteen draw as authorized in section 3044(e).

(i) Vendor packages are authorized for receipt by inmates housed within the BMU in accordance with their privilege group status as provided in section 3044(c).

(j) Mental Health Services. BMU inmates will be seen by the Mental Health Department in accordance with normal GP treatment expectations as outlined within the Mental Health Services Delivery System (MHSDS). A Mental Health clinician shall attend the Classification Committee for all initial reviews in order to assess the appropriateness of BMU placement for an inmate included in the MHSDS. Inmates currently at the Enhanced Out Patient (EOP) level of care are not eligible for BMU placement.

(k) Visits. BMU inmates are permitted visits with their approved visitors. All visits for inmates at Step 1 and 2 will be non-contact, this includes attorney visits. Inmates at Step 3 will be afforded contact visits.

NOTE: Authority cited: Section 5058 and 5058.3, Penal Code. Reference: Sections 5054, Penal Code.

HISTORY:

1. New article 6.5 (section 3334) and section filed 7-8-2008 as an emergency; operative 7-8-2008 (Register 2008, No. 28). Pursuant to Penal Code section 5058.3(a)(1), a Certificate of Compliance must be transmitted to OAL by 12-15-2008 or emergency language will be repealed by operation of law on the following day.

## Article 7.   Segregation Housing

**3335. Administrative Segregation.**

(a) When an inmate's presence in an institution's general inmate population presents an immediate threat to the safety of the inmate or others, endangers institution security or jeopardizes the integrity of an investigation of an alleged serious misconduct or criminal activity, the inmate shall be immediately removed from general population and be placed in administrative segregation. Administrative segregation may be accomplished by confinement in a designated segregation unit or, in an emergency, to any single cell unit capable of providing secure segregation.

(b) Temporary Segregation. Pending a classification committee determination of the inmate's housing assignment, which may include assignment to one of the segregation program units specified in section 3341.5 of these regulations or to the general inmate population, an inmate may be placed in a designated temporary housing unit under provisions of sections 3336–3341 of these regulations.

(c) An inmate's placement in segregation shall be reviewed by the Institutional Classification Committee (ICC) within 10 days of receipt in the unit and under provisions of section 3338(a) of these regulations. Action shall be taken to retain the inmate in segregation or release to general population.

(d) When, pursuant to this section, an ICC retains an inmate on segregation status, the case shall be referred to a Classification Staff Representative (CSR) for review and approval. Unless otherwise directed by the CSR, subsequent ICC reviews shall proceed in accordance with the following timelines until the inmate is removed from segregation status:

(1) At intervals of not more than 90 days until pending Division C, D, E, or F rules violation report is adjudicated. Upon resolution of such matters, an ICC shall review the inmate's case within 14 calendar days. At that time, if no further matters are pending, but continued segregation retention is required pending transfer to a general population, ICC reviews shall be within at least every 90 days until the transfer can be accomplished.

(2) At intervals of not more than 180 days until a pending Division A-1, A-2, or B rules violation report is adjudicated, a court proceeding resulting from a referral to the district attorney for possible prosecution is resolved, or the gang validation investigation process is complete. Upon resolution of such matters, an ICC shall review the inmate's case within 14 calendar days.

(3) At intervals of not more than 180 days until completion of the pending investigation of serious misconduct or criminal activity, excluding gang validation, or pending resolution of safety and security issues, or investigation of non-disciplinary reasons for segregation placement. Should the completed investigation result in the issuance of a Rules Violation Report and/or a referral to the district attorney for criminal prosecution, an ICC shall review the case in accordance with the schedule set forth in subsections (1), (2), or (3) above. Upon resolution of such matters, an ICC shall review the inmate's case within 14 calendar days. At that time, if no further matters are pending, but continued segregation placement is required pending transfer to a general population, ICC reviews shall be at least every 90 days until transfer can be accomplished.

(e) Inmate retention in administrative segregation beyond the initial segregation ICC hearing shall be referred for CSR review and approval within 30 days and then thereafter in accordance with subsection (d) above. In initiating such reviews an ICC shall recommend one of the following possible outcomes:

(1) Transfer to another institution in accordance with section 3379.

(2) Transfer to a Segregated Program Housing Unit in accordance with section 3341.5.

(3) Retention in segregation pending completion of an active investigation into an alleged violation of the rules/disciplinary process, an investigation of other matters, or resolution of criminal prosecution. In such instances an ICC shall offer a reasonable projection of the time remaining for the resolution of such matters.

(f) Subsequent to CSR approval of an extension of segregation retention, an ICC will schedule the case for future CSR review in a time frame consistent with the projection(s) made in accordance with subsection (d) above.

(g) Inmates in segregation who have approved Security Housing Unit (SHU) term status, but are still awaiting other processes (i.e., court proceedings, adjudication of other rule violation reports, gang validation, etc.), shall be reviewed by an ICC in accordance with the SHU classification process noted in subsection 3341.8.

(h) The need for a change in housing or yard status of any inmate segregated under the provisions of this article shall be reviewed at the next convened ICC hearing.

(i) All classification committee actions shall be documented, including a specific record of the inmate's participation, an explanation of the reason(s), and the information and evidence relied upon for the action taken. The inmate shall be provided copies of the completed forms relied upon in making the decisions affecting the inmate.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 5054 and 5068, Penal Code; *Wright* v. *Enomoto*, (1976) 462 F Supp 397; and *Toussaint* v. *McCarthy* (9th Cir. 1986) 801 F2d 1080, cert. denied, 481 U.S. 1069.

HISTORY:
1. Repealer of Article 7 (Sections 3340–3357) and new Article 7 (Sections 3335–3345) filed 4-18-80; effective thirtieth day thereafter (Register 80 No. 16). For prior history see Registers 76, No. 31; 77, No. 9; 78, No. 25; and 79, No. 34.
2. Amendment of subsection (b) filed 9-24-81; effective thirtieth day thereafter (Register 81, No. 39).
3. Amendment filed 8-7-87 as an emergency; operative 8-7-87 (Register 87, No. 34). A Certificate of Compliance must be transmitted to OAL within 120 days or emergency language will be repealed on 12-7-87.
4. Certificate of Compliance as to 8-7-87 order transmitted to OAL 12-4-87; disapproved by OAL (Register 88, No. 16).
5. Amendment filed 1-4-88 as an emergency; operative 1-4-88 (Register 88, No. 16). A Certificate of Compliance must be transmitted to OAL within 120 days or emergency language will be repealed on 5-3-88.
6. Certificate of Compliance as to 1-4-88 order transmitted to OAL 5-3-88; disapproved by OAL (Register 88, No. 24).
7. Amendment filed 6-2-88 as an emergency; operative 6-2-88 (Register 88, No. 24). A Certificate of Compliance must be transmitted to OAL within 120 days or emergency language will be repealed on 9-30-88.
8. Certificate of Compliance transmitted to OAL 9-26-88 and filed 10-26-88 (Register 88, No. 50).
9. Amendment of article heading and subsection (c), repealer of subsections (c)(1)–(c)(1)(B), new subsections (d)–(i) and amendment of Note filed 6-15-2005 as an emergency pursuant to Penal Code section 5058.3; operative 6-15-2005 (Register 2005, No. 24). A Certificate of Compliance must be transmitted to OAL by 11-22-2005 or emergency language will be repealed by operation of law on the following day.
10. Editorial correction of subsection (d)(3) and History 9 (Register 2005, No. 50).
11. Certificate of Compliance as to 6-15-2005 order transmitted to OAL 10-31-2005 and filed 12-15-2005 (Register 2005, No. 50).

**3336. Segregation Order.**

Authority to order an inmate to be placed in administrative segregation, before such action is considered and ordered by a classification hearing, may not be delegated below the staff level of correctional lieutenant except when a lower level staff member is the highest ranking official on duty.

(a) The reasons for ordering an inmate's placement in administrative segregation will be clearly documented on a CDC Form 114-D (Order and Hearing on Segregated Housing) by the official ordering the action at the time the action is taken.

(b) In addition to explaining the reason and need for an inmate's placement in administrative segregation, the official ordering the action will determine if a staff member needs to be assigned to assist the inmate in presenting the inmate's position at a classification hearing on the need for retention in segregated housing. Staff assistance will be assigned and the assignment will be noted in the CDC Form 114-D if the inmate is illiterate or if the complexities of the issues make it unlikely that the inmate can collect and present evidence necessary for an adequate comprehension of the inmate's position at a classification hearing. If an inmate is not illiterate and the issues are not complex, staff assistance will not be assigned. The reason for not assigning staff assistance will be entered on the CDC Form 114-D.

(c) In assigning staff assistance, the official initiating the CDC Form 114-D will designate the inmate's caseworker by name, as the staff member to assist the inmate. If the assigned caseworker's name is not known or cannot be readily determined by the official initiating the CDC Form 114-D, the words "assigned caseworker" will be entered on the form.

(d) A copy of the CDC Form 114-D, with the "order" portion of the form completed, will if practical, be given to the inmate prior to placement in administrative segregation but not later than 48 hours after such placement. Copies of the CDC Form 114-D with the "order" portion completed will also be submitted to the warden or superintendent or designated staff for review and possible further action as described in section 3337. A copy of the CDC Form 114-D will also be routed to the records office as a notice of the inmate's current status and pending actions.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Section 5054, Penal Code.

HISTORY:
1. Change without regulatory effect amending first paragraph filed 3-22-2001 pursuant to section 100, Title 1, California Code of Regulations (Register 2001, No. 12).

**3337. Review of Segregation Order.**

On the first work day following an inmate's placement in administrative segregation, designated staff at not less than the level of correctional captain will review the order portion of the CDC Form 114-D. If retention in administrative segregation is approved at this review, the following determinations will be made at this level:

(a) Determine the appropriate assignment of staff assistance, if such assistance was deemed necessary by the official initiating the CDC Form 114-D. If the inmate's caseworker is not an appropriate assignment because of the caseworker's schedule, an alternate staff assistance assignment will be made. The inmate will be notified in writing of any change in the assignment of staff assistance. An inmate may decline to accept the assignment of his or her caseworker or the first person assigned. In such cases a different staff member will be assigned to assist the inmate.

(b) Determine the inmate's desire to call witnesses or submit other documentary evidence. If the inmate requests the presence of witnesses or submission of documentary evidence at a classification hearing on the reason or need for retention in segregated housing, an investigative employee will be assigned to the case. A request to call witnesses and the names of witnesses must be submitted in writing by the inmate.

(c) Determine if the inmate has waived the 72-hour time limit in which a classification hearing cannot be held, as indicated on the CDC Form 114-D, or if the inmate desires additional time to prepare for a classification hearing. A request and the reason for needing additional time to prepare for a hearing must be submitted in writing by the inmate. In the absence of an inmate's waiver of the 72-hour preparation period or an approved request for additional preparation time, a classification hearing cannot be held earlier than 72 hours after the inmate's placement in segregated housing, but will be held as soon thereafter as it is practical to do so.

(d) Determine the most appropriate date and time for a classification hearing based upon the determination arrived at under (a)(b) and (c) and the time limitations prescribed in section 3338.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Section 5054, Penal Code.

**3338. Hearing on Segregated Housing Order.**

(a) A classification hearing for consideration and determination of the need to retain an inmate in segregated housing, for the reasons set forth in a segregation order, CDC Form 114-D, will be

held as soon as it is practical and possible to do so, but in no case longer than 10 days from the date the inmate was initially placed in segregated housing, except for the following reasons:

(1) The segregation order, CDC Form 114-D, has been withdrawn and the inmate has been returned to general population status pursuant to Section 3339.

(2) The inmate has been afforded the procedural safeguards of a disciplinary hearing for a serious rule violation and the case has been referred to a classification committee for review, as provided in Section 3315(g). In such cases the classification committee may rely upon the findings of the disciplinary hearing in determining the inmate's need for segregated housing and in ordering such placement. A separate order and hearing on segregated housing is not required in such cases.

(3) The inmate is retained in segregated housing for any Administrative reasons or purposes after acquittal or dismissal of disciplinary charges for which the inmate was segregated pending a disciplinary hearing. In such cases, a segregated housing order shall be initiated and a hearing shall be held on the order within the time limits and under the procedural safeguards set forth in section 3339(b).

(4) A continuing state of emergency exists within the institution, as described in Section 3383. Under such circumstances the hearing will be held as soon as it is safe and practical to do so.

(b) The hearing on an administrative segregation order, CDC Form 114-D, may be conducted by a single classification hearing officer (facility captain, correctional captain, correctional counselor III, or experienced correctional lieutenant, or correctional counselor II.) This does not preclude the use of classification committees or subcommittees of classification for such hearings if such committee hearings can be scheduled and conducted within the time constraints required for such hearings. This option is left to the discretion of each warden and superintendent.

(c) The inmate will be present at the initial hearing on an administrative segregation order except under the applicable conditions as described in section 3320(g) of the director's rules relating to disciplinary hearings. If the hearing is held without the inmate present, the reason will be documented on the segregation order form. Any staff member assigned to assist the inmate will also be present at the hearing.

(d) The primary purpose of the initial hearing on an administrative segregation order, CDC Form 114-D, is to determine the need for continued retention in administrative segregation pending criminal prosecution, disciplinary proceedings, the resolution of nondisciplinary issues or considerations, and reclassification by the institution's main classification committee for assignment to a specialized security housing unit, or an action on the main classification committee's recommendation for transfer to an institution with appropriate specialized security housing units.

(e) When the reason for an inmate's initial placement in administrative segregation is a disciplinary matter and likely to result in a formal report of violation of institution rules on a CDC Form 115, or a referral to the district attorney for possible criminal prosecution, the hearing will assume the alleged misconduct or criminal activities to be factual as reported in the segregation order. The hearing will not consider evidence or information relating to the guilt or innocence of the inmate. The only determination to be made is whether the inmate needs to be retained in administrative segregation for the reasons given in subsection 3335(a) and in the segregation order, CDC Form 114-D, pending resolution or disposition of disciplinary issues. If the hearing decision is to retain the inmate in administrative segregation, the case will be referred to the next scheduled meeting of the institution's main classification committee for review. The main classification committee may review the case in absentia and continue the inmate in administrative segregation pending resolution of the disciplinary issues, or schedule the inmate for a personal appearance to consider placement in a specialized security unit based upon other nondisciplinary reasons necessitating such placement.

(f) When the reason for an inmate's placement in administrative segregation is for nondisciplinary reasons, the hearing will consider all available evidence or information relating to the validity of the reasons given for such placement as well as the need to retain the inmate in administrative segregation pending resolution of the situation or circumstances set forth in the administrative segregation order.

(g) All cases of nondisciplinary administratively segregated inmates referred to the institution's main classification committee in place of an initial hearing on a segregation order or for a review of an initial hearing decision, will require the inmate's personal appearance except under the applicable conditions for absentia hearings as described in section 3320(g) of the director's rules.

(h) Based upon the finding of the investigative employee, the initial hearing or the main classification committee will permit the inmate to present witnesses and documentary evidence at the hearing unless the initial hearing officer or the chairperson of the committee determines in good faith that permitting such evidence will be unduly hazardous to the institution safety or correctional goals. The reason for disallowing witnesses or evidence will be documented in the "hearing" portion of the segregation order, CDC Form 114-D, and in the classification committee's report (CDC Form 128-G) depending upon the hearing at which the presentation of such evidence or witnesses would have otherwise been presented.

(i) The determinations arrived at in the classification hearing will be documented in the hearing portion of the segregation order, CDC Form 114-D, and in the classification committee report, CDC Form 128-G, depending upon the hearing at which the need for segregated housing is resolved. Such documentation will include an explanation of the reason and the information and evidence relied upon for the action taken. A copy of the completed CDC Form 114-D and any CDC Form 128-G resulting from hearings will be routed to the inmate's central file. The inmate will also be given copies of all completed forms and of all other documents relied upon in the hearing except those containing confidential information.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Section 5054, Penal Code; and *Wright* v. *Enomoto*, 462 F Supp 397 (1976).

HISTORY:
1. Amendment of subsections (a)(2) and (a)(3) filed 3-2-83; effective thirtieth day thereafter (Register 83, No. 12).
2. Change without regulatory effect amending subsections (c) and (g) filed 5-7-96; operative 6-6-96 (Register 96, No. 19).
3. Change without regulatory effect amending subsection (b) filed 7-30-2001 pursuant to section 100, title 1, California Code of Regulations (Register 2001, No. 31).
4. Change without regulatory effect amending subsection (b) filed 8-6-2001 pursuant to section 100, title 1, California Code of Regulations (Register 2001, No. 32).

**3339. Release from Administrative Segregation and Retention in Administrative Segregation.**

(a) Release: Release from segregation status shall occur at the earliest possible time in keeping with the circumstances and reasons for the inmate's initial placement in administrative segregation. Nothing in this article shall prevent the official ordering an inmate's placement in administrative segregation, or a staff member of higher rank in the same chain of command, from withdrawing an administrative segregation order before it is acted upon or prior to a hearing on the order after consulting with and obtaining the concurrence of the administrator of the general population unit to which the inmate will be returned or assigned. Release from segregated housing after such placement shall be effected only upon the written order of an equal or higher authority.

(b) Retention: Subsections (b)(1)–(b)(5) set forth procedural safeguards. These procedural safeguards apply to inmates retained for administrative reasons after the expiration of a definite term or terms of confinement for disciplinary reasons. Definite terms of confinement shall be set or reduced by classification or administrative action.

(1) A segregated housing order, CDC Form 114-D, shall be initiated, giving written notice of the reasons for such retention in sufficient detail to enable the inmate to prepare a response or defense. Except in case of a genuine emergency, a copy of the order shall be given to the inmate prior to the expiration of the determinate term or terms of confinement. In no case shall notice be given later than 48 hours after the expiration of the determinate term or terms.

(2) A fair hearing before one or more classification officials shall be held not more than 96 hours after the inmate is given a copy of the segregated housing order, unless the inmate requests, in writing, and is granted additional time to prepare a defense.

(3) Representation by a staff assistant shall be provided if institution officials determine that the inmate is illiterate or that the complexity of the issues make it unlikely that the inmate can collect or present the evidence necessary for an adequate comprehension of the case. The determination and designation is to be made at the time the segregated housing order is prepared and shall be included on the copy of the order given the inmate.

(4) The inmate shall be given a reasonable opportunity to present witnesses and documentary evidence unless institution officials determine in good faith that presentation of the evidence would be unduly hazardous to institutional safety or correctional goals. The reason for disallowing designated evidence will be explained in writing by the hearing body on the segregated housing order.

(5) A copy of the completed segregated housing order containing a written decision, including references to the evidence relied upon and the reasons for retention in segregated housing beyond the expiration of the expired term of confinement, if so retained, shall be given the inmate upon completion of the hearing.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Section 5054, Penal Code; and *Taylor v. Rushen* (N.D. Cal.) L-80-0139 SAW.

HISTORY:
1. Repealer and new section filed 3-2-83; effective thirtieth day thereafter (Register 83, No. 12).
2. Editorial correction of printing error in subsection (b)(2) (Register 92, No. 5).

### 3340. Exclusions.

Separation from general population for the reasons and under the circumstances described in this section is not considered administrative segregation and is specifically excluded from the other provisions of this article.

(a) Medical. When an inmate is involuntarily removed from general inmate status for medical or psychiatric reasons by order of medical staff and the inmate's placement is in a hospital setting or in other housing as a medical quarantine, the inmate will not be deemed as segregated for the purpose of this article. When personnel other than medical staff order an inmate placed in administrative segregation for reasons related to apparent medical or psychiatric problems, that information will be immediately brought to the attention of medical staff. The appropriateness of administrative segregation or the need for movement to a hospital setting will be determined by medical staff. When medical and psychiatric reasons are involved, but are not the primary reasons for an inmate's placement in administrative segregation, administrative segregation status will be continued if the inmate is moved to a hospital setting and the requirements of this article will apply.

(b) Orientation and Lay-Over. Newly received inmates and inmates in transit or lay-over status may be restricted to assigned quarters for that purpose. Such restrictions should not be more confining than is required for institution security and the safety of persons, nor for a period longer than the minimum time required to evaluate the safety and security factors and reassignment to more appropriate housing.

(c) Disciplinary Detention. Placement in disciplinary detention as an ordered action of a disciplinary hearing is not subject to the provisions of this article except as provided in section 3338(a)(2) and (3).

(d) Confinement to Quarters. Confinement to quarters as an ordered action of a disciplinary hearing is not subject to the provisions of this article.

(e) Segregated Inmates. When an inmate has been classified for segregated housing in accordance with this article and commits a disciplinary offense while so confined, or is returned to segregated housing upon completion of a disciplinary detention sentence for an offense committed in a segregated unit, the provision of this article will not apply.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Section 5054, Penal Code.

### 3341. Staff Assistance.

The duties and functions of a staff member assigned to assist an inmate in a classification hearing on a segregated housing order will be the same as described in section 3318 for a disciplinary hearing. When an inmate requests witnesses at a classification hearing on a segregation order and an investigative employee is assigned, the investigative employee's duties and functions will be essentially the same as described in section 3318 for predisciplinary hearing investigations. In screening prospective witnesses, the investigative employee will do so in accordance with the information to be considered in the classification hearing, as described in section 3338(e) and (f).

NOTE: Authority cited: Section 5058, Penal Code. Reference: Section 5054, Penal Code.

HISTORY:
1. Editorial correction removing extraneous text (Register 97, No. 5).
2. Change without regulatory effect amending section filed 1-29-97 pursuant to section 100, title 1, California Code of Regulations (Register 97, No. 5).

### 3341.5. Segregated Program Housing Units.

Special housing units are designated for extended term programming of inmates not suited for general population. Placement into and release from these units requires approval by a classification staff representative (CSR).

(a) Protective Housing Unit (PHU). An inmate whose safety would be endangered by general population placement may be placed in the PHU providing the following criteria are met:

(1) The inmate does not require specialized housing for reasons other than protection.

(2) The inmate does not have a serious psychiatric or medical condition requiring prompt access to hospital care.

(3) The inmate is not documented as a member or an affiliate of a prison gang.

(4) The inmate does not pose a threat to the safety or security of other inmates in the PHU.

(5) The inmate has specific, verified enemies identified on CDC Form 812 likely to and capable of causing the inmate great bodily harm if placed in general population.

(6) The inmate has notoriety likely to result in great bodily harm to the inmate if placed in general population.

(7) There is no alternative placement which can ensure the inmate's safety and provide the degree of control required for the inmate.

(8) It has been verified that the inmate is in present danger of great bodily harm. The inmate's uncorroborated personal report, the nature of the commitment offense or a record of prior protective custody housing shall not be the sole basis for protective housing unit placement.

(b) Psychiatric Services Unit (PSU). An inmate with a diagnosed psychiatric disorder not requiring inpatient hospital care, whose conduct threatens the safety of the inmate or others, may be housed in a PSU if the inmate is capable of participating in the unit's activities without undue risk to the safety of the inmate or others in the unit.

(c) Security Housing Unit (SHU). An inmate whose conduct endangers the safety of others or the security of the institution shall be housed in a SHU.

(1) Assignment criteria. The inmate has been found guilty of an offense for which a determinate term of confinement has been assessed or is deemed to be a threat to the safety of others or the security of the institution.

(2) Length of SHU Confinement. Assignment to a SHU may be for an indeterminate or for a fixed period of time.

(A) Indeterminate SHU Segregation.

1. An inmate assigned to a security housing unit on an indeterminate SHU term shall be reviewed by a classification committee at least every 180 days for consideration of release to the general inmate population. An investigative employee shall not be assigned at these periodic classification committee reviews.

2. Except as provided at section 3335(a), section 3378(d) and subsection (c)(5), a validated prison gang member or associate is deemed to be a severe threat to the safety of others or the security of the institution and will be placed in a SHU for an indeterminate term.

(B) Determinate SHU Segregation.

1. A determinate period of confinement in SHU may be established for an inmate found guilty of a serious offense listed in section 3315 of these regulations. The term shall be established by the Institutional Classification Committee (ICC) using the standards in this section, including the SHU Term Assessment Chart (see section 3341.5(c)(9)), Factors in Mitigation or Aggravation (see section 3341.5(c)(10)), SHU Term Assessment Worksheet CDC Form 629-A, Rev. 3/96, Assessment of Subsequent SHU Term Worksheet CDC Form 629-B, Rev. 9/90, and SHU Time Computation Table (see CDC Form 629-D, Rev. 7/88).

2. The term shall be set at the expected term for the offense in the absence of mitigating or aggravating factors. Deviation from the expected term shall be supported by findings pursuant to subsection (c)(7).

3. The terms shall be recorded on CDC Form 629-A, SHU Term Assessment Worksheet, using the SHU Time Computation Table which incorporates one-fourth clean conduct credit in the term. The computation shall establish a maximum release date and a minimum eligible release date (MERD). A copy of the CDC Form 629-A shall be given to the inmate.

4. Serious misconduct while in SHU may result in loss of clean conduct credits or an additional determinate term for an inmate serving a determinate term. Such additional term may be concurrent or consecutive and shall be recorded on CDC Form 629-B with a copy given to the inmate. Such cases shall be referred to a CSR for approval; however, all release and retention requirements of section 3339 shall remain in effect pending CSR approval.

5. Up to 45 days of a SHU inmate's clean conduct credits may be forfeited for disciplinary infractions that are not serious enough to warrant the assessment of a subsequent or concurrent SHU term. Such forfeiture may be assessed against credits already earned or future credits.

6. Consecutive SHU terms shall be assessed only for offenses occurring after commencement of a prior determinate SHU term.

7. The ICC may commute or suspend any portion of a determinate term. Once commuted, the term shall not be reimposed. If suspended, the period of suspension shall not exceed the length of the original term imposed. When either action occurs, the case shall be referred to a classification staff representative (CSR) with a placement recommendation.

8. The Unit Classification Committee shall conduct hearings on all determinate cases at least 30 days prior to their MERD or during the eleventh month from the date of placement, whichever comes first.

(3) Release from SHU. An inmate shall not be retained in SHU beyond the expiration of a determinate term or beyond 11 months, unless the classification committee has determined before such time that continuance in the SHU is required for one of the following reasons:

(A) The inmate has an unexpired MERD from SHU.

(B) Release of the inmate would severely endanger the lives of inmates or staff, the security of the institution, or the integrity of an investigation into suspected criminal activity or serious misconduct.

(C) The inmate has voluntarily requested continued retention in segregation.

(4) A validated prison gang member or associate shall be considered for release from a SHU, as provided above, after the inmate is verified as a gang dropout through a debriefing process.

(5) As provided at section 3378(e), the Departmental Review Board (DRB) may authorize SHU release for prison gang members or associates categorized as inactive. The term inactive means that the inmate has not been involved in gang activity for a minimum of six (6) years. Inmates categorized as inactive who are suitable for SHU release shall be transferred to the general population of a Level IV facility for a period of observation that shall be no greater than 12 months. Upon completion of the period of observation, the inmate shall be housed in a facility commensurate with his or her safety needs. In the absence of safety needs, the inmate shall be housed in a facility consistent with his or her classification score. The DRB is authorized to retain an inactive gang member or associate in a SHU based on the inmate's past or present level of influence in the gang, history of misconduct, history of criminal activity, or other factors indicating that the inmate poses a threat to other inmates or institutional security.

(6) As provided at section 3378(f), an inmate categorized as inactive or validated as a dropout of a prison gang and placed in the general population may be returned to segregation based upon one reliable source item identifying the inmate as a currently active gang member or associate of the prison gang with which the inmate was previously validated. Current activity is defined as, any documented gang activity within the past six (6) years. The procedures described in this Article shall be utilized for the removal of the inmate from the general population, the review of the initial segregation order, and all periodic reviews of the indeterminate SHU term.

(7) Determinate SHU terms shall only be served in a departmentally approved SHU or a facility specifically designated for that purpose.

(8) When an inmate is paroled while serving a determinate term, the remaining time on the term is automatically suspended. When an inmate returns to prison, either as a parole violator or with a new prison commitment, ICC shall evaluate the case for reimposition of the suspended determinate term. If reimposed, the term shall not exceed the time remaining on the term at the time of parole.

(9) SHU Term Assessment Chart (fixing of determinate confinement to SHU).

**TITLE 15**      DEPARTMENT OF CORRECTIONS AND REHABILITATION      § 3341.5

| OFFENSE | TYPICAL TERM (Mos) | | |
|---|---|---|---|
| | Low | Expected | High |
| (A) Homicide: | | | |
| 1. Murder, attempted murder, solicitation of murder, or voluntary manslaughter of a non-inmate. | (36 | 48 | 60) |
| 2. Murder, attempted murder, solicitation of murder, or voluntary manslaughter of an inmate. | (15 | 26 | 36) |
| (B) Violence Against Persons: | | | |
| 1. Assault on a non-inmate with a weapon or physical force capable of causing mortal or serious injury. | (09 | 28 | 48) |
| 2. Assault on an inmate with a weapon or physical force capable of causing mortal or serious injury. | (06 | 15 | 24) |
| 3. Assault on a non-inmate with physical force insufficient to cause serious injury. | (06 | 12 | 18) |
| 4. Assault on an inmate with physical force insufficient to cause serious injury. | (02 | 03 | 06) |
| 5. Throwing a caustic substance on a non-inmate. | (02 | 03 | 04) |
| (C) Threat to Kill or Assault Persons: | | | |
| 1. Use of non-inmate as hostage. | (18 | 27 | 36) |
| 2. Threat to a non-inmate. | (02 | 05 | 09) |
| 3. Threat to an inmate. | (02 | 03 | 04) |
| (D) Possession of a Weapon: | | | |
| 1. Possession of a firearm or explosive device. | (18 | 27 | 36) |
| 2. Possession of a weapon, other than a firearm or explosive device which has been manufactured or modified so as to have the obvious intent or capability of inflicting traumatic injury, and which is under the immediate or identifiable control of the inmate. | (06 | 10 | 15) |
| (E) Trafficking in Drugs: Distributing controlled substances in an institution or camp or causing controlled substances to be brought into an institution or camp for the purpose of distribution. | (06 | 09 | 12) |
| (F) Escape with Force or Attempted Escape with Force. | (09 | 16 | 24) |
| (G) Disturbance, Riot, or Strike: | | | |
| 1. Leading a disturbance, riot, or strike. | (06 | 12 | 18) |
| 2. Active participation in, or attempting to cause conditions likely to threaten institution security. | (02 | 04 | 06) |
| (H) Harassment of another person, group, or entity either directly or indirectly through the use of the mail or other means. | (06 | 12 | 18) |
| (I) Arson, Theft, Destruction of Property: Theft or destruction of State property where the loss or potential loss exceeds $10,000 or threatens the safety of others. | (02 | 08 | 12) |
| (J) Extortion and Bribery: extortion or bribery of a non-inmate. | (02 | 06 | 09) |
| (K) Sexual Misconduct | | | |
| 1. Indecent Exposure | (03 | 06 | 09) |
| 2. Sexual Disorderly Conduct (two or more offenses within a twelve month period) | (03 | 06 | 09) |
| (L) Refusal to Accept Assigned Housing | (03 | 06 | 09) |
| (M) Except as otherwise specified in this section, proven attempts to commit any of the above listed offenses shall receive one-half (1/2) of the term specified for that offense. | | | |
| (N) Any inmate who conspires to commit any of the offenses above shall receive the term specified for that offense. | | | |

(10) Factors in mitigation or aggravation of SHU term. The SHU term shall be set at the expected range unless a classification committee finds factors exist which warrant the imposition of a lesser or greater period of confinement. The total period of confinement assessed shall be no less than nor greater than the lowest or highest months listed for the offense in the SHU Term Assessment Chart. In setting the term, the committee shall determine the base offense. If the term being assessed includes multiple offenses, the offense which provides for the longest period of confinement shall be the base offense. Lesser offenses may be used to increase the period beyond expected term. After determining the base offense, the committee shall review the circumstances of the disciplinary offense and the inmate's institutional behavior history using the factors below. The committee shall then determine that either no unusual factors exist or find that specific aggravating or mitigating factors do exist and specify a greater or lesser term. The reasons for deviation from the expected term shall be documented on a CDC 128-G, Classification Chrono, and SHU Term Assessment Worksheet, a copy of which shall be provided to the inmate.

(A) Factors in Mitigation.

1. The inmate has a minor or no prior disciplinary history.

2. The inmate has not been involved in prior acts of the same or of a similar nature.

3. The misconduct was situational and spontaneous as opposed to planned in nature.

4. The inmate was influenced by others to commit the offense.

5. The misconduct resulted, in part, from the inmate's fear for safety.

(B) Factors in Aggravation.

1. The inmate's prior disciplinary record includes acts of misconduct of the same or similar nature.

2. The misconduct was planned and executed as opposed to situational or spontaneous.

3. The misconduct for which a SHU term is being assessed resulted in a finding of guilty for more than one offense.

4. The inmate influenced others to commit serious disciplinary infractions during the time of the offense.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 314, 5054 and 5068, Penal Code; *Sandin v. Connor* (1995) 515 U.S. 472; *Madrid v. Gomez* (N.D. Cal. 1995) 889 F.Supp. 1146; *Toussaint v. McCarthy* (9th Cir. 1990) 926 F.2d 800; *Toussaint v. Yockey* (9th Cir. 1984) 722 F.2d 1490; and *Castillo v. Alameida, et al.*, (N.D. Cal., No. C94-2847).

HISTORY:

1. New section filed 8-7-87 as an emergency; operative 8-7-87 (Register 87, No. 34). A Certificate of Compliance must be transmitted to OAL within 120 days or emergency language will be repealed on 12-7-87.

2. Certificate of Compliance as to 8-7-87 order transmitted to OAL 12-4-87; disapproved by OAL (Register 88, No. 16).

3. New section filed 1-4-88 as an emergency; operative 1-4-88 (Register 88, No. 16). A Certificate of Compliance must be transmitted to OAL within 120 days or emergency language will be repealed on 5-3-88.
4. Certificate of Compliance as to 1-4-88 order transmitted to OAL 5-3-88; disapproved by OAL (Register 88, No. 24).
5. Amendment filed 6-2-88 as an emergency; operative 6-2-88 (Register 88, No. 24). A Certificate of Compliance must be transmitted to OAL within 120 days or emergency language will be repealed on 9-30-88.
6. Certificate of Compliance including amendment transmitted to OAL 9-26-88 and filed 10-26-88 (Register 88, No. 50).
7. Editorial correction of printing errors in subsection (c)(2)(B)1 and CDC Forms 629-B and 629-D (Register 92, No. 5).
8. New subsection (c)(6)(H), subsection relettering, and amendment of Note filed 7-29-93 as an emergency; operative 7-29-93 (Register 93, No. 31). A Certificate of Compliance must be transmitted to OAL 11-26-93, or emergency language will be repealed by operation of law on the following day.
9. Certificate of Compliance as to 7-29-93 order transmitted to OAL 11-18-93 and filed 12-31-93 (Register 94, No. 1).
10. Amendment of subsection (c)(2)(B)1. and 4., new subsection (c)(2)(B)5. and subsection renumbering, repealer of form CDC 629-A, and new form CDC 629-A filed 2-8-96 as an emergency per Penal Code section 5058(e); operative 2-8-96 (Register 96, No. 6). A Certificate of Compliance must be transmitted to OAL by 7-18-96 or emergency language will be repealed by operation of law on the following day.
11. Certificate of Compliance as to 2-8-96 order including amendment of form CDC 629-A transmitted to OAL 6-17-96 and filed 7-30-96 (Register 96, No. 31).
12. New subsection (c)(2)(A)1. designator, new subsections (c)(2)(A)2. and (c)(4) and subsection relettering filed 1-21-99 as an emergency; operative 1-21-99 (Register 99, No. 4). Pursuant to Penal Code section 5058(e), a Certificate of Compliance must be transmitted to OAL by 6-30-99 or emergency language will be repealed by operation of law on the following day.
13. Certificate of Compliance as to 1-21-99 order transmitted to OAL 6-30-99 and filed 8-12-99 (Register 99, No. 33).
14. Amendment of subsections (c)(2)(A)1. and 2. and (c)(4), new subsections (c)(5) and (c)(6), subsection renumbering, amendment of newly designated subsection (c)(10) and amendment of Note filed 8-30-99 as an emergency; operative 8-30-99 (Register 99, No. 36). Pursuant to Penal Code section5058(e), a Certificate of Compliance must be transmitted to OAL by 2-8-2000 or emergency language will be repealed by operation of law on the following day.
15. Certificate of Compliance as to 8-30-99 order transmitted to OAL 2-7-2000 and filed 3-21-2000 (Register 2000, No. 12).
16. Change without regulatory effect amending subsection (c)(2)(B)1. filed 10-16-2001 pursuant to section 100, title 1, California Code of Regulations (Register 2001, No. 42).
17. Amendment of subsection (c)(6) and Note filed 5-25-2006; operative 5-25-2006 pursuant to Government Code section 11343.4 (Register 2006, No. 21).
18. Change without regulatory effect amending subsection (b) filed 6-27-2006 pursuant to section 100, title 1, California Code of Regulations (Register 2006, No. 26).
19. New subsections (c)(9)(K)–(c)(9)(K)2., subsection relettering and amendment of Note filed 2-23-2007 as an emergency; operative 2-23-2007 (Register 2007, No. 8). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 8-2-2007 or emergency language will be repealed by operation of law on the following day.
20. Certificate of Compliance as to 2-23-2007 order, including amendment of subsection (c)(9)(K)1.-2., transmitted to OAL 7-27-2007 and filed 9-5-2007 (Register 2007, No. 36).
21. New subsection (c)(9)(L) and subsection relettering filed 12-28-2007; operative 12-28-2007 pursuant to Government Code section 11343.4 (Register 2007, No. 52).

**3376. Classification Committees.**

(a) The following terms are defined for the purposes of this section:

(1) Camp means the type of subfacility of an institution which is normally located in a rural area and which has no secure (fenced or walled) perimeter. Camp inmates are generally assigned to conservation and/or road details.

(2) Community-access facility (CAF) means any facility located in the community, administered by the Parole and Community Services Division, where inmates have access to the community for work or training and which has no secure (fenced or walled) perimeter.

(3) Community correctional facility (CCF) means a facility located in the community, administered by the Parole and Community Services Division, where inmates do not have unsupervised access to the community and which has a secure (fenced) perimeter.

(4) Facility means any institution, community-access facility, community correctional facility, or any camp or other subfacility of an institution under the jurisdiction of the department.

(5) Institution means a large facility or complex of subfacilities with a secure (fenced or walled) perimeter headed by a warden.

(b) Each facility shall establish classification committees as provided herein. A quorum for any committee at a CAF shall be a minimum of two persons who shall be the chairperson and recorder. A quorum at all other facilities shall be a minimum of three persons who shall be the chairperson, recorder and any other member.

(c) Composition of committees:

(1) Initial and Unit Classification Committees shall consist of:

(A) Facility captain, correctional captain, or CAF/CCF manager (chairperson).

(B) Correctional counselor III, parole administrator I, parole agent III, or assistant CAF/CCF manager; or, for CAF/CCFs only, designated supervisory peace officer at the rank of correctional lieutenant, or above (alternate chairperson).

(C) Correctional counselor II, correctional counselor I, or parole agent II (recorder).

(D) Assignment lieutenant (initial classification), program lieutenant (unit classification), or CAF/CCF inmate assignment/program coordinator.

(E) Educational or vocational program representative.

(F) Other staff as required.

(2) Institution Classification Committees (ICC) and Facility Classification Committees (FCC) shall consist of:

(A) Warden, regional parole administrator, deputy warden, or deputy regional parole administrator (chairperson).

(B) Correctional administrator or parole administrator I (alternate chairperson).

(C) Psychiatrist or physician.

(D) Facility captain.

(E) Correctional captain.

(F) Correctional counselor III, parole agent III, correctional counselor II, or parole agent II (recorder).

(G) Assignment lieutenant or CAF/CCF inmate assignment/program coordinator.

(H) Educational or vocational program representative.

(I) Other staff as required.

(3) Camp Classification Committee shall consist of:

(A) Correctional lieutenant (chairperson).

(B) Correctional counselor I (alternate chairperson, recorder).

(C) Correctional sergeant.

(D) Staff representative of camp contracting agency.

(d) Classification committee functions:

(1) Initial Classification Committees shall:

(A) Evaluate case factors and assist the inmate to understand facility expectations, available programs, and resources.

(B) Initiate an education, vocational training, or work program; designate a credit earning and privilege group; and assign a custody designation for each inmate.

(C) Refer complex cases to the ICC or FCC.

(D) Recommend transfer of a new arrival determined to be inappropriately placed.

(E) Grant work credits to which the inmate is entitled while in transit.

(2) Unit Classification Committees shall:

(A) Review each inmate's case at least annually to consider the accuracy of the inmate's classification score, custody designation, program, work and privilege group, and facility placement, including recommendation for transfer. A parole violator's first annual review may be delayed for up to five months so that it will coincide with classification score updates.

(B) Change in inmate's work/privilege group.

(C) Conduct post board classification on an inmate within 15 days of receipt of official notice of a Board of Prison Terms' decision regarding the inmate.

(D) Act on an inmate's request for restoration of forfeited credits for less than Division C offenses in accordance with section 3327.

(3) Institution and Facility Classification Committees shall:

(A) Recommend transfer of inmates.

(B) Act on cases referred by lower committees.

(C) Review inmate requests for meritorious sentence reduction to determine compliance with Penal Code section 2935.

(D) Make referrals and recommendations through the chief, classification services, for cases requiring Departmental Review Board (DRB) decisions.

(E) Change an inmate's work/privilege group.

(4) Camp classification committees shall perform all functions designated above for unit and initial classification committees.

NOTE: Authority cited: Sections 3303 and 3309, Welfare and Institutions Code; and Sections 5058 and 6252, Penal Code. Reference: Sections 2933, 5054 and 5068, Penal Code.

HISTORY:

1. Repealer and new section filed 8-7-87 as an emergency; operative 8-7-87 (Register 87, No. 34). A Certificate of Compliance must be transmitted to OAL within 120 days or emergency language will be repealed on 12-7-87.
2. Certificate of Compliance as to 8-7-87 order transmitted to OAL 12-4-87; disapproved by OAL (Register 88, No. 16).
3. Repealer and new section filed 1-4-88 as an emergency; operative 1-4-88 (Register 88, No. 16). A Certificate of Compliance must be transmitted to OAL within 120 days or emergency language will be repealed on 5-3-88.
4. Certificate of Compliance as to 1-4-88 order transmitted to OAL 5-3-88; disapproved by OAL (Register 88, No. 24).
5. Repealer and new section filed 6-2-88 as an emergency; operative 6-2-88 (Register 88, No. 24). A Certificate of Compliance must be transmitted to OAL within 120 days or emergency language will be repealed on 9-30-88.
6. Certificate of Compliance transmitted to OAL 9-26-88 and filed 10-26-88 (Register 88, No. 50).
7. Change without regulatory effect amending section filed 10-22-90 pursuant to section 100, title 1, California Code of Regulations (Register 91, No. 4).
8. Editorial correction of printing error in subsection (b)(3)(D) (Register 92, No. 5).
9. Repealer of subsection (b)(2)(C), subsection relettering, and amendment of subsection (b)(3)(E) filed 5-5-95; operative 6-5-95 (Register 95, No. 18).
10. Amendment of subsection (b)(2)(C) and repealer of subsection (b)(3)(E) and subsection relettering pursuant to Penal Code section 5058(e) filed 3-20-96 as an emergency; operative 3-20-96 (Register 96, No. 12). A Certificate of Compliance must be transmitted to OAL by 8-27-96 or emergency language will be repealed by operation of law on the following day.

11. Certificate of Compliance as to 3-20-96 order transmitted to OAL 7-25-96 and filed 9-5-96 (Register 96, No. 36).
12. Amendment of section and Note filed 5-1-97; operative 5-31-97 (Register 97, No. 18).
13. Amendment of subsection (d)(2)(A) filed 7-28-97 as an emergency; operative 7-28-97 (Register 97, No. 31). Pursuant to Penal Code section 5058(e), a Certificate of Compliance must be transmitted to OAL by 1-5-98 or emergency language will be repealed by operation of law on the following day.
14. Certificate of Compliance as to 7-28-97 order transmitted to OAL 10-27-97 and filed 12-8-97 (Register 97, No. 50).
15. Amendment of subsection (d)(2)(A), new subsection (d)(2)(B), subsection relettering and amendment of subsection (d)(3)(E) filed 1-9-2004 as an emergency; operative 1-9-2004 (Register 2004, No. 2). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 6-17-2004 or emergency language will be repealed by operation of law on the following day.
16. Amendment of subsection (d)(2)(A), new subsection (d)(2)(B), subsection relettering and amendment of subsection (d)(3)(E) refiled 6-17-2004 as an emergency; operative 6-17-2004 (Register 2004, No. 25). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 11-24-2004 or emergency language will be repealed by operation of law on the following day.
17. Certificate of Compliance as to 6-17-2004 order transmitted to OAL 11-16-2004 and filed 12-29-2004 (Register 2004, No. 53).

**3376.1. Departmental Review Board.**

The Departmental Review Board (DRB) provides the director's final review of classification issues, which are referred by an institution head for a resolution or decision at the headquarters level. The DRB decision serves as the director's level decision, which is not appealable and concludes the inmate/parolee's departmental administrative remedy of such issues.

(a) Composition of the DRB:

(1) The deputy director or an assistant deputy director of the institutions division (chairperson).

(2) The deputy director or assistant deputy director of the parole and community services division.

(3) The chief of classification services (shall abstain on DRB issues resulting from a difference of opinion between an institution head and the chief of classification services).

(4) The chief of health services.

(b) Two members shall constitute a quorum.

(c) The DRB shall meet at the call of the chairperson.

(d) Referrals shall be made to the DRB when:

(1) An institution head is unable to resolve a difference of opinion with the chief of classification services.

(2) An institution head believes a clarification of departmental policy of statewide importance is required.

(3) An institution head believes a DRB level decision for placement of an inmate is required because of an unusual threat to the safety of persons or public interest in the case, e.g., commuted or modified death sentence or classification of an inactive gang member or associate. Subsequent DRB reviews of the continued placement of inactive gang members or associates in a security-housing unit (SHU) shall occur no earlier than two years after the previous DRB decision. Upon denial of an alternative placement for an inactive gang member or associate, the DRB is authorized to schedule an earlier review of the placement if the DRB determines that it is reasonable to expect that release from SHU will be granted in less than two years.

(4) A difference between a Board of Prison Terms' program placement order and the department's policies cannot be resolved.

(5) An out-of-state or federal prison placement is recommended by the institution classification committee.

(6) Meritorious credit is recommended by an institution classification committee to reduce an inmate's period of confinement pursuant to Penal Code Section 2935.

(7) The inmate's current placement was ordered by the DRB and there is no documentation in the inmate's central file to indicate that the DRB has relinquished responsibility for the inmate's placement.

(e) Decisions of the DRB shall be in writing and implemented within 30 calendar days after the decision is made.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 5054 and 5068, Penal Code; *Sandin* v. *Connor* (1995) 515 U.S. 472; and *Madrid* v. *Gomez* (N.D.Cal. 1995) 889 F.Supp. 1146.

HISTORY:

1. New section filed 1-16-92; operative 2-17-92 (Register 92, No. 13).
2. Amendment of subsection (d)(3) and Note filed 8-30-99 as an emergency; operative 8-30-99 (Register 99, No. 36). Pursuant to Penal Code section 5058(e), a Certificate of Compliance must be transmitted to OAL by 2-8-2000 or emergency language will be repealed by operation of law on the following day.
3. Certificate of Compliance as to 8-30-99 order transmitted to OAL 2-7-2000 and filed 3-21-2000 (Register 2000, No. 12).

**3377. Facility Security Levels.**

Each camp, facility, or area of a facility complex shall be designated at a security level based on its physical security and housing capability. Reception centers are not facilities of assignment and are exempt from the security level designations except for the assignment of permanent work crew inmates. The security levels are:

(a) Level I facilities and camps consist primarily of open dormitories with a low security perimeter.

(b) Level II facilities consist primarily of open dormitories with a secure perimeter, which may include armed coverage.

(c) Level III facilities primarily have a secure perimeter with armed coverage and housing units with cells adjacent to exterior walls.

(d) Level IV facilities have a secure perimeter with internal and external armed coverage and housing units described in section 3377(c), or cell block housing with cells non-adjacent to exterior walls.

NOTE: Authority cited: Section 5058 and 5058.3, Penal Code. Reference: Sections 5054 and 5068, Penal Code.

HISTORY:

1. New section filed 8-7-87 as an emergency; operative 8-7-87 (Register 87, No. 34). A Certificate of Compliance must be transmitted to OAL within 120 days or emergency language will be repealed on 12-7-87.
2. Certificate of Compliance as to 8-7-87 order transmitted to OAL 12-4-87; disapproved by OAL (Register 88, No. 16).
3. New section filed 1-4-88 as an emergency; operative 1-4-88 (Register 88, No. 16). A Certificate of Compliance must be transmitted to OAL within 120 days or emergency language will be repealed on 5-3-88.
4. Certificate of Compliance as to 1-4-88 order transmitted to OAL 5-3-88; disapproved by OAL (Register 88, No. 24).
5. New section filed 6-2-88 as an emergency; operative 6-2-88 (Register 88, No. 24). A Certificate of Compliance must be transmitted to OAL within 120 days or emergency language will be repealed on 9-30-88.
6. Certificate of Compliance including amendment transmitted to OAL 9-26-88 and filed 10-26-88 (Register 88, No. 50).
7. Change without regulatory effect amending section filed 10-22-90 pursuant to section 100, Title 1, California Code of Regulations (Register 91, No. 4).
8. Editorial correction of printing errors (Register 91, No. 11).
9. Editorial correction of printing error in subsection (b) (Register 92, No. 5).

(7) Notoriety. After at least five (5) years at Close A Custody, an inmate designated as a Public Interest Case or determined to have High Notoriety shall serve at least five (5) years in Close B Custody before consideration of further reduction of custody.

NOTE: Authority cited: section 5058, Penal Code. Reference: Sections 5054 and 5068, Penal Code; *Americans with Disability Act (ADA)*, 42 U.S.C., Section 12131, et seq.; and *Pennsylvania Department of Corrections v. Yeskey* (1998) 524 U.S. 206.

HISTORY:
1. New section filed 3-27-2000 as an emergency; operative 3-27-2000 (Register 2000, No. 13). Pursuant to Penal Code section 5058(e), a Certificate of Compliance must be transmitted to OAL by 9-5-2000 or emergency language will be repealed by operation of law on the following day.
2. Certificate of Compliance as to 3-27-2000 order transmitted to OAL 9-5-2000; disapproval and order of repeal and deletion repealing section by operation of Government Code 11346.1(g) filed 10-18-2000 (Register 2000, No. 42).
3. New section filed 10-19-2000 deemed an emergency pursuant to Penal Code section 5058(e); operative 10-19-2000 (Register 2000, No. 42). Pursuant to Penal Code section 5058(e), a Certificate of Compliance must be transmitted to OAL by 3-27-2001 or emergency language will be repealed by operation of law on the following day.
4. Certificate of Compliance as to 10-19-2000 order, including further amendment of section and Note, transmitted to OAL 3-27-2001 and filed 5-3-2001 (Register 2001, No. 18).

**3378. Documentation of Critical Case Information.**
(a) Any information regarding an inmate/parolee which is or may be critical to the safety of persons inside or outside an institution shall be documented as required below on a CDC Form 812 (Rev. 8/01), Notice of Critical Case Information-Safety of Persons (Nonconfidential Enemies); a CDC Form 812-A (9/92), Notice of Critical Information-Prison Gangs Identification; CDC Form 812-B (9/92), Notice of Critical Information-Disruptive Group Identification; and CDC Form 812-C (Rev. 8/01), Notice of Critical Information-Confidential Enemies. The CDC Forms 812, 812-A, 812-B, and 812-C and all documents referred to on the forms shall be filed in the central file of each identified inmate/parolee. Any confidential material affecting the critical case factors of an inmate/parolee shall conform to the provisions of section 3321. Entries on these forms shall not be a substitute for detailed documentation required elsewhere in the central file.

(b) A CDC Form 812, and when applicable a CDC Form 812-C, shall be completed for each newly committed or returned inmate/parolee.

(1) The CDC Forms 812 and 812-C shall be updated as any critical information becomes known and is documented in the inmate/parolee's central file. The forms shall also be reviewed and updated at the time of any change in the inmate/parolee's status or placement.

(2) Any inmate/parolee who claims enemies shall provide sufficient information to positively identify the claimed enemy. Any inmate/parolee identified as an enemy shall be interviewed unless such interview would jeopardize an investigation or endanger any person. The results of the interview or investigation which supports, verifies or disproves the information shall be documented on a CDC Form 128-B, General Chrono.

(3) Notations on the CDC Forms 812 and 812-C, or absence thereof, shall not be the sole basis for a staff decision or action which may affect the safety of any person.

(c) Gang involvement allegations shall be investigated by a gang coordinator/investigator or their designee.

(1) CDC Form 812-A or B shall be completed if an inmate/parolee has been verified as a currently active member/associate, inactive member/associate or dropout of a gang (prison gang or disruptive group) as defined in section 3000. Current activity is defined as any documented gang activity within the past six (6) years consistent with section 3341.5(c)(5).

(2) Information entered onto the CDC Form 812-A or B shall be reviewed and verified by a gang investigator to ensure that the identification of an inmate/parolee as a currently active gang member or associate is supported by at least three independent source items in the inmate/parolee's central file. The independent source items must contain factual information or, if from a confidential source, meet the test of reliability established in section 3321. The verification of an inmate/parolee identified as a gang dropout shall require a formal debriefing conducted or supervised by a gang investigator.

(3) A member is an inmate/parolee who has been accepted into membership by a gang. This identification requires at least three (3) independent source items of documentation indicative of actual membership. Validation of an inmate/parolee as a member of a prison gang shall require that at least one (1) source item be a direct link to a current or former validated member or associate of the gang.

(4) An associate is an inmate/parolee who is involved periodically or regularly with members or associates of a gang. This identification requires at least three (3) independent source items of documentation indicative of association with validated gang members or associates. Validation of an inmate/parolee as an associate of a prison gang shall require that at least one (1) source item be a direct link to a current or former validated member or associate of the gang.

(5) A dropout is an inmate/parolee who was either a gang member or associate and has discontinued gang affiliation. This identification requires the inmate/parolee to successfully complete the debriefing process.

(6) The verification of an inmate/parolee's gang identification shall be validated or rejected by the chief, office of correctional safety (OCS), or a designee.

(A) Prior to submission of a validation package to the OCS, or during the inactive status review process, the subject of the investigation shall be interviewed by the Institution Gang Investigator, or designee, and given an opportunity to be heard in regard to the source items used in the validation or inactive status review.

(B) Inmates shall be given written notice at least 24 hours in advance of the interview. The interview may be held earlier if the inmate waives, in writing, the 24-hour preparation period.

(C) All source items referenced in the validation or inactive status review shall be disclosed to the inmate at the time of notification. The inmate shall be given copies of all nonconfidential documents unless otherwise requested in writing by the inmate. Confidential information used in the validation or inactive status review shall be disclosed to the inmate via a CDC Form 1030 (Rev. 12/86), Confidential Information Disclosure Form.

(D) The interview shall be documented and include a record of the inmate's opinion on each of the source items used in the validation. Staff shall record this information and provide a written record to the inmate within fourteen (14) calendar days and prior to submission of the validation package to OCS.

(E) The documented interview shall be submitted with the validation package to the OCS for consideration to approve or reject the validation. The documented interview shall be submitted with the inactive status review to the OCS for consideration of the inmate's continued current active or inactive status.

(F) The inmate's mental health status and/or need for staff assistance shall be evaluated prior to interview. Staff assistance shall be assigned per guidelines set forth in section 3318.

(G) The validation and/or rejection of evidence relied upon shall be documented on a CDC Form 128-B2 (Rev. 5/95), Gang Validation/Rejection Review, and forwarded to the facility or parole region of origin for placement in the inmate/parolee's

central file. Upon receipt of the CDC Form 128-B2, the Classification and Parole Representative or Parole Administrator I, or their designee, shall clearly note in some permanent manner upon the face of every document whether or not the item met validation requirements.

(7) The CDC Forms 812-A and 812-B shall be reviewed by a classification committee at each annual hearing and upon any review for transfer consideration. This shall be documented on a CDC Form 128-G (Rev. 10/89), Classification Chrono. Questionable gang identifications, notations, or new information shall be referred to a gang investigator for investigation.

(8) The determination of a gang identification shall reference each independent source item in the inmate/parolee's central file. The sources shall be based on the following criteria:

(A) Self admission. Staff shall document information about the inmate/parolee's self-admission and specific involvement with the gang. Staff shall document and disclose this information to the inmate/parolee in a written form that would not jeopardize the safety of any person or the security of the institution.

(B) Tattoos and symbols. Body markings, hand signs, distinctive clothing, graffiti, etc., which have been identified by gang investigators as begin used by and distinctive to specific gangs. Staff shall describe the tattoo or symbol and articulate why it is believed that the tattoo is used by and distinctive of gang association or membership. Staff shall document and disclose this information to the inmate/parolee in a written form that would not jeopardize the safety of any person or the security of the institution.

(C) Written material. Any material or documents evidencing gang activity such as the membership or enemy lists, constitutions, organizational structures, codes, training material, etc., of specific gangs. Staff shall articulate why, based on either the explicit or coded content, the written material is reliable evidence of association or membership with the gang. Staff shall document and disclose this information to the inmate/parolee in a written form that would not jeopardize the safety of any person or the security of the institution.

(D) Photographs. Individual or group photographs with gang connotations such as those which include insignia, symbols, or validated gang affiliates. The date of a photograph shall be reasonably ascertained prior to any photo being relied upon for inclusion as a source item. No photograph shall be considered for validation purposes that is estimated to be older than six (6) years. Any photograph being utilized as a source item that depicts gang members shall require that at least one of the individuals be previously validated by the department, or validated by the department within six (6) months of the photograph's established or estimated date or origin. Staff shall document and disclose this information to the inmate/parolee in a written form that would not jeopardize the safety of any person or the security of the institution.

(E) Staff information. Documentation of staff's visual or audible observations which reasonably indicate gang activity. Staff shall articulate the basis for determining the content or conduct at issue is gang related. Staff shall document and disclose this information to the inmate/parolee in a written form that would not jeopardize the safety of any person or the security of the institution.

(F) Other agencies. Information evidencing gang affiliation provided by other agencies. Verbal information from another agency shall be documented by the staff person who receives such information, citing the course and validity of the information. Staff shall document and disclose this information to the inmate/parolee in a written form that would not jeopardize the safety of any person or the security of the institution.

(G) Association. Information related to the inmate/parolee's association with validated gang affiliates. Information including addresses, names, identities and reasons why such information is indicative of association with a prison gang or disruptive group. Staff shall document and disclose this information to the inmate/parolee in a written form that would not jeopardize the safety of any person or the security of the institution.

(H) Informants. Documentation of information evidencing gang affiliation from an informant shall indicate the date of the information, whether the information is confidential or nonconfidential, and an evaluation of the informant's reliability. Confidential material shall also meet the requirements established in section 3321. Staff shall articulate how the information specifically relates to the inmate's involvement with the gang as a member or associate. The information may be used as a source of validation if the informant provides specific knowledge of how he/she knew the inmate to be involved with the gang as a member or associate. Multiple confidential sources providing information regarding a single gang related incident or behavior shall constitute one (1) source item. Exclusive reliance on hearsay information provided by informants will not be used for validation purposes. Staff shall document and disclose this information to the inmate/parolee in a written form that would not jeopardize the safety of any person or the security of the institution.

(I) Offenses. Where the circumstances of an offense evidence gang affiliation such as where the offense is between rival gangs, the victim is a verified gang affiliate, or the inmate/parolee's crime partner is a verified gang affiliate. Staff shall articulate why an offense is gang related. Multiple sources of information relative to a single incident or offense will be considered one (1) source of validation. Staff shall document and disclose this information to the inmate/parolee in a written form that would not jeopardize the safety of any person or the security of the institution.

(J) Legal documents. Probation officer's report or court transcripts evidencing gang activity. Staff shall assure the document containing this information is disclosed to the inmate/parolee in a written form that would not jeopardize the safety of any person or the security of the institution.

(K) Visitors. Visits from persons who are documented as gang "runners", or community affiliates, or members of an organization which associates with a gang. Staff shall articulate the basis for determining that the relationship between the visitor and inmate is gang related in nature or that the visitor and inmate engaged in a gang related discussion or gang conduct. Staff shall articulate the basis for identifying the visitor as associated with the gang. Staff shall document and disclose this information to the inmate/parolee in a written form that would not jeopardize the safety of any person or the security of the institution.

(L) Communications. Documentation of telephone conversations, conversations between inmates, mail, notes, greeting cards, or other communication, including coded messages evidencing gang activity. Staff shall articulate why, based on either the explicit or coded content, the communication is reliable evidence of association or membership with the gang. Staff shall document and disclose this information to the inmate/parolee in a written form that would not jeopardize the safety of any person or the security of the institution.

(M) Debriefing reports. Documentation resulting from the debriefing required by (c)(2), above. Only information referencing specific gang related acts or conduct shall be considered as a source item. Multiple sources of information relative to a single gang related offense or activity shall be considered a single source of validation. Staff shall document and disclose this information to the inmate/parolee in a written form that would not jeopardize the safety of any person or the security of the institution.

(d) An inmate housed in the general populations as a gang member or associate may be considered for review for inactive status when the inmate has not been identified as having been involved in gang activity for a minimum of two (2) years.

Verification of an inmate's inactive status shall be approved or rejected by the OCS, chief or a designee. The approval or rejection shall be forwarded for placement in the inmate's central file. The Institution Classification Committee shall review and consider this determination at the next hearing and upon review for transfer consideration.

(e) An inmate housed in a security housing unit (SHU) as a gang member or associate may be considered for review of inactive status by the Department Review Board when the inmate has not been identified as having been involved in gang activity for a minimum of six (6) years. Verification of an inmate's inactive status shall be approved or rejected by the chief, OCS, or a designee. The approval or rejection shall be forwarded for placement in the inmate's central file.

(f) A gang member or associate, who is categorized as inactive or validated as a dropout of a prison gang and released from a SHU, may be removed from the general population or any other placement based upon one reliable source item identifying the inmate as an active gang member or associate of the prison gang with which the inmate was previously validated. The source item must identify the inmate as a gang member or associate based on information developed after his or her release from SHU. The source item need not be confidential, but must meet the test of reliability established at section 3321.

(g) The procedures relating to the initial validation or rejection of gang members or associates as described in this section shall be followed when reviewing the present status of an inactive gang member or associate. Verification of an inmate's active status shall be approved or rejected by the chief, OCS, or a designee. This determination shall be forwarded for placement in the inmate's central file.

(h) A classification committee is authorized to return an inmate to a SHU based upon the restoration of the inmate's gang status and a determination that the inmate's present placement endangers institutional security or presents a threat to the safety of others. As provided at section 3341.5, placement in a SHU requires approval by a classification staff representative.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 5054 and 5068, Penal Code; *Sandin v. Connor* (1995) 515 U.S. 472; *Madrid v. Gomez* (N.D. Cal. 1995) 889 F.Supp. 1146; *Toussaint v. McCarthy* (9th Cir. 1990) 926 F.2d 800; *Toussaint v. Yockey* (9th Cir. 1984) 722 F.2d 1490; and *Castillo v. Alameida, et al.* (N.D. Cal., No. C94-2847).

HISTORY:
1. New section filed 8-7-87 as an emergency; operative 8-7-87 (Register 87, No. 34). A Certificate of Compliance must be transmitted to OAL within 120 days or emergency language will be repealed on 12-7-87.
2. Certificate of Compliance as to 8-7-87 order transmitted to OAL 12-4-87; disapproved by OAL (Register 88, No. 16).
3. New section filed 1-4-88 as an emergency; operative 1-4-88 (Register 88, No. 16). A Certificate of Compliance must be transmitted to OAL within 120 days or emergency language will be repealed on 5-3-88.
4. Certificate of Compliance as to 1-4-88 order transmitted to OAL 5-3-88; disapproved by OAL (Register 88, No. 24).
5. New section filed 6-2-88 as an emergency; operative 6-2-88 (Register 88, No. 24). A Certificate of Compliance must be transmitted to OAL within 120 days or emergency language will be repealed on 9-30-88.
6. Certificate of Compliance transmitted to OAL 9-26-88 and filed 10-26-88 (Register 88, No. 50).
7. Amendment of section heading and text and repealer and new forms filed 6-17-94; operative 7-18-94 (Register 94, No. 24).
8. Amendment of subsections (c)(2)–(3) filed 6-1-95 as an emergency; operative 6-1-95 (Register 95, No. 22). A Certificate of Compliance must be transmitted to OAL by 11-8-95 or emergency language will be repealed by operation of law on the following day.
9. Certificate of Compliance as to 6-1-95 order including amendment of subsection (c)(3) transmitted to OAL 11-3-95 and filed 12-18-95 (Register 95, No. 51).
10. Editorial correction of History 8 (Register 97, No. 12).
11. Amendment of subsections (a) and (c)(2), new subsections (c)(3)–(c)(5), subsection renumbering, amendment of newly designated subsections (c)(6) and (c)(8), new subsections (d)–(f)(3) and amendment of Note filed 8-30-99 as an emergency; operative 8-30-99 (Register 99, No. 36). Pursuant to Penal Code section 5058(e), a Certificate of Compliance must be transmitted to OAL by 2-8-2000 or emergency language will be repealed by operation of law on the following day.
12. Certificate of Compliance as to 8-30-99 order transmitted to OAL 2-7-2000 and filed 3-21-2000 (Register 2000, No. 12).
13. Change without regulatory effect amending subsection (a) and repealing and adopting new forms 812 and 812-C filed 10-23-2001 pursuant to section 100, title 1, California Code of Regulations (Register 2001, No. 43).
14. Amendment of section and Note filed 5-25-2006; operative 5-25-2006 pursuant to Government Code section 11343.4 (Register 2006, No. 21).

### 3378.1. Debriefing Process.

(a) Debriefing is the process by which a gang coordinator/investigator determines whether an inmate/parolee (subject) has dropped out of a gang. A subject shall be debriefed only upon his or her request, although staff may ask a subject if he or she wants to debrief. Debriefing shall entail a two-step process that includes an interview phase and an observation phase.

(b) The purpose of debriefing interview is to provide staff with information about the gang's structure, activities and affiliates. A debriefing is not for the purpose of acquiring incriminating evidence against the subject. The object of a debriefing is to learn enough about the subject and the subject's current gang to: (1) allow staff to reasonably conclude that the subject has dropped out of the gang, and (2) allow staff to reclassify the subject based upon the inmate's needs in conjunction with the security of the institution, as well as, the safety and security of staff and other inmates.

(c) SHU inmates undergoing the debriefing process shall be subject to a period of observation in a segregated housing setting with other inmates who are also undergoing the debriefing process. The period of observation shall be no greater than 12 months.

(d) Upon completion of the debriefing process, the inmate shall be housed in a facility commensurate with the inmate's safety needs. In the absence of safety needs, the inmate shall be housed in a facility consistent with his or her classification score.

NOTE: Authority cited: section 5058, Penal Code. Reference: Sections 5054 and 5068, Penal Code; *Sandin v. Connor* (1995) 515 U.S. 472; *Madrid v. Gomez* (N.D. Cal. 1995) 889 F.Supp. 1146; and *Toussaint v. McCarthy* (9th Cir. 1990) 926 F.2d 800.

HISTORY:
1. New section filed 8-30-99 as an emergency; operative 8-30-99 (Register 99, No. 36). Pursuant to Penal Code section 5058(e), a Certificate of Compliance must be transmitted to OAL by 2-8-2000 or emergency language will be repealed by operation of law on the following day.
2. Certificate of Compliance as to 8-30-99 order transmitted to OAL 2-7-2000 and filed 3-21-2000 (Register 2000, No. 12).

### 3378.2. Advisement of Rights During Debriefing.

A waiver of the right against self-incrimination is not a precondition of an inmate/parolee (subject) undergoing a debriefing since the information is provided for administrative purposes. A subject shall not be required to complete the debriefing process and the subject is free to terminate the debriefing at any time. If, during a debriefing, a subject makes a statement that tends to incriminate the subject in a crime, the gang coordinator/investigator may stop any discussion about the matter and continue on with another topic. Prior to questioning the subject about the incriminating matter, the subject must waive the right against self-incrimination. The decision by the subject to exercise the right against self-incrimination shall not affect the determination of whether the subject successfully participated in the debriefing.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 5054 and 5068, Penal Code; *Sandin v. Connor* (1995) 515 U.S. 472; *Madrid v. Gomez* (N.D. Cal. 1995) 889 F.Supp. 1146; and *Toussaint v. McCarthy* (9th Cir. 1990) 926 F.2d 800.

HISTORY:
1. New section filed 8-30-99 as an emergency; operative 8-30-99 (Register 99, No. 36). Pursuant to Penal Code section 5058(e), a Certificate of Compliance must be transmitted to OAL by 2-8-2000 or emergency language will be repealed by operation of law on the following day.
2. Certificate of Compliance as to 8-30-99 order transmitted to OAL 2-7-2000 and filed 3-21-2000 (Register 2000, No. 12).

### 3379. Inmate Transfers.

(a) Transfer requirements.

(1) Any inmate transfer from a facility other than a reception center shall require a classification committee action and endorsement by a classification staff representative (CSR). In the cases of civil addicts transferring to community correctional facilities and illegal aliens transferring for the purpose of deportation proceedings, the Classification and Parole Representative (C&PR) may endorse such cases following the classification committee action.

(2) An inmate for whom a recall of commitment report under provisions of Penal Code Section 1170(d) is required, shall not be transferred, unless for emergency medical treatment, until the report is completed. Reception center process cases shall be excluded from this provision.

(3) Except in emergencies or for special housing, inmates shall not be transferred within 90 days of their release date, or within 90 days of a Board of Prison Terms (BPT) appearance. If a case requires transfer within the 90-day period, the appropriate BPT report shall be completed by the sending institution prior to the transfer.

(4) A warden or superintendent may temporarily suspend a scheduled inmate transfer. Such suspension shall constitute a classification action and be recorded on a chrono as provided by section 3375(a)(2) of these regulations, including the reason for the action and a recommendation for an alternative program assignment.

(5) If an inmate has not transferred within 30 days of CSR endorsement, the sending institution shall report that fact to the Chief, Classification Services who shall either direct the institution to proceed with the transfer or present the case to the next CSR for alternative action.

(6) Transfer to another state. Transfer of a California prison inmate to an out-of-state prison facility shall not occur prior to the inmate signing a CDC Form 294, Interstate Compact Placement Agreement, witnessed by the institution head or delegate.

(7) Transfer to a federal prison. Transfer of a California prison inmate to a federal prison facility shall not occur until:

(A) The inmate has been informed of the right to private consultation with an attorney their choice concerning rights and obligations pursuant to Penal Code section 2911.

(B) The warden or superintendent or delegate has witnessed the inmate's signing of a Federal Prison System Placement Agreement consent form and an acknowledgement of having been informed regarding rights and obligations.

(8) An inmate may, prior to scheduled transfer, revoke their consent to transfer to out-of-state or federal prison.

(b) Placement in level. An inmate endorsed for any level placement and transferred to an institution with several levels shall be placed in the endorsed level facility within 60 days of arrival or shall be referred to the next scheduled CSR for alternative action. A warden or superintendent may temporarily place an inmate in a facility of an institution for which the inmate has not otherwise been endorsed. Such placement shall not exceed 30 days without CSR review and approval. Reasons for such placement may include protection or medical needs of the inmate, an incomplete investigation, disciplinary action, court proceedings, or a pending transfer.

(c) Disciplinary and security factors. Prior to transfer of an inmate, the sending institution shall resolve any matters related to incomplete disciplinary punishment or establishment or establishment of a determinate period to be served in a SHU at the receiving facility. Disciplinary detention shall be completed, suspended, or commuted to time served. If a transfer related to misbehavior does not require SHU placement but the inmate is transferred to an institution of higher level than indicated by the inmate's classification score, the endorsing CSR shall establish a date for follow-up review by the receiving institution.

(d) Medical and psychiatric transfer.