1  KAMALA D. HARRIS, State Bar No. 146672
   Attorney General of California
2  THOMAS S. PATTERSON, State Bar No. 202890
   Supervising Deputy Attorney General
3  JAIME M. GANSON, State Bar No. 230206
   Deputy Attorney General
4   1300 I Street, Suite 125
    P.O. Box 944255
5   Sacramento, CA 94244-2550
    Telephone: (916) 324-6421
6   Fax: (916) 324-5205
    E-mail: Jaime.Ganson@doj.ca.gov
7  *Attorneys for Defendants Beard, Fisher, Kisser,*
   *Parilla, Parker, Pool, Stewart, Ventimiglia, Walker,*
8  *and Williams*

9                IN THE UNITED STATES DISTRICT COURT

10            FOR THE EASTERN DISTRICT OF CALIFORNIA

11                       SACRAMENTO DIVISION

12

13  **RANDY REAL,**                          2:09-cv-3273 GEB KJN

14                            Plaintiff,      **DEFENDANTS' REQUEST FOR**
                                              **JUDICIAL NOTICE IN SUPPORT OF**
15          **v.**                            **MOTION TO DISMISS**

16

17  **JAMES WALKER, Warden, et al.,**
                                              Judge:      Honorable Kendall J. Newman
18                            Defendants.     Action Filed:  3/22/2010

19

20         **PLEASE TAKE NOTICE** that, under Federal Rule of Evidence 201, Defendant

21  correctional officials Beard, Fisher, Kisser, Parilla, Parker, Pool, Stewart, Ventimiglia, Walker,

22  and Williams request that the Court take judicial notice of the documents attached to Plaintiff's

23  First Amended Complaint, and the documents attached to this request when considering the

24  concurrently filed motion to dismiss.

25  / / /

26  / / /

27  / / /

28
                                        1
                                                  Defs.' Req. Jud. Not. Supp. Mot. Dismiss (2:09-cv-3273 KJN P)

## REQUEST FOR JUDICIAL NOTICE

Federal Rule of Evidence 201 authorizes courts to take judicial notice of facts that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *United States v. Wilson,* 631 F.2d 118, 119-20 (9th Cir. 1980) (holding that facts that may be judicially noticed include a court's own records); *Parrino v. FHP, Inc.,* 146 F.3d 699, 706 (9th Cir. 1998) (judicially noticing documents not attached to complaint); *Branch v. Tunnell,* 14 F.3d 449, 453-54 (9th Cir. 1994) (judicially noticing documents mentioned in complaint, when ruling on a motion to dismiss); *MGIC Indem. Corp. v. Weisman,* 803 F.2d 500, 504 (9th Cir. 1986) (allowing "judicial notice of matters of public record outside the pleadings."). This includes documents that are integral to a plaintiff's claim but not explicitly incorporated in the complaint. *Parrino,* 146 F.3d at 706. Moreover, a court may take judicial notice of matters of public record and papers filed with the court. *Mack v. S. Bay Beer Dist.,* 798 F.2d 1279, 1282 (9th Cir. 1986) (taking judicial notice of administrative records).

The following CDCR documents and policies are capable of accurate and ready determination by reference to sources whose accuracy Real cannot reasonably question:  they are CDCR publications and policies made available by the State of California:

**Ex. A:**   Step Down Policy, *available at* http://www.cdcr.ca.gov/rehabilitation/docs/Factsheets/OS-IP-Factsheet-StepDown-Feb2014.pdf (last accessed August 27, 2014);

**Ex. B:**   Security Threat Group Memorandum (August 9, 2013), M.D. Stainer, Director of CDCR's adult institutions, *available at* http://www.cdcr.ca.gov/STG/docs/130809-STG-Update-Info-Sharing-to-Ongoing-STG-Case-by-Case-Reviews-in-SHU.pdf (last accessed August 27, 2014);

**Ex. C:**   Security Threat Group fact sheet, *available at* http://www.cdcr.ca.gov/STG/docs/Fact-Sheet-STG-reforms.pdf (last accessed August 27, 2014);

**Ex. D:**  Secretary Dr. Jeffrey Beard, *available at* http://www.cdcr.ca.gov/About_CDCR/Secretary.html (last accessed August 27, 2014);

///

2

1    **Ex. E:**   Notice of new Security Threat Group Regulations, *available at*
2             http://www.cdcr.ca.gov/Regulations/Adult_Operations/docs/NCDR/2014
              NCR/14-02/Notice_of_Change_to_Regulations_14-02.pdf (last accessed
3             August 27, 2014);

4    **Ex. F:**   Text of Proposed Regulations
             http://www.cdcr.ca.gov/Regulations/Adult_Operations/docs/NCDR/2014
5             NCR/14-02/Text_of_Proposed_Regulations.pdf (last accessed August
              27, 2014).
6

7         Real also can raise no genuine challenge to this court considering the documents referenced

8    in his Second Amended Complaint that were initially attached to the First Amended Complaint.

9    They are capable of accurate and ready determination by reference to sources whose accuracy

10   Real cannot reasonably question because he filed them with the court himself.  Fed. R. Civ. P.

11   10(c), 11.  Judicial notice of such facts is mandatory when requested by a party who has supplied

12   the information to the court.  Fed. R. Evid. 201(d).  Defendants identify the specific document in

13   their motion to dismiss and the documents have been supplied to the court, with the filing of the

14   First Amended Complaint (ECF No. 14).

15                                    **CONCLUSION**

16        This Court should take judicial notice of the documents attached to Real's First Amended

17   Complaint and the documents attached to this request.

18   Dated:  August 29, 2014                          Respectfully submitted,

19                                                    KAMALA D. HARRIS
                                                      Attorney General of California
20                                                    THOMAS S. PATTERSON
                                                      Supervising Deputy Attorney General
21

22                                                    */s/ Jaime M. Ganson*

23                                                    JAIME M. GANSON
                                                      Deputy Attorney General
24                                                    *Defendants Beard, Fisher, Kisser, Parilla,*
                                                      *Parker, K.M. Pool, Stewart, Ventimiglia,*
25   SA2011300866                                     *Walker, and Williams*
     11457632.doc
26

27

28

                                              3

# EXHIBIT A



Division of Rehabilitative Programs
**Office of Offender Services -
In-Prison Programs**

For Informational Purposes
# fact sheet

**UPDATED:** February 2014                    **CONTACT:** (916) 327-3352

## Program Name: Step Down Program (SDP)

**Description:** The SDP is an incentive-based, multi-step process that affords offenders placed in a Security Housing Unit (SHU) due to validations and/or documented Security Threat Group (STG) behaviors, the opportunity to earn enhanced privileges and to demonstrate the ability to refrain from STG behavior, with the ultimate goal of release from the SHU.

Those who participate in the Step Down Program may be eligible for the following programming:
- Interactive journaling
- Group facilitation
- Voluntary Education Program (VEP)
- Elective programming
- Pro-social videos

**Location(s):** California Correctional Institution (CCI), California Institution for Women (CIW), California State Prison, Corcoran (COR), Pelican Bay State Prison (PBSP), and California State Prison, Sacramento (SAC).

**Placement:** Inmates currently serving a SHU term due to their STG affiliation shall be afforded a Departmental Review Board (DRB) hearing to determine the need for continued retention in SHU and placement in the SDP. Newly validated STG affiliates will be placed into the SDP based upon level of affiliation and demonstrated involvement in STG activities.

*CDCR's Division of Rehabilitative Programs (DRP) manages adult inmate and parolee rehabilitative programs. Its top priority is to provide rehabilitative programming and life skills to offenders in an effort to reduce their likelihood of reoffending after their release from prison. DRP is comprised of the Office of Offender Services (OS), the Office of Correctional Education (OCE), and the Office of Program Accountability and Support (OPAS).*

#####

# EXHIBIT B

State of California                                    Department of Corrections and Rehabilitation

# Memorandum

Date:    August 9, 2013

To:    Associate Directors, Division of Adult Institutions
Wardens
All Concerned

Subject:    **SECURITY THREAT GROUP:  UPDATE AND INFORMATION SHARING RELATED
TO THE ONGOING STG CASE BY CASE REVIEWS IN SHU**

On October 18, 2012, the California Department of Corrections and Rehabilitation
(CDCR) received approval from the Office of Administrative Law (OAL) to implement
the Security Threat Group (STG) Identification, Prevention, and Management Pilot
Program, which is in process to become a long term policy revision to the existing
CDCR Prison Gang Management Policy.  The Policy has been implemented initially
as a "Pilot Program" for a period of 24 months, as provided for within the California
Penal Code Section 5058.1.

The STG Pilot Program was implemented subsequent to OAL authorization and
distribution of an STG Instructional Memorandum, dated October 11, 2012.  The
Instructional Memorandum primarily addresses the new policy components affecting
inmates newly identified and/or validated as STG Affiliates subsequent to the
implementation date.  The CDCR also recognized the need for the policy to consider
and assess previously identified STG Affiliates who were validated prior to the new
policy implementation.  Therefore, the CDCR established a method to incorporate a
Case by Case (CBC) review process for every STG Affiliate validated through
March 1, 2013.  Those Affiliates validated after this date would automatically be
covered under the provisions of the STG Policy and Procedures.

Due to the magnitude of changes associated with the Pilot Program, the CDCR has
chosen to implement the program utilizing a phased approach.  Phase One was
initiated on October 25, 2012, utilizing the Departmental Review Board (DRB), which
began the CBC review process for current validated associates housed in the Security
Housing Units (SHU).  The DRB has conducted case reviews of 249 validated
inmates.  From these case reviews, 166 (66%) inmates have been approved and/or
classified for release to a general population facility into Step 5 of the Step Down
Program (SDP). Of these 166 inmates, 31 inmates were retained in SHU due to safety
concerns or their participation in the debriefing program, and 101 inmates have
already been processed and released to the general population.  Thus far, the DRB
has placed 83 inmates (34%) in one of Steps 1-4 of the SDP.  Additionally, the Special
Project Team has completed 150 reviews of validated inmates housed within
Administrative Segregation Units (ASU), who are endorsed for transfer to SHU. These
reviews have resulted in a total of 89 inmates being released to general population, 36
inmates have been placed into Steps 1-4 of the SDP and 25 have been retained in
ASU based upon other disciplinary charges, safety concerns, or their participation in
the debriefing program.

Associate Directors, Division of Adult Institutions
Wardens
All Concerned
Page 2

As a result of continued interactions with notable stakeholders and STG Affiliates during the DRB process, the department realizes that although individuals have received and reviewed the STG Policy and Procedure via the Instructional Memorandum, full understanding and clarity of the CBC process is not fully attained prior to individual participation and interaction with the DRB. Based upon this feedback and stakeholder interactions, recommendations were made that it would be beneficial to share additional clarification and insights pertaining to the CBC review process via an Informational Memorandum.

While newly identified STG Affiliates will be assessed and managed within the guidelines of the revised STG Policy and Procedure, preexisting STG Affiliates will be provided a prioritized CBC review of their current validation and SHU status, integrating the new criteria components into the DRB Hearing process. The CBC review process will be afforded to all existing validated STG Members and Associates, and is an opportunity for potential release to the general population, (Step 5 of the SDP), or further retention in the SHU within one of the four programming steps of the SDP.

One of the key components to the new STG Policy is that validated STG Associates will no longer be automatically placed into a SDP/SHU based only upon their validation as an STG Associate. The new policy incorporates a criteria requirement that in addition to formal validation, an Associate must also demonstrate STG disciplinary behavior as part of their initial validation, or subsequent to their initial validation, to be considered for placement into the SDP/SHU. Because STG Associates will no longer be placed automatically into SDP/SHU based solely upon validation as an Associate, the DRB began the CBC review process in October 2012 with already validated Associates based on their original validation date to align their classification and housing assignment more closely with the new STG policy.

The CDCR has committed to phase in the implementation of the STG Policy while concurrently conducting CBC reviews of Affiliates. Additionally, to ensure continued timely review of inmate validations while the CBC process is ongoing, the CDCR Division of Adult Institutions (DAI) has chosen to continue to honor upcoming dates for inactive reviews [pursuant to CCR Sections 3341.5(c)(C)(5) and 3378(e)] for all validated Members and Associates under the preexisting CCR Title 15 Policy. As a means of more closely aligning the ongoing inactive review process with the STG Policy, the CDCR/DAI is also modifying the review period for the inactive review. Although inmates continue to be scheduled for their six-year inactive review, only conduct that occurred during the preceding four years will be considered and evaluated consistent with the new STG policy. At the conclusion of the evaluation, the inmate will be scheduled for his CBC review with the DRB. Once a validated Affiliate has participated in their CBC review, the Affiliate's future classification and housing in SHU will be controlled via ICC review at the institution level.

Associate Directors, Division of Adult Institutions
Wardens
All Concerned
Page 3

Although the CDCR/DAI has committed to focus CBC reviews on STG Associates to date, validated STG Members will now also be included in the CBC reviews. These reviews will be completed in a similar sequential order, based upon the validated Members' original Affiliate validation date.

The CBC review process is organized and managed by the DRB, which is chaired by the Director or Deputy Director, DAI. Other members of the review board include the Special Agent in Charge of the Office of Correctional Safety and the Chief of Classification Services, DAI. Similar to the regulations related to the Institutional Classification Committee, STG Affiliates will receive a notice of the committee at least 72 hours in advance of the scheduled CBC review. Scheduled Affiliates will also be provided a copy of a CDCR Form 128-B STG1, Notice of Conditions of Inactive-Monitored Status for review and signature prior to their appearance at the DRB. This form is similar to the current form used for inactive reviews, but it also incorporates that future consideration for return placement into the SDP/SHU will be based upon disciplinary adjudicated behavior with an STG nexus.

The Chairperson of the DRB provides each inmate with an overview of the new policy, ensures that the inmate has received a copy of the Instructional Memorandum, and encourages the inmate to participate in the review during that DRB hearing. During the DRB Hearing, an overview of the inmate's disciplinary history, original validation, subsequent results of Inactive reviews (if any) and analysis of the confidential information that is contained within the Central File is presented by the caseworker. The DRB reviews include an in-depth analysis of applicable case factors, and approximately 1-2 hours is required to conduct each case review.

Because the prior CDCR Gang/STG Policy did not require formal disciplinary action to occur for an STG Affiliate's placement/retention in SHU, the Chairperson and other committee members personally review and analyze the documents within the Central File for described behavior with an identified nexus to the STG that has occurred within four years of the current review. During the hearing, the DRB will determine if the inmate committed STG behavior within the preceding four years. For the purpose of these reviews, the DRB is utilizing the STG Disciplinary Matrix as noted on pages 21-23 of the Instructional Memorandum to identify applicable behavior and appropriate level of offense as either Administrative or Serious.

Some additional highlights of the DRB review process include:

- The STG/CBC review process for validated Affiliates began on October 25, 2012, and DAI intends to continue this process until all inmates validated prior to March 1, 2013 have received a CBC review. The review process has not been incorporated into the Instructional Memorandum/Pilot Program, as it is a transitional process only for those inmates previously validated and housed within a SHU/ASU setting. Upon completion of all impacted Affiliates, the CBC will be discontinued.

Associate Directors, Division of Adult Institutions
Wardens
All Concerned
Page 4

- The DRB utilizes the STG Disciplinary Matrix as described in Section 600.1 of the Instructional Memorandum (Pages 21-23) as a guideline to review an Affiliate's individual behavior that occurred during the past four years. This review might include information from other law enforcement agencies, CDCR Form 837, Crime Incident Reports, CDCR Form 115, Rules Violation Reports, CDCR Form 128-B, General Chronos or CDCR Form 128-A, Custodial Counseling Chronos.

- Documented Confidential Source information, inclusive of Debrief Reports, will be considered by the DRB, pursuant to existing applicable rules for corroboration and/or credibility as established within the CCR, Title 15, Section 3321, Confidential Materials. **Unsubstantiated confidential source information from a single source will not establish a foundation for confirming the existence of STG related behavior.** Identified information/behavior within confidential material will be considered if the behavior occurred within the preceding four years of the scheduled DRB date. At times this information includes a list of names or other personal identification being found in another offender's possession that has some nexus to STG activity or behavior. During the DRB reviews, the offender whose name is simply on the list (versus the individual being in actual possession of the list) will not be held accountable for the contents.

- Any STG behavior that has occurred in the past 4 years and is being considered by the DRB for retaining the inmate within the SHU/SDP is shared with the inmate to allow them an opportunity to provide clarification or to dispute the information.

- If documented STG behavior exists and is determined credible by the DRB, the board will determine the appropriate SDP Step placement in consideration of the point in time the behavior occurred.

  | | |
  |---|---|
  | 1-12 Months prior to the DRB Hearing: | Step 1 of the SDP |
  | 13-24 Months prior to the DRB Hearing | Step 2 of the SDP |
  | 25-36 Months prior to the DRB Hearing | Step 3 of the SDP |
  | 37-48 Months prior to the DRB Hearing | Step 4 of the SDP |
  | 49 Months and beyond DRB Hearing Date (General Population) | Step 5 of the SDP |

- If during the DRB review of an inmate's case factors, it is determined that the STG Affiliate's housing in SHU no longer meets the STG Pilot Program placement criteria and/or has not demonstrated STG behavior during the preceding four years, the inmate's credit earning status will be changed the date of the hearing from D2D to D1D Credit Earning.

- The DRB's goal has been to focus its reviews on inmates that have been validated as an STG Affiliate the longest. Although DRB has been rotating

Associate Directors, Division of Adult Institutions
Wardens
All Concerned
Page 5

     CBC reviews evenly within the four male SHU facilities to provide equitable interaction with the DRB, the DRB will be moving toward adjusting its scheduled reviews to focus further at those SHU facilities that house a greater number of the longest-validated Affiliates.

- An STG Affiliate that is recommended for release from the SHU by the DRB will normally be released to a General Population (GP) Level IV 180 design institution for a period of one year (Step 5 of SDP). The inmate is identified as being on Inactive Monitored status. As the Affiliate has not previously participated in the entire SDP, the Affiliate is managed in Step 5 in a similar manner as preexisting policy, and is not required to participate in the mandatory urinalysis program. Affiliates participating in Step 5 of the SDP are eligible for transfer to an alternate institution more consistent with their placement score, following 12 months of STG disciplinary free behavior.

- An STG-I Affiliate released by the DRB to Step 5 on Inactive Monitored status will be allowed to remain in the GP, unless the inmate demonstrates additional STG behavior and is issued a **Rules Violation Report(s)** and found guilty of one Serious Rules Violation Report with an STG nexus; or two Administrative Rules Violation Reports with a STG nexus within a 12 month time frame; or as noted in Section 600.3 of the Instructional Memorandum, if an Affiliate acquires 10 additional source points of STG behavior, as identified in Section 600.1, occurring outside the jurisdiction of the CDCR/DAI within a four year time frame. If the source points are proven reliable pursuant to CCR Section 3321 and the Affiliate is determined accountable for this behavior, the Affiliate will be processed for placement into the SDP.

As a general reminder, for additional information pertaining to the STG Policy and Procedure related to SHU Case by Case Reviews, please reference the Instructional Memorandum, October 11, 2012, entitled Pilot Program for Security Threat Group Identification, Prevention, and Management Plan; DAI Memorandum, November 1, 2012, entitled Security Threat Group Identification, Prevention, and Management Plan; and DAI Memorandum, January 30, 2013, Security Threat Group Identification, Prevention, and Management Pilot Project-Phase II Implementation.

M. D. STAINER
Director (A)
Division of Adult Institutions

cc:  Martin Hoshino             Suzan Hubbard
     Kelly Harrington          Michael Ruff
     George Giurbino         Simone Renteria
     Katherine Tebrock

# EXHIBIT C



**California Department of**
**Corrections and Rehabilitation**

# fact sheet
★ ★ ★ ☆ ☆

**For informational Purposes**                                        (916) 445-4950
October 2013

## Security Threat Group
## Prevention, Identification and Management Strategy
### *Reforms lessen reliance on long-term SHU housing*

In 2007, the California Department of Corrections and Rehabilitation (CDCR) began revising its gang validation and Security Housing Unit (SHU) confinement policies and procedures. This effort resulted in the "Security Threat Group Prevention, Identification and Management Strategy." CDCR is fully committed to permanently incorporate these revisions into policy.

The security threat group policy also took into account the recommendations and feedback inmates provided during the two hunger strikes in 2011. The security threat group program provides individual accountability of offenders, limited segregation placement criteria for security threat group associates, is behavior-based, incorporates additional elements of due process to the validation system and provides a Step-Down Program as an alternative for inmates to demonstrate their willingness to refrain from criminal gang behavior.

This complex retooling of CDCR's gang management strategy supports CDCR's goals of reducing long-term SHU confinement for those offenders who do not engage in gang behavior.

**Security Threat Groups**

- The new policy replaces the word "gang" with the more nationally accepted term "security threat group." The Security Threat Group (STG) program does not take a "one size fits all approach," but better identifies, assesses and prioritizes security threat groups (prison gangs, street gangs, disruptive groups) based on behavior and on the level of threat the group and its affiliates present to the safety and security of prisons and the public.

- CDCR categorizes criminal gangs into STGs based on a threat assessment conducted by the department's Office of Correctional Safety. STG behavior is defined as documented behavior that promotes, furthers or assists a security threat group.

- An STG-I designation is used for criminal gangs that pose a greater threat. It includes traditional prison gangs and disruptive groups with a history of violence or influence over subservient groups. These STG groups include, but may not be limited to, traditional prison gangs like the Aryan Brotherhood, the Black Guerilla Family, the Mexican Mafia, the Nazi Low Riders, the Northern Structure, and the Nuestra Familia. An STG-I designation may also include a gang with a history and propensity for violence and/or influence over subservient STGs. CDCR will review STG-I designations at least every two years.

- An STG-II designation may be used for traditional disruptive groups and street gangs. These can include the Crips, the Bloods, the 2-5s, the Northern Riders, MS 13, the Norteños, the Sureños, Florencia 13 and white supremacist groups.

**Validation**

- The validation process is a strategy for identifying and documenting criminal gang member, associates and suspects.

- STG associates – the majority of inmates housed in SHUs – are no longer placed in a SHU based solely upon their validation to an STG unless there is a nexus to confirmed gang activity.

- CDCR added an objective point-based component in the offender validation process and enhanced considerations of due process. Each source item is now given a weighted point value between two and seven points, and individual validation must include three independent sources with a cumulative total of 10 points or more.

- Unsubstantiated confidential information from a single source will not establish a foundation for confirming the existence of STG-related behavior.

**Step-Down Program**

- The Step-Down Program enables an inmate serving an indeterminate SHU term to ultimately earn his way back to a general population or sensitive needs yard. The revised policy reduces the six-year inactive review policy for release to a general population to a four-year program. Additionally, inmates demonstrating positive behavior and participation may have their length of participation further reduced to three years.

- The Step-Down Program is an incentive-based, multi-step process for STG offenders who choose to discontinue criminal and/or gang activity. Offenders can always choose to drop out of a gang; however, in the Step-Down Program, inmates are not required to drop out of their gang.

- The five-step program supports, educates and increases privileges for SHU inmates who refrain from gang behavior and are disciplinary-free. Each step is progressive and requires the willingness of the inmate to participate. Each offender is responsible for demonstrating he can be released to a less restrictive environment while abstaining from criminal behavior.

- In the fifth step, inmates are observed and monitored in a general population facility.

**Case-by-Case Reviews**

- As part of the implementation of the pilot, CDCR is conducting case-by-case reviews of all STG affiliates currently serving an indeterminate SHU term.

- CDCR has endorsed for release to its general population more than half of the SHU inmates who have been reviewed so far.

- As of September 30, 2013, CDCR has conducted 528 case-by-case reviews of validated STG affiliates; 343 inmates housed in the SHU or an Administrative Segregation Unit have been approved for Step 5 and/or general population facilities and 150 inmates have been placed in various phases of the Step-Down Program with increased privileges.

**Debriefing**

- Debriefing is a comprehensive process by which CDCR determines whether an STG member or associate has dropped out of a gang. This new policy does not alter the existing process.

- CDCR will always support offenders who want to disavow or disengage from the gang lifestyle.

- If an offender in the Step-Down Program decides to drop out of his gang, he will not be required to complete the Step-Down Program but will be housed in the Transitional Housing Unit for transition and support.

CDCR will continue to identify, track, monitor and apply disciplinary sanctions when inmates are found to be guilty of participating in unlawful and/or gang activity; however, the new policy adds prevention and diversion strategies.

For more information about the STG program, including the instructional memo approved by the Office of Administrative Law on October 18, 2012 and filed with the Secretary of State, visit http://www.cdcr.ca.gov/stg/.

### ###

# EXHIBIT D

CA.gov | About CDCR | Featured Links | Contact Us

Search

⊙This Site  ○California

HOME        CAREERS        PRISONS        VISITATION        REHABILITATION        PAROLE        JUVENILE        REPORTS        VICTIM SERVICES        NEWS



## About CDCR



Office of Governor
**Edmund G. Brown Jr.**
Visit his Website

Secretary
**Jeffrey Beard, Ph.D.**
Visit his page

   

### Secretary Dr. Jeffrey Beard

Jeffrey A. Beard, Ph.D. was appointed as Secretary
of the California Department of Corrections and
Rehabilitation by Governor Edmund G. Brown, Jr.,
on December 27, 2012.  He will also serve as
Chairman of the Prison Industry Board.

Prior to his appointment as Secretary, Dr. Beard
began his criminal justice career in 1972 with the
Department of Corrections in Pennsylvania (DCP) as
a corrections counselor.  He served in various
positions within the DCP until he was appointed to
Secretary by Governor Tom Ridge in January 2001.
He was reappointed by Governor Ed Rendell in
February 2003.  He remained with the DCP until
August 2010 when he retired as Secretary.

During his retirement Dr. Beard has served as a
consultant and/or instructor to the National Institute
of Corrections, corrections agencies and various
companies on correctional matters, security,
performance measures, mental health issues,
evidence-based programs and assessment.  Since
early 2011, Dr. Beard has been a Professor of
Practice with the Justice Center for Research at
Pennsylvania State University.  In this capacity he
serves as an advisor and consultant.  He was recently selected to be a member of a National Academy of
Science committee studying the high rates of incarceration in the U.S.

Dr. Beard holds a B.S. in psychology, and an M.Ed and Ph.D. in counseling, all from the Pennsylvania State
University.  Additionally, he is a licensed psychologist.  He is a member of the Pennsylvania Prison Wardens
Association (PPWA), American Corrections Association (ACA), Western Association of Correctional
Administrators (WACA) and the Association of State Correctional Administrators (ASCA). During his tenure as
Secretary he served on the National Institute of Justice's Law Enforcement and Corrections Technology Advisory
Committee (LECTAC), the last three years of which he served as vice chair for Corrections.

**About CDCR**

Mission Statement
Strategic Plan
Executive Staff
Secretary's Page
Budget
External Affairs
Divisions/Boards
Offices & Programs
Prisons
Public Notices
Regulations
Statistics / Reports / Research
Inmate Population Reports

Back to Top | Conditions of Use | Accessibility | Contact Us | Copyright © 2013 State of California

To view and print some files you may need to download the latest version of Adobe Acrobat Reader.



# EXHIBIT E



| Department of Corrections and Rehabilitation | Number: 14-02 |
|---|---|
| **NOTICE OF CHANGE TO REGULATIONS**<br><br>Section(s): 3000, 3023, 3043.4, 3044, 3077, 3139, 3269, 3269.1, 3314, 3315, 3321, 3323, 3334, 3335, 3341.5, 3375, 3375.2, 3375.3, 3376, 3376.1, 3377.2, 3378, 3378.1, 3378.2, 3378.3, 3378.4, 3378.5, 3378.6, 3378.7, 3378.8, 3378.9, 3504, 3505, 3545, 3561, 3651, and 3721 | **Publication Date:** January 31, 2014 |
| | **Effective Date:** To Be Announced |

## INSTITUTION POSTING REQUIRED

This Notice announces the amendment of Sections 3000, 3023, 3043.4, 3044, 3077, 3139, 3269, 3269.1, 3314, 3315, 3321, 3323, 3334, 3335, 3341.5, 3375, 3375.2, 3375.3, 3376, 3376.1, 3377.2, 3378, 3378.1, 3378.2, 3378.3, 3504, 3505, 3545, 3561, 3651 and 3721 and the adoption of Sections 3378.4, 3378.5, 3378.6, 3378.7, 3378.8 and 3378.9 of the California Code of Regulations (CCR), Title 15, Crime Prevention and Corrections, to incorporate into the CCR provisions concerning Security Threat Groups (formerly referred to as prison gangs).

**IMPLEMENTATION: To Be Announced**

**PUBLIC COMMENT PERIOD**

Any person may submit written comments about the proposed regulations to the California Department of Corrections and Rehabilitation, Regulation and Policy Management Branch (RPMB), P.O. Box 942883, Sacramento, CA 94283-0001, by fax to (916) 324-6075, or by e-mail to m_STGRegulation@cdcr.ca.gov. All written comments must be received by the close of the public comment period on **April 3, 2014, at 5:00 p.m.**

**PUBLIC HEARING INFORMATION**

A public hearing regarding these proposed regulations will be held Thursday, April 3, from 8:00 AM to 12:00 PM in the East End Complex Auditorium located at 1500 Capitol Avenue, Sacramento CA. The purpose of the hearing is to receive oral comments about this action. It is not a forum to debate the proposed regulations. No decision regarding the permanent adoption of these regulations will be rendered at this hearing. Written or facsimile comments submitted during the prescribed comment period are given the same significance and weight as oral comments presented at the hearing. This hearing site is accessible to the mobility impaired.

**POSTING**

This notice shall be posted immediately upon receipt at locations accessible to inmates, parolees, and employees in each Department facility and field office, not later than five calendar days after receipt. Also, facilities shall make this Notice available for review by inmates in segregated housing who do not have access to the posted copies, and shall distribute it to inmate law libraries and advisory councils. Certification of Posting, CDCR Form 621-A, shall be returned to the RPMB electronically, by fax, or by mail. See Department Operations Manual sections 12010.5.7 and 12010.5.8 for posting and certification of posting procedures.

**CONTACT PERSON**

Inquiries regarding this notice should be directed to Timothy M. Lockwood, Chief, RPMB, California Department of Corrections and Rehabilitation, P.O. Box 942883, Sacramento, CA 94283-0001, by telephone at (916) 445-2269 or e-mail at RPMB@cdcr.ca.gov. Inquiries regarding the subject matter of these regulations may be directed to Nancy Hardy, Division of Adult Institutions, at (916) 324-0791.

*Original Signed By:*

DIANA TOCHE
Undersecretary (A), Administration and Offender Services
California Department of Corrections and Rehabilitation

Attachments

CDCR 1189 (REV. 05/09)

## NOTICE OF PROPOSED REGULATIONS

**California Code of Regulations**
**Title 15, Crime Prevention and Corrections**
**Department of Corrections and Rehabilitation**

**NOTICE IS HEREBY GIVEN** that the Secretary of the California Department of Corrections and Rehabilitation (CDCR or the Department), pursuant to the authority granted by Government Code Section 12838.5 and Penal Code (PC) Section 5055, and the rulemaking authority granted by PC Section 5058, in order to implement, interpret and make specific PC Section 5054, proposes to amend Sections 3000, 3023, 3043.4, 3044, 3077, 3139, 3269, 3269.1, 3314, 3315, 3321, 3323, 3334, 3335, 3341.5, 3375, 3375.2, 3375.3, 3376, 3376.1, 3377.2, 3378, 3378.1, 3378.2, 3378.3, 3504, 3505, 3545, 3561, 3651 and 3721 and to adopt Sections 3378.4, 3378.5, 3378.6, 3378.7, 3378.8 and 3378.9 of the California Code of Regulations (CCR), Title 15, concerning Security Threat Groups (formerly referred to as prison gangs).

### PUBLIC HEARING:

| | |
|---|---|
| Date and Time: | **April 3, 2014 - 8:00 a.m. to 12:00 p.m.** |
| Place: | East End Complex<br>Auditorium<br>1500 Capitol Avenue<br>Sacramento, CA 95811 |
| Purpose: | To receive comments about this action. |

### PUBLIC COMMENT PERIOD:

The public comment period will close **April 3, 2014, at 5:00 p.m.** Any person may submit public comments in writing (by mail, by fax, or by e-mail) regarding the proposed changes. To be considered by the Department, comments must be submitted to the CDCR, Regulation and Policy Management Branch, P.O. Box 942883, Sacramento, CA 94283-0001; by fax at (916) 324-6075; or e-mail at *m_STGRegulation@cdcr.ca.gov* before the close of the comment period.

### CONTACT PERSON:

Please direct any inquiries regarding this action to:

**Timothy M. Lockwood, Chief**
**Regulation and Policy Management Branch**
**Department of Corrections and Rehabilitation**
**P.O. Box 942883, Sacramento, CA 94283-0001**
**Telephone (916) 445-2269**

In the event the contact person is unavailable, inquires should be directed to the following back-up person:

**Josh Jugum**
**Regulation and Policy Management Branch**
**Telephone (916) 445-2228**

Questions regarding the substance of the proposed regulatory action should be directed to:

**Nancy Hardy**
**Division of Adult Institutions**
**Telephone (916) 324-0791**

**AUTHORITY AND REFERENCE**

PC Section 5000 provides that commencing July 1, 2005, any reference to the Department of Corrections in this or any code, refers to the CDCR, Division of Adult Operations.

PC Section 5050 provides that commencing July 1, 2005, any reference to the Director of Corrections, in this or any other code, refers to the Secretary of the CDCR. As of that date, the office of the Director of Corrections is abolished.

PC Section 5054 provides that commencing July 1, 2005, the supervision, management, and control of the state prisons, and the responsibility for the care, custody, treatment, training, discipline, and employment of persons confined therein are vested in the Secretary of the CDCR.

PC Section 5058 authorizes the Director to prescribe and amend regulations for the administration of prisons.

**INFORMATIVE DIGEST/POLICY STATEMENT OVERVIEW:**

This action will:

- Replace references in the regulations to prisons gangs, street gangs and similar disruptive groups with the term Security Threats Groups (STGs). This term is used in the Federal correctional system and in many other correctional jurisdictions.

- Amend the Department's current STG (gang) management policy, which identifies STG members and associates and separates them from the General Population, to focus on identifying, interdicting, and managing STG leadership and behavior. The Department will move from a status-based process (i.e., gang affiliation) to a behavior-based process that separates gang affiliates from the General Population based on STG-related disciplinary violations and/or confirmed membership.

- Establish a process for the certification by the Department of a group or gang as a STG-I, and the recognition of a group/gang as a STG-II, based on criteria specified in the regulations. This process will differentiate between STG-Is, which are the more "traditional" prison type gangs that are considered the greatest threat to staff and institution security, and STG-IIs, which are other groups such as street gangs or other disruptive groups.

- Establish additional due process and a weighted criteria scalein the procedures used to validate an offender as an affiliate of an STG.

- Differentiate between STG-I Members and other offenders such as Associates who are affiliated with an STG but not a member. Only STG-I Members confirmed by an Institution Classification Committee will be placed in Security Housing Units (SHU) based on validation alone. Affiliated offenders will be placed in SHU if they have engaged in documented STG behavioral violations.

- Establish a five-step Step Down Program which will allow inmates housed in the SHU as a result of STG related behavior to return to a General Population setting provided they meet specified criteria and remain free of disciplinary violations.

- Incorporate enhanced privileges for inmates electing to participate through the Step Down Program.

- Establish a process to address classification and housing of validated STG affiliates who have paroled or discharged from CDCR jurisdiction and return to custody.

- Adopt definitions for several new terms related to Security Threat Groups and the Step Down Program.

- Incorporate into the regulations the STG Disciplinary Matrix, which will be used to determine Step Down Program placement when specified validated offenders commit STG-related disciplinary violations.

- Establish a process for the termination of an offender's status as a validated STG affiliate when specified criteria are met.

- Establish the responsibilities of various Department staff and committees as part of the STG policy.

## FORMS INCORPORATED BY REFERENCE

CDCR 128-G1 (11/13) Security Threat Group Unit Classification Committee – Results of Hearing
CDC 115 (07/88) Rules Violation Report
CDC 812 (11/13) Notice of Critical Case Information – Safety of Persons (Non-Confidential Enemies)
CDC 128-B (4/74) General Chrono
Security Threat Group Certification Worksheet
CDCR 128-B3 (11/13) Security Threat Group Identification Score Sheet
CDCR 128-B4 (11/13) Evidence Disclosure and Interview Notification
CDCR 1030 (11/13) Confidential Information Disclosure Form
CDCR 128- B5 (11/13) Security Threat Group Validation Chrono
CDCR 128-B2 (11/13) Security Threat Group Validation / Rejection Review
CDCR 128B SDP1 (11/13) Step Down Program Notice of Expectations (Step 1)
CDCR 128B SDP2 (11/13) Step Down Program Notice of Expectations (Step 2)
CDCR 128B SDP3 (11/13) Step Down Program Notice of Expectations (Step 3)
CDCR 128B SDP4 (11/13) Step Down Program Notice of Expectations (Step 4)
CDCR 128B SDP5 (11/13) Notice of Conditions of Monitored Status
CDC 128-G (10/89) Classification Chrono

## SPECIFIC BENEFITS ANTICIPATED BY THE PROPOSED REGULATIONS

The Department anticipates that these regulations will help to reduce STG (gang) violence and activity within California prisons, and eventually help to reduce gang violence in communities as well. The criminal activities of prison STGs extend beyond prison walls into many local communities, and STGs are often associated with, and in some cases control, street gangs.

The proposed regulations provide for additional due process in the procedures used to "validate" inmates as affiliates of STGs. This should help to reduce expensive litigation, as inmates will have the opportunity to challenge their validation through the Department's processes rather than relying on the courts.

## EVALUATION OF CONSISTENCY / COMPATIBILITY WITH EXISTING LAWS/REGULATIONS

The Department has researched existing statutes and regulations regarding Security Threat Groups / prison gangs and has determined that these proposed regulations are not inconsistent or incompatible with existing state laws and regulations.

Currently, Department policy regarding STGs and the Step Down Program is under the authority of the STG Pilot Program, which went into effect in October 2012. This pilot program will remain in effect until these proposed regulations are permanently adopted.

## LOCAL MANDATES:

This action imposes no mandates on local agencies or school districts, or a mandate which requires reimbursement of costs or savings pursuant to Government Code Sections 17500 - 17630.

## FISCAL IMPACT STATEMENT:

- Cost to any local agency or school district that is required to be reimbursed:    *None*
- Cost or savings to any state agency:    *None*
- Other nondiscretionary cost or savings imposed on local agencies:    *None*
- Cost or savings in federal funding to the state:    *None*

## EFFECT ON HOUSING COSTS:

The Department has made an initial determination that the proposed action will have no significant effect on housing costs.

## COST IMPACTS ON REPRESENTATIVE PRIVATE PERSONS OR BUSINESSES:

The Department is not aware of any cost impacts that a representative private person or business would necessarily incur in reasonable compliance with the proposed action.

## SIGNIFICANT STATEWIDE ADVERSE ECONOMIC IMPACT ON BUSINESS:

The Department has initially determined that the proposed regulations will not have a significant statewide adverse economic impact directly affecting businesses, including the ability of California businesses to compete with businesses in other states.

## EFFECT ON SMALL BUSINESSES:

The Department has determined that the proposed regulations may not affect small businesses. It is determined that this action has no significant adverse economic impact on small business because they are not affected by the internal management of state prisons.

## RESULTS OF THE ECONOMIC IMPACT ASSESSMENT:

The Department has determined that the proposed regulation will have no affect on the creation of new, or the elimination of existing, jobs or businesses within California, or affect the expansion of businesses currently doing business in California. The Department has determined that the proposed regulations will have no affect on the health of California residents, worker safety, or the state's environment, because they relate strictly to the internal management of CDCR institutions.

The Department has determined that the proposed regulations may have an indirect positive impact upon the welfare of California residents by helping to reduce gang activity in local communities.

## CONSIDERATION OF ALTERNATIVES:

The Department must determine that no reasonable alternative considered by the Department or that has otherwise been identified and brought to the attention of the Department would be more effective in carrying out the purpose for which the action is proposed, would be as effective and less burdensome to affected private persons, or would be more cost-effective to affected private persons and equally effective in implementing the statutory policy or other provisions of law, than the proposed regulatory action. Interested persons are invited to present statements or arguments with respect to any alternatives to the changes proposed at the scheduled hearing or during the written comment period.

## AVAILABILITY OF PROPOSED TEXT AND INITIAL STATEMENT OF REASONS:

The Department has prepared, and will make available, the text and the Initial Statement of Reasons (ISOR) of the proposed regulations. The rulemaking file for this regulatory action, which contains those items and all information on which the proposal is based (i.e., rulemaking file) is available to the public upon request directed to the Department's contact person. The proposed text, ISOR, and Notice of Proposed Action will also be made available on the Department's website http://www.cdcr.ca.gov.

## AVAILABILITY OF THE FINAL STATEMENT OF REASONS:

Following its preparation, a copy of the Final Statement of Reasons may be obtained from the Department's contact person.

## AVAILABILITY OF CHANGES TO PROPOSED TEXT:

After considering all timely and relevant comments received, the Department may adopt the proposed regulations substantially as described in this Notice. If the Department makes modifications which are sufficiently related to the originally proposed text, it will make the modified text (with the changes clearly indicated) available to the public for at least 15 days before the Department adopts the regulations as revised. Requests for copies of any modified regulation text should be directed to the contact person indicated in this Notice. The Department will accept written comments on the modified regulations for 15 days after the date on which they are made available.

# EXHIBIT F

**California Code of Regulations, Title 15, Division 3, Adult Institutions, Programs and Parole**

**TEXT OF PROPOSED REGULATIONS**

**In the following text, ~~strikethough~~ indicates deleted text; <u>underline</u> indicates added or amended text.**

**3000 Definitions.**

**Section 3000 is amended to alphabetically merge the definitions below with those that exist in the regulations.**

*

*

*

<u>Affiliate means individual offenders validated as members, associates, or monitored status who are connected or interact with a certified or recognized Security Threat Group.</u>

<u>Confirmed Security Threat Group (STG) Behavior means behavior with a nexus to an STG which is discovered and confirmed to have occurred. Confirmation can be obtained through either a guilty finding in a STG related Rules Violations Report and/or any document that clearly describes the STG behavior/activities incorporated within the validation or continued STG behavior package which is affirmed by an STG Unit Classification Committee.</u>

<u>Debriefing is the formal process by which a Security Threat Group (STG) coordinator/investigator determines whether an offender has abandoned STG affiliation and dropped out of a STG. A subject shall only be debriefed upon their request, although staff may ask if he or she wants to debrief.</u>

<u>Direct Link means any connection between a subject and any person who has been validated as an STG affiliate. This connection does not need to be independently indicative of STG association beyond the requirements for validation source items listed in CCR Section 3378.</u>

<u>Dropout means a validated affiliate who has cooperated in, and successfully completed Phase One and Two of the debriefing process.</u>

<u>Gang</u> means any ongoing formal or informal organization, association or group of three or more persons which has a common name or identifying sign or symbol whose members and/or associates, individually or collectively, engage or have engaged, on behalf of that organization, association, or group, in two or more acts which include: planning, organizing, threatening, financing, soliciting, or committing unlawful acts, or acts of misconduct <u>outside of the California Department of Corrections and Rehabilitation jurisdiction.</u> ~~classified as serious pursuant to section 3315.~~

<u>Inactive Status Affiliate means a validated affiliate who was released from SHU prior to implementation of the Step Down Program. This inmate was not previously identified as having been involved in gang related behavior for a period of six years, was reviewed by a Departmental Review Board and released from the Security Housing Unit.</u>

Inactive-Monitored Status Affiliate means a validated affiliate who was released from the Security Housing Unit concurrent with the implementation of the Step Down Program through a Departmental Review Board hearing.

Monitored Status Affiliate means any offender who has successfully completed Steps 1-4 in the Step Down Program and has been released from a Security Housing Unit.

Offender means any inmate, ward, parolee, or other person currently under the jurisdiction of the CDCR.

Prison Gang means any gang which originated and has its roots within the department or any other prison system. Credit earning for validated prison gang members and associates housed in Administrative Segregation Units (ASU), Security Housing Units (SHU), Psychiatric Services Units (PSU), or Behavior Management Units (BMU) as referenced in Penal Code Section 2933.6 shall apply to inmates validated as STG-I member or associates who are housed in ASU, SHU, PSU, or BMU.

Security Threat Group (STG) means any ongoing formal or informal organization, association, or group of three or more persons which has a common name or identifying sign or symbol whose members and/or associates, individually or collectively, engage or have engaged, on behalf of that organization, association or group, in two or more acts which include, planning, organizing, threatening, financing, soliciting or committing unlawful acts, or acts of misconduct.

Security Threat Group I (STG-I) is a term used to identify and prioritize the level of threat the group presents that affects the safety and security of the institution and public safety. STG-I designation will be reserved for STGs that pose the greatest of these threats. STG-I designation will include, but may not be limited to, traditional prison gangs or similar disruptive groups or gangs that the department has certified to have a history and propensity for violence and/or influence over subservient STGs.

Security Threat Group II (STG-II) is a term used to identify and prioritize the level of threat the group presents that affects the safety and the security of the institution and public safety. The STG-II designation may include, but is not limited to, traditional disruptive groups/street gangs.

Security Threat Group Administrative Directive is an administrative order, approved by the Secretary (or designee) of the CDCR, certifying a group's threat to the safety of staff, offenders, and the security of the institution based on a documented history of, and future propensity for violence.

Security Threat Group (STG) Associate means any offender or any person who, based on documented evidence, is involved periodically or regularly with the members of a STG. STG Associates will be identified through the validation process.

Security Threat Group (STG) Behavior is any documented behavior that promotes, furthers, or assists a STG. This includes, but is not limited to conduct of any person that leads to and includes the commission of an unlawful act and/or violation of policy demonstrating a nexus to a STG.

Security Threat Group (STG) Member means any offender or any person who, based on documented evidence, has been accepted into membership by a STG. STG Members will be identified through the validation process.

2

<u>Security Threat Group (STG) Suspect means any offender or any person who, based on documented evidence, is involved periodically or regularly with the members or associates of a STG. The STG suspect is tracked by STG Investigative staff pending validation. Suspects have attained more than one but less than ten points of validation as described in Section 3378.2(b).</u>

<u>Security Threat Group (STG) Unit Classification Committee is a unit classification committee responsible for making the determination of an inmate's validation status, reviewing Dropout status affiliate's new disciplinary behavior to determine nexus to STG, and reviewing information/intelligence regarding inmate-involved incidents occurring outside CDCR jurisdiction to ensure disciplinary processes and/or formal documentation were applied.</u>

<u>Step Down Program (SDP) is a five-step program that provides inmates placed in a Security Housing Unit (SHU) due to STG validation and/or documented STG behaviors, with a program expectation of discontinuing participation in STG related activities and includes increased incentives to promote positive behavior with the ultimate goal of release from the SHU.</u>

<u>Step Down Program, Step 1 and 2 SHU means the first two of five steps in the step down process designated for housing of STG affiliates determined to pose the greatest threat to the safety of staff, inmates, and the public, in addition to the security of the prison based upon intelligence and/or confirmed STG behaviors. Steps 1 and 2 are designed to be completed in 12 months each, but may be accelerated at the 180 day review.</u>

<u>Step Down Program, Step 3 and 4 SHU are steps in the five-step program intended to begin reintegration of the STG affiliates by offering program and privilege incentives within a controlled setting and monitoring of program progress for housing of STG affiliates who have completed steps 1 and 2 and continue to pose a threat to the safety of staff, inmates, and the public.</u>

<u>Step Down Program, Step 5. Upon successful completion of all four SHU steps, as determined by Institutional Classification Committee (ICC) and based on individual inmate behavior, the inmate will be endorsed to General Population or similar specialized housing for a 12-month observation period know as Step 5.</u>

<u>Transitional Housing Unit</u> is a general population program designated for the observation phase of the ~~Prison Gang~~ Debriefing process. This program houses those inmates that are in the second phase of the debriefing process.

<u>Validation means the formal and objective process for identifying and documenting STG affiliates.</u>

Note: Authority cited: Sections 2717.3, 3000.03, 5058 and 5058.3, Penal Code; Section 10115.3(b), Public Contract Code; and Sections 4525(a), 4526 and 14837, Government Code. Reference: Sections 186.22, 243, 314, 530, 532, 646.9, 653m, 832.5, 1170.05, 1203.8, 1389, 2080, 2081.5, 2600, 2601, 2700, 2717.1, 2717.6, 2932.5, 3003.5(a), 3020, 3450, 3550, 4570, 4576, 5009, 5054, 5068, 7000 et seq. and 11191, Penal Code; Sections 1132.4 and 1132.8, Labor Code; Sections 10106, 10108, 10108.5, 10115, 10115.1, 10115.2, 10115.3 and 10127, Public Contract Code; and Section 999, Military and Veterans Code; Section 391, Code of Civil Procedure; Section 297.5, Family Code; Section 8550 and 8567, Government Code; Governor's Prison Overcrowding State of Emergency Proclamation dated October 4, 2006; In re Bittaker,

55 Cal.App. 4th 1004, 64 Cal. Rptr. 2d 679; Section 11007, Health and Safety Code; and Madrid v. Cate (U.S.D.C. N.D. Cal. C90-3094 TEH).

**Existing section 3023 title is amended to read:**

**3023. Security Threat Group (STG) ~~Gang~~ Activity.**

**Existing subsection 3023(a) is renumbered and relocated to 3023(c).**

**New subsection 3023(a) is adopted to read:**

(a)   Security Threat Groups (STG) jeopardize public safety, as they promote violence, drug trafficking, extortion, and create substantial risks in prisons, jails and local communities.  STG management within prisons requires a comprehensive management strategy that includes prevention, interdiction and rehabilitation.  It is the policy of the California Department of Corrections and Rehabilitation (CDCR) to ensure that its employees and inmates are able to work and live without threat of intimidation, injury, and/or death.

**Existing subsection 3023(b) is deleted.**

(b)      ~~Gangs, as defined in section 3000, present a serious threat to the safety and security of California prisons.~~

**New subsection 3023(b) is adopted to read:**

(b)  CDCR has zero tolerance for any STG activity or behavior within its institutions.  The STG Identification, Prevention, and Management Policy, as referenced in section 3378, recognizes that STG groups and STG group-like activity pose a significant risk to the safety, security, and orderly operation of its institutions.

**Existing subsection 3023(c) is renumbered and relocated to new subsection 3023(d).**

**New subsection 3023(c) is renumbered and relocated from existing subsection 3023(a) and text is amended to read:**

~~(a)~~(c)  Inmates and parolees shall not knowingly promote, further or assist any STG ~~gang~~ as defined in section 3000.

**New subsection 3023(d) is renumbered and relocated from existing subsection 3023(c) and text is amended to read:**

~~(c)~~(d)    For the purpose of specific STG ~~gang~~ participant identification, the department categorizes STGs ~~gangs~~ into ~~prison gangs and disruptive groups~~ the levels STG-I or STG-II as defined in section 3000.  Participation levels within an STG are further categorized in status as Members, Associates, Suspects, and Dropouts as defined in section 3000.

**New subsection 3023(e) is adopted to read:**

(e)   Inmates shall not conspire, attempt, or participate in behavior or activities specifically identified in Section 3314(a)(3)(L) and 3314(a)(3)(M), Administrative Rules Violations, STG

Contraband and Behavior; or Section 3315(a)(3)(Z) and 3314(a)(3)(AA) Serious Rules Violations, STG Violent, Disruptive, or Controlling Behavior.

Note: Authority cited: Section 5058, Penal Code. Reference: Sections 186.22 and 5054, Penal Code.

**3043.4. Non-Credit Earning.**

**Subsections 3043.4 Initial paragraph through 3043.4(a) remain unchanged.**

**Subsection 3043.4(b) is amended to read:**

(b) An inmate who is placed in SHU, PSU, or ASU for misconduct described in subsection (c) or upon validation as a STG-I prison gang member or associate is ineligible to earn credits pursuant to Penal Code section 2933 or 2933.05 during the time he or she is in the SHU, PSU, or ASU for that misconduct.

**Subsections 3043.4(c) through 3043.4(d) remain unchanged.**

Note: Authority cited: Section 5058, Penal Code. Reference: Sections 2931, 2932, 2933, 2933.05, 2933.6, 5054 and 5068, Penal Code.

**3044. Inmate Work Groups.**

**Subsections 3044(a) through 3044(b)(6)(C) remain unchanged.**

**Subsection 3044(b)(7) is amended to read:**

(7) Work Group D-2: Lockup Status. Inmates placed in SHU, PSU, or ASU for disciplinary related offenses described in Penal Code section 2933.6 or upon validation as a STG-I prison gang member or associate are ineligible to earn credits during placement in SHU, PSU, or ASU. Inmates placed in SHU, PSU, or ASU following the commission of any other serious disciplinary infraction(s) are ineligible to earn credits for a period not to exceed the number of disciplinary credits forfeited. Zero credit.

**Subsection 3044(b)(7)(A) through 3044(b)(7)(B) remain unchanged.**

**Subsection 3044(b)(7)(C) is amended to read:**

(C) An inmate in, ASU, SHU, or PSU, on indeterminate or determinate lockup status serving an administrative or determinate SHU term, who is deemed a program failure as defined in section 3000, may be assigned Work Group D-2 by a classification committee. An inmate assigned to Work Group C at the time of placement in ASU, SHU, or PSU, or who refuses to accept or perform work assignments, shall be assigned Work Group D-2. An inmate released from ASU, SHU, or PSU may be placed back into Work Group C by a classification committee not to exceed the remaining number of disciplinary credits forfeited due to the serious disciplinary infractions(s).

**Subsections 3044(b)(7)(D) through 3044(e)(2)(B) remain unchanged. Subsection 3044(e)(2) is shown to provide context.**

5

(2) Privileges for Privilege Group B are as follows:

**Subsection 3044(e)(2)(C) is amended to read:**

(C) ~~One-half~~ Seventy-five percent (75%) of the maximum monthly canteen draw as authorized by the secretary.

**Subsections 3044(e)(2)(D) through 3044(g) remain unchanged. Subsection 3044(g) is shown to provide context.**

(g) Privilege Group D:

**Subsection 3044(g)(1) is amended to read:**

(1) Criteria: Any inmate, with the exception of validated STG affiliates participating in the SDP, undergoing the Debriefing Process, or designated NDS inmates, housed in a special segregation unit, voluntarily or under the provisions of sections 3335-3345 of these regulations who is not assigned to either a full-time or half-time assignment.

**Subsection 3044(g)(2) remain unchanged.**

**Subsection 3044(g)(3) is amended to read:**

(3) Privileges and non-privileges for Privilege Group D, other than those listed above, are as follows:

**Subsection 3044(g)(3)(A) remains unchanged.**

**Subsection 3044(g)(3)(B) is amended to read:**

(B) ~~One-fourth~~ Twenty-five percent (25%) of the maximum monthly canteen draw as authorized by the secretary.

**Subsections 3044(g)(3)(C) through 3044(h)(2)(F) remain unchanged.**

**New subsections 3044(i) through 3044(i)(2)(D)8. are adopted to read:**

(i) Privilege Group S1 through S4 :

(1) Criteria: Participation in the STG SDP.
(2) Privileges and non-privileges for Privilege Groups S1 through S4 are:

(A) S1 for Step 1
1. No Family Visits
2. Visiting during non-work/training hours, limited by available space within facility non-contact visiting room
3. Twenty-five percent (25%) of the maximum monthly canteen draw as authorized by the secretary.
4. Telephone calls on an emergency basis only as determined by institution/facility staff. At the 180-day Institution Classification Committee (ICC) review, if the inmate has met program

6

expectations and has not been found guilty of STG related behavior, ICC shall authorize one (1) telephone call.

5.   Yard access limited by local institution/facility security needs.   No access to any other recreational or entertainment activities.

6.   The receipt of one personal property package, 30 pounds maximum weight, per year, exclusive of special purchases as provided in Section 3190.  Inmates shall be eligible to acquire a personal property package after completion of one year of Privilege Group D or SDP assignment.

7.   One photograph – upon completion of 1 year free of serious disciplinary behavior while in SHU.

8.   One television or one radio or one television/radio combination unit, clear technology only.

(B)  S2 for Step 2

1.  No Family Visits.

2.  Visiting during non-work/training hours, limited by available space within facility non-contact visiting room.

3.   Thirty-five percent (35%) of the maximum monthly canteen draw as authorized by the secretary.

4.  One telephone call upon transition to Step 2.

5.   Yard access limited by local institution/facility security needs.   No access to any other recreational or entertainment activities.

6.   The receipt of one personal property package, 30 pounds maximum weight, per year, exclusive of special purchases as provided in Section 3190.  Inmates shall be eligible to acquire a personal property package after completion of one year of an SDP assignment.

7.   One photograph – upon completion of 1 year free of serious disciplinary behavior while in SHU.

8.   One television or one radio or one television/radio combination unit, clear technology only.

(C)  S3 for Step 3

1.  No Family Visits.

2.  Visiting during non-work/training hours, limited by available space within facility non-contact visiting room.

3.   Forty-five percent (45%) of the maximum monthly canteen draw as authorized by the secretary.

4.  One telephone call upon transition to Step 3 and one additional telephone call upon review and approval of ICC at the 180 day review.

5.  Yard access limited by local institution/facility security needs.

6.   The receipt of two personal property packages, 30 pounds maximum weight, per year, exclusive of special purchases as provided in Section 3190.

7.   One photograph upon transition to Step 3 and one additional photograph upon review and approval of ICC at the 180 day review.

8.  One television or one radio or one television/radio combination unit, clear technology only.

(D)  S4 for Step 4

1.  No Family Visits.

2.  Visiting during non-work/training hours, limited by available space within facility non-contact visiting room.

3.  Fifty percent (50%) of the maximum monthly canteen draw as authorized by the secretary.

4.  One telephone call upon transition to Step 4 and one additional telephone call after review and approval of ICC at each 90 day review.

STG regs proposed text                                                                1/14/14

5.  Yard access limited by local institution/facility security needs.  Yard activities will include interaction with inmates of diverse affiliations after 6 months of programming within Step 4.

6.  The receipt of two personal property packages, 30 pounds maximum weight each, per year, exclusive of special purchases as provided in Section 3190.  In addition, receipt of one personal property package, non-food only, 15 pounds maximum weight, per year.

7.  One photograph upon transition to Step 4 and one additional photograph upon review and approval of ICC at the third 90 day review.

8.  One television and one radio or one television/radio combination unit, clear technology only.

**New subsections 3044(j) through 3044(j)(2)(H) are adopted to read:**

(j)  Privilege Group D for validated affiliates in SHU completing the interview phase of the debriefing process, or for offenders who are in SHU for non-disciplinary reasons.

(1)  Criteria:  Placement in SHU while completing the interview phase of the debriefing process. Privileges and non-privileges are commensurate with the STG step to which the offender is currently assigned in accordance with Section 3044(i).

(2)  Criteria:  Placement/Retention in SHU for non-disciplinary reasons. Privileges and non-privileges are:

(A)  No Family Visits.

(B)  Visiting during non-work/training hours, limited by available space within facility non-contact visiting room.

(C)  Fifty percent (50%) of the maximum monthly canteen draw as authorized by the secretary.

(D) One telephone call per quarter.

(E)  Yard access limited by local institution/facility security needs.

(F)  The receipt of two personal property packages, 30 pounds maximum weight each, per year, exclusive of special purchases as provided in Section 3190.  In addition, receipt of one personal property package, non-food only, 15 pounds maximum weight, per year.

(G)  One photograph upon completion of each 180 day ICC review.

(H)  One television and one radio or one television/radio combination unit, clear technology only.

(3)  The local Inter-Disciplinary Treatment Team may further restrict or allow additional authorized personal property, in accordance with the Institution's Psychiatric Services Unit operational procedure, on a case-by-case basis above that allowed by the inmate's assigned Privilege Group.

Note: Authority cited: Sections 2700, 2701 and 5058, Penal Code. Reference: Sections 2932, 2933, 2933.05, 2933.3, 2933.6, 2935, 5005, 5054 and 5068, Penal Code; and In re Monigold, 205 Cal.App.3d 1224 (1988).

**3077. County Assessment Program.**

8

**Section 3077 Initial paragraph through subsection 3077(c) remains unchanged.**

**Subsection 3077(c)(1) is amended to read:**

(c)(1)   Is a documented and validated ~~STG~~ <u>STG</u> prison gang or disruptive group member or associate.

**Subsections 3077(c)(2) through 3077(d)(3) remain unchanged.**

Note: Authority cited: Section 5058, Penal Code. Reference: Sections 667.5(c), 1203.8 and 5054, Penal Code.

**3139.   Correspondence between Inmates, Parolees, and Probationers.**

**Subsection 3139 Initial paragraph is amended to read:**

<u>(a)</u> Inmates shall obtain written authorization from the Warden/Regional Parole Administrator or their designee/assigned probation officer, person in charge of the County Jail and/or other State Correctional Systems, at a level not less than Correctional Captain/Facility Captain or Parole Agent III, to correspond with any of the following:

**Subsections 3139(a)(1) through (a)(4) remain unchanged.**
**Subsection 3139(b) is amended to read:**

(b) Inmates may initiate requests to correspond with the above by contacting their Correctional Counselor I (CCI).  Paroles may initiate request by contacting their Parole Agent (PA).

Inmates may be allowed to correspond with the persons described in subsections 3139(a)(1) through (4) provided those persons meet the criteria of approval of no known <u>STG</u> ~~gang~~ affiliation, or involvement with a known terrorist group or racketeering enterprise.

**Subsections 3139(c) through 3139(j) remain unchanged.**

Note: Authority cited: Section 5058, Penal Code. Reference: Sections 2601 and 4570, Penal Code; Procunier v. Martinez, 416 U.S. 396; and Bell v. Wolffish, 99 S. Ct 1861.

**3269.   Inmate Housing Assignments.**

**Section 3269 Initial paragraph remains unchanged.**

**Subsection 3269(a) is amended to read:**

(a) Upon arrival at an institution, facility, or program reception center, a designated custody supervisor shall screen an inmate for an appropriate housing assignment. The screening authority involved in the review and approval of an inmate's housing assignment must evaluate all factors to be considered, including but not limited to:
• Length of sentence.
• Enemies and victimization history.
• Criminal influence demonstrated over other inmates.
• Reason(s) for prior segregation.
• History of "S" suffix determination pursuant to CCR subsection 3377.1(c).

9

• History of in-cell assaults and/or violence.
• <u>Security Threat Group</u> ~~Prison gang or disruptive group~~ affiliation ~~and/or association~~.
• Nature of commitment offense.
• Documented reports from prior cellmate(s) that the inmate intimidated, threatened, forced, and/or harassed him or her for sex.
• Documentation that the cellmate(s) refused to return to a cell occupied by the inmate because of fear, threats, or abuse perpetrated by the inmate.
• Documentation that the inmate has been the victim of a sexual assault.
• Adjudicated Department Rules Violations Reports (RVR) where the inmate was found guilty as a perpetrator in an act of physical abuse, sexual abuse, sodomy, or other act of force against a cellmate.

**Subsection 3269(b) through 3269(g) remain unchanged.**

Note: Authority cited: Section 5058, Penal Code. Reference: 5054, Penal Code.

**3269.1. Integrated Housing.**

**Section 3269.1 Initial paragraph through subsection 3269.1(d)(3) remain unchanged.**

**Subsection 3269.1(d)(4) is amended to read:**

(d)(4)  <u>Security Threat Group</u> ~~Prison gang or disruptive group~~ affiliation ~~or association~~.

**Subsections 3269.1(d)(5) through 3269.1(g) remain unchanged.**

Note: Authority cited: Section 5058, Penal Code. Reference: 5054, Penal Code; Johnson v. California (2005) 543 U.S. 499 [125 S. Ct. 1141], remand of Johnson v. California, (9th Cir. 2007) [Dock. No. CV 95-1192 CBM(BQR)].

**3314.  Administrative Rule Violations.**

**Subsections 3314(a) through 3314(a)(3)(K) remain unchanged. Subsection 3314(a)(3) is shown to provide context.**

(3) Administrative rule violations include but are not limited to:

**New subsection 3314(a)(3)(L) is adopted to read:**

<u>(L)   Security Threat Group (STG) Contraband:   Possessing or displaying any distinctive materials, certified symbols, clothing, signs, colors, artwork, photographs, or other paraphernalia associated with any Security Threat Group as defined in Section 3000.   Examples of these materials are identified in section 3378.4.</u>

**New subsection 3314(a)(3)(M) is adopted to read:**

<u>(M)  Security Threat Group (STG) Behavior:  Demonstrating or exhibiting any unique behaviors clearly associated with a STG that promotes, furthers or assists any Security Threat Group; as defined in Section 3000.  Examples of these behaviors are identified in section 3378.4.</u>

**Subsections 3314(b) through 3314(i) remain unchanged.**

10

**New subsection 3314(j) is adopted to read:**

(j)  If the hearing official finds the inmate guilty of a rule violation which includes a nexus to a STG, a copy of the completed Rules Violation Report shall be forwarded to the STG Lieutenant.

Note: Authority cited: Section 5058, Penal Code. Reference: Section 5054, Penal Code.

**3315.  Serious Rule Violations.**

**Subsections 3315(a) through 3315(a)(3)(Y) remain unchanged. Subsection 3315(a)(3) is shown to provide context.**

(3) Serious rule violations include but are not limited to:

**New subsections 3315(a)(3)(Z) and 3315(a)(3)(AA) are adopted to read:**

(Z) Security Threat Group (STG) Directing or Controlling Behavior: Demonstrating activity, behavior or status as a recognized member and/or leader of an STG, which jeopardizes the safety of the public, staff or other inmate(s), and/or the security and orderly operation of the institution.

(AA) Security Threat Group (STG) Disruptive or Violent Behavior: Demonstrating involvement in activities or an event associated with a STG, which jeopardizes the safety of the public, staff or other inmate(s), and/or the security and orderly operation of the institution.

**Subsections 3315(b) through 3315(d)(1)(A)3. remain unchanged. Subsection 3315(d)(1)(A) is shown to provide context.**

A.  An investigative employee, as described in section 3318(a), shall be assigned when the staff designated to classify the serious rule violation determines that:

**Subsection 3315(d)(1)(A)4. is adopted to read:**

4.  The behavior may present a nexus with a Security Threat Group.

**Subsections 3315(e) through 3315(g) remain unchanged.**

**Subsection 3315(h) is adopted to read:**

(h)  If the hearing official finds the inmate guilty of a rule violation which includes a nexus to a STG, a copy of the completed Rules Violation Report shall be forwarded to the STG Lieutenant.

Note: Authority cited: Section 5058, Penal Code. Reference: Sections 295-300.3, 314, 530, 532, 646.9, 647, 653m, 2931, 2932, 2933, 4501.1, 4573.6, 4576, 5054, 5068 and 12020, Penal Code.

**3321.  Confidential Material.**

**Subsections 3321(a) through 3321(a)(4) remain unchanged. Subsection 3321(a) is shown to provide context.**

(a) The following types of information shall be classified as confidential:

**New subsection 3321(a)(5) is adopted to read:**

(5) A Security Threat Group debrief report, reviewed and approved by the debriefing subject, for placement in the confidential section of the central file.

**Subsection 3321 (b) remains unchanged.**

**Subsection 3321(b)(1) is amended to read.**

(1) No decision shall be based upon information from a confidential source, unless other documentation corroborates information from the source, or unless ~~other circumstantial~~ces evidence surrounding the event and the documented reliability of the source satisfies the decision maker(s) that the information is true.

**Subsections 3321(b)(2) through 3321(c)(5) remain unchanged. Subsection 3321(c) is shown to provide context.**

(c) A confidential source's reliability may be established by one or more of the following criteria:

**Subsection 3321(c)(6) is adopted to read.**

(6) This source successfully completed a Polygraph examination.

**Subsections 3321(d) through 3321(d)(3) remain unchanged.**

Note: Authority cited: Section 5058, Penal Code. Reference: Sections 1798.34, 1798.40, 1798.41 and 1798.42, Civil Code; Section 6255, Government Code; Sections 2081.5, 2600, 2601, 2932, 5054 and 5068, Penal Code; and Illinois v. Gates , 462 U.S. 213 (1983).

**3323. Disciplinary Credit Forfeiture Schedule.**

**Subsections 3323(a) through 3323(b)(9) remain unchanged. Subsection 3323(b) is shown to provide context.**

(b) Division "A-1" offenses; credit forfeiture of 181-360 days.

**New Subsection 3323(b)(10) is adopted to read:**

(10) Behavior or activities defined as a division "A-1" offense that promotes, furthers, or assists a STG or demonstrates a nexus to the STG.

**Subsections 3323(c) through 3323(c)(9) remain unchanged. Subsection 3323(c) is shown to provide context.**

(c) Division "A-2" offenses; credit forfeiture of 151-180 days.

**New Subsection 3323(c)(10) is adopted to read:**

12

(10) Behavior or activities defined as a division "A-2" offense that promotes, furthers, or assists a STG or demonstrates a nexus to the STG.

**Subsections 3323(d) through 3323(d)(12) remain unchanged. Subsection 3323(d) is shown to provide context.**

(d) Division "B" Offenses; credit forfeiture of 121-150 days.

**New Subsection 3323(d)(13) is adopted to read:**

(13) Behavior or activities defined as a division "B" offense that promotes, furthers, or assists a STG or demonstrates a nexus to the STG.

**Subsections 3323(e) through 3323(e)(13) remain unchanged. Subsection 3323(e) is shown to provide context.**

(e) Division "C" offenses; credit forfeiture of 91-120 days.

**New Subsection 3323(e)(14) is adopted to read:**

(14) Behavior or activities defined as a division "C" offense that promotes, furthers, or assists a STG or demonstrates a nexus to the STG.

**Subsections 3323(f) through 3323(f)(15) remain unchanged. Subsection 3323(f) is shown to provide context.**

(f) Division "D" offenses; credit forfeiture of 61-90 days.

**New Subsections 3323(f)(16) and (f)(17) are adopted to read:**

(16) Acting in a STG Leadership Role displaying behavior to organize and control other offenders.

(17) Behavior or activities defined as a division "D" offense that promotes, furthers, or assists a STG or demonstrates a nexus to the STG.

**Subsections 3323(g) through 3323(g)(10) remain unchanged. Subsection 3323(g) is shown to provide context.**

(g) Division "E" offenses; credit forfeiture of 31-60 days.

**New Subsection 3323(g)(11) is adopted to read:**

(11) Behavior or activities defined as a division "E" offense that promotes, furthers, or assists a STG or demonstrates a nexus to the STG.

**Subsections 3323(h) through 3323(h)(10) remain unchanged. Subsection 3323(h) is shown to provide context.**

(h) Division "F" offenses; credit forfeiture of 0-30 days.

13

**New Subsections 3323(h)(11) through (h)(13) are adopted to read:**

(11) Harassment of another person, group, or entity either directly or indirectly through the use of the mail, telephone, or other means.

(12) Security Threat Group Behavior or Activity.

(A) Recording/documentation of conversations evidencing active STG behavior;

(B) Communication between offenders/others in support or furtherance of STG behavior or activities;

(C) Leading STG Roll Call;

(D) Directing Cadence for STG Group Exercise;

(E) In personal possession of STG related written material including membership or enemy list, roll call lists, constitution, organizational structures, codes, training material, etc.;

(F) In personal possession of mail, notes, greeting cards, or other communications which include coded or explicit messages evidencing active STG behavior.

(13) Behavior or activities defined as a division "F" offense that promotes, furthers, or assists a STG or demonstrates a nexus to the STG.

**Subsections 3323(i) through 3323(k)(4) remain unchanged.**

Note: Authority cited: Section 5058, Penal Code. Reference: Sections 148, 241, 243, 295-300.3, 314, 647, 2932, 2933, 4500, 4501, 4501.1, 4573.6, 4576, 4600, 5054 and 12020, Penal Code.

**3334.  Behavior Management Unit.**

**Subsections 3334(a) through 3334(b)(2)(C) remain unchanged.  Subsection (b) is shown to provide context.**

(b) Inmates may be referred to a Classification Committee for placement into the BMU for one or more of the following reasons:

**Subsection 3334(b)(3) is amended to read:**

(3)   Security Threat Group ~~Gang~~ Related Activity. STG related behavior which does not otherwise warrant placement into the STG Step Down Program (SDP).  STG related activities and behaviors meeting criteria for consideration of placement into the SDP are identified in Section 3378.4(a), STG Disciplinary Matrix.

**Existing subsection 3334(b)(3)(A) is repealed.**

(A)     ~~Any pattern, which consists of two or more documented behaviors which indicates an individual's participation in gang related activity may be grounds for placement in the BMU. Gang related activity is defined as behavior which indicates an inmate's participation in a prison gang, street gang, or disruptive group as defined in section 3000.~~

14

**Subsections 3334(c) through 3334(g)(1)(P) remain unchanged:**

**Subsection 3334(g)(1)(Q) is amended to read:**

(Q) Deodorant ~~Dorant~~/Antiperspirant (stick or roll on, must be clear and in clear container only), four.

**Subsections 3334(g)(1)(R) through 3334(k) remain unchanged.**

Note: Authority cited: Section 5058 and 5058.3, Penal Code. Reference: Sections 5054, Penal Code.

**3335.  Administrative Segregation.**

**Subsections 3335(a) through 3335(e)(1) remain unchanged.**

**Subsections 3335(e)(2) through 3335(e)(3) are amended to read:**

(2)  At intervals of not more than 180 days until a pending Division A-1, A-2, or B rules violation report is adjudicated, a court proceeding resulting from a referral to the district attorney for possible prosecution is resolved, or the STG ~~gang~~ validation investigation process is complete. Upon resolution of such matters, an ICC shall review the inmate's case within 14 calendar days.

(3)  At intervals of not more than 90 days until completion of the pending investigation of serious misconduct or criminal activity, excluding STG ~~gang~~ validation, or pending resolution of safety and security issues, or investigation of non-disciplinary reasons for segregation placement. Should the completed investigation result in the issuance of a Rules Violation Report and/or a referral to the district attorney for criminal prosecution, an ICC shall review the case, in accordance with the schedule set forth in subsections (1), (2), or (3) above.  Upon resolution of such matters, an ICC shall review the inmate's case within 14 calendar days.  At that time, if no further matters are pending, but continued segregation placement is required pending transfer to a general population, ICC reviews shall be at least every 90 days until transfer can be accomplished.

**Subsections 3335(f) through 3335(g) remain unchanged.**

**Subsection 3335(h) is amended to read:**

(g) Inmates in segregation who have approved Security Housing Unit (SHU) term status, but are still awaiting other processes (i.e., court proceedings, adjudication of other rule violation reports, STG ~~gang~~ validation, etc.), shall be reviewed by an ICC in accordance with the SHU classification process noted in subsection 3341.5(c)(9).

**Subsections 3335(i) through 3335(j) remain unchanged.**

Note: Authority cited: Section 5058, Penal Code. Reference: Sections 5054 and 5068, Penal Code; Wright v. Enomoto, (1976) 462 F Supp 397; and Toussaint v. McCarthy (9th Cir. 1986) 801 F2d 1080, cert. denied, 481 U.S. 1069.

**3341.5.  Segregated Program Housing Units.**

15

**Section 3341.5 Initial paragraph through subsection 3341.5(a)(2) remain unchanged. Subsection 3341.5(a) is shown to provide context.**

(a)  Protective Housing Unit (PHU).  An inmate whose safety would be endangered by general population placement may be placed in the PHU providing the following criteria are met:

**Subsection 3341.5(a)(3) is amended to read:**

(3)  The inmate is not documented as ~~a member or~~ an affiliate of a <u>STG-I</u> ~~prison gang~~.

**Subsections 3341.5(a)(4) through 3341.5(c)(1) remain unchanged.**

**Subsection 3341.5(c)(2) is amended to read:**

(2) Length of SHU confinement.  ~~Assignment to a SHU may for an indeterminate or a fixed period of time.~~

**Subsection 3341.5(c)(2)(A) is amended to read:**

(A) ~~Indeterminate~~ <u>Administrative</u> SHU Segregation.

**Subsection 3341.5(c)(2)(A)1. is amended to read:**

1.  An inmate assigned to a security housing unit on an ~~indeterminate~~ <u>administrative</u> SHU term, <u>who is not a validated STG affiliate,</u> shall be reviewed by a classification committee at least every 180 days for consideration of release to the general population.  An investigative employee shall not be assigned at these periodic classification committee reviews.

<u>A validated STG affiliate assigned to a security housing unit to participate in the Step Down Program (SDP) shall be reviewed by a classification committee on a schedule that is consistent with section 3378.3(b)(1) through 3378.3(b)(3) for consideration of program participation or movement to the next step of the SDP.</u>

**Subsection 3341.5(c)(2)(A)2. Is amended to read:**

2.   Except as provided at section 3335(a)~~, section 3378(d) and subsection (c)(5)~~, a validated <u>STG affiliate</u> ~~prison gang member or associate,~~ is deemed to be a severe threat to the safety of others or the security of the institution and will be placed in a SHU for an ~~indeterminate~~ <u>administrative</u> term~~.~~ <u>when the following criteria are met:</u>

**New Subsections 3341.5(c)(2)(A)2.i through 3341.5(c)(2)(A)2.vii are adopted to read:**

<u>i. STG-I Member:  upon initial validation and Institutional Classification Committee Confirmation.</u>

<u>ii. STG-I Associate:  as part of initial validation, source items include serious documented STG behavior or activity as listed in section 3378.4(a) STG Disciplinary Matrix and which is also identified in section 3341.5(c)(9) SHU Term Assessment Chart.</u>

16

iii. STG-I Associate:  the validated affiliate being found guilty of STG related behavior, as identified in section 3378.4(a) and subsequent to initial validation as follows:  1) two administrative rules violation reports within the preceding 12 months, or 2) one serious rules violation report.

iv. Inactive Status or Inactive-Monitored Status Affiliate:  the validated affiliate being found guilty of STG related behavior, as identified in section 3378.4(a) and subsequent to initial validation as follows:  1) two administrative rules violation reports within the preceding 12 months, or 2) one serious rules violation report.

v.  STG-II Member or Associate:   as part of initial validation, source items include two occurrences, both of which have occurred within four years of the validation date, of serious documented STG behavior or activity, as listed in section 3378.4(a) STG Disciplinary Matrix which are also identified in CCR Section 3341.5(c)(9) SHU Term Assessment Chart.

vi. STG-II Member or Associate:  the validated affiliate being found guilty of two serious STG related rules violation reports as listed in section 3378.4(a) STG Disciplinary Matrix and which are also identified in section 3341.5(c)(9) SHU Term Assessment Chart within the preceding four (4) years.

vii. Monitored Status or Dropout Status Affiliate:  the validated affiliate being found guilty of STG related behavior, as identified in section 3378.4(a) and subsequent to initial validation as follows:  1) two administrative rules violation reports within the preceding 12 months, or 2) one serious rules violation report.

**Subsections 3341.5(c)(2)(A)3. is amended to read:**

3. ~~Indeterminate~~ Administrative SHU terms suspended based solely on the need for inpatient medical or mental health treatment may be reimposed without subsequent misbehavior if the inmate continues to pose a threat to the safety of others or the security of the institution.

**Subsections 3341.5(c)(2)(B) through (c)(3)(C) remain unchanged.**

**Subsection 3341.5(c)(4) is amended to read:**

(4)  A validated STG affiliate ~~prison gang member or associate~~ shall be considered for release from SHU, as provided above, after the inmate is verified as a STG ~~gang~~ dropout through a debriefing process.

**Existing subsection 3341.5(c)(5) is repealed.**

~~(5)  As provided at section 3378(e), the Departmental Review Board (DRB) may authorize SHU release for prison gang members or associates categorized as inactive.  The term inactive means that the inmate has not been involved in gang activity for a minimum of six (6) years. Inmates categorized as inactive who are suitable for SHU release shall be transferred to the general population of a Level IV facility for a period of observation that shall be no greater than 12 months.  Upon completion of the period of observation, the inmate shall be housed in a facility commensurate with his or her safety needs.  In the absence of safety needs, the inmate shall be housed in a facility consistent with his or her classification score.  The DRB is authorized to retain an inactive gang member or associate in a SHU based on the inmate's past~~

~~or present level of influence in the gang, history of misconduct, history of criminal activity, or other factors indicating the inmate poses a threat to other inmates or institutional security.~~

**New subsection 3341.5(c)(5) is adopted to read:**

(5)  A validated STG affiliate shall be considered for release from SHU upon successful completion of steps 1 through 4 of the STG Step Down Program (SDP), pursuant to section 3378.3.  Successful inmates shall be transferred to the general population of a Level IV facility for a 12 month period of observation that shall be considered step 5 of the SDP.  Upon completion of step 5, the inmate shall be housed in a facility commensurate with his or her safety needs.  In the absence of safety needs, the inmate shall be housed in a facility consistent with his or her classification score.

**Existing subsection 3341.5(c)(6) is repealed.**

~~(6)  As provided at section 3378(f), an inmate categorized as inactive or validated as a dropout of a prison gang and placed in general population may be returned to segregation based upon one reliable source item identifying the inmate as a currently active gang member or associate of the prison gang with which the inmate was previously validated.  Current activity is defined as, any documented gang activity within the past six (6) years.  The procedures described in this Article shall be utilized for the removal of the inmate from the general population, the review of the initial segregation order, and all periodic reviews of the indeterminate SHU term.~~

**New subsection 3341.5(c)(6) is adopted to read:**

(6)  An affiliate on monitored status, inactive-monitored status, inactive status, or validated as a dropout of a STG and placed in general population may be returned to segregation based upon STG activity/behavior pursuant to section 3378.4(a) identifying the inmate as a currently active affiliate of the STG with which the inmate was previously validated.  Current activity is defined as any documented STG activity or behavior within the past four (4) years.  The procedures described in Sections 3335 through 3345, and in Article 10, Classification, shall be utilized for the removal of the offender from the general population, the review of the initial segregation order, and all periodic reviews of the STG SHU term.

**Subsection 3341.5(c)(7) is amended to read:**

(7)  ~~Determinate/Indeterminate~~ SHU Terms shall be served in a departmentally approved SHU or facility specifically designated for that purpose, except under those circumstances where the term may be served in ASU.  ~~Determinate/Indeterminate~~ SHU terms may also be served in secure inpatient medical or mental health settings, when deemed clinically necessary.

**Subsections 3341.5(c)(8) through 3341.5(c)(10)(B)4. remain unchanged.**

**New Subsections 3341.5(c)(11) through (c)(11)(C) are adopted to read.**

(11)  A validated STG affiliate who paroled or discharged from CDCR jurisdiction and returns to custody shall be addressed as follows:

(A) An inmate who previously paroled or was discharged with Maximum (MAX) custody while pending validation and is returned to CDCR's custody shall be placed in ASU.  The STG Investigator shall obtain the validation package to determine the status of validation and housing

18

at time of parole/discharge.  The validation process shall be completed, as necessary.  After review by the STG Unit Classification Committee is completed, the inmate will be referred to ICC for appropriate housing determination.

(B)  A validated STG affiliate who previously paroled or was discharged with MAX custody and is returned to CDCR's custody shall be placed in ASU and afforded all procedural safeguards for segregated inmates.  The STG Investigator will determine if there has been STG related behavior while the inmate was outside CDCR jurisdiction.  The inmate will be referred to the STG Unit Classification Committee in accordance with section 3376(d)(5) or ICC, as appropriate.

1.  While outside of CDCR jurisdiction, the inmate had no documented STG related behavior, ICC shall place the inmate at the beginning of the step that they were in at the time of parole/discharge.

2. While outside of CDCR jurisdiction, the inmate had a documented STG related conviction or good cause finding by a court, ICC shall place the inmate in Step 1 of the SDP.

(C)  A validated STG affiliate who previously paroled or was discharged and was designated either inactive, inactive-monitored, monitored, or dropout status and returns to the custody of the CDCR shall be assigned housing based upon current case factors.  The STG Investigator will determine if there has been STG related behavior while the inmate was outside CDCR jurisdiction.  The inmate will be referred to the STG Unit Classification Committee in accordance with section 3376(d)(5) or ICC, as appropriate.

ICC shall complete a case by case criteria review to determine if placement into the SDP-Step 1 is appropriate.  This review shall consist of commitment offense or good cause finding circumstances which were specifically related to the same STG with which the inmate was previously validated and occurred within the past four years from the date of arrest for this conviction or good cause finding.

Note: Authority cited: Section 5058, Penal Code. Reference: Sections 314, 5054 and 5068, Penal Code; Sandin v. Connor (1995) 515 U.S. 472; Madrid v. Gomez (N.D. Cal. 1995) 889 F.Supp. 1146; Toussaint v. McCarthy (9th Cir. 1990) 926 F.2d 800; Toussaint v. Yockey (9th Cir. 1984) 722 F.2d 1490; and Castillo v. Alameida, et al., (N.D. Cal., No. C94-2847).

**3375. Classification Process.**

**Subsections 3375(a) through 3375(f)(7) remain unchanged.**

**Subsection 3375(g) is amended to read:**

(g) Every decision of a classification committee shall be documented on a CDC Form 128-G, Classification Chrono.  The Security Threat Group Unit Classification Committee shall be documented on a CDCR Form 128-G1 (Rev. 11/13), Security Threat Group Unit Classification Committee – Results of Hearing, which is incorporated by reference.

**Subsections 3375(g)(1) through 3375(g)(5)(O) remain unchanged.**

**Subsection 3375(g)(5)(P) is amended to read:**

19

(P) Enemy, or STG gang or disruptive group concerns.

**Subsections 3375(g)(5)(Q) through 3375(l) remain unchanged.**

Note: Authority cited: Sections 5058 and 5058.3, Penal Code. Reference: Sections 1203.8, 3020, 5054, 5068 and 11191, Penal Code; Section 8550 and 8567, Government Code; and Governor's Prison Overcrowding State of Emergency Proclamation dated October 4, 2006; Wright v. Enomoto (1976) 462 F.Supp. 397; Stoneham v. Rushen (1984) 156 Cal.App.3d 302; and Castillo v. Alameida, et al., (N.D. Cal., No. C94-2847).

**3375.2. Administrative Determinants.**

**Subsections 3375.2(a) through 3375.2(b)(10) remain unchanged. Subsection 3375.2(b) is shown to provide context.**

(b) The following three-letter codes are used to indicate those administrative or irregular placement conditions known as administrative determinants, which may be imposed by departmental officials to override the placement of an inmate at a facility according to his/her placement score.

**Existing Subsection 3375.2(b)(11) is relocated to (b)(27) (see below).**

**Existing Subsection 3375.2(b)(12) is renumbered to (b)(11) and amended to read:**

(11<s>2</s>) INA. Documentation establishes that the inmate's inactive STG gang status may requires special attention or placement considerations.

**New subsection 3375.2(b)(12) is adopted to read:**

(12) IMO. Inactive-Monitored. Documentation establishes that the inmate was released from SHU concurrent with implementation of the STG SDP through a Departmental Review Board hearing and requires special attention or placement considerations.

**Existing Subsections 3375.2(b)(13) through 3375.2(b)(15) remain unchanged.**

**New Subsection 3375.2(b)(16) is adopted to read:**

(16) MON. Monitored. Documentation establishes that the offender's monitored status reflects completion of the STG SDP and requires special attention or placement considerations.

**New subsections 3375.2(b)(17) through 3375.2(b)(26) are renumbered and relocated from existing subsections 3375.2(b)(16) through 3375.2(b)(25) respectively as follows:**

(17<s>6</s>) OUT. Inmate requires placement at a specific facility for an out-to-court appearance. This factor shall also be used when a releasing authority appearance is nearing.

(18<s>7</s>) POP. Shall be used only by a CSR to indicate that no beds presently exist at a facility with a security level that is consistent with the inmate's placement score.

(19<s>8</s>) PRE. The short time remaining to serve limits or otherwise influences placement or program options for the inmate.

20

(20~~19~~) PSY. Inmate's psychological condition requires special treatment or may severely limit placement options.This factor shall also be used for those inmates who are designated as Category B.

(21~~0~~) PUB. Shall be used only by a CSR to indicate an inmate is identified as a Public Interest Case as defined in section 3000.

(22~~1~~) REN. Inmate is currently endorsed to or requires transfer to a Reentry Hub program and a Reentry Hub program is not available at a facility with a security level which is consistent with the inmate's placement score.

(23~~2~~) SCH. Inmate is involved in an academic program which is not available at a facility with a security level that is consistent with his/her placement score.

(24~~3~~) SEC. Shall be used only by a CSR to indicate that the inmate has been designated as a Security Concern by an ICC and requires Close B Custody.

(25~~4~~) SEX. Inmate has a prior incidence of rape, oral copulation, sodomy, or a lewd and lascivious act which requires restricted custody or placement.

(26~~5~~) SOR. Inmate's bisexual or homosexual orientation may require special placement.

**New Subsection 3375.2(b)(27) is relocated from existing Subsection (b)(11) and amended to read:**

(27) ~~(11)~~  STG. ~~GAN.~~   Documentation establishes that the Inmate's <u>STG designation may</u> ~~gang membership or association~~ requires special attention or placement consideration.

**Existing Subsections 3375.2(b)(26) through (b)(29) are relocated and renumbered to (b)(28) through (b)(31) respectively and remain unchanged.**

(28~~6~~) TIM. Inmate's time to serve is long, requiring placement at a facility with a security level higher than that which is consistent with his/her placement score.

(29~~7~~) VIO. Inmate has a current or prior conviction for a violent felony, or a sustained juvenile adjudication including, but not limited to, those listed under Penal Code section 667.5(c), which, as determined by the CSR, requires placement in a facility with a higher security level than that indicated by his/her placement score.

**Subsections 3375.2(b)(29)(A) through (C) (formerly subsections 3375.2(b)(27)(A) through (C)) remain unchanged.**

(30~~28~~) VOC. Inmate is involved in a Career Technical Education program, also referred to as a vocational program, which is not available at a facility with a security level which is consistent with the inmate's placement score.

(31~~29~~) WOR. Inmate has a work skill in a critical trade which warrants special placement consideration.

Note: Authority cited: Sections 5058 and 5058.3, Penal Code. Reference: Sections 3450, 5054 and 5068, Penal Code; Sandin v. Connor (1995) 515 U.S. 472; Madrid v. Gomez (N.D. Cal. 1995) 889 F.Supp. 1146; Wright v. Enomoto (N.D. Cal. 1976) 462 F. Supp. 397; and Stoneham v. Rushen (1984) 156 Cal. App. 3d 302.

**3375.3. CDCR Classification Score Sheet, CDCR Form 839, Calculation.**

**Section 3375.3 Initial paragraph through subsection 3375.3(a)(4)(A)10. remain unchanged.**

**Subsection 3375.3(a)(4)(B) is amended to read:**

(B) Method of verification code (Box 38). Apply the code that is most indicative of <u>STG</u> ~~gang~~ activity. Enter the appropriate alpha code in Box 38:

**Subsections 3375.3(a)(4)(B)1. through (a)(4)(B)10. are amended to read:**

1.      Code A - Self admission.  Staff shall document information about the inmate/parolee's self-admission and specific involvement with the <u>STG/street</u> gang.  Staff shall document and disclose this information to the inmate/parolee in a written form that would not jeopardize the safety of any person or the security of the institution.

2.      Code B - Tattoos and symbols. Body markings, hand signs, distinctive clothing, graffiti, etc., which have been ~~identified by gang investigators~~ <u>certified by CDCR pursuant to Section 3378.1,</u> as being used by and distinctive to specific <u>STGs/street</u> gangs. Staff shall describe the tattoo or symbol ~~and articulate why it is believed that the tattoo is used by and distinctive of gang association or membership~~ <u>in detail</u>.  Staff shall document and disclose this information to the inmate/parolee in a written form that would not jeopardize the safety of any person or the security of the institution.

3. Code C - Written Material.  Any material or documents evidencing <u>STG</u> ~~gang~~ activity such as the membership or enemy lists, <u>roll call lists,</u> constitutions, organizational structures, codes; training material, etc., of specific <u>STGs</u> ~~gangs~~.  ~~Staff shall articulate why, based on either the explicit or coded content, the written material is reliable evidence of association or membership with the gang.~~  Staff shall document and disclose this information to the inmate/parolee in a written form that would not jeopardize the safety of any person or the security of the institution

4. Code D - Photographs. Individual or group photographs with <u>STG</u> ~~gang~~ connotations such as those which include insignia, <u>certified</u> symbols, or validated <u>STG</u> ~~gang~~ affiliates. The date of the photograph shall be reasonably ascertained <u>to be no older than four (4) years in order to be considered for a method of verification code.</u> ~~prior to any photo being relied upon for inclusion as a source item. No photograph shall be considered for validation purposes that is estimated to be older than six (6) years.~~ Any photograph being utilized as a source item that depicts STG <u>affiliates</u> ~~gang members~~ shall be required to have at least one of the individuals previously validated by the department, or be validated by the department within six (6) months of the photograph's established or estimated date of origin.  Staff shall document and disclose this information to the inmate/parolee in a written form that would not jeopardize the safety of any person or the security of the institution.

5. Code E – Staff Information.  Documentation of staff's visual or audible observations which reasonably indicate <u>STG</u> ~~gang~~ activity <u>as described in Subsections 3314 (a)(3)(L) and (M),</u>

Administrative Rules Violations, STG Contraband and Behavior; or Subsections 3315 (a)(3)(Z) and (AA), Serious Rules Violations, STG Violent, Disruptive, or Controlling Behavior. ~~Staff shall articulate the basis for determining the content or conduct at issue is STG gang related.~~ Staff shall document and disclose this information to the inmate/parolee in a written form that would not jeopardize the safety of any person or the security of the institution.

6. Code F - Other agencies. Information evidencing STG ~~gang activity~~ affiliation provided by other agencies including, but not limited to, police reports, crime reports, or arrest reports evidencing STG conduct, which have not been submitted, considered, and incorporated within received court documents. ~~Verbal~~ Any information from another agency shall be documented by the staff person who receives such information, citing the source and validity of the information. Staff shall document and disclose this information to the inmate/parole in a written form that would not jeopardize the safety of any person or the security of the institution.

7. Code G - Association. Information related to the inmate's association with validated STG ~~gang~~ affiliates. The association shall be more than a chance encounter or an innocuous association, but rather, a pattern or history of encounters that involve STG behavior and/or an occurrence of conducting STG related business. Direct contact with a validated STG affiliate is not necessary to show this association. ~~Information including addresses, names, identities and reasons why such information is indicative of association with a prison gang or disruptive group.~~ Staff shall document and disclose this information to the inmate/parolee in a written form that would not jeopardize the safety of any person or the security of the institution.

8. Code H - Offenses. Where t~~T~~he circumstances of an offense indicates that the offense was committed for the benefit of, at the direction of, or in association with an STG ~~evidence gang activity such as an offense being between rival gangs, the victim is a verified gang affiliate, or the inmate's crime partner is a verified gang affiliate. Staff shall articulate why an offense is gang related. Multiple sources of information relative to a single incident or offense will be considered one source of validation.~~ Staff shall document and disclose this information to the inmate/parolee in a written form that would not jeopardize the safety of any person or the security of the institution.

9. Code I - Legal documents. Probation officer's report, ~~or~~ court transcripts, or other legal documents evidencing STG ~~gang~~ activity. Staff shall assure the document containing this information is disclosed to the inmate/parolee in written form that would not jeopardize the safety of any person or the security of the institution.

10. Code J - Communications. Documentation of ~~telephone~~ conversations, conversations between offenders/others ~~inmates~~, mail, greeting cards, notes, or other communication, ~~including~~ which include coded or explicit messages evidencing STG ~~gang~~ activity. ~~Staff shall articulate why, based on either the explicit or coded content, the communication is reliable evidence of association or membership with the STG gang.~~ Staff shall document and disclose this information to the inmate/parolee in a written form that would not jeopardize the safety of any person or the security of the institution.

**Subsections 3375.3(a)(5) through 3375.3(g)(2) remain unchanged.**

Note: Authority cited: Sections 5058 and 5058.3, Penal Code. Reference: Sections 5540, 5054 and 5068, Penal Code; Wright v. Enomoto (1976) 462 F Supp. 397; Stoneham v. Rushen (1984) 156 Cal. App. 3d 302; and Castillo v. Alameida, et al. (N.D. Cal., No. C94-2847).

**3376. Classification Committees.**

**Subsections 3376(a) through 3376(c)(3)(D) remain unchanged. Subsection 3376(c) is shown to provide context.**

(c) Composition of committees:

**New subsections 3376(c)(4) through 3376(c)(4)(D) are adopted to read:**

 (4) Security Threat Group (STG) Unit Classification Committee shall consist of:

(A) Captain (Chairperson).

(B) Correctional Counselor II (Recorder).

(C) Correctional Counselor I.

(D) Other staff as required.

**Subsections 3376(d) through 3376(d)(3)(E) remain unchanged. Subsections 3376(d) and (d)(3) are shown to provide context.**

(d) Classification committee functions:

(3) Institution and Facility Classification Committees shall:

**New subsections 3376(d)(3)(F) through 3376(d)(3)(F)2. are adopted to read:**

(F) For validated STG cases:

1.  Review the Validation Package and the CDCR Form 128-G1 (Rev. 11/13), Security Threat Group Unit Classification Committee-Results of Hearing, which is incorporated by reference.

2.  Determine a validated STG inmate's housing and program needs.

**Subsection 3376(d)(4) remains unchanged.**

**New subsections 3376(d)(5) through 3376(d)(5)(D) are adopted to read:**

 (5) Security Threat Group Unit Classification Committee shall:

(A) Review all STG validation packages for accuracy, compliance, and to ensure due process requirements have been met.

(B) Review Dropout status affiliate's new disciplinary behavior for documented nexus to STG behavior as noted in the CDCR Form 115 (Rev. 07/88) Rules Violation Report, which is incorporated by reference, or other source items of intelligence.

(C) Review information or intelligence received from outside law enforcement agencies or which occurred outside CDCR jurisdiction to ensure disciplinary processes or formal documentation were applied, when appropriate.

24

(D) Refer validated STG cases to ICC for placement consideration in the Step Down Program.

Note: Authority cited: Sections 3303 and 3309, Welfare and Institutions Code; and Sections 5058 and 6252, Penal Code. Reference: Sections 2933, 5054 and 5068, Penal Code.

**3376.1. Departmental Review Board.**

**Section 3376.1 Initial paragraph through subsection 3376.1(d)(2) remain unchanged. Subsection 3376.1(d) is shown to provide context.**

(d) Referrals shall be made to the DRB when:

**Subsection 3376.1(d)(3) is amended to read:**

(3)  An institution head believes a DRB level decision for placement of an inmate is required because of an unusual threat to the safety of persons or public interest in the case; e.g., commuted or modified death sentence ~~or classification of an inactive gang member or associate. Subsequent DRB reviews of the continued placement of inactive gang members or associate, the DRB is authorized to schedule an earlier review of the placement if the DRB determines that it is reasonable to expect that release from SHU will be granted in less than two years.~~

**Subsections 3376.1(d)(4) through 3376.1(d)(7) remain unchanged.**

**New subsections 3376.1(d)(8) and (d)(9) are adopted to read:**

(8) When an inmate has completed Steps 1 – 4 of the Step Down Program and the institution head believes a transfer to an alternate Level IV institution or out-of-level placement is warranted, the institution head will refer the case to the DRB for decision.

(9) When the UCC has recommended that an inmate be validated as a STG-I member, the ICC shall ensure there is sufficient evidence to warrant validation at the level of member. ICC will review the validation documents and all other case factors in their determination of appropriate housing. Any disagreement by the ICC with a STG I member's validation and/or placement into the SDP shall be referred to the DRB for resolution.

**Subsection 3376.1(e) remains unchanged.**

Note: Authority cited: Section 5058, Penal Code. Reference: Sections 5054, 5068 and 11191, Penal Code; Section 8550 and 8567, Government Code; Governor's Prison Overcrowding State of Emergency Proclamation dated October 4, 2006; Sandin v. Connor (1995) 515 U.S. 472; and Madrid v. Gomez (N.D. Cal. 1995) 889 F.Supp. 1146.

**3377.2. Criteria for Assignment of Close Custody.**

**Subsections 3377.2(a) through 3377.2(b)(4)(C) remain unchanged. Subsection 3377.2(b) is shown to provide context.**

(b) Close Custody Case Factor Criteria:

**Existing subsection 3377.2(b)(5) is repealed.**

~~(5)   Inactive Prison Gang Member or Associate. An inmate being reduced from Maximum Custody due to reclassification as an inactive prison gang member or associate shall serve at least 1 year at Close B Custody.~~

**New subsection 3377.2(b)(5) is adopted to read:**

(5)   A validated inmate currently housed in a security housing unit and who has their custody reduced from Maximum (MAX) due to reclassification as Inactive, Monitored, or Inactive-Monitored shall serve one year at Close B custody, unless other case factors require a more restrictive designation of Close A.   Under no circumstances shall a validated affiliate be released/housed in a minimum security facility or Level I placement.

**Subsections 3377.2(b)(6) through 3377.2(c)(5) remain unchanged.**

Note: Authority cited: Section 5058, Penal Code. Reference: Sections 5054 and 5068, Penal Code; Americans With Disability Act (ADA), 42 U.S.C. § 12131, et seq.; and Pennsylvania Department of Corrections v. Yeskey (1998) 524 U.S. 206.

**3378. ~~Documentation of Critical Case Information~~ Security Threat Group Identification, Prevention, and Management.**

*Notice to Printer: Delete the pictures of the CDC Forms 812 (Rev. 08/01), Notice of Critical Case Information- Safety of Persons (Non-Confidential Enemies); CDC 812-A (9/92), Notice of Critical Information – Prison Gang Identification; CDC 812-B (9/92), Notice of Critical Information – Disruptive Group Identification; and 812-C (Rev. 8/01), Notice of Critical Information – Confidential Enemies*

**Subsection 3378(a) is amended to read:**

(a) Any information regarding an offender ~~inmate/parolee~~ which is or may be critical to the safety of persons inside or outside an institution shall be documented as required below on a CDCR Form 812 (Rev. 11/13 ~~8/01~~), Notice of Critical Case Information -Safety of Persons (Nonconfidential Enemies), which is incorporated by reference; a ~~CDCR Form 812-A (Rev. 9/92), Notice of Critical Information — Prison Gangs Identification; CDCR Form 812-B (Rev. 9/92), Notice of Critical Information — Disruptive Group Identification;~~ and CDC Form 812-C (Rev. 8/01), Notice of Critical Information-Confidential Enemies. The CDCR Form 812, ~~812-A, 812-B,~~ and CDC Form 812-C and all documents referred to on the forms shall be filed in the central file of each identified offender ~~inmate/parolee~~. Any confidential material affecting the critical case factors of an offender ~~inmate/parolee~~ shall conform to the provisions of section 3321. Entries on these forms shall not be a substitute for detailed documentation required elsewhere in the central file.

**Subsections 3378(b) through 3378(b)(3) are amended to read:**

(b) A CDCR Form 812, and when applicable a CDC Form 812-C, shall be completed for each newly committed or returned offender ~~inmate/parolee~~.

26

(1) The CDCR Form 812 and CDC Form 812-C shall be updated as any critical information becomes known and is documented in the offender's inmate/parolee's central file. The forms shall also be reviewed and updated at the time of any change in the offender's inmate/parolee's status or placement.

(2) Any offender inmate/parolee who claims enemies shall provide sufficient information to positively identify the claimed enemy. Any offender inmate/parolee identified as an enemy shall be interviewed unless such interview would jeopardize an investigation or endanger any person. The results of the interview or investigation which supports, verifies or disproves the information shall be documented on a CDC Form 128-B, General Chrono.

(3) Notations on the CDCR Forms 812 and CDC Form 812-C, or absence thereof, shall not be the sole basis for a staff decision or action which may affect the safety of any person.

**Subsection 3378(c) remains unchanged.**

**Subsections 3378(c)(1) through 3378(c)(5) are repealed.**

(1) CDC Form 812-A or B shall be completed if an inmate/parolee has been verified as a currently active member/associate, inactive member/associate or dropout gang (prison gang or disruptive group) as defined in section 3000. Current activity is defined as any documented gang activity within six (6) years consistent with section 3341.5(c)(5).

(2) Information entered onto the CDC Form 812-A or B shall be reviewed and verified by a gang investigator to ensure that the identification of an inmate/parolee as a currently active gang member or associate is supported by at least three independent source items with a combined total of 10 points or more in the inmate/parolee's central file. The independent source items must contain factual information or, if from a confidential source, meet the test of reliability established in section 3321. The verification of an inmate/parolee identified as a gang dropout shall require a formal debriefing conducted or supervised by a gang investigator.

(3) A member is an inmate/parolee or any person who has been accepted into membership by a gang. This identification requires at least three (3) independent source items of documentation indicative of actual membership. Validation of an inmate/parolee or any person as a member of a prison gang shall require at least one (1) source item be a direct link to a current or former validated member or associate of the gang, or to an inmate/parolee or any person who is validated by the department within six (6) months of the established or estimated date of activity identified in the evidence considered.

(4) An associate is an inmate/parolee or any person who is involved periodically or regularly with members or associates of a gang. This identification requires at least three (3) independent source items of documentation indicative of association with validated gang members or associates. Validation of an inmate/parolee or any person as an associate of a prison gang shall require at least one (1) source item be a direct link to a current or former validated member or associate of the gang, or to an inmate/parolee or any person who is validated by the department within six (6) months of the established or estimated date of activity identified in the evidence considered.

(5) A dropout is an inmate/parolee who was either a gang member or associate and has discontinued gang affiliation. This identification requires the inmate/parolee to successfully complete the debriefing process.

Existing Subsections 3378(c)(6) through 3378(c)(6)(G) are relocated and renumbered to new subsection 3378.2(c) through 3378.2(c)(7).

Subsection 3378(c)(7) is repealed.

~~(7) The CDC Forms 812-A and 812-B shall be reviewed by a classification committee at each annual hearing and upon any review for transfer consideration. This shall be documented on a CDC Form 128-G (Rev.10/89), Classification Chrono. Questionable gang identifications, notations, or new information shall be referred to a gang investigator for investigation.~~

Subsections 3378(c)(8) through 3378(c)(8)(M) are repealed.

~~(8) The determination of a gang identification shall reference each independent source item in the inmate/parolee's central file. The sources shall be based on the following criteria:~~

~~(A) Self admission. Staff shall document information about the inmate/parolee's self admission and specific involvement with the gang. Staff shall document and disclose this information to the inmate/ parolee in a written form that would not jeopardize the safety of any person or the security of the institution.~~

~~(B) Tattoos and symbols. Body markings, hand signs, distinctive clothing, graffiti, etc., which have been identified by gang investigators as being used by and distinctive to specific gangs. Staff shall describe the tattoo or symbol and articulate why it is believed that the tattoo or symbol is used by and distinctive of gang association or membership. Staff shall document and disclose this information to the inmate/parolee in a written form that would not jeopardize the safety of any person or the security of the institution.~~

~~(C) Written material. Any material or documents evidencing gang activity such as the membership or enemy lists, constitutions, organizational structures, codes, training material, etc., of specific gangs. Staff shall articulate why, based on either the explicit or coded content, the written material is reliable evidence of association or membership with the gang. Staff shall document and disclose this information to the inmate/parolee in a written form that would not jeopardize the safety of any person or the security of the institution.~~

~~(D) Photographs. Individual or group photographs with gang connotations such as those which include insignia, symbols, or validated gang affiliates. The date of a photograph shall be reasonably ascertained prior to any photo being relied upon for inclusion as a source item. No photograph shall be considered for validation purposes that is estimated to be older than six (6) years. Any photograph being utilized as a source item that depicts gang members and/or associates shall require that at least one of the individuals be previously validated by the department, or validated as a member or associate of the gang by the department within six (6) months of the photograph's established or estimated date or origin. Staff shall document and disclose this information to the inmate/parolee in a written form that would not jeopardize the safety of any person or the security of the institution.~~

~~(E) Staff information. Documentation of staff's visual or audible observations which reasonably indicate gang activity. Staff shall articulate the basis for determining the content or conduct at issue is gang related. Staff shall document and disclose this information to the inmate/parolee in a written form that would not jeopardize the safety of any person or the security of the institution.~~

~~(F) Other agencies. Information evidencing gang affiliation provided by other agencies. Verbal information from another agency shall be documented by the staff person who receives such information,~~

28

~~citing the source and validity of the information. Staff shall document and disclose this information to the inmate/parolee in a written form that would not jeopardize the safety of any person or the security of the institution.~~

~~(G) Association. Information related to the inmate/parolee's association with validated gang affiliates. Information including addresses, names, identities and reasons why such information is indicative of association with a prison gang or disruptive group. Staff shall document and disclose this information to the inmate/parolee in a written form that would not jeopardize the safety of any person or the security of the institution.~~

~~(H) Informants. Documentation of information evidencing gang affiliation from an informant shall indicate the date of the information, whether the information is confidential or nonconfidential, and an evaluation of the informant's reliability. Confidential material shall also meet the requirements established in section 3321. Staff shall articulate how the information specifically relates to the~~

~~inmate's involvement with the gang as a member or associate. The information may be used as a source of validation if the informant provides specific knowledge of how he/she knew the inmate to be involved with the gang as a member or associate. Multiple confidential sources providing information regarding a single gang related incident or behavior shall constitute one (1) source item. Exclusive reliance on hearsay information provided by informants will not be used for validation purposes. Staff shall document and~~

~~disclose this information to the inmate/parolee in a written form that would not jeopardize the safety of any person or the security of the institution.~~

~~(I) Offenses. Where the circumstances of an offense evidence gang affiliation such as where the offense is between rival gangs, the victim is a verified gang affiliate, or the inmate/parolee's crime partner is a verified gang affiliate. Staff shall articulate why an offense is gang related. Multiple sources of information relative to a single incident or offense will be considered one (1) source of validation. Staff shall document and disclose this information to the inmate/parolee in a written form that would not jeopardize the safety of any person or the security of the institution.~~

~~(J) Legal documents. Probation officer's report or court transcripts evidencing gang activity. Staff shall assure the document containing this information is disclosed to the inmate/parolee in a the security of the institution.~~

~~(K) Visitors. Visits from persons who are documented as gang "runners", or community affiliates, or members of an organization which associates with a gang. Staff shall articulate the basis for determining that the relationship between the visitor and inmate is gang related in nature or that the visitor and inmate engaged in a gang related discussion or gang conduct. Staff shall articulate the basis for identifying the visitor as associated with the gang. Staff shall document and disclose this information to the inmate/parolee in a written form that would not jeopardize the safety of any person or the security of the institution.~~

~~(L) Communications. Documentation of telephone conversations, conversations between inmates, mail, notes, greeting cards, or other communication, including coded messages evidencing gang activity. Staff shall articulate why, based on either the explicit or coded content, the communication is reliable evidence of association or membership with the gang. Staff shall document and disclose this information to the inmate/parolee in a written form that would not jeopardize the safety of any person or the security~~
~~of the institution.~~

~~(M) Debriefing reports. Documentation resulting from the debriefing required by (c)(2), above. Only information referencing specific gang related acts or conduct shall be considered as a source item. Multiple sources of information relative to a single gang related offense or activity shall be considered a single source of validation. Staff shall document and disclose this information to the inmate/parolee in a written form that would not jeopardize the safety of any person or the security of the institution.~~

29

**Subsections 3378(d) through 3378(h) are repealed.**

(d) An inmate housed in the general populations as a gang member or associate may be considered for review for inactive status when the inmate has not been identified as having been involved in gang activity for a minimum of two (2) years. Verification of an inmate's inactive status shall be approved or rejected by the OCS, chief or a designee. The approval or rejection shall be forwarded for placement in the inmate's central file. The Institution Classification Committee shall review and consider this determination at the next hearing and upon review for transfer consideration.

(e) An inmate housed in a security housing unit (SHU) as a gang member or associate may be considered for review of inactive status by the Department Review Board when the inmate has not been identified as having been involved in gang activity for a minimum of six (6) years. Verification of an inmate's inactive status shall be approved or rejected by the chief, OCS, or a designee. The approval or rejection shall be forwarded for placement in the inmate's central file.

(f) A gang member or associate, who is categorized as inactive or validated as a dropout of a prison gang and released from a SHU, may be removed from the general population or any other placement based upon one reliable source item identifying the inmate as an active gang member or associate of prison gang with which the inmate was previously validated. The source item must identify the inmate as a gang member or associate based on information developed after his or her release from SHU. The source item need not be confidential, but must meet the test of reliability established at section 3321.

(g) The procedures relating to the initial validation or rejection of gang members or associates as described in this section shall be followed when reviewing the present status of an inactive gang member or associate. Verification of an inmate's/parolee's active status shall be approved or rejected by the chief, OCS, or a designee. This determination shall be forwarded for placement in the inmate's/parolee's central file.

(h) A classification committee is authorized to return an inmate to a SHU based upon the restoration of the inmate's gang status and a determination that the inmate's present placement endangers institutional security or presents a threat to the safety of others. As provided at section 3341.5, placement in a SHU requires approval by a classification staff representative.

Note: Authority cited: Section 5058, Penal Code. Reference: Sections 5054 and 5068, Penal Code; Sandin v. Connor (1995) 515 U.S. 472; Madrid v. Gomez (N.D. Cal. 1995) 889 F.Supp. 1146; Toussaint v. McCarthy (9th Cir. 1990) 926 F.2d 800; Toussaint v. Yockey (9th Cir. 1984) 722 F.2d 1490; and Castillo v. Alameida, et al. (N.D. Cal., No. C94-2847).

**Existing Section 3378.1, Debriefing Process, is relocated and renumbered to new section 3378.5.**

**New Section 3378.1 title is adopted to read:**

**3378.1. Security Threat Group Certification Process.**

**New subsection 3378.1 Initial paragraph is adopted to read:**

The California Department of Corrections and Rehabilitation (CDCR) prohibits offenders from creating, promoting, or participating in any Security Threat Group (STG). Any offender

engaging in STG related behavior may be subject to criminal prosecution, in addition to any administrative sanctions imposed as a result of CDCR's disciplinary process.

**New subsection 3378.1(a) through 3378.1(a)(2) are adopted to read:**

(a) Definitions.

(1) Certification of an STG-I or recognition of an STG-II means the formal designation of a group or gang as a security threat group based upon a STG Threat Assessment conducted by the Office of Correctional Safety (OCS).  Prison gangs, disruptive groups and/or street gangs may be reviewed, categorized, and certified/recognized as a STG.  Initial certification will be based upon the documented severity of the threat to the security of the institution and safety of staff and offenders.

(2) STG Threat Assessment means an official assessment conducted by the OCS for use in the STG certification process.  This assessment will specifically identify the reason a STG, based on documented evidence of violence, threat of violence and/or other serious STG behaviors, poses an immediate clear and present danger to the safety of any person or the security of the prison.

**New subsections 3378.1(b) through 3378.1(b)(12) are adopted to read:**

(b) Security Threat Group Certification Criteria includes the following:

(1) Information from any Federal, State, County, or City correctional or law enforcement agency, identifying the propensity for violence or disruptive nature of the potential STG group being considered for certification.

(2)  Consideration with regard to whether the group meets the definition of a STG as defined in section 3000.

(3)  History of STG behavior in the community.

(4)  Evidence that the group presents a potential threat to the security of the institution and safety of staff and offenders.

(5) History of threatening behavior to staff or offenders safety involving such acts as riots, group disturbances, possession or manufacture of weapons, assault/battery, trafficking of narcotics, extortion and/or coercion of other individuals or groups.

(6)  Documentation of violent and/or illegal activities which may also include planning, organizing, threatening, financing, soliciting, or committing unlawful acts.

(7)  Group evolution, structure, formalized procedures or bylaws, and/or membership characteristics.

(8)  Information concerning group meetings and membership criteria.

(9)  Chronology of events or other information evidencing a threat to institutional security or safety of staff and offenders through group activities, associations, and potential security alignments.

31

(10) Tattoo, symbols, and graffiti documentation.

(11) Group association evidence, including offender and staff interviews.

(12) Available information concerning group philosophy and affiliations.

**New subsections 3378.1(c) through 3378.1(c)(2) are adopted to read:**

(c) Security Threat Group Designation Levels.

(1) Security Threat Group-I consists of groups, gangs, and/or historically based prison gangs that the CDCR has determined to be the most severe threat to the security of the institutions and communities based on a history and propensity for violence and/or influence over other groups. Based upon their individual threat, clandestine operations, and/or influence over other STG affiliates, inmates who are validated as STG-I members will be placed in the Step Down Program (SDP) and housed in a SHU based solely upon their validation. Validated STG-I associates will normally remain housed in general population, or similar specialized housing, unless confirmed STG behavior, as defined in section 3000, are present. If these behaviors are present, the STG-I associate will be considered by the Institution Classification Committee (ICC) for placement into the SDP pursuant to section 3378.4.

(2) Security Threat Group-II consists of other groups or gangs such as street gangs or disruptive groups comprised of members and associates who may be determined to be in a subservient role to the more dominant STG-I groups. Validated STG-II members or associates will remain housed in general population, or similar specialized housing, unless two or more occurrences of serious STG behaviors and which are also reflected in section 3341.5(c)(9) SHU Term Assessment Chart, are present. If there is confirmed STG behavior present, the STG-II member or associate will be considered by ICC for placement into the SDP pursuant to section 3378.4. Groups identified as STG-II are not required to be certified, as described in this section.

**New subsections 3378.1(d) through (d)(3)(C) are adopted to read:**

(d) Requests for Certification of a Group at the STG-I level shall include the following:

(1) Staff shall prepare a Security Threat Group Certification Worksheet, which is incorporated by reference, requesting that a STG Threat Assessment be initiated of the identified group. The completed document shall be routed through the chain of command prior to submission to OCS.

(2) The Chief, OCS shall assign staff to complete an official STG Threat Assessment and determine whether the group should be recommended for certification as a STG-I. If recommended for STG-I certification, a STG Administrative Directive will be prepared and routed to the Secretary, CDCR, for review and approval/disapproval.

(3) Re-certification of STG-I Designations.

(A) The CDCR shall review its certification of STG-I designations at least every four years utilizing criteria in accordance with section 3378.1(b).

(B) Information used in the re-certification process shall be no more than four years old.

32

(C) OCS shall document the results of the re-certification review on a STG Administrative Directive and route to the Secretary, CDCR, and shall request either re-certification or decertification, based upon the level of threat and STG activity noted from the group during the previous four years.

**New subsections 3378.1(e) through (e)(2) are adopted to read:**

(e) Requests for Recognition of a Group at the STG-II level shall include the following:

(1) Institution Staff or Division Staff shall prepare a memorandum requesting that a STG Threat Assessment be initiated of the identified group.  The memorandum shall be routed through the chain of command prior to submission to OCS.

(2) The Chief, OCS shall assign staff to complete a review of the request.  The Chief, OCS, shall review all of the information to approve or deny the request for recognition as a STG-II. The Chief, OCS shall sign the memo.

**New subsection 3378.1(f) through (f)(4) are adopted to read:**

(f) Certification of STG Related Symbols: The process staff will utilize to request certification of a STG related sign or symbol is:

(1) The Hiring Authority/designee of the requesting institution, parole region, or OCS unit, shall seek certification of a sign/symbol by forwarding a written request to OCS.

(2)  The request must detail the reason certification of the sign/symbol is warranted and must include:

(A)  Description, drawing, photo of sign or symbol.

(B)  Translation or meaning of the sign or symbol to the specific STG.

(C)  Relevance of the sign or symbol to the specific STG.

(D)  Evidence the sign or symbol has been adopted/accepted by the specific STG.

(E)  Means by which the information was obtained.

(F)   A listing of all corresponding documentation indicative of the sign or symbol being recognized by the specific STG.

(3)  The Chief, OCS, or designee shall review the submitted documents and approve/deny the request.

(A)  If the certification request is approved, dissemination of the newly certified sign or symbol will be made to DAI Wardens, OCS Agents, the inmate population, and all other interested parties.

(B) Should the request be denied, a response reflecting the details of the denial will be forwarded to the Hiring Authority.

33

(4)  The CDCR shall review its certification of STG related signs and symbols at least every four years utilizing criteria outlined in this section.

Note: Authority cited: Section 5058, Penal Code. Reference: Sections 5054 and 5068, Penal Code.

**Existing section 3378.2, Advisement of Rights During Debriefing, is relocated and renumbered to new section 3378.6.**

**New section 3378.2 title is adopted to read:**

**3378.2. Security Threat Group Validation Process.**

**New section 3378.2 Initial paragraph is adopted to read:**

The formal and objective process for identifying and documenting Security Threat Group (STG) affiliates.  Validation is the term used to describe the quality control and due process review of STG identifications.  The validation process is a strategy for identifying and documenting STG Members, Associates, Suspects, or Dropouts as defined in section 3000.

**New subsection 3378.2(a) is adopted to read:**

(a) STG Coordinators/Investigators, the Office of Correctional Safety (OCS), and the STG Unit Classification Committee shall be responsible to initiate, investigate, and affirm/reject the validation of an STG affiliate.

**New subsection 3378.2(b) is adopted to read:**

(b) The validation process delineates the formal objective criteria utilized by an STG Investigator to determine an individual's affiliation with a certified or recognized STG.  Each factor is determined by a weighted point system in order to conclude whether the information taken as a whole is sufficient to establish a nexus to the STG.

Validation process for identifying and documenting STG members, associates, or suspects, which are defined as follows:

Member:  Any offender or any person who, based on documented evidence, has been accepted into membership by a STG.  STG members will be identified by the STG Investigator through the validation process, reviewed by OCS, and affirmed by the STG Unit Classification Committee.

Initial Validation of an offender as a member requires at least 3 independent source criteria items with a combined value of 10 points or greater coupled with information/activity indicative of a member.

Validation of an offender as a member of a STG-I shall also require that at least one of the criteria source items be a direct link to a current or former validated member or associate of the STG, or to an offender or any person who is validated by the Department within six months of the established or estimated date of activity identified in the evidence considered.

An upgrade from associate to member requires at least three (3) independent source criteria items, there were not previously used in a validation, with a combined value of 10 points or greater coupled with at least 3 of the items of information/activity being indicative of a member.

Associate:   Any offender or any person who, based on documented evidence, is involved periodically or regularly with the members or associates of a STG.   STG associates will be identified by the STG Investigator through the validation process, reviewed by OCS, and affirmed by the STG Unit Classification Committee. Initial validation of an offender as an associate requires at least three independent source criteria items with a combined value of 10 points or greater coupled with information/activity indicative of an associate.

Validation of an offender as an associate of a STG-I shall also require that at least one source criteria item be a direct link to a current or former validated member or associate of the STG, or to an offender or any person who is validated by the Department within six months of the established or estimated date of activity identified in the evidence considered.

Suspect:   Any offender or any person who, based on documented evidence, is involved periodically or regularly with the members or associates of a STG.  The STG suspect is tracked by STG Investigative staff pending validation.  Suspects have attained two or more points of validation and would not be officially validated but tracked for intelligence purposes.

A direct link, as defined in Section 3000, may be established by unilateral action by either party or by the subject's possession of any item connecting the subject to a validated STG affiliate; or for purposes of establishing a direct link, it shall not be necessary for CDCR to demonstrate that the subject had knowledge, actual or implied, of the validated STG affiliate's STG involvement.

Although placement into the Security Housing Unit / Step Down Program (SHU/SDP) is based upon behavior with a nexus to a certified or recognized STG, validation of an STG affiliate can occur based upon the sole use of source criteria items or based upon a combination of source criteria items and STG behavior that is reported and adjudicated via the disciplinary process. The STG validation process may take into account source criteria items that may have occurred at any time in an individual's personal STG history.  The determination for placement into the SHU/SDP by an Institution Classification Committee must be based upon serious STG behavior, except as provided for members in section 3378.2(d)(1)(A), which occurred during the preceding four years and has been adjudicated through the inmate disciplinary process.

Validation Source Criteria is documented on the CDCR Form 128-B3 (11/13), Security Threat Group Identification Score Sheet, which is incorporated by reference.   This document is completed by the STG Investigator.  The source items shall be based on the following criteria:

**New subsections 3378.2(b)(1) through 3378.2(b)(14) are adopted to read:**

(1) Symbols (Two Points):  Hand signs, distinctive clothing, graffiti, etc., which have been certified by CDCR in accordance with Section 3378.1(f) as being used by and distinctive to specific STGs. Staff shall describe the symbol in detail. Staff shall document and disclose this information to the offender in a written form that would not jeopardize the safety of any person or the security of the institution.

(2) Association (Three Points)  Information related to the offender's association with validated STG affiliates. The association shall be more than a chance encounter or an innocuous association, but rather, a pattern or history of encounters that involve STG behavior and/or an

occurrence of conducting STG related business.  Direct contact with a validated STG affiliate is not necessary to demonstrate this association.  Staff shall articulate the basis for determining the conduct is credible evidence of association with the STG.  Staff shall document and disclose this information to the offender in a written form that would not jeopardize the safety of any person or the security of the institution.

(3) Informants (Three Points):  Documentation of information evidencing STG affiliation from an informant shall indicate the date of the information, whether the information is confidential or non-confidential, and an evaluation of the informant's reliability.  Confidential material shall also meet the requirements established in section 3321.  Staff shall articulate how the information specifically relates to the offender's involvement with the STG.  The information may be used as a source of validation if the informant provides specific knowledge of how he/she knew the offender to be involved with the STG.  Multiple confidential sources providing information regarding a single STG related incident or behavior shall constitute one (1) source item. Exclusive reliance on hearsay information provided by informants will not be used for validation purposes.  Staff shall document and disclose this information to the offender in a written form that would not jeopardize the safety of any person or the security of the institution.

(4) Debrief Reports (Three Points):  Only information referencing specific STG related acts or conduct shall be considered as a source item, when utilizing information from another offender's debriefing.  Confidential material obtained from a debrief report shall also meet the requirements established in section 3321.  Multiple sources of information relative to a single STG related act or conduct shall be considered a single source of validation. Exclusive reliance on hearsay information provided by debriefing inmate will not be used for validation purposes.  Staff shall document and disclose this information to the offender in a written form that would not jeopardize the safety of any person or the security of the institution.

(5) Written Materials (Offender identified in written material not in his possession-Two Points; Personal Possession-Four Points):  Any material or documents evidencing STG activity such as the membership or enemy lists, roll call lists, constitutions, organizational structures, codes, training material, etc., of specific STGs or addresses, names, identities of validated STG affiliates.  Although the item by itself may not evidence STG activity, when considered with other STG activity/behavior, it gives credence to a STG nexus.  Staff shall articulate why, based on either the explicit or coded content, the written material is reliable evidence of affiliation with the STG.  Staff shall document and disclose this information to the offender in a written form that would not jeopardize the safety of any person or the security of the institution.

(6) Photographs (Four Points):  Individual or group photographs with STG connotations such as those which include insignia, certified symbols, or other validated STG affiliates.  The date or age of a photograph shall be reasonably ascertained prior to any photo being relied upon for inclusion as a source item.  No photograph shall be considered for validation purposes that is estimated to be older than four (4) years.  Any photograph being utilized as a source item that depicts STG affiliates shall require that at least one of the individuals be previously validated by the Department, or validated by the Department within six (6) months of the photograph's established or estimated date of origin.    Staff shall document the validation date for any individual in the photograph who was validated within six months of the photograph's established or estimated date of origin.  Staff shall document and disclose this information to the offender in a written form that would not jeopardize the safety of any person or the security of the institution.

(7) Staff Information (Four Points):   Documentation of staff's visual or audible observations which reasonably indicate STG activity as described in Subsections 3314 (a)(3)(L) and (M), Administrative Rules Violations, STG Contraband and Behavior; or Subsections 3315 (a)(3)(Z) and (AA), Serious Rules Violations, STG Violent, Disruptive, or Controlling Behavior.  Staff shall articulate the basis for determining the content or conduct at issue is STG related.  Staff shall document and disclose this information to the offender in a written form that would not jeopardize the safety of any person or the security of the institution.

(8) Other Agencies (Four Points):   Information identifying STG affiliation provided by other agencies including, but not limited to, police reports, crime reports, or arrest reports evidencing STG conduct, which have not been submitted, considered, and incorporated within received court documents.  Any information received from another agency shall be documented by the staff person who receives such information, citing the source and validity of the information.  Staff shall document and disclose this information to the offender in a written form that would not jeopardize the safety of any person or the security of the institution.

 (9) Visitors (Four Points):   Visits from persons or entities that are documented as willfully promoting, furthering or assisting STG affiliates in activities associated with the STG.  Staff shall articulate the basis for concluding the relationship between the visitor(s) and offender is STG related in nature or that the visitor(s) and offender engaged in conduct related to the STG.  Staff shall articulate the basis for identifying the visitor(s) as associated with the STG.  Staff shall document and disclose this information to the offender in a written form that would not jeopardize the safety of any person or the security of the institution.

(10) Communications (Four Points):   Documentation of conversations, conversations between offenders/others, mail, notes, greeting cards, or other communication, which include explicit or coded messages evidencing STG activity.  Staff shall articulate why, based on either the explicit or coded content, the communication is reliable evidence of affiliation with the STG.  Staff shall document and disclose this information to the offender in a written form that would not jeopardize the safety of any person or the security of the institution.

(11) Self Admission (Five Points):  Staff shall document information about an offender's verbal, written or otherwise implied admission and specific involvement with the STG.  Staff shall document and disclose this information to the offender in a written form that would not jeopardize the safety of any person or the security of the institution.

(12) Offenses (Six Points):  When circumstances of an offense conclude that the offense was committed for the benefit or promotion of, at the direction of, or in association with an STG.  Staff shall articulate the basis for determining an offense to be STG related.  Multiple sources of information relative to a single incident or offense will be considered one (1) source of validation.  Staff shall document and disclose this information to the offender in a written form that would not jeopardize the safety of any person or the security of the institution.

(13) Tattoos and/or Body Markings (Six Points):   Tattoos and/or body markings depicting symbols that have been certified by CDCR in accordance with Section 3378.1(f) as being used by and distinctive to a specific STG.  Staff shall describe the tattoo and/or body marking in detail.  Staff shall document and disclose this information to the offender in a written form that would not jeopardize the safety of any person or the security of the institution.

(14) Legal Documents (Seven Points):  Court transcripts, Probation Officer's reports, or other legal documents evidencing STG conduct.  Staff shall document and disclose this information to

the offender in a written form that would not jeopardize the safety of any person or the security of the institution.

**New subsection 3378.2(c) through 3378.2(c)(7) are relocated and renumbered from existing subsections 3378(c)(6) through 3378(c)(6)(G) and are amended to read:**

~~(6)~~(c) The ~~verification of an inmate/parolee's gang identification shall be validated or rejected by the Chief, Office of Correctional Safety (OCS), or a designee~~ validation process is a critical component of identifying and curtailing STG behavior.  Once an offender has been identified as a STG affiliate and vetted through the validation process, CDCR staff shall track their movement, monitor their conduct, and take interdiction action, as necessary.

~~(C)~~(1)  All source criteria items referenced in the validation package ~~or inactive status review~~ shall be disclosed to the offender utilizing a CDCR Form 128-B4 (11/13), Evidence Disclosure and Interview Notification, which is incorporated by reference ~~inmate/parolee at the time of notification.~~ The offender ~~inmate/parolee~~ shall be given copies of all non-confidential documents unless otherwise requested in writing by the offender ~~inmate/parolee.~~ Confidential information used in the validation package ~~or inactive status review~~ shall be disclosed to the offender ~~inmate/parolee~~ via a CDCR Form 1030 (Rev. 11/13 ~~12/86~~), Confidential Information Disclosure Form, which is incorporated by reference.

~~(B)~~(2) ~~Inmates~~ Offenders shall be given ~~written notice~~ at least ~~24~~ 72 hours ~~in~~ advance notice of the validation interview.  The interview with the STG Investigator or designee may be held earlier if the offender ~~inmate~~ waives, in writing, the ~~24~~ 72-hour preparation period.

~~(F)~~(3) The offender's ~~inmate's~~ mental health status and/or need for staff assistance shall be evaluated prior to the interview. Staff assistance shall be assigned per guidelines set forth in section 3318.

~~(A)~~(4) Prior to submission of a validation package to ~~the~~ OCS, ~~or during the inactive status review process,~~ the subject of the investigation shall be interviewed by the STG ~~Institution Gang~~ Investigator, or designee, and given ~~an~~ meaningful opportunity to be heard in regard to the source items used in the validation ~~or inactive status review.~~

~~(D)~~(5) The interview shall be documented ~~and include a record of the inmate's/parolee's opinion on each of the source items used in the validation. Staff shall record this information and provide a written record to the inmate/parolee~~ to include an evaluation and conclusion on each item for which the inmate has provided a rebuttal.  The assigned staff shall record this information, via CDCR Form 128-B5 (11/13), STG Validation Chrono, which is incorporated by reference.  If through the review and interview process, a source item is determined to not have merit, the assigned staff shall document that further investigation shows no merit on the CDCR Form 128-B5.  Staff will provide a copy to the subject within 14 calendar days and prior to submission of the validation package to the OCS.

~~(E)~~(6) The ~~documented interview~~ CDCR Form 128-B5 shall be submitted with the validation package to ~~the~~ OCS for a recommendation ~~consideration~~ to ~~approve~~ affirm or reject the validation. ~~The documented interview shall be submitted with the inactive status review to the OCS for consideration of the inmate's/parolee's continued current active or inactive status.~~

~~(G)~~(7) The recommendation for validation ~~and/or~~ rejection of evidence relied upon shall be documented on a CDCR Form 128-B2 (Rev. 11/13 ~~5/95~~), Security Threat Group ~~Gang~~

Validation/Rejection Review, which is incorporated by reference, and be forwarded to the facility or parole region of origin for processing. If the inmate is currently housed in a CDCR institution, the CDCR Form 128-B2 will be review by the STG Unit Classification Committee. ~~for placement in the inmate/parolee's central file.~~ Upon receipt of the CDCR Form 128-B2, the Classification and Parole Representative or Parole Administrator I, or their designee, shall clearly note in some permanent manner upon the face of every document whether or not the item met validation requirements.

**New subsections 3378.2(d) through (d)(6) are adopted to read:**

(d) STG Unit Classification Committee. The STG Investigator via the assigned counselor shall schedule the offender for appearance before the STG Unit Classification Committee within 30 days of receipt of the CDCR Form 128-B2, in accordance with subsection 3376(d)(5). The STG Unit Classification Committee shall review the validation package noting the recommendations of OCS and make the final determination on acceptance of the validation package based on the totality of the information.

(1) If the STG affiliate is validated as an STG-I member, the offender shall be referred to the Institution Classification Committee (ICC) for transfer and placement in Step 1 of the Step Down Program (SDP) in the Security Housing Unit (SHU) and Classification Staff Representative (CSR) for transfer consideration.

(2) If the STG affiliate is validated as an STG-I Associate, and has one STG related serious Rules Violation Report (RVR) as listed in the section 3378.4(a) STG Disciplinary Matrix and which is also identified in section 3341.5(c)(9) SHU Term Assessment Chart that is being used as a validation source item, the offender shall be referred to ICC for transfer consideration to Step 1 of the SDP in the SHU.

(3) If the STG affiliate is validated as an STG-II Member or Associate, and has two STG related serious RVRs as listed in the section 3378.4(a) STG Disciplinary Matrix and which are also identified in section 3341.5(c)(9) SHU Term Assessment Chart, the offender shall be referred to ICC for program review and consideration of placement in Step 1 of the SDP in the SHU.

(4) An inmate who is housed in the Administrative Segregation Unit pending validation, whose validation is rejected, and who does not have documented STG behavior or whose behavior is determined to be non-STG related, shall be scheduled for ICC for release to appropriate general population housing unless other case factors warrant retention.

(5) An inmate who is housed in general population, validated as a STG-I Associate or any STG-II affiliate and who does not have a serious STG related RVRs as listed in section 3378.4(a) STG Disciplinary Matrix or identified in section 3341.5(c)(9) SHU Term Assessment Chart, may not require referral to ICC and may be retained in appropriate general population housing.

(6) An inmate who is housed in general population, whose validation is rejected, and who does not have documented STG behavior, shall not require referral to ICC.

**New subsections 3378.2(e) through (e)(4) are adopted to read:**

(e) Institution Classification Committee. When the UCC has recommended that an inmate be validated as a STG-I member, the ICC shall ensure there is sufficient evidence to warrant validation at the level of member. ICC will review the validation documents and all other case

39

factors in their determination of appropriate housing.   Any disagreement by the ICC with a STG I member's validation and/or placement into the SDP shall be referred to the DRB for resolution. If the ICC concurs with the validation, the inmate's housing needs will be as follows:

(1)  STG-I Member: Placement in Step 1 of the SDP at a SHU, as determined appropriate by ICC

(2)  STG-I Associate

(A)  If the validation source items include serious documented STG behavior or activity as listed in section 3378.4(a) STG Disciplinary Matrix and which is also identified in section 3341.5(c)(9) SHU Term Assessment Chart – requires referral for transfer to Step 1 of the SDP at a SHU and endorsement by the CSR.

(B)  If the inmate has been found to be accountable for serious STG related behavior, as listed in section 3378.4(a) STG Disciplinary Matrix and which is also identified in CCR Section 3341.5(c)(9) SHU Term Assessment Chart, which occurred since the date of the Validation Interview, this will require consideration of referral for transfer to Step 1 of the SDP at a SHU and if necessary, endorsement by the Classification Services Representative.

(C)  If the validation source items do not meet the designated behavioral criteria for SDP placement – release to general population unless the placement score or case factors have changed and the inmate requires further housing consideration.

(3)  STG-II Member or Associate

(A)  If the validation source items include two occurrences, both of which have occurred within four years of the validation date, of serious documented STG behavior or activity, as listed in section 3378.4(a) STG Disciplinary Matrix and which are also identified in CCR Section 3341.5(c)(9) SHU Term Assessment Chart – requires referral for transfer to Step 1 of the SDP at a SHU and endorsement by the CSR.

(B)  If the inmate has been found to be accountable for serious STG related behavior, as listed in section 3378.4(a) STG Disciplinary Matrix and which is also identified in CCR Section 3341.5(c)(9) SHU Term Assessment Chart, which occurred since the date of the Validation Interview, this will require consideration of referral for transfer to Step 1 of the SDP at a SHU and if necessary, endorsement by the CSR.

(C)  If the validation source items do not meet the designated behavioral criteria for SDP placement – release to general population unless the placement score or case factors have changed and the inmate requires further housing consideration.

(4)  The date of the ICC's assessment and imposition of an Administrative SHU term for the SDP shall establish the start date toward completion of Step 1 of the SDP at a SHU.  Applicable privileges, in accordance with Section 3044(i) shall be initiated upon the inmate's arrival at the SHU facility.

Note: Authority cited: Section 5058, Penal Code. Reference: Sections 5054 and 5068, Penal Code; Sandin v. Connor (1995) 515 U.S. 472; Madrid v. Gomez (N.D. Cal. 1995) 889 F.Supp. 1146; Toussaint v. McCarthy (9th Cir. 1990) 926 F.2d 800; Toussaint v. Yockey (9th Cir. 1984) 722 F.2d 1490; and Castillo v. Alameida, et al. (N.D. Cal., No. C94-2847).

40

Existing section 3378.3, Transitional Housing Unit, is relocated and renumbered to new section 3378.7.

New section 3378.3 title is adopted to read:

3378.3. Security Threat Group Step Down Program.

New subsections 3378.3(a) through 3378.3(a)(2) are adopted to read:

(a) The Step Down Program (SDP) is an incentive based multi-step process for the management of Security Threat Group (STG) affiliates. The SDP is designed to monitor affiliates and assist with transition for return to a general population program setting.

(1) Participation in each step of the SDP shall require staff to provide the offender with CDCR Form 128B SDP1 (11/13), Step Down Program Notice of Expectations (Step 1); CDCR Form 128B SDP2 (11/13), Step Down Program Notice of Expectations (Step 2); CDCR Form 128B SDP3 (11/13), Step Down Program Notice of Expectations (Step 3); CDCR Form 128B SDP4 (11/13), Step Down Program Notice of Expectations (Step 4); or CDCR Form 128B SDP5 (11/13), Notice of conditions of Monitored Status (Step 5), all of which are incorporated by reference. The expectations shall outline the goals, expectations for successful completion, and potential consequences for failure to fully participate and complete each step.

(2) Each program step provides progressive programs and privileges and it is the responsibility of the affiliate to demonstrate they can be released to a less restrictive environment while abstaining from STG behaviors. If the offender chooses not to progress through any step of the program, the offender may be returned, by ICC, to one of the previous steps until they demonstrate appropriate behavior for movement into the next step. At any time the inmate wishes to begin participating in the SDP, they may notify their assigned counselor who will schedule their appearance before the ICC within 30 days.

New subsections 3378.3(b) through (b)(9) are adopted to read:

(b) STG affiliates placed on an administrative term of confinement based upon STG Validation shall be housed in a Security Housing Unit (SHU). The offender is required to participate in the SDP and remain in SHU housing through Step 4.

(1) Validated affiliates in steps 1 and 2 shall be scheduled for appearance before the Institution Classification Committee (ICC) at least every 180 days for assessment of case factors and program participation to ensure appropriate step placement within the SDP. Steps 1 and 2 are designed to be completed in 12 months each, but may be accelerated by ICC at the 180 day review. Criteria for the inmate to be retained in the step at the 180 day ICC review are as follows: 1) the inmate has not completed all required program components; and/or 2) the inmate has been found guilty of a RVR for STG related behavior. Successful completion of these steps will require program participation, compliance with program expectations, and completion of all required components/curriculum. Steps 1 and 2 are primarily intended as periods of observation.

(2) Validated affiliates in step 3 shall be scheduled for appearance before the ICC at least every 180 days for assessment of case factors and program participation to ensure appropriate step placement within the SDP. Successful completion of Step 3 will require a minimum of 12

41

months program participation, compliance with program expectations, and completion of all required components/curriculum.

(3) Validated affiliates in step 4 shall be scheduled for appearance before the ICC at least every 90 days for assessment of case factors and program participation to ensure appropriate step placement within the SDP.  Successful completion of Step 4 will require a minimum of 12 months program participation, compliance with program expectations, and completion of all required components/curriculum.

(4) Validated offenders who fail to comply with requirements of the SDP may be reviewed by ICC and may be subject to disciplinary sanctions and/or program step adjustment in accordance with section 3378.4(b).

(5) Upon successful completion of step 4, as determined by ICC and based on individual affiliate's behavior, a male offender shall be referred to the Classification Staff Representative (CSR) for endorsement to a Level IV facility, for a 12-month observation period (Step 5) regardless of the offender's placement score.  When an inmate has completed the SDP and the institution head believes a transfer to an alternate Level IV institution or out of level placement is warranted, the institution head will refer the case to the DRB for decision.

(6) Upon the successful completion of step 4, as determined by ICC, a female offender will be reviewed by ICC for release to the general population for 12-months of observation and monitoring (step 5).

(7) Validated affiliates shall transition from SDP in a SHU to Step 5 and shall be identified as Monitored Status with a custody designation of Close B, as described in Section 3377.1, during the first 12 months assigned to the designated General Population facility or similar specialized housing, unless other case factors require a higher level of custody.

(A) Offenders shall receive orientation at the designated Step 5 institution.  The orientation shall include, but not be limited to:

1. STG Investigator interview

2.  Referral to Mental Health

3. Unit orientation

4. Mandatory Urinary Analysis Testing (initial 12 months)

5.  Initial Classification Committee to include attendance by the STG Investigator with consideration for rehabilitative program enrollment as identified through departmentally approved assessment tools (i.e., TABE), Education, and STG management needs.

6.  Establishment of 12-month observation period

(B) Upon completion of the 12 month observation period (Step 5) with no documented evidence of continued STG behavior, the offender shall be referred to ICC for consideration of transfer to an appropriate facility consistent with his/her placement score and case factors.

42

(8) Upon transfer to appropriate housing, offenders shall continue to be identified as Monitored Status for potential recurrence of STG behavior or activities for an indefinite period of time. Monitored Status affiliates are subject to the following:

(A) Enhanced cell search occurrences as determined necessary.

(B) Enhanced mail scan.

(C) Enhanced telephone call monitoring.

(D) Periodic STG Investigator interviews.

(9) Participation in the SDP affords STG affiliates the opportunity to earn enhanced privileges consistent with their ability to reintegrate, effectively interact with others, and refrain from STG behavior/activities. STG affiliates participating in the SDP shall be placed in privilege group "S1" through "S4" in accordance with section 3044(i). Monitored Status affiliates (Step 5) will be allowed privileges associated with their assigned privilege group.

Note: Authority cited: Section 5058, Penal Code. Reference: Sections 5054 and 5068, Penal Code.

**New section 3378.4 title is adopted to read:**

**3378.4 Security Threat Group Behavior or Activity.**

CDCR inmates shall not participate in STG activity or behavior. For validated affiliates, the consequences of continued confirmed STG behavior are outlined in the STG Disciplinary Matrix below. STG behaviors or activities included in the STG Disciplinary Matrix are separated into Administrative Rule Violations and Serious Rule Violations.

**New subsection 3378.4(a) is adopted to read:**

(a) The STG Disciplinary Matrix in conjunction with the SDP Placement Options addresses four categories of impacted affiliates:

- Validated STG-I Associates Initial Placement into the SDP from general population.
- STG-II Members or Associates Initial Placement into the SDP from general population.
- Validated STG affiliates assigned in the SDP, demonstrating continued STG behavior or activities.
- Validated STG affiliates on Monitored Status, Inactive Status, Inactive-Monitored Status, or Dropout Status.

The following behaviors and activities qualify as STG behavior, when a nexus has been established between the behavior and an identified STG. The nexus shall be clearly articulated in the specific act, as well as clearly described within the narrative of the associated Rules Violation Report and Findings of the Senior Hearing Officer/Hearing Officer.

| STG DISCIPLINARY MATRIX | | |
|---|---|---|
| Behavior/Activity With Nexus to STG | Administrative or Serious | SDP Placement Options (Section |

43

| | | 3378.4(b) |
|---|---|---|
| **Section 1:**<br>a) Murder, attempted murder, solicitation of murder, or voluntary manslaughter of a non-offender or offender;<br>b) Assault or Battery capable of causing serious injury; Assault or battery with a deadly weapon or caustic substance capable of causing serious injury, solicitation for offense;<br>c) Taking a hostage;<br>d) Possession of a firearm, explosive device, or weapon which has been manufactured or modified so as to have the obvious intent or capability of inflicting traumatic injury, and which is under the immediate or identifiable control of the offender;<br>e) Escape or attempted escape with force or violence<br>f) Rape, sodomy, or oral copulation against the victim's will. | Serious | 3378.4(b)(2)<br>3378.4(b)(3)<br>3378.4(b)(6)<br>3378.4(b)(7) |
| **Section 2:**<br>a) Introduction, Trafficking, or Distribution of any Controlled Substance (as defined in Section 3000);<br>b) Arson involving damage to a structure or causing serious bodily injury.<br>c) Possession of flammable, explosive, or combustible material with intent to burn any structure or property;<br>d) Extortion or Threat by Means of Force or Violence, including requiring payment for protection/insurance or intimidating any person on behalf of the STG;<br>e) Threatening to kill or cause serious bodily injury to a public official, their immediate family, their staff, or their staffs' immediate family;<br>f) Any other felony involving violence or injury to a victim and not specifically identified on this chart. | Serious | 3378.4(b)(2)<br>3378.4(b)(3)<br>3378.4(b)(5)<br>3378.4(b)(6)<br>3378.4(b)(7) |
| **Section 3:**<br>a) Battery on a Peace Officer or non-offender not involving use of a weapon;<br>b) Assault on a Peace Officer or non-offender by any means likely or not likely to cause great bodily injury;<br>c) Assault or battery on a prisoner with no serious injury;<br>d) Destruction of state property valued in excess of $400 dollars during a riot or disturbance;<br>e) Theft, embezzlement, arson, destruction, or damage to another's personal property, state funds, or state property valued in excess of $400;<br>f) Any felony not involving violence or the use of a weapon not listed in this schedule with a direct nexus to STG Behavior. | Serious | 3378.4(b)(2)<br>3378.4(b)(3)<br>3378.4(b)(5)<br>3378.4(b)(6)<br>3378.4(b)(7) |
| **Section 4:** | Serious | 3378.4(b)(2) |

44

| | | |
|---|---|---|
| a) Bribery of a non-offender;<br>b) Leading/Inciting a disturbance, riot, or strike;<br>c) Active participation in, or attempting to cause conditions likely to threaten institution security;<br>d) Willfully resisting, delaying, or obstructing any peace officer in the performance of duties;<br>e) Possession of Cell Phone or Components;<br>f) Acting in a Leadership Role displaying behavior to organize and control other offenders within the STG; | | 3378.4(b)(3)<br>3378.4(b)(4)<br>3378.4(b)(5)<br>3378.4(b)(7) |
| Section 5:<br>a) Gambling;<br>b) Tagging, or otherwise defacing state property valued at less than $950, with symbols or slogans intended to promote affiliation with a STG. | Serious | 3378.4(b)(2)<br>3378.4(b)(4)<br>3378.4(b)(7) |
| Section 6:<br>a) STG Related Tattoos and/or Body Markings (new since most recent arrival in CDCR and not previously documented);<br>b) Recording/documentation of conversations evidencing active STG behavior;<br>c) Harassment of another person, group or entity either directly or indirectly through the use of the mail, telephone, or other means;<br>d) Communications between offenders/others evidencing active STG behavior;<br>e) Leading STG Roll Call;<br>f) Directing Cadence for STG Group Exercise;<br>g) In Personal Possession of STG related Written Material including Membership or Enemy List, Roll Call Lists, Constitution, Organizational Structures, Codes, Training Material, etc.;<br>h) In Personal Possession of mail, notes, greeting cards or other communication (electronic or non-electronic) which include coded or explicit messages evidencing active STG behavior; | Serious | 3378.4(b)(2)<br>3378.4(b)(4)<br>3378.4(b)(7) |
| Section 7:<br>Except as otherwise specified in this section, proven attempts to commit or an offender who conspires to commit any of the above listed offenses shall receive the term range specified for that offense. | Serious | Identified in Section 3378.4(b) |
| Section 8:<br>a) Active Participation in STG Roll Call;<br>b) Participating in STG Group Exercise;<br>c) Using hand signs, gestures, handshakes, slogans, distinctive clothing, graffiti which specifically relate to an STG;<br>d) Wearing, possessing, using, distributing, displaying, or selling any clothing, jewelry, emblems, badges, certified symbols, signs, or other STG items which promote affiliation in a STG; | Administrative | 3378.4(b)(1)<br>3378.4(b)(4)<br>3378.4(b)(7) |

45

| | | |
|---|---|---|
| e) In Possession of artwork, mail, notes, greeting cards, letters or other STG items clearly depicting certified STG symbols;<br>f) In Possession of photographs that depict STG association. Must include STG connotations such as insignia, certified symbols, or other validated STG affiliates.<br>g) In possession of contact information (i.e., addresses, telephone numbers, etc.) for validated STG affiliates or individuals who have been confirmed to have assisted the STG in illicit behavior. | | |

**New subsections 3378.4(b) through 3378.4(b)(7) are adopted to read:**

(b) SDP Placement Options provide direction for placement into and movement within the SDP subsequent to initial validation based on STG behavior identified in the STG Disciplinary Matrix. Staff shall utilize the SDP Placement Options Column of the STG Disciplinary Matrix to determine the options available for consideration by the Institution Classification Committee (ICC). The date of the ICC's assessment and imposition of an administrative term of confinement shall commence counting toward completion of the specified step of the SDP.

(1)  **Initial Placement (subsequent to validation):** Requires placement at the beginning of Step 1. The behavioral criteria for initial placement is the validated affiliate being found guilty of two STG related administrative rules violations within the preceding twelve months.

(2)  **Initial Placement (subsequent to validation):**  Requires placement at the beginning of Step 1. The behavioral criteria for initial placement is the validated affiliate being found guilty of one STG related serious rules violation.

(3) **Initial Placement (subsequent to validation):** Requires placement at the beginning of Step 1. The behavioral criteria for initial placement is the validated affiliate being found guilty of two STG related serious rules violations which are also included in section 3341.5(c)(9).

(4)  **Active SDP Violators:**  ICC shall consider regression within the current step (1 – 12 months). Placement may be at any month within the current step to allow for completion of the balance of the step prior to moving forward to the next step.

(5)  **Active SDP Violators**: If appropriate, assess and suspend SHU term (as authorized in section 3341.5).   ICC shall consider regression to the previous step (1 to 12 months). Placement may be at any month within the previous step to allow for completion of the balance of the step prior to moving forward to the next step.

(6)  **Active SDP Violators**: If appropriate, assess and suspend SHU term (as authorized in section 3341.5). ICC shall consider regression to Step 1 (1 to 12 months). Placement may be at any month within Step 1 to allow for completion of the balance of the step prior to moving forward to the next step.

(7)  **Monitored, Inactive, or Inactive-Monitored Status Violators:**  Requires placement at the beginning of Step 1. If appropriate, assess and suspend SHU term (as authorized in section 3341.5). If the offender has been found guilty of STG related rules violations, it requires two administrative violations within the preceding twelve months or one serious rule violation.

46

If offender has completed the SDP previously, he/she must normally serve 2 years in Step 1 of the SDP.

**New subsections 3378.4(c) through (c)(9) are adopted to read:**

(c)  The STG Disciplinary Matrix shall be applied as follows:

(1) ICC shall consider a validated STG-I associate housed in the general population for transfer and placement into Step 1 of the SDP at a SHU for one of the following with a demonstrated nexus to an STG:

(A)  Being found guilty of two Administrative Rules Violation Reports identified in the STG Disciplinary Matrix within the preceding 12 months.

(B) Being found guilty of one Serious Rules Violation Report identified in the STG Disciplinary Matrix.

(2) ICC shall consider a validated STG-II affiliate housed in the general population for transfer and placement into Step 1 of the SDP at a SHU for the following with a demonstrated nexus to an STG: Being found guilty of two Serious Rules Violation Reports identified in section 3378.4(a) STG Disciplinary Matrix which are also identified in section 3341.5(c)(9) SHU Term Assessment Chart.  Both behaviors must have occurred within the last four years.

(3) The STG Unit Classification Committee and ICC shall consider a dropout status affiliate housed in the general population for transfer and placement into Step 1 of the SDP at a SHU for one of the following with a demonstrated nexus to an STG:

(A)  Being found guilty of two Administrative Rules Violation Reports identified in the STG Disciplinary Matrix within the preceding 12 months.

(B) Being found guilty of one Serious Rules Violation Report identified in the STG Disciplinary Matrix.

(C)  The STG related behavior must have occurred after the dropout status affiliate's release from a Transitional Housing Unit (THU).  In addition, the behavior or activity must identify the inmate as an active STG member or associate of the same STG with which the inmate was previously validated.  If the STG related behavior or activity demonstrates a connection to a different STG, the information may be considered in the validation process and/or the disciplinary process, but shall not be used as the sole basis for placement of the inmate into the SDP.

(4) ICC shall consider a monitored status affiliate housed in the general population for transfer and placement into Step 1 of the SDP at a SHU for one of the following with a demonstrated nexus to an STG:

(A)  Being found guilty of two Administrative Rules Violation Reports identified in the STG Disciplinary Matrix within the preceding 12 months.

(B) Being found guilty of one Serious Rules Violation Report identified in the STG Disciplinary Matrix.

(5) ICC shall consider an inactive status affiliate or inactive-monitored status affiliate housed in the general population for transfer and placement into Step 1 of the SDP at a SHU for one of the following with a demonstrated nexus to an STG:

(A) Being found guilty of two Administrative Rules Violation Reports identified in the STG Disciplinary Matrix within preceding last 12 months.

(B) Being found guilty of one Serious Rules Violation Report identified in the STG Disciplinary Matrix.

(6)  ICC shall consider a validated affiliate for placement into Step 1 of the SDP at a SHU if all of the following are present:

 (A) Behavior, activity or intelligence items as identified in section 3378.2(b) totaling at least 10 additional source points and identified subsequent to the initial validation process.  This process shall only be utilized if the circumstances cannot otherwise be addressed through the disciplinary process; and

(B)  STG related behavior is identified to have occurred while an inmate has been discharged, is on parole/probation, is out to court, is in federal/municipal custody, or otherwise outside of the CDCR's jurisdiction; and

(C)   The source points must have a nexus to the STG to which the inmate was formally validated, and have occurred within the preceding four years.

(7)  For confirmed STG behavior that is identified to have occurred while an offender is outside the jurisdiction of the CDCR, has been discharged, is on parole/probation, is out to court, or is in federal/municipal custody:

(A) A STG affiliate with confirmed STG behavior or intelligence from an outside law enforcement agency or which occurred outside the jurisdiction of the department or formal disciplinary process shall be documented in a CDC Form 128-B (Rev. 4/74), General Chrono, (marked "confidential", if appropriate), which is incorporated by reference.  The activity or behavior must have occurred within the last four years.  Investigators shall establish reliability per section 3321 when confidential information is used and shall be recorded within the chrono.

(B) Confirmed STG behavior may be used in the initial validation process of an inmate and/or be used to establish continued STG behavior of a validated affiliate that may warrant placement into the SDP.

(C)  Investigative Staff shall be responsible to initiate or update a CDCR Form 128-B3 (11/13), STG Identification Score Sheet, which is incorporated by reference, anytime confirmed STG behavior occurs and cannot be addressed through the disciplinary process.

(D)  Confirmed STG behavior, activity, or intelligence items as identified in section 3378.2(b) Validation Source Criteria, which accumulates a total of at least 10 additional source points during the preceding four years, and identified subsequent to the initial validation process, is subject to STG Unit Classification Committee and/or ICC review for placement into the SDP.

48

(8)  A validated STG affiliate who paroled or discharged from CDCR jurisdiction and returns to custody shall be addressed as follows:

(A) An inmate who previously paroled or was discharged with maximum (MAX) custody due to pending validation and is returned to CDCR's custody shall be placed in the Administrative Segregation Unit (ASU).  The STG Investigator shall obtain the validation package to determine the status of validation and housing at time of parole/discharge.  The validation process shall be completed, as necessary.  After review by the STG Unit Classification Committee is completed, the inmate will be referred to ICC for appropriate housing determination.

(B)  A validated STG affiliate who previously paroled or was discharged with MAX custody and is returned to CDCR's custody shall be placed in ASU.  The STG Investigator will determine if there has been STG related behavior while the inmate was outside CDCR jurisdiction.  The inmate will be referred to the STG Unit Classification Committee in accordance with section 3376(d)(5) or ICC in accordance with section 3341.5(c)(11), as appropriate.

(C)  A validated STG affiliate who previously paroled or was discharged and was designated either inactive, inactive-monitored, monitored, or dropout status and returns to the custody of the CDCR shall be assigned housing based upon current case factors.  The STG Investigator will determine if there has been STG related behavior while the inmate was outside CDCR jurisdiction.  The inmate will be referred to the STG Unit Classification Committee in accordance with section 3376(d)(5) or ICC in accordance with section 3341.5(c)(11), as appropriate.

(9) STG affiliates actively participating in the SDP, who are found guilty of a Rules Violation Report identified in the STG Disciplinary Matrix shall be reviewed by ICC within 14 days of completion of the disciplinary process.

**New subsection 3378.4(d) is adopted to read:**

(d) Offenders who are found guilty of a serious rule violation and assessed a determinate SHU term, shall be removed from the SDP and required to complete the determinate SHU term.  ICC may give consideration to suspending the remaining SHU term at each scheduled review.

Note: Authority cited: Section 5058, Penal Code. Reference: Sections 5054 and 5068, Penal Code; Sandin v. Connor (1995) 515 U.S. 472; Madrid v. Gomez (N.D. Cal. 1995) 889 F.Supp. 1146; Toussaint v. McCarthy (9th Cir. 1990) 926 F.2d 800; Toussaint v. Yockey (9th Cir. 1984) 722 F.2d 1490; and Castillo v. Alameida, et al. (N.D. Cal., No. C94-2847).

**New section 3378.5 is relocated and renumbered from existing section 3378.1 and is amended to read:**

**3378.~~1~~5. Debriefing Process.**

**New Subsections 3378.5(a) through 3378.5(d) are relocated and renumbered from 3378.1(a) through 3378.1(d) and are amended to read:**

 (a) Debriefing is the process by which a STG ~~gang~~ coordinator/investigator determines whether an offender ~~inmate/parolee~~ (subject) has dropped out of a STG ~~gang~~.  A subject shall be debriefed only upon his or her request, although staff may ask a subject if he or she wants to debrief. Debriefing ~~shall entail~~ may include a two-step process that ~~includes~~ consists of an interview phase and an observation phase. An evaluation of the need for the observation phase

will be based upon individual case factors including the STG affiliate's housing prior to beginning the debriefing process.   ICC may elect to bypass placement in the Transitional Housing Unit (THU) if the offender was housed in general population.   Offenders who were housed in segregated housing will normally complete the THU. Female offenders who complete the interview phase of the debriefing process shall complete the observation phase in a general population institution.

(b) The purpose of the debriefing interview is to provide staff with information about the STG's ~~gang's~~ structure, activities, and affiliates.   A debriefing is not for the purpose of acquiring incriminating evidence against the subject. The object of a debriefing is to learn enough about the subject and the subject's current STG ~~gang~~ to: (1) allow staff to reasonably conclude that the subject has dropped out of the STG ~~gang~~, and (2) allow staff to reclassify the subject based upon the offender's ~~inmate's~~ needs in conjunction with the security of the institution, as well as, the safety and security of staff and other offenders ~~inmates~~. A requirement of the interview phase is that the offender ~~inmate~~ provides staff a written autobiography of their ~~gang~~ STG involvement, which is then verified by staff for completeness and accuracy.

(c) Offenders ~~Inmates~~ undergoing the debriefing process ~~shall~~ may be subject to a period of observation in a housing setting with other offenders ~~inmates~~ who are also undergoing the debriefing process. The period of observation shall be ~~no greater than 12~~ up to 6 months in duration.

(d) Upon completion of the debriefing process, the offender ~~inmate~~ shall be housed in a facility commensurate with the offender's ~~inmate's~~ safety needs. In the absence of safety needs, the offender ~~inmate~~ shall be housed in a facility consistent with his or her ~~classification~~ placement score and other case factors.

Note: Authority cited: Section 5058, Penal Code. Reference: Sections 5054 and 5068, Penal Code; Sandin v. Connor (1995) 515 U.S. 472; Madrid v. Gomez (N.D. Cal. 1995) 889 F.Supp. 1146; and Toussaint v. McCarthy (9th Cir. 1990) 926 F.2d 800.

**New section 3378.6 is relocated and renumbered from existing section 3378.2 and is amended to read:**

**3378.~~2~~6. Advisement of Rights during Debriefing.**

**New Section 3378.6 Initial paragraph is relocated and renumbered from 3378.2 Initial paragraph and is amended to read:**

A waiver of the right against self-incrimination is not a precondition of an offender ~~inmate/parolee~~ (subject) undergoing a debriefing since the information is provided for administrative purposes. A subject shall not be required to complete the debriefing process and the subject is free to terminate the debriefing at any time.  If, during a debriefing, a subject makes a statement that tends to incriminate the subject in a crime, the Security Threat Group (STG) ~~gang~~ coordinator/investigator may stop any discussion about the matter and continue on with another topic. Prior to questioning the subject about the incriminating matter, the subject must waive the right against self-incrimination. The decision by the subject to exercise the right against self-incrimination shall not affect the determination of whether the subject successfully participated in the debriefing.

Note: Authority cited: Section 5058, Penal Code. Reference: Sections 5054 and 5068, Penal Code; Sandin v. Connor (1995) 515 U.S. 472; Madrid v. Gomez (N.D. Cal. 1995) 889 F.Supp. 1146; and Toussaint v. McCarthy (9th Cir. 1990) 926 F.2d 800.

**New Section 3378.7 Title is adopted to read:**

**3378.7  Review and Action Following Receipt of Debrief Reports**

**New section 3378.7 Initial paragraph is adopted to read:**

Upon receipt of a completed Debrief Report by institution staff, the following process will be followed:

**New subsection 3378.7(a) through 3378.7(c)(4) is adopted to read:**

(a)  STG investigative staff will review the report to identify inmates (other than the debriefing inmate) who are addressed in the report and currently housed at the institution.

(1)  STG behavior or activity by the identified inmate which is documented in the Debrief Report shall be investigated by STG staff or their designee to establish facts in corroboration of the information being provided.

(2)  Staff shall document the findings of the investigation in a CDC Form 128-B General Chrono (Rev. 4/74), which is incorporated by reference, marked "Confidential", or in memorandum. Staff shall prepare a CDCR Form 1030 (11/13), Confidential Information Disclosure Form, which is incorporated by reference, as appropriate, documenting as much information as can be disclosed without identifying the source.

(3)  STG behavior or activity determined to have occurred within CDCR jurisdiction and within the previous four (4) years shall be reviewed by the STG Lieutenant or an appropriate Lieutenant to determine if the activity/behavior warrants issuance of Rules Violation Report, in accordance with section 3378.4(a) STG Disciplinary Matrix.

(4)  Staff shall prepare a CDC Form 115 (07/88), Rules Violation Report, which is incorporated by reference, as appropriate, documenting the information as received from the confidential source and any pertinent information gleaned through the investigation.

(5)  The disciplinary process will proceed as outlined in Sections 3310 through 3326, Inmate Discipline.

(6)  Dependant upon the STG status/designation of the inmate, the completed CDCR Form 115 shall be referred to the STG Unit Classification Committee in accordance with section 3376(d)(5) or ICC in accordance with section 3341.5(c)(11) for review of the inmate's activities/behavior.

(b)  STG behavior or activity determined to have occurred outside the jurisdiction of the department or formal disciplinary process shall be documented in a CDCR Form 128-B (4/74), General Chrono.  The completed CDC Form 128-B shall be referred to the STG Lieutenant for consideration of validation and/or referral to appropriate staff for the inmate's placement in the SDP in accordance with section 3378.4(c)(7).

(c)  The ICC will consider information obtained from approved Debrief Reports as follows:

(1)  STG related behavior or activities must have occurred within the last 4 years to be considered in making housing determinations.

(2) If the inmate is already in the SDP and the behavior occurred while he/she was in the SDP, utilize the SDP Placement Options as described in section 3378.4(b) to determine appropriate movement within the SDP.

(3) If the inmate is already in the SDP and the behavior occurred prior to his/her placement in the SDP, the inmate may be eligible for consideration of the Determinate SHU Term; however, there shall be no impact to the inmate's SDP placement.

(4) If the inmate is not in the SDP, addressing the behavior and/or housing needs will be in accordance with section 3378.4(c)

**New section 3378.8 is relocated and renumbered from existing section 3378.3 and is amended to read:**

**3378.3̶8. Transitional Housing Unit.**

**New section 3378.8 Initial paragraph through subsections 3378.8(a)(2) are relocated and renumbered from existing section 3378.3 Initial paragraph through subsections 3378.3(a)(2) and are amended to read:**

The Transitional Housing Unit (THU) shall provide a program of observation to evaluate that an inmate has successfully disassociated from STG prison gang activity and is capable of programming in a general population (GP) setting. Inmates must have completed the debriefing process from a validated STG prison-gang, as described in section 3378.4̶5, in order to be placed into the THU. Placement into the THU can be from either a Security Housing Unit or from GP. THU inmates shall be housed separately from other GP inmates due to potential safety concerns.

(a) The debriefing process is designed to review, monitor and evaluate each individual and ensure that the inmate participating in the debriefing process is not a threat to staff or other inmates, and has sincerely renounced all STG related prison-gang activities. A period of observation and adjustment may will follow the debriefing process to ensure that an inmate will be able to program in a GP setting with inmates of diverse backgrounds all races and ethnic groups, as well as other disassociated STG prison-gang members/associates. STG affiliates housed in general population or similar specialized housing prior to beginning the debriefing process may bypass placement in the Transitional Housing Unit, as authorized by ICC. Female offenders who complete the interview phase of the debriefing process, shall complete the observation phase in a general population institution. The minimum eligible criteria to be placed into the THU shall consist of:

(1) The formal debriefing process as set forth in section 3378.4̶5 must be satisfactorily completed at the Institutional level through the STG Institution Gang Coordinator/Investigator, and approved through the Office of Correctional Safety (OCS) via a completed CDC Form 128-B (4/74), General Chrono, which is incorporated by reference.

(2) The inmate must be willing to commit to personal change, pursuant to CCR section 3378.4̶5.

52

New subsections 3378.8(b) through 3378.8(c)(1) are relocated and renumbered from existing subsections 3378.3(b) through 3378.3(c)(1) and remain unchanged.

New subsection 3378.8(c)(2) is relocated and renumbered from existing subsection 3378.3(c)(2) and is amended to read:

(2) Inmates shall be advised that participation in all assignments and activities is mandatory, and STG ~~gang~~ related activity or behavior will not be tolerated. Any <u>disciplinary behavior for which the inmate is found to be accountable through the disciplinary process,</u> ~~disciplinary action deemed serious in nature, or one that is related to gang activity~~ shall result in referral to a <u>the Institution</u> <u>c</u>Classification <u>c</u>Committee for program review ~~and possible removal from the THU~~.

New subsections 3378.8(c)(2)(A) through 3378.8(c)(2)(B) are adopted to read:

<u>(A) If the behavior identified in Subsection 3378.8(c)(2) had a nexus to the STG and was identified in section 3378.4(a) STG Disciplinary Matrix, consideration shall be given to removal of the inmate from the THU and return to Step 1 of the SDP in the SHU.</u>

<u>(B) If the behavior identified in Subsection 3378.8(c)(2) did not demonstrate a nexus to the STG, consideration shall be given by the ICC to removal of the inmate from the THU and return to the step in the SDP where he was upon entering the debriefing process or being removed from SHU. If the inmate had not begun the SDP, he will be placed in Step 1 of the SDP in the SHU.</u>

New subsection 3378.8(c)(3) is adopted to read:

<u>(3) If the inmate elects to discontinue participation in the THU for non-disciplinary related reasons, the inmate shall be scheduled for ICC. ICC shall review the circumstances of the request and the inmate's case factors in determining appropriate placement in the SDP.</u>

New subsections 3378.8(d) through 3378.8(e) are relocated and renumbered from existing subsections 3378.3(d) through 3378.3(e) and remain unchanged.

Note: Authority cited: section 5058, Penal Code. Reference: Sections 5054 and 5068, Penal Code.

New section 3378.9 title is adopted to read:

### 3378.9 Termination of Security Threat Group (STG) Validation Status

New subsections 3378.9(a) through 3378.9(a)(5) are adopted to read:

(a) <u>STG-I or STG-II Associates:</u>

<u>(1) A validated STG-I or STG-II associate released from SHU to Step 5 or those remaining in general population housing, who remains free of STG Behavior for a period of six (6) consecutive years, while incarcerated within CDCR, may be eligible to have their STG Validation Status terminated. The six years will begin counting toward completion of the required time period as follows:</u>

(A) Validated Associates released from SHU to Step 5:  the date committee approved release from segregation.

(B) Validated inmates released from SHU as Inactive or Inactive-Monitored:  the date of the Departmental Review Board (DRB).

(C) Validated Associates who remain in general population housing:  the date of initial validation

(2) The criteria for consideration of terminating an STG Validation Status include:  within the most recent six consecutive years (while incarcerated within CDCR institutions) with no guilty findings of STG related behavior or additional source criteria items totaling 10 points (as described in section 3378.2.)

(3) Termination of the STG Validation Status will be evaluated during the next regularly scheduled Annual Review.  The assigned counselor will review central file and notify the STG Investigator that the inmate is being scheduled for consideration of terminating the STG Validation status.   If eligible, the inmate shall be referred to ICC for assessment and determination of terminating the STG status.

(4) Upon ICC terminating an inmate's validation status, the institution shall submit a copy of the CDC Form 128-G (10/89), Classification Chrono, which is incorporated by reference, to the Office of Correctional Safety (OCS), who shall generate an updated CDCR Form 128-B2 (11/13), Security Threat Group Validation/Rejection Review, which is incorporated by reference, reflecting "Terminated".  The original CDCR Form 128-B2 shall be returned to the institution. Review by the STG Unit Classification Committee will not be required to review/approve this document.

(5) Inmates who have had their STG status terminated shall be eligible to participate in any recognized housing/programs consistent with other general population inmates with similar case factors.   If additional STG related activity or behavior is subsequently discovered, a new validation package shall be required to change the inmate's STG status.

**New subsections 3378.9(b) through 3378.9(b)(5) are adopted to read:**

(b) STG-I or STG-II Members:

(1) A validated STG-I or STG-II member released from SHU to Step 5 or those remaining in general population housing, who remains free of STG Behavior for a period of eleven (11) consecutive years, while incarcerated within CDCR, may be eligible to have their STG Validation Status terminated.  The eleven years will begin counting toward completion of the required time period as follows:

(A) Validated Members released from SHU to Step 5:  the date committee approved release from segregation.

(B) Validated inmates released from SHU as Inactive or Inactive-Monitored:   the date of the DRB.

(C) Validated Members who remain in general population housing:  the date of initial validation.

STG regs proposed text                                                                                     1/14/14

(2) The criteria for consideration of terminating an STG Validation Status include:  within the most recent eleven consecutive years while incarcerated within CDCR institutions there have been no guilty findings of STG related behavior or additional source criteria items totaling 10 points (as described in section 3378.2.)

(3) Termination of the STG Validation Status will be evaluated during the next regularly scheduled Annual Review.  The assigned counselor will review central file and notify the STG Investigator that the inmate is being scheduled for consideration of terminating the STG Validation status.  If eligible, the inmate shall be referred to ICC for assessment and determination of terminating the STG status.

(4) Upon ICC terminating an inmate's validation status, the institution shall submit a copy of the CDC Form 128-G, Classification Chrono, to OCS, who shall generate an updated CDCR Form 128-B2 reflecting "Terminated".  The original CDCR Form 128-B2 shall be returned to the institution.  Review by the STG Unit Classification Committee will not be required to review/approve this document.

(5) Inmates, who have had their STG status terminated, shall be eligible to participate in any recognized housing/programs consistent with other general population inmates with similar case factors.  If additional STG related activity or behavior is subsequently discovered, a new validation package shall be required to change the inmate's STG status.

Note: Authority cited: section 5058, Penal Code. Reference: Sections 5054 and 5068, Penal Code.

**3504. Parole Assessment.**

**Subsection 3504(a) remains unchanged.**

**Subsection 3504(a)(1) is amended to read:**

(1)  High Control means the highest level of supervision based on commitment offense(s) and prior criminal history. Cases designated high control shall be reserved for persons with violent felony commitments as described in Penal Code (PC) section 667.5(c), PC section 290 registrants; cases generating extensive media or public attention; or cases involving membership in Security Threat Group (STG) ~~gangs,~~ as stated on CDCR Form 128-B2, (11/13) STG Validation/Rejection Review, which is incorporated by reference ~~CDC Form 812-A (Rev. 9/92) Notice of Critical Information - Prison Gang Identification, or membership in a disruptive group, as identified on CDC Form 812-B (Rev. 9/92) Notice of Critical Information - Disruptive Group Identification~~. The following minimum contact requirements shall apply to these cases:

**Subsections 3504(a)(1)(A) through 3504(a)(3)(D) remain unchanged.**

**Subsection 3504(a)(3)(E) is amended to read:**

(E)  Parolees who complete 180-days of satisfactory parole will automatically be assigned to the minimum supervision category.  Exceptions to the automatic reduction shall include violent felony commitments described in PC section 667.5, PC section 290 registrants, cases generating extensive media or public attention, and STG ~~gang~~ members, as documented on CDCR Form 128-B2 (11/13) STG Validation/Rejection Review, which is incorporated by reference ~~812-A~~.

**Subsections 3504(a)(4) through 3504(d) remain unchanged.**

Note: Authority cited: Section 5058, Penal Code. Reference: Sections 290, 667.5(c), 3000.03 and 5054, Penal Code; and Sections 3151 and 3152, Welfare and Institutions Code.

**3505. Non-Revocable Parole.**

**Subsections 3505(a) through 3505(a)(5) remain unchanged. Subsection 3505(a) is shown to provide context.**

(a) Inmate/parolees who meet the following criteria shall be placed on non-revocable parole, as described in section 3000, and pursuant to Penal Code (PC) section 3000.03:

**Subsection 3505(a)(6) is amended to read:**

(6)  Is not validated as a STG-I member or associate an active or inactive prison gang member or associate as defined in section 3000 3378(c) by the Chief, Office of Correctional Safety, or a designee.

**Subsections 3505(a)(7) through 3505(c) remain unchanged.**

Note: Authority cited: Section 5058.3, Penal Code. Reference: Sections 3000.03, 3067 and 5054, Penal Code.

**3545. Persons to Participate in Continuous Electronic Monitoring.**

**Subsections 3545(a) through 3545(c)(4) remain unchanged.**

**Subsection 3545(c)(5) is amended to read:**

(5)  STG-I Gang Members

**Subsections 3545(c)(6) through 3545(d)(7) remain unchanged.**

Note: Authority cited: Sections 5058 and 5058.3, Penal Code. Reference: Sections 3004, 3010, 3010.1, 3010.2, 3010.3, 3010.4, 3010.5, 3010.6, 3010.7, 3010.8, 3010.9 and 5054, Penal Code.

**3561. Global Positioning System Technology on Eligible Parolees Designated as High Risk.**

**Subsections 3561(a) through 3561(b)(1) remain unchanged.**

**Subsection 3561(b)(2) is amended to read:**

(2)  Any validated STG prison gang, street gang, or disruptive group member or associate as indicated on the CDCR Form 812, Notice of Critical Case Information-Safety of Persons (Non-confidential Enemies) or CDCR Form 128-B2, (11/13) STG Validation/Rejection Review, which is incorporated by reference CDC Form 812-A, Notice of Critical Information- Prison Gang Identification, or CDC Form 812-B, Notice of Critical Information- Disruptive Group Identification.

Subsections 3561(b)(3) through 3561(b)(5) remain unchanged.

Note: Authority cited: Sections 5058 and 5058.3, Penal Code. Reference: Sections 3004, 3010, 3010.1, 3010.2, 3010.3, 3010.4, 3010.5, 3010.6, 3010.7, 3010.8, 3010.9 and 5054, Penal Code.

**Existing section 3651 title is amended to read:**

**3651. Penal code Section 186.3 Registrants (Gang Offenders).**

**Subsections 3651(a) through 3651 (b)(1) remain unchanged.**

**Subsection 3651(b)(2) is amended to read:**

(2)   The law enforcement agency will serve the parolee with a California Street Terrorism Enforcement and Prevention Act notification which includes, where applicable, that the parolee belongs to a STG ~~gang~~ whose members engage in or have engaged in a pattern of criminal STG ~~gang~~ activity as described in PC section 186.22(e).

**Subsections 3651(b)(3) through 3651(f) remain unchanged.**

Note: Authority cited: Section 5058, Penal Code. Reference: Sections 186.30, 186.32, 186.33 and 5054, Penal Code.

**3721. Discharge Review Reports.**

**Subsections 3721(a) through 3721(b)(1)(D) remain unchanged.**

**Subsection 3721(b)(1)(E) is amended to read:**

(E)  STG ~~Gang~~ Validation.  Note any past or present involvement in any STG ~~prison, criminal~~, or street gang as a validated member, associate, or affiliate, and if the parolee is a valid STG-I ~~an active or inactive validated~~ member, associate, or affiliate.

**Subsections 3721(b)(2) through 3721(b)(3)(G) remain unchanged.**

Note: Authority cited: Section 5058, Penal Code. Reference: Sections 3000.1, 3001, 3006 5054 and 5076.2, Penal Code.