1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   RANDY REAL,                               No.  2:09-cv-3273 GEB KJN P

12                  Plaintiff,

13        v.                                    ORDER

14   JAMES WALKER, et al.,

15                  Defendants.

16

17          Plaintiff, a state prisoner in the custody of the California Department of Corrections and

18   Rehabilitation ("CDCR"), brings this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff

19   challenges his validation as an associate of a prison gang and his resulting confinement in a

20   Security Housing Unit ("SHU").

21          Presently before the court is defendants' motion to dismiss.  Plaintiff filed an opposition,

22   and defendants filed a reply.  On January 15, 2015, a hearing on the motion to dismiss was held,

23   at which plaintiff was represented by Paul H. Masuhara and defendants by Deputy Attorney

24   General Jaime M. Ganson.  Having fully considered the matter and based upon concessions at

25   that hearing, the court orders that the motion be granted in part and denied in part, for the reasons

26   set forth below.

27   ////

28   ////

1

1  I.  Background

2      A.  Factual Allegations

3      This action proceeds on plaintiff's second amended complaint, filed July 28, 2014.

4  ("SAC," ECF No. 69.)  Currently named as defendants are James Walker, formerly Warden of

5  California State Prison-Sacramento ("CSP-Sac"), T. Ventimiglia, J. Stewart, G. Parker,

6  R. Ramos, K.M. Pool, R. Parilla, Everett W. Fisher, Scott S. Kisser, and G. Williams, all of

7  whom are sued in their individual capacities, and CDCR Secretary Jeffrey Beard, who is sued in

8  his official capacity.  In the SAC, plaintiff alleges as follows

9      On November 16, 2001, plaintiff entered CDCR custody at North Kern State Prison.  He

10  was transferred there from Los Angeles County Jail.  (Id. at 3.)

11      On February 11, 2002, plaintiff was transferred to California Correctional Institution, in

12  Tehachapi, California ("CCI").  He alleges that the prison was on lockdown when he arrived, due

13  to an incident that occurred before his arrival.  As a result, March 4, 2002 was the first day after

14  his arrival that prisoners were allowed to go out onto the yard.  (Id. at 4.)

15      That day, plaintiff alleges that he was "caught in the middle of a prison brawl that resulted

16  in the stabbing of prisoner Randy Rangel."  (Id.)  Six prisoners, including plaintiff and the victim,

17  were involved in the incident.  According to written reports, plaintiff sustained injuries to his left

18  shoulder, back, and left knuckle in this incident, but an investigator later reported being unable to

19  find any injuries on plaintiff's knuckle or hands, and according to plaintiff, stated that "it appears

20  [plaintiff] may have been incorrectly categorized as an assailant, when it seems that he may have

21  been a victim."  (Id.)

22      Defendant Parilla, an Institutional Gang Investigator ("IGI") at CCI, also questioned

23  plaintiff.  Plaintiff alleges that he maintained his innocence throughout this questioning, and was

24  unable to identify the individual(s) responsible for the stabbing.  According to plaintiff, defendant

25  Parilla "took this as a lack of cooperation on [plaintiff's] part, and as a result held [plaintiff] to be

26  responsible for the stabbing."  (Id. at 5.)  Plaintiff alleges that defendant Parilla assigned him to

27  CCI's SHU in retaliation.  (Id.)

28  ////

2

Plaintiff describes the following as having occurred during his time in CCI's SHU:

> Sometime . . . when they were placed in adjacent cages, [plaintiff] met a prisoner in the yard by the name of Jesse Enriquez. Enriquez told [plaintiff] that he was scheduled to be paroled in a few months and could introduce [plaintiff] to a female companion once [plaintiff] was released from the SHU.  [Plaintiff], interested in forming a new relationship, agreed to exchange contact information. Enriquez gave [plaintiff] his parents' home address in Pomona, California, where he intended to reside while on parole. [Plaintiff] transcribed this address on a piece of paper, but never wrote to Enriquez or anyone else at that address. He since forgot about Enriquez and that address and never received any further communication from anyone living or purporting to live at that address.

(Id. at 5.)  After two-and-a-half years, plaintiff was released into CCI's general population.  He was later sent back to the SHU due to an unrelated fistfight.  On March 8, 2006, plaintiff was transferred from CCI to CSP-Sac's general population.  (Id.)

Plaintiff next alleges that, on July 2, 2008, he was served with a gang validation packet by defendant Ventimiglia, a Lieutenant in CSP-SAC's Institutional Gang Investigation Unit.  The packet identified plaintiff as an associate[1] of the Mexican Mafia prison gang known as "EME" based on six documents.  Plaintiff was placed in Administrative Segregation ("Ad Seg") pending the outcome of the validation process.  (Id. at 6.)

The six documents were as follows:  (1) a confidential memorandum prepared by defendant Parilla, dated July 17, 2002, stating that a confidential informant had identified plaintiff as committing battery on Rangel at CCI on behalf of a validated EME member; (2) a confidential memorandum prepared by defendant Parilla, dated February 26, 2003, stating that a confidential informant had identified plaintiff as conducting "Roll Call" of EME prisoners at CCI; (3) a CDCR 128-B prepared by defendant Parilla, dated July 11, 2005, identifying plaintiff as possessing a contact address for prisoner Jesse Enriquez, a validated EME gang associate; and (4)-(6) three confidential memoranda ("CM") written by defendant Parker, an Institutional Gang

---

[1] California prison regulations define an "associate" of a prison gang as "an inmate . . . who is involved periodically or regularly with members or associates of a gang."  15 Cal. Code Regs. § 3378(c)(4).

3

1   Reviewer at CSP-Sac, which refer to three separate "gang rosters" listing plaintiff as an active

2   EME associate, obtained pursuant to cell searches of three validated EME associates.  (Id. at 6.)

3   In the SAC, plaintiff sets forth at length his reasons for contesting the reliability of these items.

4   (Id. at 7-9.)

5          On July 3, 2008, defendant Stewart, a Sergeant in CSP-Sac's Institutional Gang

6   Investigative unit, interviewed plaintiff regarding his validation.  Plaintiff alleges that, to avoid

7   being misinterpreted, he presented Stewart with a one-page handwritten response disputing the

8   allegations in the gang validation packet.  (Id. at 9.)

9          On July 4, 2008, defendant Ramos, a Captain at CSP-Sac, served plaintiff with a 114-D

10  Lock Up Order that set forth the reasons for plaintiff's placement in Ad Seg.  The Lock-Up Order

11  was signed by defendants Ventimiglia and Ramos.  Plaintiff alleges that he verbally requested the

12  assistance of an investigative employee, to which defendant Ramos replied, "You are not entitled

13  [to an investigative employee] at this point because there is an investigation being done."  (Id. at

14  10.)  According to plaintiff, he never waived the assistance of an investigative employee, and

15  repeatedly raised the issue, such as through the filing of 602 appeals and at various classification

16  committee appearances, to no avail.  (Id. at 10-11.)  On March 11, 2009, a Director's Level

17  Appeal decision issued which provided that "there is no indication that appellant requested an

18  [investigative employee] or that the Classification Hearing Officer deemed the assignment of an

19  [investigative employee] as being necessary pursuant to . . . California Code of Regulations, Title

20  15, section 3339(b)."  (Id. at 11.)  Plaintiff alleges the involvement of defendants Warden Walker

21  and Pool, an Appeals Coordinator at CSP-SAC, in the denial of an investigative employee.  (Id.)

22         On August 12, 2008, defendant Parker searched plaintiff's cell and seized his address

23  book.  Plaintiff's attempts to secure the return of the address book were unavailing.  Plaintiff

24  alleges the involvement of defendant Stewart in his subsequent, failed appeals of the decision to

25  retain his address book.  (Id. at 12.)

26         On December 12, 2008, plaintiff was notified that he had been validated as an active

27  prison gang associate by a Special Services Unit Review committee consisting of defendants

28  Fisher, Kisser, and Williams.  (Id. at 10-11.)  Plaintiff's appeals of the validation were denied.

1   Plaintiff alleges the involvement of defendant Ventimiglia in the denial.  (Id. at 11-12.)

2           At some later, unspecified time, plaintiff was transferred to the SHU at Pelican Bay State

3   Prison based on his validation as a gang associate.  (Id. at 2.)  At the hearing on this motion,

4   defendants' counsel informed the court that plaintiff is now a general population inmate at Kern

5   Valley State Prison.

6           B.  Procedural History

7           This action commenced on November 20, 2009, with the filing of plaintiff's initial

8   complaint.  (ECF No. 1.)  After screening, the court permitted plaintiff to proceed against

9   eighteen defendants.  (ECF No. 6.)  On January 11, 2010, plaintiff filed a motion for leave to file

10  an amended complaint, which the court granted.  (ECF Nos. 10, 13.)  On March 22, 2010,

11  plaintiff filed his first amended complaint.  ("FAC," ECF No. 14.)  On April 22, 2011, defendants

12  filed a motion to dismiss the FAC.  (ECF No. 30.)  On March 2, 2012, the court issued findings

13  and recommendations, recommending therein that the motion be granted in part and denied in

14  part.  (ECF No. 43.)  The findings and recommendations state in relevant part:

15              For the reasons set forth above, this court recommends dismissal of
                plaintiff's First Amended Complaint, with leave to file a Second
16              Amended Complaint, that is limited to:    (1) two Fourteenth
                Amendment  Due  Process  claims  premised,  respectively,  on
17              plaintiff's challenges to the denial of an IE, and the merits of his
                gang  validation/SHU  placement . . .;  (2)  one  First  Amendment
18              claim, based on the alleged denial of plaintiff's rights to free speech
                and association . . .; and (3) one Eighth Amendment claim, based
19              on the allegedly unique conditions of plaintiff's SHU placement.

20  (Id. at 28.)  These findings and recommendations were adopted by U.S. District Judge Garland E.

21  Burrell, Jr. on March 30, 2012.  (ECF No. 47.)

22          Defendants then filed an interlocutory appeal challenging the court's denial of their

23  qualified immunity defense, which they had raised in their motion to dismiss.  (ECF No. 57.)  On

24  May 28, 2013, the Ninth Circuit issued a memorandum opinion affirming the court's order.  (ECF

25  No. 63.)

26          On September 11, 2013, Judge Burrell issued an order that, inter alia, granted plaintiff's

27  earlier request for appointment of counsel.  (ECF No. 67.)  Accordingly, on July 28, 2014, Carter

28  C. White entered an appearance for the limited purpose of assisting plaintiff in filing his second

1  amended complaint.  (ECF No. 71.)  That same day, plaintiff filed his second amended complaint.

2  (ECF No. 69.)  Subsequently, on October 14, 2014, the court appointed Mark E. Merin and Paul

3  H. Masuhara, plaintiff's present attorneys, as counsel.  (ECF No. 80.)

4       On October 14, 2014, defendants filed the instant motion to dismiss the SAC in its

5  entirety.  (ECF No. 76.)  On December 19, 2014, plaintiff filed an opposition to the motion to

6  dismiss.  (ECF No. 82.)  On January 8, 2015, defendants filed a reply thereto.  (ECF No. 83.)  The

7  court now turns to the substance of the motion.

8  II.  Standards

9       A.  Standard re: Motion to Dismiss

10       Rule 12(b)(6) of the Federal Rules of Civil Procedures provides for motions to dismiss for

11  "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In

12  considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court

13  must accept as true the allegations of the complaint in question, Erickson v. Pardus, 551 U.S. 89

14  (2007), and construe the pleading in the light most favorable to the plaintiff.  Jenkins v.

15  McKeithen, 395 U.S. 411, 421 (1969); Meek v. Cnty of Riverside, 183 F.3d 962, 965 (9th Cir.

16  1999).  To survive dismissal for failure to state a claim, a complaint must contain more than

17  "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause

18  of action."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007).  "Threadbare recitals

19  of the elements of a cause of action, supported by mere conclusory statements do not suffice."

20  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Furthermore, a claim upon which the court can

21  grant relief must have facial plausibility.  Twombly, 550 U.S. at 570.  "A claim has facial

22  plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

23  inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.

24  Attachments to a complaint are considered to be part of the complaint for purposes of a motion to

25  dismiss for failure to state a claim.  Hal Roach Studios v. Richard Feiner & Co., 896 F.2d 1542,

26  1555 n.19 (9th Cir. 1990).

27       A motion to dismiss for failure to state a claim should not be granted unless it appears

28  beyond doubt that the plaintiff can prove no set of facts in support of his claims which would

1  entitle him to relief.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  "[I]n a line of cases

2  stretching back nearly 50 years, we have held that in dismissing for failure to state a claim under

3  Rule 12(b)(6), a district court should grant leave to amend even if no request to amend the

4  pleading was made, unless it determines that the pleading could not possibly be cured by the

5  allegation of other facts."  Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (citations and

6  internal quotation marks omitted).

7      In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court "may generally

8  consider only allegations contained in the pleadings, exhibits attached to the complaint, and

9  matters properly subject to judicial notice."  Outdoor Media Grp., Inc. v. City of Beaumont, 506

10  F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted).

11      B.  Standard re: qualified immunity

12      Much of defendants' motion rests on a qualified immunity defense.

13      "Qualified immunity balances two important interests – the need to hold public officials

14  accountable when they exercise power irresponsibly and the need to shield officials from

15  harassment, distraction, and liability when they perform their duties reasonably."  Pearson v.

16  Callahan, 555 U.S. 223, 231 (2009).  The objective of the qualified immunity doctrine is to ensure

17  "that 'insubstantial claims' against government officials be resolved prior to discovery and on

18  summary judgment if possible."  Anderson v. Creighton, 483 U.S. 635, 640 n. 23 (1987), citing

19  Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982).  Meeting this objective requires that

20  immunity questions be resolved "at the earliest possible stage in litigation."  Hunter v. Bryant,

21  502 U.S. 224, 227 (1991) (per curiam).  Qualified immunity may be raised on a motion to

22  dismiss.  See Mitchell v. Forsyth, 472 U.S. 511, 527 (1985) ("Unless the plaintiff's allegations

23  state a claim of violation of clearly established law, a defendant pleading qualified immunity is

24  entitled to dismissal before the commencement of discovery.").

25      "An official is entitled to . . . qualified immunity where his or her conduct does not violate

26  clearly established statutory or constitutional rights of which a reasonable person would have

27  known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Until recently, courts considering a

28  claim of qualified immunity followed the two-step protocol established in Saucier v. Katz, 533

1   U.S. 194 (2001), which required a court first to determine whether the defendant violated a

2   constitutional right and then to determine whether that right was clearly established.  In Pearson,

3   the Supreme Court reversed this earlier rule and gave courts discretion to grant qualified

4   immunity on the basis of the 'clearly established' prong alone, without deciding in the first

5   instance whether any right had been violated.  Pearson, 555 U.S. at 244.  Thus, a court may grant

6   qualified immunity if "the facts that a plaintiff has alleged or shown [do not] make out a violation

7   of a constitutional right" or if "the right at issue was [not] 'clearly established' at the time of

8   defendant's alleged misconduct.'"  James v. Rowlands, 606 F.3d 646, 650-51 (9th Cir. 2010),

9   quoting Pearson, 555 U.S. at 232 (internal citations omitted).  Conversely, a motion based on

10  qualified immunity will be denied if, construing the facts in the light most favorable to the party

11  asserting the injury, defendant violated a constitutional right that was clearly established at the

12  time of the alleged injury.  Saucier, 533 U.S. at 201.

13  III.  Analysis

14        A.  Plaintiff's concessions

15        In his opposition, plaintiff concedes several matters raised by defendants' motion to

16  dismiss.  These are as follows:

17        •  Defendant Warden Walker's dismissal from this action.  (ECF No. 82 at 17.)

18        •  Defendant Ventimiglia's dismissal from this action.[2]  (Id. at 18.)  At hearing,

19           plaintiff's counsel modified this concession, seeking leave to amend plaintiff's

20           Fourteenth Amendment due process claim challenging the evidence used in his

21           gang validation claim to name Ventimiglia as a defendant.  As this claim will be

22           dismissed for the reasons set forth below, the court need not reach this issue.

23        •  Defendant Pool's dismissal from this action.  (Id. at 21.)

24        •  Defendants Stewart's, Parker's, Ramos's, and Parilla's dismissal from plaintiff's

25  _____

    [2] Plaintiff writes that "that he does not oppose Defendant Walker's dismissal from this action."
26  (Opposition 13:11-12; ECF No. 82 at 18:11-12.)  But it appears, both from the section heading
    ("Defendant T. Ventimiglia") and the content of the preceding paragraph, that this is a
27  typographical error and plaintiff meant to write "Defendant Ventimiglia" rather than "Defendant
    Walker." At the hearing on the motion to dismiss, plaintiff's counsel confirmed that he meant to
28  write "Defendant Ventimiglia."

Fourteenth Amendment claim regarding plaintiff's SHU assignment. (Id. at 19-21.)

- Defendants Stewart's, Parker's, Ramos's, and Parilla's dismissal from plaintiff's Eighth Amendment claim. (Id. at 19-21.)

- Defendants Secretary Beard's and Ramos's dismissal from plaintiff's First Amendment claim. (Id. at 17, 20.)

- He is not entitled to injunctive relief pursuant to his Fourteenth Amendment claim for improper gang validation and his First Amendment claims, "because those injuries are not likely to reoccur and were not inflicted pursuant to a policy or custom." (Id. at 23, citing City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983).)

The order herein reflects these concessions. The court expresses its appreciation for plaintiff's counsel's efforts in this regard.

B. May plaintiff proceed on his Fourteenth Amendment due process claims regarding gang validation?

In its March 2, 2012 order, the court recognized that California state regulations governing prison gang validations have been held to create cognizable due process interests. (ECF No. 43 at 12-14.) In reaching this conclusion, the court relied on Ninth Circuit precedent holding that, in order to comply with due process standards, the initial segregation of a suspected gang associate must comply with the following requirements:

> Prison officials must hold an informal nonadversary hearing within a reasonable time after the prisoner is segregated. The prison officials must inform the prisoner of the charges against the prisoner or their reasons for considering segregation. Prison officials must allow the prisoner to present his views. We specifically find that the due process clause does not require detailed written notice of charges, representation by counsel or counsel-substitute, an opportunity to present witnesses, or a written decision describing the reasons for placing the prisoner in administrative segregation.

Toussaint v. McCarthy, 801 F.2d 1080, 1100-01 (9th Cir. 1986) (fn. omitted); accord, Bruce v. Ylst, 351 F.3d 1283, 1287 (9th Cir. 2003).

////

9

Plaintiff alleges three violations of his due process rights in connection with his validation as a gang associate, specifically, that defendants:  (i) denied him an investigative employee despite his requests for one; (ii) lacked the requisite quantum of evidence to validate him as a gang associate; and (iii) denied him meaningful classification reviews.  These claims are assessed in turn below.

1. <u>May plaintiff proceed on his Fourteenth Amendment due process claims
regarding defendants' failure to assign him an investigative employee?</u>

Plaintiff alleges that defendants Stewart and Ramos violated his due process rights by failing to appoint an investigative employee in connection with his gang validation.

Plaintiff pleads the relevant facts as follows:

> [O]n July 4, 2008, Defendant Ramos served [plaintiff] with a 114-D Lock Up Order, which stated the reason for placement in Administrative Segregation, namely that [plaintiff] posed a threat to the safety of the institution and to others.  At this time, [plaintiff] requested an IE but was denied such assistance.  [Plaintiff] requested the IE from Ramos since he was the Captain and the one who issued the 114-D Lock Up Order.  Defendant Ramos told [plaintiff], "You are not entitled [an IE] at the point because there is an investigation being done."  [Plaintiff] responded that he was being placed in Administrative Segregation for possible validation and was thus entitled to present witnesses and evidence in his defense per title 15 section 3337(b) and 3338(4)(b).  The 114-D Lock Up Order bears the signature of Defendant Ventimiglia[3] as segregation authority and the approval signature of Defendant Ramos. The space on the Order regarding Investigative Employee includes a list of "Yes" and "No" options. The space "No" is marked for "Declined Any Investigative Employee."  Below this the form states "Any 'No' may require IE assignment."  Despite the fact that two of the "No" boxes were checked, neither Defendant Ramos nor any other Defendant provided IE assistance to Plaintiff. [Plaintiff] never waived IE assistance and continued to request it.

(SAC, ECF No. 69 at 9-10.)

Defendants move to dismiss this claim on qualified immunity grounds.  Their central contention is that "no established legal authority recognizes a federal due-process right to the assignment of an investigative employee during gang-validation proceedings. [. . .]  The law is not so clear that every reasonable officer would understand that not assigning [plaintiff an]

---

[3] As discussed above, plaintiff now concedes that Ventimiglia is not properly named as a defendant under this claim.

1  investigative employee violated the Fourteenth Amendment." (Motion, ECF No. 76-1 at 22.)  In

2  support, they cite Baker v. Lewis, No. C 11-3493 LHK (PR), 2012 WL 1932867 (N.D. Cal. May

3  29, 2012), and Lopez v. Galaza, No. 2:02-cv-2563-FCD-DAD, 2006 WL 3147686 (E.D. Cal.

4  Nov. 1, 2006).

5        In opposition, plaintiff argues that neither Baker nor Lopez supports the proposition

6  advanced by defendants.  (ECF No. 82 at 8-9.)  There is some merit to plaintiff's argument.

7  While the court in Baker wrote that "due process does not mandate that Plaintiff receive an

8  investigative employee to assist in his hearing," 2012 WL 1932867 at *3, the remainder of the

9  order makes clear that the hearing in question concerns a periodic review of gang validation

10  status, not an initial validation.  In particular, the court, in denying the Baker plaintiff's claim

11  regarding an investigate employee, relied on a California prison regulation providing that "[a]n

12  investigative employee shall not be assigned at these periodic classification committee reviews."

13  Cal. Code Regs. tit. 15, § 3341.5(c).  Id. at *3 n.1.  Defendants' citation to Lopez appears

14  similarly inapt.  Lopez concerns a challenge, brought under 28 U.S.C. § 2254, to a prison

15  disciplinary conviction that resulted in petitioner's loss of good-time credits.  That court's

16  conclusion that "the right to the services of an investigative employee . . . [is not] guaranteed by

17  the United States Constitution," 2006 WL 3147686 at *14, is not conclusive to the question of the

18  scope of due process owed prisoners facing gang validation proceedings.

19        Plaintiff next insists that, because the court previously held that plaintiff could challenge

20  the denial of an investigative employee on due process grounds, therefore the law of the case

21  forbids defendants from attempting to revisit this determination through their qualified immunity

22  challenge.  (Opposition, ECF No. 82 at 8.)  This position mischaracterizes the court's prior order.

23  Defendants previously contended that the documents attached to plaintiff's first amended

24  complaint demonstrated that he had waived the appointment of an IE.  After examining the

25  documents in questions, the court noted that the alleged waiver was "not as clear cut as

26  defendants contend," (ECF No. 4 at 17), and on this basis, permitted plaintiff to re-allege his

27  claim in the SAC.  The court has never reached the question of whether, as a matter of law,

28  plaintiff's due process rights required the appointment of an IE.

1    In reply, defendants repeat their contention that "[n]o legal authority provides sufficient

2    notice, such that every reasonable prison official would understand – beyond debate – that the

3    denial of an investigative employee during gang-validation proceedings violates the Fourteenth

4    Amendment."  (ECF No. 83 at 6.)  In support, they cite Mattos v. Agarano, 661 F.3d 433, 448

5    (9th Cir. 2011) (en banc) (holding that defendants were entitled to qualified immunity against

6    excessive force claim because panel was unable to "conclude . . . in light of . . . existing

7    precedents, that every reasonable official would have understood beyond debate that tasing [the

8    Mattos plaintiff] in these circumstances constituted excessive force.") (internal quotations

9    omitted).

10    Under Saucier, 533 U.S. at 194, the issue presented is as follows:  if a California prison

11    inmate placed in administrative segregation and facing gang validation proceedings does not

12    decline (and, in fact, affirmatively seeks) an investigative employee, whether constitutional due

13    process requires that he be assigned one; and if so, whether that right was clearly established in

14    July 2008, when the challenged gang validation proceedings began.

15    The court has reviewed the applicable prison regulations in effect at the time that plaintiff

16    was subject to gang validation.  The regulations define "investigative employee" as an individual

17    "designated to gather information for the senior hearing officer or disciplinary hearing committee

18    as described in section 3315(d)(1)(A)."[4]  Cal. Code Regs. tit. 15, § 3318(a).  The referenced

19    section, in turn, provides as follows:

20    An investigative employee, as described in section 3318(a), shall be
      assigned when the staff designated to classify the serious rule
21    violation determines that:

22    1. The complexity of the issues require further investigation.

23    2. The housing status makes it unlikely the charged inmate can

24    _____

25    [4] By contrast, if (i) an inmate is illiterate or non-English speaking, (ii) the complexity of the issues
      is such that the inmate requires assistance to understand the nature of the charges or the
26    disciplinary process, or (iii) the inmate has a disability necessitating assistance to participate in
      the disciplinary process, applicable regulations require that the inmate be assigned a staff assistant
27    "to assist in the preparation, and presentation of a defense . . . ."  Cal. Code Regs. tit. 15,
      § 3315(d)(2).  Plaintiff does not allege that he qualified for a staff assistant under these criteria.
28

12

3. A determination has been made that additional information is necessary for a fair hearing.

Cal. Code Regs. tit. 15, § 3315(d)(1)(A).  California Code of Regulations, title 15, § 3337, provides that, if an inmate's retention in administrative segregation is approved on initial review, then staff must then make a determination regarding "the inmate's desire to call witnesses or submit other documentary evidence."  To this end:  "If the inmate requests the presence of witnesses or submission of documentary evidence at a classification hearing on the reason or need for retention in segregated housing, an investigative employee will be assigned to the case.  A request to call witnesses and the names of witnesses must be submitted in writing by the inmate." Cal. Code. Regs. tit. 15, § 3337(b).

Accordingly, the question is if defendants violated the quoted regulations by not assigning an investigative employee to the matter, did they thereby also violate plaintiff's federal due process rights?  This appears to be a matter better settled at summary judgment or at trial than on a motion to dismiss.  The Ninth Circuit has made clear that "the due process clause does not require detailed written notice of charges, representation by counsel or counsel-substitute, an opportunity to present witnesses, or a written decision describing the reasons for placing the prisoner in administrative segregation."  Toussaint, 801 F.2d at 1100-01.  However, the Ninth Circuit does require prison officials to "allow the prisoner to present his views."  Id. at 1100.  At this stage, it cannot be known whether plaintiff sought to submit documentary evidence regarding his segregation.  There is also nothing before the court regarding the circumstances of defendants' determination that plaintiff, while in administrative segregation, could "collect and present the evidence necessary for an adequate presentation of a defense," Cal. Code Regs. § tit. 15, § 3315(d)(1)(A)(2).  It may be that defendants' failure to assign an investigative employee to plaintiff prevented him from adequately "present[ing] his views," per Toussaint, 801 F.2d at 1100, thereby violating his due process rights.

Further reinforcing the conclusion that a decision on this matter is premature is the fact that plaintiff was subject to three proceedings that overlapped in time:  validation as a gang

1   associate, placement in administrative segregation, and placement in the SHU.  Plaintiff's

2   allegations and defendants' motion do not allow the court to assess what due process was

3   afforded plaintiff in each of these proceedings.

4          Finally, the court notes that there is Ninth Circuit precedent for considering the

5   involvement of an investigative employee when assessing the adequacy of due process in the

6   validation context.  In Redd v. McGrath, 254 Fed. Appx. 642 (9th Cir. 2007), the Ninth Circuit

7   upheld the district court's determination that a California state prisoner's due process rights were

8   not violated in proceedings that resulted in his validation as a gang member.  Among the factors

9   considered by the panel in reaching this determination was the fact that the petitioner "had met

10  with an investigative employee who explained the evidence used to validate [petitioner's] gang

11  membership and gave [him] the opportunity to refute it."  Id. at 644.  It is reasonable to infer from

12  this (admittedly unpublished) opinion that the presence of an investigative employee can help

13  safeguard prisoners' due process rights in the gang validation process.

14         At hearing, defendants' counsel argued that defendant Stewart is not properly named as a

15  defendant under this claim.[5]  The sole allegation concerning Stewart in connection with this claim

16  reads:

17              On July 3, 2008, the day after serving Real with his validation
            packet, Defendant Stewart interviewed Real regarding his
18          validation.  To ensure that his words were not misinterpreted, Real
            prepared a one page handwritten response disputing the gang
19          validation allegations against him.   When Defendant Stewart
            interviewed him, Real presented to Stewart this one page response.
20

21  (SAC, ECF No. 69 at 9.)  Plaintiff's counsel conceded this point, but indicated that he wished to

22  speak to his client to verify whether Stewart had any additional involvement in the denial of an

23  investigative employee.  Accordingly, Stewart will be dismissed from this claim without

24  prejudice.

25  ////

26  ////

27

28  _____
    [5] Defendants also made this argument in their motion to dismiss.  (ECF No. 76-1 at 20.)

14

2.  <u>May plaintiff proceed on his Fourteenth Amendment due process claims</u>

<u>challenging the evidence used in his gang validation?</u>

Plaintiff alleges that his Fourteenth Amendment due process right were violated when defendants "[v]alidated [p]laintiff as a gang associate and placed [p]laintiff in the SHU on the basis of erroneous, unreliable and untrue information that does not constitute 'some evidence.'" (SAC, ECF No. 69 at 12.)

Defendants Stewart and Ramos are named as defendants under this claim.  (Opposition, ECF No. 82 at 23.)  In his opposition, plaintiff seeks leave to amend the SAC to name defendants Parilla, Fisher, Kisser, and Williams as additional defendants.  (<u>Id.</u> at 21-22.)  At hearing, plaintiff's counsel indicated that he would like to add defendant Ventimiglia as an additional defendant under this claim.

The validation decision meets federal substantive due process requirements if it is supported by "some evidence."  <u>Bruce</u>, 351 F.3d at 1283.  A single piece of evidence may be sufficient to meet the "some evidence" requirement if it has "sufficient indicia of reliability."  <u>Id.</u> at 1288 (citing <u>Toussaint</u>, 926 F.2d at 803).

Defendants argue that they "are entitled to qualified immunity because a reasonable officer could understand the Supreme Court's decision in <u>Swarthout v. Cooke</u>, __ U.S. __, 131 S. Ct. 859 (2011) [(holding that the Due Process clause does not require proper application of *California's* "some evidence" standard in the context of a parole hearing)] to imply that inmates can bring only procedural due-process challenges to gang-validation decisions."  (Motion, ECF No. 76-1 at 26.)

Defendants' reading of <u>Swarthout</u> is inapt.  Putting aside the fact that <u>Swarthout</u> was decided well after plaintiff was validated as a gang associate, the Ninth Circuit recently reaffirmed the propriety of the *federal* "some evidence" evidentiary standard in the gang validation context, writing:

> The parties disagree over whether, under <u>Swarthout v. Cooke</u>, due process requires that the evidence of Castro's prison gang association be tested by the "some evidence" standard.  131 S. Ct. 859.  In <u>Swarthout</u>, the Supreme Court rejected the argument that the due process clause required there to be "some evidence" to deny

1

2

3

4

5

> an inmate parole. 131 S. Ct. at 861–63.   However, <u>Swarthout</u> involved a "some evidence" standard imposed in parole revocation proceedings by California state law, rather than the "some evidence" standard that federal due process law imposes on Castro's validation procedure.  Compare <u>id.</u> at 862, with <u>Toussaint v. McCarthy</u>, 801 F.2d 1080, 1104 (9th Cir. 1986). Indeed, Justice Ginsburg—concurring in <u>Swarthout</u>—highlighted the distinction between these two standards.  <u>Id.</u> at 863 (Ginsburg, J., concurring).

6

7

8

<u>See</u> <u>Castro v. Terhune</u>, 712 F.3d 1304, 1314 n.4 (9th Cir. 2013).  The Ninth Circuit in <u>Castro</u> also made clear that "procedural, not substantive, due process guarantees inmates that their validation will be based on some evidence."  <u>Id.</u> at 1314.

9

10

11

12

13

14

Defendants devote a significant portion of their moving papers to arguing that plaintiff was properly validated as a gang associate.  Many of their arguments require the court to weigh evidence in a manner that is better suited for summary judgment or trial.  However, one argument – renewed by defendants' counsel at hearing – merits the court's attention: that plaintiff has conceded the sufficiency of at least one piece of evidence used to validate him as a gang associate, and that he must be held to that concession.

15

16

17

18

19

20

Plaintiff's FAC included as exhibits two copies of an informational chrono on form CDC 128B, dated July 11, 2005, prepared by defendant Parilla.  (ECF No. 14 at 42, 97.)  The chrono identifies the address for Jesse Enriquez's parents in plaintiff's address book as an alleged gang mail-drop address.  Defendants previously moved to dismiss the FAC (ECF No. 30), which plaintiff opposed.  In support of his opposition, plaintiff filed a declaration in which he stated, under penalty of perjury:

21

22

23

> [T]he address book was not in connection to confidential information dated 7/11/05 p.42 of the complaint.  Plaintiff address book was taken on 8/12/08 for investigation if in review of the address book there is no showing of the address in question.

24

(ECF No. 39-1 at 71.)  In his opposition, plaintiff elaborated on this statement, writing:

25

26

27

28

> Defendants    point    out    that . . . inmates    are    not    allowed correspondence with inmates. Grant it [sic], that is true, but even assuming if plaintiff did possess this address (which plaintiff denies), it clearly would show that plaintiff had no intentions of writing this person, due to the fact the address is unlegible, scratch out [sic], see comp. p. 42, thus this clearly contradicts its reliability and is farfetched such that its use and identification is so vague that

1    people of ordinary intelligence would have to guess at its contents.

2    (ECF No. 39 at 13.)

3        By contrast, in the SAC, plaintiff alleges that he obtained Enriquez's parents' home

4    address in order to be "introduce[d] . . . to a female companion once [plaintiff] was released from

5    the SHU . . . ." (ECF No. 69 at 5.)

6        Defendants argue that plaintiff, having previously denied that he had the address in his

7    possession, now admits to possessing it and seeks instead to provide an alternate explanation for

8    its possession.  (Motion, ECF No. 76-1 at 29-30.)  Defendants contend that, in so doing, plaintiff

9    has admitted to possession of a gang mail drop address, and consequently, that his alternate

10   explanation is unavailing.  At hearing, defense counsel argued that plaintiff has at no point denied

11   that it was a mail drop address, adding, "[Plaintiff] has conceded to possession of a mail drop

12   address that was used for the same gang that he was validated as being an associate of.  It doesn't

13   matter if he can provide alternate explanations for his possession of that address."  After engaging

14   in a colloquy with the court regarding this issue, plaintiff's counsel stated that he wished to

15   discuss the matter further with his client, and if the court chose to dismiss the claim, asked that it

16   be without prejudice so that he could seek leave to amend if the discussions warranted

17   amendment.

18       It does appear to the court that plaintiff is now seeking to explain the possession of a gang

19   mail drop address that would have justified his validation as a gang associate under the "some

20   evidence" standard.  "Due process does not require that there be no alternative explanation for

21   evidence used in gang validation."  Goolsby v. Gentry, no. 1:11-cv-01773-LJO-DLB, 2014 WL

22   4930759 (E.D. Cal. Sep. 29, 2014) (citing Superintendent v. Hill, 472 U.S. 445, 457 (1985)).  The

23   court is also troubled by the apparently inconsistent positions taken by plaintiff concerning this

24   evidence in his pleadings.  Therefore, the court will dismiss plaintiff's Fourteenth Amendment

25   due process claim challenging the sufficiency of the evidence used to validate plaintiff as a gang

26   associate.[6]  Plaintiff's counsel can seek leave to file an amended complaint that pleads this claim

27

28   [6] In reaching this conclusion, the court does not find that the address in question was in fact a
     gang mail drop address, a point on which no evidence has been proffered to the court.

1    if discussions with his client demonstrate a means to do so that is consistent with plaintiff's prior

2    allegations and averments in this action.

3                    3.  May plaintiff amend his complaint to re-state his Fourteenth Amendment due

4                    process claim regarding classification reviews?

5           Plaintiff alleges a due process violation due to defendants' "fail[ure] to provide

6    meaningful classification reviews" of his placement in the SHU.  (SAC, ECF No. 69 at 13.)

7    Defendants contend – and plaintiff concedes – that the claim is inadequately pled, as plaintiff has

8    failed to include sufficient supporting factual allegations.  (Motion, ECF No. 76-1 at 23;

9    Opposition, ECF No. 82 at 11.)

10          Plaintiff seeks leave to amend in order to properly plead the claim.  (ECF No. 82 at 12.)

11          Defendants oppose this request because, in their view, plaintiff "had no clearly established

12   right to a periodic, post-placement review of his retention in segregated confinement."  (ECF

13   No. 76-1 at 24.)  In support, they cite Brown v. Oregon Dept. of Corr., 751 F.3d 983 (9th Cir.

14   2014), which provides in pertinent part:

15                 We begin with the second prong of the qualified-immunity analysis:
                   whether the right was clearly established at the time of the alleged
16                 violation. Until now, this court has not addressed whether the
                   absence of post-placement periodic, meaningful review of
17                 confinement in a disciplinary-segregation unit may give rise to a
                   protected liberty interest. We previously have found a state-created
18                 liberty interest in review of prisoners' confinement arising from
                   language of state prison regulations. See Toussaint v. McCarthy,
19                 801 F.2d 1080, 1097–98 (9th Cir. 1986), abrogated in part on other
                   grounds by Sandin, 515 U.S. 472 (1995). However, the Supreme
20                 Court has since "refocused the test for determining the existence of
                   a liberty interest away from the wording of prison regulations and
21                 toward an examination of the hardship caused by the prison's
                   challenged action relative to 'the basic conditions' of life as a
22                 prisoner." Mitchell v. Dupnik, 75 F.3d 517, 522 (9th Cir. 1996)
                   (quoting Sandin, 515 U.S. at 485). Thus, we must now evaluate
23                 whether the deprivation in question "imposes atypical and
                   significant hardship on the inmate in relation to the ordinary
24                 incidents of prison life." Sandin, 515 U.S. at 484. Although we
                   conclude that a lengthy confinement without meaningful review
25                 may constitute atypical and significant hardship, our case law has
                   not previously so held, and we cannot hold defendants liable for the
26                 violation of a right that was not clearly established at the time the
                   violation occurred.

27

28   Id. at 989-90.  Plaintiff did not respond to this argument in his opposition, but at the hearing on

                                              18

1   the motion, plaintiff's counsel conceded the correctness of defendants' argument.

2            Accordingly, defendants' motion to dismiss this claim on qualified immunity grounds will

3   be granted.

4            C.  May plaintiff proceed on his Fourteenth Amendment and Eighth Amendment claims

5            regarding his placement in the SHU?

6            Plaintiff alleges that his validation as a gang associate and retention in the SHU violated

7   his Fourteenth Amendment due process rights.  He contends that these actions "[p]laced [him] in

8   an inescapable predicament that violates the fundamental principles of due process of law.

9   Because Defendants have incorrectly labeled Plaintiff a gang associate, Plaintiff cannot be

10  released unless he divulges information, which he does not have, via the 'debriefing' process."

11  (SAC, ECF No. 69 at 13-14.)

12           Plaintiff also pleads an Eighth Amendment violation, alleging that "his erroneous gang

13  validation and subsequent indefinite confinement in the SHU" constitutes cruel and unusual

14  punishment.  (Id. at 14-15.)

15           Plaintiff bases his claim at least in part on "defendants' policy of indefinite and prolonged

16  SHU placement . . . ."  (Id. at 15.)  In his opposition, plaintiff reiterates that the challenged

17  "indefinite SHU assignment claims were inflicted pursuant to a policy alleged by Plaintiff." (ECF

18  No. 82 at 24.)

19           Defendants Secretary Beard, Fisher, Kisser, and Williams are named as defendants under

20  both claims.  (ECF No. 82 at 23.)

21           Plaintiff seeks damages, as well as injunctive relief, requiring the defendants to:

22           A. Cease the scheme of using unreliable, untrue or insufficient
             information in imposing gang validation and indeterminate SHU
23           terms;

24           B. Cease the scheme of denying suspected prison gang
             members/associates of an Investigative Employee to help assist in
25           their defense in complex gang validation cases.

26           C. Remove Plaintiff's gang validation and expunge from his file
             any reference to gang association based on information found not
27           reliable enough to support validation;

28           D. Order the CDCR to schedule Plaintiff for a re-determination of

                                        19

his security classification and housing status; and

E. Order Defendants to re-classify Real as a General Population prisoner or similar category with the same rights and privileges.

(SAC, ECF No. 69 at 16-17.)

Two difficulties arise in assessing these claims and, consequently, in deciding defendants' motion to dismiss.

The first difficulty is that, in his opposition, plaintiff appears to concede that certain of his claims for injunctive relief under the Fourteenth Amendment and Eighth Amendment ought to be dismissed, as they are encompassed by the class action in Ashker v. Brown, No. C 09-5796 CW (N.D. Cal.)  (Opposition, ECF No. 82 at 24.)  Plaintiff nevertheless contends that his other claims for injunctive relief should go forward, writing, "The alleged constitutionally-offensive policy condemning Plaintiff to indefinite SHU assignment supports Plaintiff's injunctive relief claims, and does not require dismissal."  (Id.)  Unfortunately, plaintiff does not make clear which of the forms of injunctive relief he seeks are encompassed by Ashker and therefore ought to be dismissed, and which ought to proceed.

The second difficulty is that, to the extent plaintiff bases these claims on CDCR policy, he cannot seek damages from defendant Secretary Beard, who is sued only in his official capacity.  It is well-settled that the Eleventh Amendment bars damages claims against state officials sued in their official capacity under § 1983.  Kentucky v. Graham, 473 U.S. 159, 169 (1985).  Conversely, it is not clear to the court how individual defendants Fisher, Kisser, and Williams can be held liable for damages for carrying out CDCR policy.  As defendants point out, plaintiff, in pleading these claims, has failed to allege with specificity the involvements of the defendants named in an individual capacity.  (Reply, ECF No. 83 at 11.)

The decisive factor for the court, however, is that plaintiff has failed to plead any "allegedly unique conditions of [his] SHU placement" (Findings and Recommendations, ECF No. 43 at 20) that would distinguish his claims from those raised by the Ashker class action.  At hearing, plaintiff's counsel conceded this fact, but expressed his wish to speak to his client in order to better understand the circumstances of his SHU placement, and seek amendment

20

1   thereafter if warranted.  The court will dismiss this claim without prejudice so that he may do so.

2        D.  <u>May plaintiff proceed on his First Amendment claim?</u>

3        Plaintiff alleges that his First Amendment right to freedom of association was violated by

4   the following actions:

5       •  Reliance, in plaintiff's gang validation proceedings, on plaintiff's possession of a

6         mailing address for the home of a validated gang associate's parents.

7       •  Confiscation and retention of the address book containing that mailing address.

8       •  Reliance, in plaintiff's gang validation proceedings, on alleged "roll call"

9         evidence, when plaintiff alleges he did no more than greet fellow prisoners "good

10        morning" and "good night," an innocuous association.

11  (SAC, ECF No. 69 at 9, 16.)  This claim is brought against defendants Stewart, Parker, Parilla,

12  Fisher, Kisser, Williams.  (Opposition, ECF No. 82 at 23.)

13       The court previously held that "[s]hould plaintiff be able to demonstrate that he was

14  improperly validated . . . allegations [similar to those above], properly framed, may support

15  cognizable claims under the First Amendment."  (ECF No. 43 at 24.)  As the court has dismissed

16  plaintiff's Fourteenth Amendment due process claim regarding the sufficiency of the evidence

17  used to validate him as a gang associate, his First Amendment claim must fail as well.

18  Nevertheless, as discussed at hearing, plaintiff's counsel may seek leave to amend and re-allege

19  this claim if discussions with plaintiff so warrant.

20  IV.  <u>Conclusion</u>

21       In light of the foregoing, IT IS HEREBY ORDERED that:

22      1.  Defendants' motion to dismiss plaintiff's Fourteenth Amendment due process claim

23  against defendant R. Ramos for failure to provide an investigative employee is denied.

24      2.  The following claims are dismissed with prejudice:

25        a.  All claims against defendant Warden James Walker.

26        b.  All claims against defendant K. M. Pool.

27        c.  Plaintiff's Fourteenth Amendment due process claim for failure to provide an

28  investigative employee, against defendant T. Ventimiglia.

        d.  Plaintiff's Eighth Amendment and Fourteenth Amendment claims based on the conditions of his SHU placement, against defendants J. Stewart, G. Parker, R. Ramos, and R. Parilla.

        e.  Plaintiff's First Amendment claims against defendants Secretary Jeffrey Beard and R. Ramos.

        f.  Plaintiff's claims for injunctive relief pursuant to his Fourteenth Amendment claim for improper gang validation and his First Amendment claim.

    3.  The following claims are dismissed without prejudice:

        a.  Plaintiff's Fourteenth Amendment due process claim for failure to provide an investigative employee, against defendant J. Stewart.

        b.  Plaintiff's Fourteenth Amendment due process claim challenging the sufficiency of the evidence used in his gang validation.

        c.  To the extent not addressed above, plaintiff's Eighth Amendment and Fourteenth Amendment claims based on the conditions of his SHU placement.

        d.  To the extent not addressed above, plaintiff's First Amendment claim.

    4.  Plaintiff is granted leave to file a motion to amend the Second Amended Complaint within sixty days of filing of this order.  Any such motion should set forth the new information that has come to light as a result of discussions between plaintiff and plaintiff's counsel, as well as the legal basis for any amendment.  Any motion to amend should include a proposed Third Amended Complaint as an attachment.  Plaintiff may not therein plead any claims or the involvement of any defendants not already alleged in the Second Amended Complaint.  If plaintiff chooses to file a motion to amend, the parties should meet and confer and thereafter file a stipulation regarding a proposed briefing schedule for the motion.

    5.  Discovery in this matter is stayed for sixty days from the date of entry of this order.

Dated:  January 26, 2015

/real3273.mtd

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

22